1    LATHAM & WATKINS LLP
       Belinda S Lee (SBN 199635)
2        *belinda.lee@lw.com*
       Sarah M. Ray (SBN 229670)
3        *sarah.ray@lw.com*
       Aaron T. Chiu (SBN 287788)
4        *aaron.chiu@lw.com*
       Alicia R. Jovais (SBN 296172)
5        *alicia.jovais@lw.com*
     505 Montgomery Street, Suite 2000
6    San Francisco, California 94111-6538
     Telephone: +1.415.391.0600
7
     *Attorneys for Defendant Apple Inc.*
8

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                          SAN JOSE DIVISION

13

14   JULIANNA FELIX GAMBOA, individually        CASE NO. 5:24-cv-01270-PCP
     and on behalf of all others similarly situated,
15                                               **DEFENDANT APPLE INC.'S NOTICE
                    Plaintiff,                   OF MOTION AND MOTION TO
16                                               DISMISS PLAINTIFF'S CLASS ACTION
            v.                                   COMPLAINT**
17
     APPLE INC.,                                 Date:    August 22, 2024
18                                               Time:    10:00 a.m.
                    Defendant.                   Place:   Courtroom 8, 4th Floor
19                                               Judge:   The Honorable P. Casey Pitts

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2       TO THIS HONORABLE COURT, THE PARTIES, AND THEIR ATTORNEYS OF

3   RECORD, PLEASE TAKE NOTICE THAT on August 22, 2024 at 10:00 a.m. in Courtroom 8 of

4   the United States District Court for the Northern District of California, San Jose Division, located

5   at 280 South First Street, San Jose, California, 95113, Defendant Apple Inc. ("Apple") will and

6   hereby does move to dismiss with prejudice the Complaint filed by Plaintiff Julianna Felix

7   Gamboa.

8       This Motion to Dismiss is made pursuant to Federal Rules of Civil Procedure 8(a) and

9   12(b)(6) on the ground that Plaintiff fails to allege sufficient facts to state a claim for violations of

10  Sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. §§ 1–3, or of California's Unfair Competition

11  Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*  This Motion is based on this Notice of Motion and

12  Motion, the accompanying Memorandum of Points and Authorities, all pleadings and other papers

13  filed in this matter, oral argument of counsel, and such other matters that the Court may consider

14  on this Motion.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF ISSUES TO BE DECIDED ............................................... 3

III.  BACKGROUND ............................................................................................... 4

IV.  LEGAL STANDARD ....................................................................................... 7

V.  ARGUMENT ..................................................................................................... 7

    A.  Plaintiff's Tying Claim Fails ................................................................. 7

    B.  Plaintiff's Monopolization Claims Fail ................................................ 9

        1.  Plaintiff Fails to Allege that Apple Has Monopoly Power ..................... 10

        2.  Plaintiff Fails to Plead Any Anticompetitive Conduct by Apple ........... 15

        3.  Plaintiff's Attempted Monopolization Claim Also Fails Given the Lack of Allegations Regarding the Specific Intent to Monopolize ........... 19

    C.  Plaintiff's UCL Claim Fails ................................................................. 20

    D.  Plaintiffs' Sherman Act and UCL Claims Are Time-Barred ............... 21

        1.  Plaintiff Does Not and Cannot Plead a Continuing Violation Necessary to Restart the Antitrust Statute of Limitations ........... 22

        2.  Plaintiff Does Not and Cannot Plead Fraudulent Concealment ........... 23

        3.  Laches Bars Plaintiff's Injunctive Relief Claims ................................... 24

VI.  CONCLUSION ................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Affinity Credit Union v. Apple Inc.*,
   No. 22-cv-04174-JSW (N.D. Cal. Sept. 27, 2023), ECF No. 64 .......................................... 9

*Airweld, Inc. v. Airco, Inc.*,
   742 F.2d 1184 (9th Cir. 1984) ..................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 7

*Aurora Enterprises, Inc. v. National Broadcasting Co., Inc.*,
   688 F.2d 689 (9th Cir. 1982) ................................................................. 23, 24

*BanxCorp v. Bankrate, Inc.*,
   847 F. App'x 116 (3d Cir. 2021) ..................................................................... 13

*Bell Atlantic Corporation v. Twombly*,
   550 U.S. 544 (2007) .............................................................................. 7

*Beverage v. Apple, Inc.*,
   --- Cal. Rptr. 3d ----, 2024 WL 1794410 (Cal. Ct. App. Apr. 25, 2024) ............................ 20

*Blix Inc. v. Apple, Inc.*,
   No. CV 19-1869-LPS, 2021 WL 2895654 (D. Del. July 9, 2021) ........................................ 9

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
   65 F.3d 1406 (7th Cir. 1995) ................................................................... 10

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) ..................................................................... 7

*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007) ................................................................... 10

*California Crane School, Inc. v. Google LLC*,
   No. 21-cv-10001, 2024 WL 1221964 (N.D. Cal. Mar. 21, 2024) ...................................... 21

*Cascade Health Solutions v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008) ................................................................... 16

*ChriMar Systems, Inc. v. Cisco Systems, Inc.*,
   72 F. Supp. 3d 1012 (N.D. Cal. 2014) ............................................................. 9

*Chroma Lighting v. GTE Products Corp.*,
   111 F.3d 653 (9th Cir. 1997) ................................................................... 18

*Coalition for ICANN Transparency, Inc. v. Verisign, Inc.*,
   611 F.3d 495 (9th Cir. 2010) ..................................................................... 7

*Coronavirus Reporter v. Apple, Inc.*,
   85 F.4th 948 (9th Cir. 2023) ..................................................................... 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-01270-PCP

*Crowder v. LinkedIn Corp.*,
  No. 22-CV-00237, 2023 WL 2405335 (N.D. Cal. Mar. 8, 2023)........................................ 23

*De Soto Cab Company, Inc. v. Uber Technologies, Inc.*,
  No. 16-CV-06385, 2021 WL 5860917 (N.D. Cal. Nov. 18, 2021) .................................... 15

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ...................................................................................... 20

*Dream Big Media Inc. v. Alphabet Inc.*,
  No. 22-cv-02314-JSW, 2022 WL 16579322 (N.D. Cal. Nov. 1, 2022) ............................... 9

*Dreamstime.com, LLC v. Google LLC*,
  54 F.4th 1130 (9th Cir. 2022) .............................................................................. *passim*

*Eastman Kodak Co. v. Image Technology Services, Inc.*,
  504 U.S. 451 (1992)...................................................................................................... 15

*Eastman v. Quest Diagnostics Incorporated*,
  108 F. Supp. 3d 827 (N.D. Cal. 2015) ........................................................................... 12

*Federal Trade Commission v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ........................................................................................ 12

*Federal Trade Commission v. Facebook, Inc.*,
  560 F. Supp. 3d 1 (D.D.C. 2021) ................................................................................... 14

*Flaa v. Hollywood Foreign Press Association*,
  55 F.4th 680 (9th Cir. 2022) ........................................................................... 13, 14, 15

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
  703 F.2d 534 (9th Cir. 1983) .................................................................................. 18, 19

*Freund v. HP, Inc.*,
  No. 22-CV-03794, 2023 WL 5184140 (N.D. Cal. Aug. 10, 2023) ..................................... 5

*Garnica v. HomeTeam Pest Defense, Inc.*,
  230 F. Supp. 3d 1155 (N.D. Cal. 2017) ......................................................................... 10

*Garrison v. Oracle Corp.*,
  159 F. Supp. 3d 1044 (N.D. Cal. 2016) ......................................................................... 22

*General Communications Engineering, Inc. v. Motorola Communications and Electronics, Inc.*,
  421 F. Supp. 274 (N.D. Cal. 1976) ............................................................................... 19

*Hazel v. Prudential Financial, Inc.*,
  No. 22-CV-07465, 2023 WL 3933073 (N.D. Cal. June 9, 2023)........................................ 5

*Hexcel Corp. v. Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012) ...................................................................................... 24

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ...................................................................................... 20

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   485 F. Supp. 3d 1137 (N.D. Cal. 2020) ................................................................ 8

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
   191 F.3d 813 (7th Cir. 1999) ............................................................................... 25

*Huynh v. Chase Manhattan Bank*,
   465 F.3d 992 (9th Cir. 2006) ............................................................................... 21

*In re Animation Workers Antitrust Litigation*,
   87 F. Supp. 3d 1195 (N.D. Cal. 2015) ................................................................ 21

*In re ATM Fee Litigation*,
   768 F. Supp. 2d. 984 (N.D. Cal. 2009) ............................................................... 15

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust
   Litigation*,
   28 F.4th 42 (9th Cir. 2022) .................................................................................. 20

*In re Gilead Sciences Securities Litigation*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................... 7

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
   No. 13-CV-00740, 2013 WL 6682981 (E.D. Va. Dec. 18, 2013) ....................... 12

*Intergraph Corp. v. Intel Corp.*,
   195 F.3d 1346 (Fed. Cir. 1999) ........................................................................... 17

*International Telephone & Telegraph Corp. v. General Telephone & Electronics
   Corp.*,
   518 F.2d 913 (9th Cir. 1975) ............................................................................... 24

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ............................................................................... 24

*Jefferson Parish Hospital District No. 2 v. Hyde*,
   466 U.S. 2 (1984) ............................................................................................... 7, 8

*Korea Kumho Petrochemical v. Flexsys America LP*,
   No. 07-cv-01057, 2008 WL 686834 (N.D. Cal. Mar. 11, 2008) ......................... 14

*LiveUniverse, Inc. v. MySpace, Inc.*,
   304 F. App'x 554 (9th Cir. 2008) ........................................................................ 18

*Med Vets Inc. v. VIP Petcare Holdings, Inc.*,
   No. 18-CV-02054, 2019 WL 1767335 (N.D. Cal. Apr. 22, 2019), *aff'd*, 811 F.
   App'x 422 (9th Cir. 2020) ................................................................................... 14

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................................... 23

*Nazemi v. Specialized Loan Servicing, LLC*,
   637 F. Supp. 3d 856 (C.D. Cal. Oct. 31, 2022) ................................................... 21

*Northern Pacific Railroad Company v. United States*,
  356 U.S. 1 (1958) ................................................................................................ 7

*Ohio v. American Express Co.*,
  138 S. Ct. 2274 (2018) ....................................................................................... 12

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
  555 U.S. 438 (2009) ........................................................................................... 18

*Parducci v. Overland Solutions, Inc.*,
  399 F. Supp. 3d 969 (N.D. Cal. 2019) ............................................................... 20

*PNY Technologies, Inc. v. SanDisk Corp.*,
  No. 11-cv-04689, 2012 WL 1380271 (N.D. Cal. Apr. 20, 2012) ....................... 13

*Rebel Oil Co. v. Atlantic Richfield, Co.*,
  51 F.3d 1421 (9th Cir. 1995) ............................................................. 9, 10, 13, 15

*Response of Carolina, Inc. v. Leasco Response, Inc.*,
  537 F.2d 1307 (5th Cir. 1976) .............................................................................. 8

*Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*,
  No. 21-15863, 2022 WL 595696 (9th Cir. Feb. 28, 2022) (mem.) ..................... 24

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*,
  532 F.3d 963 (9th Cir. 2008) ................................................................................ 8

*Safeway Inc. v. Abbott Laboratories*,
  761 F. Supp. 2d 874 (N.D. Cal. 2011) ................................................................ 10

*Samsung Electronics Co., Ltd. v. Panasonic Corp.*,
  747 F.3d 1199 (9th Cir. 2014) ............................................................................ 22

*SaurikIT, LLC v. Apple Inc.*,
  No. 4:20-CV-08733-YGR, 2022 WL 1768845 (N.D. Cal. May 26, 2022) .......... 23

*Somers v. Apple Inc.*,
  258 F.R.D. 354 (N.D. Cal. 2009) .......................................................................... 8

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
  No. 09-0560, 2011 WL 2678879 (E.D. Cal. July 7, 2011) .................................. 19

*The Jeanery, Inc. v. James Jeans, Inc.*,
  849 F.2d 1148 (9th Cir. 1988) ............................................................................ 21

*Times-Picayune Publishing Co. v. United States*,
  345 U.S. 594 (1952) ........................................................................................... 19

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966) ..................................................................................... 16, 18

*Verizon Communications Inc. v. Law Offices Of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) .................................................................................... 15, 18

*Viamedia, Inc. v. Comcast Corp.*,
    951 F.3d 429 (7th Cir. 2020) ............................................................................................. 18

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ........................................................................................... 20

## STATUTES

15 U.S.C. § 2 .......................................................................................................................... 9

California Busines & Professions Code § 17208 .................................................................. 21

## RULES

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 7

APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-01270-PCP

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3        Apple iCloud is an innovative, integrated, and free cloud storage solution that provides

4    users the ability to securely back up their Apple devices, sync device settings and data across Apple

5    devices, and remotely store data such as e-mail, notes, photos, videos, and messages.  Launched

6    in 2011, iCloud provides up to 5 gigabytes (GB) of complementary storage.  And users who need

7    more storage have many options to choose from, including a monthly iCloud+ subscription.

8        Notwithstanding these features and benefits, no one is required to use iCloud.  There are

9    scores of other cloud storage options, such as Dropbox, Sync.com, pCloud, Google One, and

10   Microsoft OneDrive, that Apple device users can and do use to remotely store commonly used

11   files like photos and videos.  However, when it comes to the core app data and device files needed

12   to restore an Apple device—such as the apps a user has downloaded, the data and passwords for

13   those apps, messaging history, and other device settings—Apple has always required that this data

14   be backed up using iCloud Backup or other, non-cloud-based solutions (such as local storage on a

15   Mac or PC).  This not only ensures a seamless user experience for restoring a device, but more

16   importantly, guarantees the highest level of security by limiting access permissions that would

17   give third parties unfettered entry into one's iPad or iPhone, which often contain a user's most

18   intimate and private information.

19       With this case, Plaintiff Julianna Felix Gamboa attempts to turn Apple's 2011 product

20   design decision to limit the remote backup of core app data and device files to iCloud Backup into

21   an antitrust violation.  Plaintiff claims that this iCloud feature—designed specifically to best

22   protect the security and privacy of Apple device users—somehow gives Apple the ability to

23   monopolize a broader market for cloud-based storage of any files on its devices, notwithstanding

24   the numerous other storage options Plaintiff admits are available.  Under this theory, Plaintiff

25   alleges claims of tying, monopolization, and attempted monopolization, and also a violation of

26   California's Unfair Competition Law ("UCL").  Each one fails.

27       1.    Plaintiff's tying claim fails because the Complaint does not and cannot plausibly

28   allege that Apple unlawfully ties together its mobile devices and iCloud.  An unlawful tying

arrangement requires a seller to condition the sale of one product upon the purchase and use of another.  Here, as Plaintiff acknowledges, Apple device users are neither required to use iCloud nor purchase additional storage via an iCloud+ subscription:  "consumers can buy smartphones and tablets (*including Apple's*) without also purchasing or using any cloud storage."  Compl. ¶ 36 (emphasis added).  Thus, the Complaint does not allege a tie, but only that Apple provides an optional service—the ability to remotely restore data and device settings on a new Apple device— for free.

2.     Plaintiff's monopolization and attempted monopolization claims fail because Plaintiff does not and cannot plausibly allege that Apple has monopoly power or engaged in any anticompetitive conduct.  The Complaint fails to allege direct evidence of monopoly power given (1) the admission of vibrant competition in the market for "Cloud Storage on Apple Mobile Devices"; (2) the publicly available, comparable prices of iCloud's competitors; and (3) the facially flawed allegations about Apple's gross margins.  The Complaint's fabricated (and mathematically suspect) market share calculation also fails to plead monopoly power indirectly.

3.     Plaintiff's monopolization and attempted monopolization claims also fail because the conduct complained of—Apple's unilateral decision to limit the backup of core app and device data to iCloud Backup—is not cognizable anticompetitive conduct.  Conduct is anticompetitive only if it impairs the opportunities of rivals in an unnecessarily restrictive way or without furthering competition on the merits, and causes harm to competition in the alleged relevant market.  Here, Plaintiff's allegations evince that the restriction at issue does not and cannot harm competition in the market that Plaintiff claims is being monopolized—one for "Cloud Storage on Apple Mobile Devices."  *Id.* ¶ 11.  Plaintiff acknowledges there are numerous alternative cloud storage options for Apple devices "offered by every major technology company" (*see id.* ¶¶ 4, 28, 85), meaning the alleged market is highly competitive.  Plaintiff also fails to plausibly allege that iCloud pricing is supracompetitive.  This confirms that the limitation on remote backup of core app and device data (Plaintiff's so-called "Restricted Files") to iCloud Backup has not impeded competition in any market for the general "cloud storage on Apple mobile devices," and therefore is not anticompetitive.  And Plaintiff's claim that this feature somehow gives Apple an advantage

over competing cloud storage solutions on Apple devices does not save her claims.  There is nothing anticompetitive about "a company using a competitive advantage gained from establishing an infrastructure that renders [it] uniquely situated to serve [its] customers or from a consequence of a superior product.'" *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1142 (9th Cir. 2022) (simplified).

4.      As for Plaintiff's UCL claim, her unlawful prong claim fails because she does not sufficiently allege tying, monopolization, or attempted monopolization.  Her fraudulent prong claim fails because she comes nowhere close to pleading any fraud at all, much less with specificity as required by Rule 9(b).  And her unfair prong claim fails because her allegations do not satisfy any of the three tests for unfairness.

5.      Finally, Plaintiff's claims are time-barred because, at their core, they challenge a design decision that Apple implemented *nearly 15 years ago*—in 2011—when iCloud first launched.  That design decision—to limit backup of core app data and device files to iCloud Backup or non-cloud (i.e., local) options to ensure the highest level of security and privacy protections—underlies all of Plaintiff's claims.  And while Plaintiff alleges that this restriction results in supposedly inflated prices for iCloud+ subscriptions, the payment of alleged monopoly prices does not restart the statute of limitations when those prices stem from a design decision made before the limitations period, as is the case here.  Laches also bars Plaintiff's injunctive relief claims given the prejudice that would result in now allowing claims to proceed that seek to unravel a design decision that Apple implemented back in 2011 and the significant ensuing investments Apple has made in iCloud over the last decade.

Plaintiff's Complaint should be dismissed with prejudice.

## II.      STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff's tying claim under Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1 & 3, should be dismissed given that, as Plaintiff admits, Apple does not condition the sale of any Apple devices on the use or purchase of iCloud.

2.      Whether Plaintiff's monopolization and attempted monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2, should be dismissed given Plaintiff's failure to allege

that Apple possesses monopoly power in a properly defined relevant market, or any cognizable anticompetitive conduct by Apple.

3. Whether Plaintiff's UCL claim, Cal. Bus. & Profs. Code §§ 17200 *et seq.*, should be dismissed for failure to allege any unlawful, fraudulent, or unfair conduct.

4. Whether Plaintiff's claims, based on a design decision Apple made in 2011, are untimely under the four-year statute of limitations applicable to both the Sherman Act and the UCL.

## III.   BACKGROUND

*iCloud.*  In 2011, Apple introduced iCloud, a secure cloud storage service that allows users to remotely upload and store photos, videos, messages, and other data.  Compl. ¶¶ 1, 3.  If an Apple device user decides to use iCloud, Apple offers up to 5GB of storage on iCloud for free.  *Id.* ¶ 24. If a user wants to store more than 5GB of data using iCloud, Apple offers the option of a paid monthly iCloud+ subscription, which comes in six different storage tiers ranging from 50GB up to 12 terabytes (TB).  *Id.*

For the vast majority of file types—including commonly used files like photos and videos—iCloud is just one of many options for remotely storing data from an Apple device.  *Id.* ¶ 85.  As Plaintiff alleges, "[c]loud storage is . . . widely available on other platforms, with many well-known firms offering cloud storage products that are available on Apple's mobile devices." *Id.*  These firms, which include Google Drive, Dropbox, Microsoft One Drive, Sync.com, pCloud, and others, offer paid storage tiers like Apple.  *Id.* ¶¶ 4, 25, 28, 85.

Apple device users are not required to use iCloud, much less purchase an iCloud+ subscription.  As Plaintiff acknowledges, "consumers can buy smartphones and tablets (*including Apple's*) without also purchasing or using any cloud storage."  *Id.* ¶ 36 (emphasis added).  Given the numerous alternatives to iCloud, many Apple users opt not to pay for an iCloud+ subscription. Of the customers who use iCloud, nearly half—48 percent—use less than 5GB and therefore use iCloud entirely for free.  *Id.* ¶ 25.  Those users either rely on the 5GB of complimentary storage provided by Apple, purchase other cloud storage products, or use some mixture of the two.  As Plaintiff acknowledges, users can (and do) use both iCloud and alternative cloud storage solutions

by "splitting out their files and managing multiple cloud storage accounts." *Id.* ¶ 96.

***iCloud Backup for restoring Apple devices.*** With respect to the backup of core app data and device files needed to restore an Apple device—such as the apps and app data downloaded on a device, passwords, messaging history, and other device settings such as Home Screen layout and app organization (which Plaintiff calls "Restricted Files")—Apple has always limited that functionality to iCloud Backup and other non-cloud-based solutions. *Id.* ¶ 5. This has been Apple's approach since iCloud launched in 2011. Apple designed iCloud's backup feature this way because it ensures the most secure and seamless method of restoring core app data and device files—access to which could give someone unfettered entry to the most sensitive, intimate, and private information on a user's Apple device. This coincides with Apple's "sandboxing" policy, which limits a third-party app's access to data from other apps installed on an Apple device to best protect users against viruses and other malware and exploits that could compromise the security of their devices.[1] Plaintiff alleges this design feature, applied to iCloud Backup, "arbitrarily sequesters . . . app data and device settings" (so-called "Restricted Files"), yet still allows "competing cloud providers" to "access and host" various "iPhone and iPad data," including most commonly used files like "photos and videos." *Id.* ¶¶ 5, 28–29, 87.

Plaintiff claims that, because users can back up the core app data and device files that "effectively restore the look and feel" of their devices using iCloud Backup but not other cloud storage solutions, users are "effectively compel[led]" to choose iCloud+ subscriptions over competitor cloud products. *Id.* ¶¶ 29, 34, 96. That is conclusory, and undermined by Plaintiff's own allegations. Indeed, as Plaintiff admits, users are not compelled to use iCloud for backup or purchase iCloud+ subscriptions at all. *Id.* ¶ 36. Plaintiff also concedes that users are not even

---

[1] *See* Apple, *iOS Security* (Oct. 2014) at 16–18, 48, https://www.apple.com/mx/privacy/docs/iOS_Security_Guide_Oct_2014.pdf (incorporated by reference at Compl. ¶ 7 n.1). The webpages cited in the Complaint to support Plaintiff's allegations are incorporated by reference. *See, e.g.*, *Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465, 2023 WL 3933073, at *3 n.2 (N.D. Cal. June 9, 2023) ("Incorporation by reference 'prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'"); *Freund v. HP, Inc.*, No. 22-CV-03794, 2023 WL 5184140, at *3 n.1 (N.D. Cal. Aug. 10, 2023) (webpage was incorporated by reference because plaintiff "used information from [the] webpage to support his complaint").

1    required to use iCloud to back up "Restricted Files," and can back up those files using non-cloud

2    alternatives such as local storage on a Mac or PC.  *Id.* ¶¶ 73–74, 100.  Users can also use direct,

3    device-to-device transfer to restore their Apple mobile device.[2]

4         ***Plaintiff's Claims.***    Based on these allegations, Plaintiff asserts claims of tying,

5    monopolization, attempted monopolization, and violation of the UCL.

6         Plaintiff asserts a tying claim under Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1

7    & 3, on the basis that Apple ties together "its mobile devices and iCloud."  *Id.* ¶ 10.  But Plaintiff

8    does not allege that users are required to use iCloud on their Apple devices; instead, she admits

9    the opposite.  *See id.* ¶ 36.  The Complaint alleges that 48 percent of iCloud users do not even pay

10   for an iCloud+ subscription.  *Id.* ¶ 25.  And there are no allegations in the Complaint that Apple in

11   any way conditions the sale of iPhones or iPads on the use or purchase of iCloud.

12        Plaintiff also asserts two claims under Section 2 of the Sherman Act, 15 U.S.C. § 2, on the

13   theory that Apple monopolizes and attempts to monopolize a "market for Cloud Storage on Apple

14   Mobile Devices."  *Id.* ¶¶ 128–47.  Plaintiff asserts that Apple supposedly has monopoly power in

15   a market for "Cloud Storage on Apple Mobile Devices," but the Complaint relies exclusively on

16   facially flawed calculations of Apple's alleged gross margins and market share, *id.* ¶¶ 53–60, 63

17   n.29, and conveniently ignores that iCloud+ pricing is competitive with the myriad other cloud

18   storage solutions available on Apple devices.  Plaintiff also asserts that permitting users to use

19   only iCloud Backup to remotely back up "Restricted Files" is the anticompetitive conduct giving

20   rise to its monopolization claims.  Yet the Complaint acknowledges that, notwithstanding this

21   limited restriction with respect to backup, "every major technology company" and "numerous

22   cloud-storage specialists" offer alternative cloud storage options that are available to Apple device

23   users.  *See, e.g.*, *id.* ¶¶ 4, 28, 85.

24        Finally, Plaintiff asserts a claim under California's UCL, alleging that the same conduct is

25   unlawful, unfair, and fraudulent.  *Id.* ¶ 149.

26   ─────────────────────

27   [2] *See* Apple Support, *Backup methods for iPhone, iPad, and iPod touch* (Feb. 21, 2024),
     https://support.apple.com/en-us/HT204136#:~:text=iCloud%20backs%20up,Backups%20

28   from%20your%20computer,downloaded%20directly%20to%20Apple%20Books (incorporated
     by reference at Compl. ¶ 73 n.36).

## IV.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified).  Further, in antitrust cases, "a court must determine whether an antitrust claim is plausible in light of basic economic principles." *Coal. for ICANN Transparency, Inc. v. Verisign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010) (simplified).

## V.    ARGUMENT

### A.    Plaintiff's Tying Claim Fails

Plaintiff fails to plead the essential element of a tying claim:  conditioning the sale of one product on the purchase of another.  Plaintiff asserts that Apple ties together "its mobile devices and iCloud" (Compl. ¶ 10), but acknowledges that nearly half of Apple device owners neither need nor pay for iCloud storage (*id.* ¶ 25).  This is fatal to her tying theory.

Tying occurs when "a supplier agrees to sell a buyer a product (the tying product), but 'only on the condition that the buyer also purchases a different (or tied) product.'"  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958)).  "[A]n invalid tying arrangement" requires "the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984).

Plaintiff readily admits that Apple does not condition the sale of its mobile devices on either the use or purchase of iCloud.  As Plaintiff concedes, "consumers can buy smartphones and tablets (***including Apple's***) without also purchasing or using any cloud storage."  Compl. ¶ 36

1    (emphasis added).  Moreover, Plaintiff acknowledges that, even among those device holders who

2    do use iCloud, 48% use the 0 to 5 GB storage tier, which is completely free.  *Id.* ¶¶ 24, 25.

3         Plaintiff's conclusory allegation that Apple's limitation on cloud backup of "Restricted

4    Files" to iCloud Backup "effectively compel[s] Apple device holders to use iCloud for cloud

5    storage" (*id.* ¶ 34) does not cure the fundamental defect in her tying claim.  Plaintiff admits that

6    "[a]n iPhone or iPad can theoretically be backed up locally to a hard drive on a Mac or PC" (*id.*

7    ¶ 73), and "Apple mobile device holders can backup many types of Restricted Files on hard drives,

8    including a PC" (*id.* ¶ 100).  These allegations confirm there is no requirement to use iCloud

9    Backup, even for "Restricted Files."  Alleged inconveniences associated with backing up locally

10   (*see id.* ¶¶ 73–74) do not constitute the "coercion" or "exploitation" required to support a tying

11   claim.  *Jefferson Par.*, 466 U.S. at 12 ("[T]he essential characteristic of an invalid tying

12   arrangement lies in the seller's exploitation of its control over the tying product to force the buyer

13   into the purchase of a tied product."); *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1189 (9th Cir.

14   1984) ("Coercion occurs when the buyer must accept the tied item and forego possibly desirable

15   substitutes."); *hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1154 (N.D. Cal. 2020) (no

16   coercion where defendant did not premise use of the tying product on the purchase of the tied

17   product); *Somers v. Apple Inc.*, 258 F.R.D. 354, 357 (N.D. Cal. 2009) ("[T]here can be no per se

18   tying liability . . . where the only allegation is that there is a technological interrelationship

19   between the two products that may induce purchasers of one to purchase the other.").[3]

20        In short, "there is no tie" because Apple mobile device users "are not required to use"

21   iCloud, let alone pay for an iCloud+ subscription.  *See Dream Big Media Inc. v. Alphabet Inc.*, No.

---

[3] To the extent Plaintiff claims that the tied product is not iCloud generally, but instead iCloud Backup for "Restricted Files," then Plaintiff cannot plead that cloud storage of core app data and device files is a separate product from Apple mobile devices to sustain a tying claim.  The aspect of iCloud that can be used to back up "Restricted Files" is fully integrated with the operating systems on Apple's mobile devices, is designed to enhance security, privacy, and the user experience, and has never been offered separately for sale or purchase.  *See Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 974 (9th Cir. 2008) (there is no actionable tying arrangement if the tying and tied products are "'bundled' and related products or services"); *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1330 (5th Cir. 1976) (antitrust violations are "limited to . . . where the technological factor tying the hardware to the software has been designed . . . [to tie] the products, rather than to achieve some technologically beneficial result").

22-cv-02314-JSW, 2022 WL 16579322, at *3 (N.D. Cal. Nov. 1, 2022) (no tie because defendant "d[id] not condition the sale of one Google product on the purchase of [a] second"); *Blix Inc. v. Apple, Inc.*, No. CV 19-1869-LPS, 2021 WL 2895654, at *5 (D. Del. July 9, 2021) (no tie because the "tied" product, Sign In With Apple, need not be used with iOS); *see also* Order at 10, *Affinity Credit Union v. Apple Inc.*, No. 22-cv-04174-JSW (N.D. Cal. Sept. 27, 2023), ECF No. 64 ("[T]here is no tie because iOS device consumers are not required to use Apple Pay and because Apple Pay is free to consumers.")

## B. Plaintiff's Monopolization Claims Fail

Plaintiff asserts both monopolization and attempted monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2. Monopolization requires plausibly alleging that: (1) the defendant has monopoly power in the relevant market; and (2) the defendant has willfully acquired or maintained monopoly power in that market. *See Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023). Attempted monopolization requires a plaintiff to allege: "(1) a specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 72 F. Supp. 3d 1012, 1019 (N.D. Cal. 2014) (citing *Rebel Oil Co. v. Atl. Richfield, Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995)).

Both claims fail because Plaintiff's allegations preclude any plausible inference that Apple has monopoly power or that the underlying conduct is anticompetitive. With respect to monopoly power, Plaintiff alleges that the market for "Cloud storage on Apple mobile devices" is highly competitive—not restricted. And her "calculations" of Apple's gross margins and market share, which courts sometimes accept at the pleading stage, are nonsensical. As for anticompetitive conduct, Plaintiff's claims are premised on the notion that Apple's limitation on the backup of "Restricted Files" to iCloud Backup gives Apple the power to monopolize the entire alleged market for cloud storage solutions on Apple mobile devices. But that is not anticompetitive conduct at all, because (as Plaintiff acknowledges throughout the Complaint) the restriction does not foreclose competition for alternative cloud storage products on Apple's devices.

1.   <u>Plaintiff Fails to Allege that Apple Has Monopoly Power</u>

Monopoly power is a required element of claims for monopolization and attempted monopolization.  *See Dreamstime.com*, 54 F.4th at 1137; *Rebel Oil Co.*, 51 F.3d at 1432–33. Monopoly power is "the power to control prices or exclude competition." *Dreamstime.com*, 54 F.4th at 1137 (citation omitted).  A plaintiff may plead monopoly power in two ways:  (1) with direct evidence of monopoly power—*i.e.*, "evidence of restricted output and supracompetitive prices," or (2) with indirect evidence of monopoly power, which requires the plaintiff to "[a] define the relevant market, [b] show that the defendant owns a dominant share of that market, and [c] show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil*, 51 F.3d at 1434.  Plaintiff fails to plausibly allege monopoly power by either means.

a.   *Plaintiff Fails to Allege Direct Evidence of Monopoly Power*

Direct proof of market power requires "evidence of restricted output *and* supracompetitive prices." *Id.* (emphasis added); *see also Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007); *Safeway Inc. v. Abbott Laboratories*, 761 F. Supp. 2d 874, 887 (N.D. Cal. 2011) ("[S]upracompetitive pricing, on its own, is not direct evidence of monopoly power.").  That is because a firm has market power only when, "by restricting its own output, it can restrict marketwide output and, hence, increase marketwide prices."  *Rebel Oil Co.*, 51 F.3d at 1434. Without this ability "to increase prices above competitive levels" by restricting output, "and sustain them for an extended period," a firm's "actions do not threaten consumer welfare."  *Id.* Here, Plaintiff alleges neither supracompetitive prices nor restricted output.

***No Supracompetitive Prices.***  Plaintiff's efforts to plead supracompetitive prices for iCloud fail.  *See* Compl. ¶¶ 53–60.  This section of the Complaint is based *entirely* on Apple's alleged 80% gross margins for iCloud.  But "inferring market power from gross margins is a dicey proposition." *Garnica v. HomeTeam Pest Def., Inc.*, 230 F. Supp. 3d 1155, 1159 (N.D. Cal. 2017). That is because "competitive firms may be highly profitable merely by virtue of having low costs as a result of superior efficiency."  *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1412 (7th Cir. 1995) (Posner, J.) (explaining why "it is always treacherous to try to

infer monopoly power from a high rate of return").  More importantly, the gross margins that Plaintiff alleges—based on "Apple's per-GB cost of acquiring [third-party storage] infrastructure," Compl. ¶ 55—are fundamentally flawed.  Plaintiff (1) cites an industry report stating that Apple pays Google $300 million annually for 8 billion GB of storage; (2) assumes that the entirety of Apple's costs associated with iCloud must be $0.0031 per GB per month ($300 million divided by 8 billion, divided by 12); and (3) compares this cost to Apple's monthly charge for each of its iCloud+ subscription plans.  *Id.*  This calculation is facially unsustainable.  It assumes without any factual basis that Apple incurs *zero* costs other than third-party storage infrastructure to provide iCloud+ storage to its users, and it is inconsistent with the Complaint's acknowledgment that half of iCloud users do not pay to use iCloud because they use 5GB or less of iCloud storage.  *See id.* ¶ 25.  There is nothing in the Complaint beyond this flawed calculation to support an inference that iCloud+ pricing is supracompetitive.

Plaintiff's claim of supracompetitive prices for iCloud+ also fails because it ignores the public, comparable prices of competitors.  According to articles that the Complaint incorporates by reference, iCloud's subscription pricing is on par with—and often lower than—the alleged competition.  *See* Compl. ¶ 67 n.30.  The following table illustrates iCloud+ pricing alongside certain of its alleged competitors, which are reflected in the articles incorporated by reference in the Complaint, highlighting when competitors' prices are the same as iCloud+ or higher:[4]

|  | Free | 50GB | 200GB | 2TB | 6TB | 12TB |
|---|---|---|---|---|---|---|
| **iCloud** | 5GB | $0.99/mo | $2.99/mo | $9.99/mo | $29.99/mo | $59.99/mo |
| **Google Drive** | 15GB | $1.99/mo for 100GB ($0.99/mo for 50GB) | $2.99/mo | $9.99/mo | | $49.99/mo for 10TB ($59.98/mo for 12TB) |
| **OneDrive** | 5GB | $1.99/mo for 100GB ($0.99/mo for 50GB) | $1.99/mo for 100GB ($3.98/mo for 200GB) | $6.99/mo for 1TB ($13.98/mo for 2TB) | $9.99/mo | |
| **DropBox** | 2GB | | | $11.99/mo | | |
| **pCloud** | 10GB | | | $99.99/yr ($9.99/mo) | | |

---

[4] *5 Best Cloud Storage for iPhone*, EaseUS (Feb. 27, 2024), https://mobi.easeus.com/iphone-data-transfer/best-cloud-storage-for-iphone.html  (incorporated by reference in Compl. ¶ 67 n.30); *Best Cloud Storage for iPhone 2024*, CloudWards (Jan. 27, 2024), https://www.cloudwards.net/best-cloud-storage-for-iphone/ (incorporated by reference in Compl. ¶ 67 n.30).

1    Plaintiff's allegations of supracompetitive prices, based entirely on dubious allegations

2    regarding margins, are implausible in light of this contradictory, publicly available information

3    confirming that iCloud+ pricing is competitive.  *See, e.g.*, *Eastman v. Quest Diagnostics Inc.*, 108

4    F. Supp. 3d 827, 835 (N.D. Cal. 2015) (dismissing monopolization claim in part because plaintiffs

5    failed to allege "how [defendant's prices] compare to competitive prices"); *Intellectual Ventures I*

6    *LLC v. Cap. One Fin. Corp.*, No. 13-CV-00740, 2013 WL 6682981, at *6 (E.D. Va. Dec. 18, 2013)

7    (dismissing monopolization claim for failure to plausibly allege monopoly power where

8    "[plaintiff] does not allege specifically that [defendant] charges or demands . . . fees higher than

9    other [competitors]"); *see also Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2288 (2018) (no

10   unreasonable restraint where, *inter alia*, "the evidence about whether Amex charges more than its

11   competitors was ultimately inconclusive").

12   **No Restricted Output.**  Plaintiff's claims are premised on Apple's alleged monopolization

13   of a "market for Cloud Storage on Apple Mobile Devices," Compl. ¶ 51, but Plaintiff fails to allege

14   any restricted output *in that market*.  *See Fed. Trade Comm'n  v. Qualcomm Inc.*, 969 F.3d 974,

15   989 (9th Cir. 2020) (direct evidence must "include[] proof of actual detrimental effects on

16   competition . . . *in the relevant market*") (cleaned up; emphasis added).  Plaintiff alleges that

17   Apple restricts output by "preclud[ing] any other cloud provider from accessing and hosting

18   Restricted Files on its mobile devices," which supposedly prevents those providers from offering

19   "full-service cloud solutions" to Apple mobile device users.  *Id.* ¶ 61.  But Plaintiff does not allege

20   a market for cloud storage of "Restricted Files," nor a market for "full-service cloud solutions."

21   Instead, Plaintiff alleges a broader market for "Cloud Storage on Apple Mobile Devices."  *Id.* ¶ 51.

22   In *that* market, Plaintiff's own allegations establish that there are "many well-known technology

23   firms [that] offer[] cloud storage products that are available on Apple's mobile devices" (*id.* ¶ 85),

24   such as Google, Microsoft, Dropbox, Sync.com, and IDrive for photos, videos, and most other

25   files (*id.* ¶ 4); *see also id.* ¶ 28 ("Apple mobile device holders can select from other cloud-based

26   storage providers servicing the market, including Google Drive, Sync.com, pCloud, and others.").

27   Any one of those competitors—or any number of new entrants—could potentially offer cheaper

28   or more innovative cloud storage products for Apple mobile device users.  *See Flaa v. Hollywood*

*Foreign Press Ass'n*, 55 F.4th 680, 694 (9th Cir. 2022) ("The presence of so many market participants suggests that there is robust competition," and competitors' "success . . . supports the conclusion that the [defendant] does not control any relevant market."); *PNY Techs., Inc. v. SanDisk Corp.*, No. 11-cv-04689, 2012 WL 1380271, at \*9–10 (N.D. Cal. Apr. 20, 2012) (holding that plaintiff's allegations of barriers to entry were implausible where they related to the wrong market, and "the facts alleged in the Complaint show[ed] the opposite," *i.e.*, that competitors could increase output). And there are no allegations in the Complaint that Apple's limitation on the backup of "Restricted Files" to iCloud Backup restricts output in the broader market for "Cloud Storage on Apple devices" in a way that allows Apple to charge supracompetitive prices for iCloud+. That is fatal to pleading direct evidence of monopoly power. *See, e.g.*, *BanxCorp v. Bankrate, Inc.*, 847 F. App'x 116, 120 (3d Cir. 2021) ("Even assuming the prices were supracompetitive," without a showing that defendant "restrict[ed] output during the challenged period," the plaintiff failed to prove "monopoly power through direct evidence.").

>        b.       *Plaintiff Fails to Allege Indirect Evidence of Monopoly Power*

To plead monopoly power indirectly, a plaintiff must plausibly allege that the defendant has a dominant share of a properly defined market, plus significant barriers to entry and expansion in the alleged market. *See Rebel Oil*, 51 F.3d at 1434. "A mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme." *Id.* at 1439. A plaintiff must also "show that new rivals are barred from entering the market" and that "existing competitors lack the capacity to expand their output to challenge the predator's high price." *Id.* Here, Plaintiff fails to plausibly allege either a dominant market share or barriers to entry and expansion.

**Plaintiff's Fabricated Market Share Calculation.** Plaintiff attempts to plead a dominant market share by alleging that "iCloud's share of the market for Cloud Storage on Apple Mobile devices exceeds 70 percent." Compl. ¶ 63. Plaintiff's sole support for that number is footnote 29, in which Plaintiff offers the following calculation: according to an unidentified survey from 2020, 33% of people using personal cloud storage in the U.S. used iCloud; because iCloud can be accessed from non-mobile Apple devices and from non-Apple devices, that number must

1  underestimate iCloud's share of the market for "Cloud Storage on Apple Mobile Devices"; to

2  arrive at a market share figure, Plaintiff divides iCloud's alleged share across all Apple and

3  non-Apple devices (allegedly 33%) by Apple's 2020 average share of the smartphone and tablet

4  markets (allegedly 45.5%), to arrive at 72.5%.  *See id.* ¶ 63 n.29.

5        Setting aside that Plaintiff's only source for the starting figure (33%) is one survey of

6  unknown authorship or scale, the fundamental problem with this calculation is that it disregards

7  that someone who uses iCloud may *also* use other cloud storage services.  Plaintiff admits that at

8  least some consumers will have "multiple cloud storage accounts." *Id.* ¶ 96.  If that is true, then it

9  cannot be the case that the alleged 33% of iCloud users represents Apple's share of any market.

10 That 33% may well be using Google Drive, Dropbox, and other services too.

11       Stripped of the flawed math in footnote 29, the Complaint contains "no quantitative

12 allegations suggesting" that Apple has monopoly power, nor "any other facts that would move the

13 hypothesis of [monopoly] power across the line from conceivable to plausible." *Flaa*, 55 F.4th at

14 693–94 (affirming dismissal for failure to plausibly allege market power); *see also, e.g.*, *Korea*

15 *Kumho Petrochemical v. Flexsys Am. LP*, No. 07-cv-01057, 2008 WL 686834, at *9 (N.D. Cal.

16 Mar. 11, 2008) (granting motion to dismiss because, "[a]lthough Plaintiff need not necessarily

17 quantify [defendant's] market share with precision, Plaintiff must assert some *facts* in support of

18 its assertions of market power that suggest those assertions are plausible"); *Med Vets Inc. v. VIP*

19 *Petcare Holdings, Inc.*, No. 18-CV-02054, 2019 WL 1767335, at *6 (N.D. Cal. Apr. 22, 2019),

20 *aff'd*, 811 F. App'x 422 (9th Cir. 2020) (cherry-picked market share figures that "[did] not

21 correspond to the alleged market" warranted dismissal); *Fed. Trade Comm'n v. Facebook, Inc.*,

22 560 F. Supp. 3d 1, 17-18 (D.D.C. 2021) (collecting cases and explaining that "conclusory" and

23 "bare" assertions that a defendant possesses market share "in excess of 60%" are insufficient to

24 plead market power).

25       ***No Barriers to Entry.***  Beyond her flawed market share calculation, Plaintiff still fails to

26 plead monopoly power because new rivals are admittedly not "barred from entering" the alleged

27 market for cloud storage on Apple mobile devices, and existing competitors do not "lack the

28 capacity to expand their output" within that market (*e.g.*, by offering a cheaper product).  *Rebel*

1   *Oil*, 51 F.3d at 1439.  To the contrary, Plaintiff alleges that "every major technology company"

2   and "numerous cloud-storage specialists" are actively competing in the market for "Cloud Storage

3   on Apple Mobile Devices."  *Id.* ¶ 4.  That dooms Plaintiff's ability to plead the requisite barriers

4   to entry and expansion.  *See Flaa*, 55 F.4th at 694 (affirming dismissal of monopolization claim

5   where allegations "describe[d] a healthy and competitive market"); *De Soto Cab Co., Inc. v. Uber

6   Techs., Inc.*, No. 16-CV-06385, 2021 WL 5860917, at *2 (N.D. Cal. Nov. 18, 2021) (dismissing

7   complaint where "allegations concerning market barriers" were "deficient").

8        Plaintiff's claim that "would-be competitors" cannot "offer[] cloud storage solutions for

9   the full range of files" on Apple mobile devices also misses the mark.  Compl. ¶ 92.  Plaintiff does

10  not allege a market for "cloud storage solutions for the full range of files" on Apple mobile devices,

11  and nothing prevents potential entrants from offering products in the broader alleged market for

12  "Cloud Storage on Apple Mobile Devices."  The Complaint does not plausibly allege any barriers

13  to entry or expansion in the alleged market.[5]

14        2.    Plaintiff Fails to Plead Any Anticompetitive Conduct by Apple

15        Both monopolization and attempted monopolization claims under Section 2 require

16  anticompetitive conduct.  *See Dreamstime.com*, 54 F.4th at 1137 (monopolization under Section

17  2 requires that the alleged monopoly power be accompanied by "a showing that [the] defendant . . .

18  undertook 'anticompetitive conduct'" (citing *Verizon Commc'ns Inc. v. L. Offs. Of Curtis V.

19  Trinko, LLP*, 540 U.S. 398, 407–08 (2004))); *Rebel Oil*, 51 F.3d at 1434.  This conduct element

20  requires not only "a showing that a defendant possessing monopoly power undertook

---

[5] To the extent Plaintiff's monopolization claims are premised on a supposed aftermarket (*see id.* ¶¶ 11, 83–90), they should be dismissed for failure to plausibly allege such a market.  The Complaint comes nowhere close to pleading an aftermarket situation.  Cognizable aftermarkets arise in situations like *Eastman Kodak Co. v. Image Technology Services, Inc.*, 504 U.S. 451 (1992), where "once a consumer buys . . . a good, like a photocopier, [the consumer] is 'locked in' to purchasing compatible parts and service for a considerable length of time, given the expense and difficulty of buying a new photocopier."  *In re ATM Fee Litig.*, 768 F. Supp. 2d 984, 997 (N.D. Cal. 2009).  "In those circumstances, market imperfections prevent consumers from imposing market discipline in the derivative market because of the difficulty of switching among competitors in the primary market."  *Id.*  That is nothing like what Plaintiff alleges with respect to iCloud.  Plaintiff specifically acknowledges that Apple mobile device owners are *not* locked into using only iCloud.  *See* Compl. ¶¶ 4, 25, 28, 85, 73–74, 100; *supra* Section V.A.  That defeats any claim that iCloud constitutes its own aftermarket.

anticompetitive conduct," but also that the defendant did so with an "intent to control prices or exclude competition in the relevant market." *Dreamstime.com*, 54 F.4th at 1137 (simplified). Conduct is anticompetitive only if it "tends to impair the opportunities of rivals" and "does not further competition on the merits or does so in an unnecessarily restrictive way." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008). Importantly, to be anticompetitive, challenged conduct must impact "the competitive process" as a whole. *Id.* at 902. And because "the antitrust laws do not punish economic behavior that benefits consumers and will not cause long-run injury to the competitive process," *id.* at 903, anticompetitive conduct does not include "growth or development" that occurs "as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).

The conduct Plaintiff complains of here is a feature unilaterally designed by Apple to limit the cloud backup of "Restricted Files"—core app data and device files—to iCloud Backup. But this restriction does not amount to anticompetitive conduct under Section 2:  it does not and cannot harm competition in the alleged market Plaintiff claims is being monopolized—one for "Cloud Storage on Apple Mobile Devices." Compl. ¶ 11. As the Complaint admits, there are numerous alternative cloud storage solutions for Apple devices, "including Google Drive, Sync.com, pCloud, and others." *Id.* ¶ 28. And, as set forth above (at Section V.B.1), the articles incorporated by reference in the Complaint establish that iCloud's prices are not supracompetitive, but rather on par with or lower than the prices of competitors. These acknowledgments confirm that Apple's limited restriction on the use of iCloud Backup for cloud backup of Restricted Files is not exclusionary, and otherwise has not impaired the ability of rivals to compete in the alleged market.

In *Dreamstime.com v. Google*, the Ninth Circuit affirmed dismissal of a complaint for a plaintiff's similar failure to plausibly allege anticompetitive conduct. There, the plaintiff—an online supplier of stock images that advertised on Google—asserted a Section 2 claim on the theory that Google monopolized the online search advertising market. *See* 54 F.4th at 1134–36. The plaintiff claimed that Google furthered its monopoly through conduct such as rigging its ad-bidding processes, demoting the plaintiff's organic search results, favoring Google's stock photo partners over the photos supplied by the plaintiff's site, and elevating inferior stock photo

websites in search results.  *See id.* at 1140.  The Ninth Circuit held that while these allegations demonstrated that "Google mistreated [the plaintiff]," they did not plausibly allege "harm[] [to] competition in the online search advertising market."  *Id.* at 1141.  Because none of the alleged conduct harmed competition in the alleged market, the plaintiff failed to allege any anticompetitive conduct to sustain its Section 2 claim.  *Id.* at 1142.

The same problem plagues Plaintiff's allegations here.  The Complaint's acknowledgement (at ¶ 28) that there are numerous alternatives to iCloud in the market for "cloud storage on Apple mobile devices" (*id.* ¶ 11), combined with iCloud+'s comparable prices to the competition, defeats any notion that Apple's limitation on the backup of "Restricted Files" to iCloud Backup excludes rivals or otherwise impairs competition in the market Plaintiff claims is monopolized by Apple.  Absent allegations that the supposed anticompetitive act—Apple's limitation of cloud backup of "Restricted Files" to iCloud Backup—actually harms competition in the alleged market, the Complaint does not plausibly allege any anticompetitive conduct.  *See Dreamstime.com*, 54 F.4th at 1141, 1142 (affirming dismissal of complaint that failed to allege anticompetitive conduct that "harmed competition in the online search advertising market" beyond mere "mistreat[ment]" of the Plaintiff as a customer); *see also Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1353 (Fed. Cir. 1999) ("[Anticompetitive] conduct must affect the relevant product market.").

The suggestion that Apple's limitation of backing up "Restricted Files" to iCloud Backup "handicap[s] all would-be rivals" (Compl. ¶ 97) because it requires that "Apple device holders . . . either use iCloud for cloud-based storage or undertake the added expense and burden of splitting out their files and managing multiple cloud storage accounts" (*id.* ¶ 96), is also insufficient to plausibly allege that the restriction is anticompetitive.  At best, these are allegations about how Apple's unilateral limitation relating to the backup of "Restricted Files" makes iCloud more attractive to users relative to competing cloud storage solutions.  Such unilateral conduct falls squarely within the universe of what courts have recognized is permissible—and in fact procompetitive—under Section 2.  Plaintiff's allegations amount to nothing more than "an example of a company using a competitive advantage gained from 'establishing an infrastructure that renders [it] uniquely suited to serve [its] customers.'"  *Dreamstime.com*, 54 F.4th at 1142

1     (quoting *Trinko*, 540 U.S. at 407 and *Grinnell*, 384 U.S. at 571).

2         Moreover, even an alleged monopolist has the right to refuse to cooperate with rivals.

3 *Trinko*, 540 U.S. at 408; *see also Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448

4 (2009) ("[B]usinesses are free to choose the parties with whom they will deal, as well as the prices,

5 terms, and conditions of that dealing.").   That is because "[m]onopolists are both expected and

6 permitted to compete like any other firm," and "[p]art of competing like everyone else is the ability

7 to make decisions about with whom and on what terms one will deal." *Viamedia, Inc. v. Comcast*

8 *Corp.*, 951 F.3d 429, 454 (7th Cir. 2020).   Allegations, therefore, that Apple's restriction relating

9 to cloud backup of "Restricted Files" gives it an advantage over rivals (who allegedly do not have

10 equal access to those files) do not transform the alleged restriction into cognizable anticompetitive

11 conduct under Section 2.   *See, e.g.*, *Facebook, Inc.*, 560 F. Supp. 3d at 24 (allegations that

12 Facebook denied competing developers access to APIs on its own Facebook Blue "did not,

13 standing alone, violate Section 2" as "Facebook had no antitrust duty to avoid creating [a]

14 deterrent" to the creation of apps with competing features and functionalities); *LiveUniverse, Inc.*

15 *v. MySpace, Inc.*, 304 F. App'x 554 (9th Cir. 2008) (allegations that MySpace ceased linking to

16 other competing social media sites on its pages, including the plaintiff's website, did not constitute

17 anticompetitive conduct to support monopolization and attempted monopolization claims);

18 *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 545 (9th Cir. 1983) ("The antitrust

19 laws did not impose a duty on Kodak to assist [competitors] . . . to 'survive or expand.' . . . Kodak

20 need not have 'constricted its product development so as to facilitate sales of rival products.'"),

21 *overruled on other grounds as recognized in Chroma Lighting v. GTE Prods. Corp.*, 111 F.3d 653,

22 657 (9th Cir. 1997).

23         At bottom, Plaintiff is attempting to use the antitrust laws to change how Apple designed

24 the backup of core app data and device files, and to require Apple to allow third parties to access

25 certain data on its devices.   But "the introduction of technologically related products, even if

26 incompatible with the products offered by competitors, is alone neither a predatory nor

27 anticompetitive act." *Foremost Pro Color, Inc.*, 703 F.2d at 544 (affirming dismissal of

28 monopolization claims because "the creation of technological incompatibilities" is not

anticompetitive conduct).  Because Plaintiff fails to allege any cognizable anticompetitive conduct, her Section 2 claims necessarily fail.

3. Plaintiff's Attempted Monopolization Claim Also Fails Given the Lack of Allegations Regarding the Specific Intent to Monopolize

Plaintiff's attempted monopolization claim fails for the additional reason that Plaintiff does not allege that Apple had a specific intent to monopolize the claimed market for cloud storage on Apple devices.  Attempted monopolization requires the "specific intent to prevail in the market by some untoward means." *Gen. Commc'ns Eng., Inc. v. Motorola Commc'ns and Elec., Inc.*, 421 F. Supp. 274, 287 (N.D. Cal. 1976).  Specific intent may not be inferred from legitimate business practices aimed at succeeding in competition.  *See Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 627 (1952).  An antitrust plaintiff must offer more than conclusory allegations that the defendant had the specific intent to "exclude competition or control prices." *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. 09-0560, 2011 WL 2678879, at *12 (E.D. Cal. July 7, 2011).

Plaintiff does not plead facts plausibly suggesting that Apple acted with intent to exclude competition or control prices.  To the contrary, Plaintiff (1) admits that Apple facilitates robust competition in the alleged market for cloud storage on its mobile devices (Compl. ¶¶ 28–29, 87); (2) incorporates by reference articles establishing that Apple prices iCloud on par with or lower than competitors (*supra* Section V.B.1); and (3) acknowledges that there are "security-based justification[s]" for the alleged restriction (Compl. ¶ 101).  These allegations are *inconsistent* with an intent to exclude competition or control prices.  Indeed, they suggest that Apple took unilateral, lawful actions to make iCloud more attractive to users relative to competing cloud storage solutions.  *See supra* Section IV.D.2.  That is the essence of competition, and even a monopolist "is permitted and indeed encouraged to compete aggressively on the merits." *Foremost Pro Color*, 703 F.2d at 544.  Absent plausible allegations of any specific intent to monopolize the alleged market, Plaintiff's attempted monopolization claim fails.  *See Stanislaus*, 2011 WL 2678879, at *14 (dismissing attempted monopolization claim where "plaintiff d[id] not allege competition was excluded or prevented, and no price increase occurred for over 3 years").

### C.   Plaintiff's UCL Claim Fails

Plaintiff also fails to plead a cognizable claim under California's UCL.  Under the UCL, there are "'three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.'"  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citation omitted).  The Complaint fails to plead a UCL violation under each of these prongs.

***Unlawful Prong.***  Because Plaintiff failed to state either a tying, attempted monopolization, or monopolization claim, her UCL claim premised on the unlawful prong fails.  *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 54 n.7 (9th Cir. 2022) (dismissing plaintiffs' UCL claim because it was "premised upon the existence of an antitrust conspiracy, and therefore [should] rise and fall with the Sherman Act claim").

***Fraudulent Prong.***  Plaintiff also failed to plead any fraudulent conduct by Apple with the particularity required under Federal Rule of Procedure 9(b), and therefore cannot sustain a UCL claim under the fraudulent prong.  *Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 977 (N.D. Cal. 2019) ("[T]o adequately allege a claim sounding in fraud under Rule 9(b), a party must state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." (cleaned up)).

***Unfair Prong.***  Under the unfair prong, Plaintiff's UCL claim also fails.  In analyzing claims under this prong, courts consider whether the alleged conduct (1) "is 'tethered to any underlying constitutional, statutory or regulatory provision, . . . threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law'"; (2) "is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'"; or (3) has an impact on the alleged victim that "outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'"  *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020) (citations omitted).

At the outset, "the determination that . . . conduct is not an unreasonable restraint of trade necessarily implies that [it] is not 'unfair' towards consumers," requiring dismissal.  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018) (citation omitted)); *see also DRAM*, 28 F.4th at 54 n.7; *Beverage v. Apple, Inc.*, --- Cal. Rptr. 3d ----, 2024 WL 1794410, at *9 (Cal. Ct. App. Apr. 25, 2024) ("Because both antitrust laws and the UCL are designed to protect and promote

competition for the benefit of consumers . . . logic dictates that there can be no harm to consumers under the UCL based on the same unilateral practices that have been . . . categorically shielded from antitrust liability by the *Colgate* decision."). Here, because Plaintiff fails to plead a tying claim and any anticompetitive conduct to sustain her Section 2 monopolization claims, any UCL claim premised on the unfair prong fails too.

In any event, Plaintiff does not satisfy any of the three tests for unfairness. Given that the underlying Sherman Act claims fail, Plaintiff has not shown that Apple's conduct threatens any incipient violation of or "violates the policy or spirit" of any antitrust laws. *CVS Pharm.*, 982 F.3d at 1214; *see also The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) ("Unilateral conduct by a single firm, even if it appears to restrain trade unreasonably, is not unlawful under section 1.") (cleaned up). Nor does Plaintiff include any allegations that the alleged conduct by Apple is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers. *See Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 864 (C.D. Cal. Oct. 31, 2022) (dismissing UCL claim where plaintiff only mentioned test for immorality in passing in his opposition brief without analysis). And with respect to the balancing test, Plaintiff does not plead sufficient facts to say that the utility of the security provisions put into place by Apple over a decade ago are outweighed by the alleged harm to consumers. *See Cal. Crane Sch., Inc. v. Google LLC*, No. 21-cv-10001, 2024 WL 1221964, at *9 (N.D. Cal. Mar. 21, 2024).

### D.   Plaintiffs' Sherman Act and UCL Claims Are Time-Barred

Plaintiff's claims are also time-barred. Antitrust damages are generally recoverable if a plaintiff files suit within four years of the cause of action's accrual. *See* 15 U.S.C. § 15(b). A claim of anticompetitive conduct under California's UCL is also subject to a four-year statute of limitations and the same accrual rules that apply to federal antitrust claims. Cal. Bus. & Prof. Code § 17208; *see also In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208 (N.D. Cal. 2015). Courts may dismiss claims as barred by the applicable statute of limitations when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

Here, Plaintiff's claims are premised on Apple's original design decision to limit backup

of core app data and device files to iCloud Backup and non-cloud options (*e.g.*, local storage on a Mac or PC).  This decision was made when iCloud first launched in 2011, and it has remained unchanged since then.  *See* Compl. ¶ 3.[6]  Plaintiff asserts that, as a result of this decision, she was injured when she paid for an iCloud+ subscription.  *Id.* ¶ 126.  Because Plaintiff's purported injury flows from a design decision that was made well outside the four-year statute of limitations, her federal antitrust damages and UCL claims are time-barred.

### 1.   Plaintiff Does Not and Cannot Plead a Continuing Violation Necessary to Restart the Antitrust Statute of Limitations

Plaintiff cannot circumvent the statute of limitations by relying on the continuing violations doctrine.  To plead a continuing violation, Plaintiff must allege an "overt act" by Apple within the limitations period.  *See Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014).  That overt act must be both (1) a new and independent act that is not merely a reaffirmation of a previous act and (2) one that inflicts new and accumulating injury on the plaintiff.  *Id.*

Here, the sole conduct underlying the alleged antitrust violation—Apple's design decision to limit cloud backup of core app data and device settings in 2011—occurred outside the limitations period.  Plaintiff does not and cannot allege that, since the launch of iCloud in 2011, Apple has ever modified its limitation on the cloud backup of core app data and device settings.  And it is well-established that the continued application of Apple's 2011 design decision does not restart the statute of limitations.  "Merely carrying out during the limitations period a final, binding decision made prior to the limitations period does not qualify as a new overt act" that would trigger the continuing violation doctrine.  *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1071–72 (N.D. Cal. 2016).  Because the only conduct complained of is a product design decision that Apple made in 2011, Plaintiff has not alleged any new or independent act to make her claims timely.  *See*

---

[6] Plaintiff attempts to plead around any statute of limitations issue by omitting from her Complaint the date that Apple implemented the alleged restriction on third-party backups.  The reality is that Apple made the design decision to restrict third-party apps from accessing core app data and device files through a method of "sandboxing" app data over a decade ago.  *See* Apple, *iOS Security— White Paper* (Oct. 2014) at 17, https://www.apple.com/mx/privacy/docs/iOS_Security_ Guide_Oct_2014.pdf (incorporated by reference at Compl. ¶ 7 n.1).

*SaurikIT, LLC v. Apple Inc.*, No. 4:20-CV-08733-YGR, 2022 WL 1768845, at *3 (N.D. Cal. May 26, 2022) (dismissing complaint that "lack[ed] factual allegations about the changes in the character of [] preexisting contracts necessary to render them a 'new and independent act'"), *aff'd*, 2023 WL 8946200 (9th Cir. Dec. 28, 2023) (unpublished); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1107 (N.D. Cal. 2012) (dismissing claim as time barred where "practices have been in place since Windows Media was first introduced" and plaintiff "alleges no *additional* anticompetitive conduct associated with subsequent releases" of the product).

The alleged injury that Plaintiff claims flows from the challenged restriction—*i.e.*, the prices users pay for iCloud+ subscriptions—also arises entirely from Apple's 2011 design decision to "sandbox" core app data and device settings. *See supra* Section III. iCloud+ pricing, which the Complaint fails to allege is supracompetitive, merely flows from Apple's 2011 design decision— and so cannot be an overt act that restarts the statute of limitations. Courts routinely reject the notion that "each payment of a monopoly price, on its own, gives rise to a continuing violation" because "the mere charging of monopoly prices is not unlawful." *Crowder v. LinkedIn Corp.*, No. 22-CV-00237, 2023 WL 2405335, at *3 (N.D. Cal. Mar. 8, 2023). Holding otherwise would "destroy the function of the statute, since parties may continue indefinitely to receive some benefit as a result of an illegal act performed in the distant past." *Aurora Enters., Inc. v. Nat'l Broad. Co., Inc.*, 688 F.2d 689, 694 (9th Cir. 1982). There is no basis to revive Plaintiff's untimely claims just because she recently paid iCloud+ fees. *See Crowder*, 2023 WL 2405335, at *2–3 (plaintiff's claim was time-barred where the alleged market division agreement was reached outside of the statute of limitations period, despite arguments that "the agreement persisted into the limitations period and caused consumers to be overcharged"); *Stanislaus Food Prod.*, 2010 WL 3521979, at *16 ("The acts of purchasing the defendants' products over 22 years is not a 'continuing act' for purposes of restarting the statute of limitations."); *Aurora Enters.*, 688 F.2d at 694 ("[T]he mere fact that defendants receive a benefit today" as a result of an act outside the limitations period "is not enough to restart the statute of limitations.").

### 2. Plaintiff Does Not and Cannot Plead Fraudulent Concealment

Plaintiff also does not and cannot plead that Apple fraudulently concealed the alleged

limitation on cloud backup of "Restricted Files." "To show fraudulent concealment, [a] plaintiff[] must plead facts showing that the defendant affirmatively misled it." *Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*, No. 21-15863, 2022 WL 595696, at *2 (9th Cir. Feb. 28, 2022) (mem.); *see also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). Here, Plaintiff's case theory necessarily precludes fraudulent concealment: it assumes that iCloud users *are* aware of Apple's restriction on cloud backup of core app data and device files, because that restriction supposedly incentivizes users to "select a single iCloud storage plan, rather than juggle multiple cloud-storage accounts." Compl. ¶ 96. Thus, even if it were true that consumers are "nowhere advised that iCloud is the only cloud service capable of storing or backing up Restricted Files on their device" (*id.* ¶ 84), Plaintiff's theory precludes any inference that Apple fraudulently concealed evidence of the alleged restraint.

### 3. Laches Bars Plaintiff's Injunctive Relief Claims

For these same reasons, the Court should dismiss Plaintiff's claims for injunctive relief as untimely. Where a damages claim is untimely, injunctive relief is presumptively barred under the doctrine of laches. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002) ("[I]f suit is filed outside of the analogous limitations period, courts often have presumed that laches is applicable."); *Aurora Enters.*, 688 F.2d at 694 (the district court "correctly dismissed a request for injunctive relief on the ground of laches" where it "explicitly applied" the four-year statute of limitations period in the Clayton Act as a guideline). Like her damages claims, Plaintiff's injunctive relief claims are premised on a design decision Apple made over a decade ago. Compl. ¶ 3. During that time, Apple has invested "substantial" resources to develop iCloud into a commercial success. *Id.* ¶¶ 3, 91. Plaintiff should not be permitted to now advance claims that seek to undermine those significant investments and undo the security and privacy foundation Apple established. *See Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 927 (9th Cir. 1975) ("The potential for economic disruption is so great that when placed in private hands[,] it should be circumscribed by the requirement that injunction-seeking plaintiffs act with reasonable promptness unless excused by equitable considerations."); *Jarrow*, 304 F.3d at 839 (holding laches barred the plaintiff's false advertising claims given, among other factors, that the defendant had

"invested enormous resources" in marketing and building the identity of its product); *see also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) ("The market position pursued by [the defendant] with respect to the products at issue was uncontested by [the plaintiff] for years and courts have held that investments to exploit such a position are sufficient prejudice to warrant the application of the doctrine of laches.").  Plaintiff's injunctive relief claims are time-barred.

## VI.     CONCLUSION

For the reasons set forth above, the Complaint should be dismissed with prejudice.


Dated:  May 10, 2024                              LATHAM & WATKINS LLP
                                                  By:   */s/  Belinda S Lee*
                                                        Belinda S Lee

                                                  Belinda S Lee (SBN 199635)
                                                   *belinda.lee@lw.com*
                                                  Sarah M. Ray (SBN 229670)
                                                   *sarah.ray@lw.com*
                                                  Aaron T. Chiu (SBN 287788)
                                                   *aaron.chiu@lw.com*
                                                  Alicia R. Jovais (SBN 296172)
                                                   *alicia.jovais@lw.com*
                                                  505 Montgomery Street, Suite 2000
                                                  San Francisco, California 94111-6538
                                                  Telephone: +1.415.391.0600
                                                  Fax: +1.415.395.8095

                                                  *Attorneys for Defendant Apple Inc.*