LATHAM & WATKINS LLP
  Belinda S Lee (SBN 199635)
  *belinda.lee@lw.com*
  Sarah M. Ray (SBN 229670)
  *sarah.ray@lw.com*
  Aaron T. Chiu (SBN 287788)
  *aaron.chiu@lw.com*
  Alicia R. Jovais (SBN 296172)
  *alicia.jovais@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JULIANNA FELIX GAMBOA and THOMAS DOROBIALA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant. | CASE NO. 5:24-cv-01270-PCP<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**<br><br>Date:    December 12, 2024<br>Time:   10:00 a.m.<br>Place:   Courtroom 8, 4th Floor<br>Judge:  The Honorable P. Casey Pitts |

**NOTICE OF MOTION AND MOTION**

TO THIS HONORABLE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT on December 12, 2024 in Courtroom 8 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South First Street, San Jose, California, 95113, Defendant Apple Inc. ("Apple") will and hereby does move to dismiss with prejudice the Amended Class Action Complaint filed by Plaintiffs Julianna Felix Gamboa and Thomas Dorobiala.

This Motion to Dismiss is made pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) on the ground that Plaintiffs fail to allege sufficient facts to state a claim for violations of Sections 1, 2, and 3 of the Sherman Act, 15 U.S.C. §§ 1–3, or of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all pleadings and other papers filed in this matter, oral argument of counsel, and such other matters that the Court may consider on this Motion.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................ 1

II. STATEMENT OF ISSUES TO BE DECIDED ............................................................. 3

III. BACKGROUND ............................................................................................................ 4

IV. LEGAL STANDARD .................................................................................................... 7

V. ARGUMENT ................................................................................................................. 7

    A. Plaintiffs' Tying Claim Fails ............................................................................ 7

    B. Plaintiffs' Monopolization Claims Fail ............................................................ 9

        1. Plaintiffs Cannot Plead Monopolization Claims Based on a Single-Brand Aftermarket Defined as "Full-Service Cloud Storage on Apple Mobile Devices" ........................................................ 10

        2. Plaintiffs Still Fail to Plead Monopolization Claims Premised on a Broader Market for All Cloud Storage Platforms on Apple Devices ......................................................................... 14

        3. Plaintiffs' Attempted Monopolization Claim Also Fails Given the Lack of Allegations Regarding the Specific Intent to Monopolize ............................................................................... 21

    C. Plaintiffs' UCL Claim Fails ............................................................................ 22

    D. Plaintiffs' Sherman Act and UCL Claims Are Time-Barred ............................ 23

        1. Plaintiffs Do Not and Cannot Plead a Continuing Violation Necessary to Restart the Antitrust Statute of Limitations ...................... 24

        2. Plaintiffs Do Not and Cannot Plead Fraudulent Concealment ........................................................................................ 25

        3. Laches Bars Plaintiffs' Injunctive Relief Claims.................................... 25

VI. CONCLUSION ............................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Affinity Credit Union v. Apple Inc.*,
No. 22-cv-04174-JSW (N.D. Cal. Sept. 27, 2023), ECF No. 64 ........................................... 9

*Airweld, Inc. v. Airco, Inc.*,
742 F.2d 1184 (9th Cir. 1984) ................................................................................................ 8

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*,
592 F.3d 991 (9th Cir. 2010) ................................................................................................ 21

*Apple Inc. v. Psystar Corp.*,
586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...................................................................... 2, 11, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................... 7

*BanxCorp v. Bankrate, Inc.*,
847 F. App'x 116 (3d Cir. 2021) .......................................................................................... 17

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................... 7

*Beverage v. Apple, Inc.*,
--- Cal. Rptr. 3d ----, 2024 WL 1794410 (Cal. Ct. App. Apr. 25, 2024) ............................. 22

*Blix Inc. v. Apple, Inc.*,
No. CV 19-1869-LPS, 2021 WL 2895654 (D. Del. July 9, 2021) ......................................... 9

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
65 F.3d 1406 (7th Cir. 1995) ................................................................................................ 15

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ................................................................................................ 7

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007) ................................................................................................. 15

*California Crane School, Inc. v. Google LLC*,
No. 21-cv-10001, 2024 WL 1221964 (N.D. Cal. Mar. 21, 2024) ........................................ 23

*Cascade Health Solutions v. PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) ................................................................................................ 19

*ChriMar Systems, Inc. v. Cisco Systems, Inc.*,
72 F. Supp. 3d 1012 (N.D. Cal. 2014) .................................................................................. 10

*Coalition for ICANN Transparency, Inc. v. Verisign, Inc.*,
611 F.3d 495 (9th Cir. 2010) .................................................................................................. 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-01270-PCP

*Coronavirus Reporter v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023) ........................................................................................ 9

*Crowder v. LinkedIn Corp.*,
  No. 22-CV-00237, 2023 WL 2405335 (N.D. Cal. Mar. 8, 2023)......................................... 25

*De Soto Cab Company, Inc. v. Uber Technologies, Inc.*,
  No. 16-CV-06385, 2021 WL 5860917 (N.D. Cal. Nov. 18, 2021) ...................................... 19

*Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*,
  73 F.3d 756 (7th Cir. 1996) .................................................................................... 12, 13

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ..................................................................................... 22

*Dream Big Media Inc. v. Alphabet Inc.*,
  No. 22-cv-02314-JSW, 2022 WL 16579322 (N.D. Cal. Nov. 1, 2022) ................................. 9

*Dreamstime.com, LLC v. Google LLC*,
  54 F.4th 1130 (9th Cir. 2022) .................................................................................*passim*

*Eastman Kodak Co. v. Image Technology Services, Inc.*,
  504 U.S. 451 (1992)..................................................................................................... 10

*Eastman v. Quest Diagnostics Incorporated*,
  108 F. Supp. 3d 827 (N.D. Cal. 2015) ........................................................................... 16

*Federal Trade Commission  v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ....................................................................................... 16

*Federal Trade Commission v. Facebook, Inc.*,
  560 F. Supp. 3d 1 (D.D.C. 2021) ................................................................................. 18

*Freund v. HP, Inc.*,
  No. 22-CV-03794, 2023 WL 5184140 (N.D. Cal. Aug. 10, 2023) ....................................... 5

*Garnica v. HomeTeam Pest Defense, Inc.*,
  230 F. Supp. 3d 1155 (N.D. Cal. 2017) ......................................................................... 15

*Garrison v. Oracle Corp.*,
  159 F. Supp. 3d 1044 (N.D. Cal. 2016) ......................................................................... 24

*General Communications Engineering, Inc. v. Motorola Communications and Electronics, Inc.*,
  421 F. Supp. 274 (N.D. Cal. 1976) ............................................................................... 21

*Hazel v. Prudential Financial, Inc.*,
  No. 22-CV-07465, 2023 WL 3933073 (N.D. Cal. June 9, 2023).......................................... 5

*Hernandez v. Select Portfolio, Inc.*,
  No. 15-cv-01896-MMM, 2015 WL 3914741 (C.D. Cal. June 25, 2015)........................... 2, 9

*Hexcel Corp. v. Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012) ..................................................................................... 25

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ............................................................................. 22

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   485 F. Supp. 3d 1137 (N.D. Cal. 2020) ................................................................. 8

*Huynh v. Chase Manhattan Bank*,
   465 F.3d 992 (9th Cir. 2006) ............................................................................... 23

*In re Animation Workers Antitrust Litigation*,
   87 F. Supp. 3d 1195 (N.D. Cal. 2015) ................................................................. 23

*In re ATM Fee Antitrust Litigation*,
   768 F. Supp. 2d 984 (N.D. Cal. 2009) .................................................... 2, 10, 11

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust
Litigation*,
   28 F.4th 42 (9th Cir. 2022) ................................................................................. 22

*In re Gilead Sciences Securities Litigation*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................... 7

*In re Rubber Chemicals Antitrust Litigation*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ................................................................. 16

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
   No. 13-CV-00740, 2013 WL 6682981 (E.D. Va. Dec. 18, 2013) ......................... 16

*International Telephone & Telegraph Corp. v. General Telephone & Electronics
Corp.*,
   518 F.2d 913 (9th Cir. 1975) ............................................................................... 25

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ............................................................................... 25

*Jefferson Parish Hospital District No. 2 v. Hyde*,
   466 U.S. 2 (1984) ............................................................................................. 7, 8

*Korea Kumho Petrochemical v. Flexsys America LP*,
   No. 07-cv-01057, 2008 WL 686834 (N.D. Cal. Mar. 11, 2008) ......................... 18

*Lee v. Life Insurance Co. of North America*,
   23 F.3d 14 (1st Cir. 1994) ................................................................................... 13

*Med Vets Inc. v. VIP Petcare Holdings, Inc.*,
   No. 18-CV-02054, 2019 WL 1767335 (N.D. Cal. Apr. 22, 2019), *aff'd*, 811 F.
   App'x 422 (9th Cir. 2020) ................................................................................... 18

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................................... 24

*Nazemi v. Specialized Loan Servicing, LLC*,
   637 F. Supp. 3d 856 (C.D. Cal. Oct. 31, 2022) ................................................... 23

*Newcal Industries, Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ................................................................................................ 11, 12

*Northern Pacific Railroad Company v. United States*,
   356 U.S. 1 (1958) ................................................................................................................................ 7

*Ohio v. American Express Co.*,
   138 S. Ct. 2274 (2018) ...................................................................................................................... 16

*Pacific Recovery Solutions v. United Behavioral Health*,
   508 F. Supp. 3d 606 (N.D. Cal. 2020) .............................................................................................. 9

*PSI Repair Services, Inc. v. Honeywell, Inc.*,
   104 F.3d 811 (6th Cir. 1997) ........................................................................................................... 13

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ........................................................................................................... 14

*Response of Carolina, Inc. v. Leasco Response, Inc.*,
   537 F.2d 1307 (5th Cir. 1976) ........................................................................................................... 9

*Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*,
   No. 21-15863, 2022 WL 595696 (9th Cir. Feb. 28, 2022) (mem.)................................................. 25

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*,
   532 F.3d 963 (9th Cir. 2008) ............................................................................................................. 9

*Safeway Inc. v. Abbott Laboratories*,
   761 F. Supp. 2d 874 (N.D. Cal. 2011) ............................................................................................ 15

*Samsung Electronics Co., Ltd. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014) ......................................................................................................... 24

*SaurikIT, LLC v. Apple Inc.*,
   No. 4:20-CV-08733-YGR, 2022 WL 1768845 (N.D. Cal. May 26, 2022) ...................................... 24

*Somers v. Apple Inc.*,
   258 F.R.D. 354 (N.D. Cal. 2009) ...................................................................................................... 8

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ............................................................................................................. 8

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
   No. 09-0560, 2011 WL 2678879 (E.D. Cal. July 7, 2011) ............................................................. 21

*The Jeanery, Inc. v. James Jeans, Inc.*,
   849 F.2d 1148 (9th Cir. 1988) ......................................................................................................... 23

*Times-Picayune Publishing Co. v. United States*,
   345 U.S. 594 (1952)......................................................................................................................... 21

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966)................................................................................................................... 19, 21

*Verizon Communications Inc. v. Law Offices Of Curtis V. Trinko, LLP,*
    540 U.S. 398 (2004) .......................................................................................... 19, 21

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) .......................................................................... 22

*Wolfire Games, LLC v. Valve Corp.,*
    No. C21-0563-JCC, 2022 WL 1443744 (W.D. Wash. May 6, 2022) .................. 13

## STATUTES

15 U.S.C. § 2 ........................................................................................................ 9

California Busines & Professions Code § 17208 ........................................................ 23

## TREATISES

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust
    Principles & Their Application ¶ 564b (Sept. 2021 update) ................................ 11

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3    The new allegations in Plaintiffs' Amended Complaint, filed in response to Apple's initial

4    motion to dismiss, do not come close to fixing the legal flaws in their claims.  Apple made a design

5    decision back in 2011 when it released iCloud to limit the remote backup of core app data and

6    device files to iCloud Backup.  Plaintiffs continue to try to cast this decision as an antitrust

7    violation.  They contend that this iCloud feature—designed to best protect the security and privacy

8    of Apple device users by limiting unfettered third-party access to users' iPhones and iPads (which

9    contain users' most intimate and private information)—somehow gives Apple a monopoly in a

10   market for cloud-based storage of all files and amounts to unlawful tying.  But this makes no sense:

11   Plaintiffs admit that there is no shortage of alternative cloud storage options, users have abundant

12   non-cloud solutions for backing up core app data and device files (if they even choose to back up),

13   and no one who owns an Apple mobile device is required to use iCloud at all.

14   Faced with the defects in their original theory, Plaintiffs now also try to claim,

15   inconsistently, that this iCloud feature gives Apple a 100% monopoly in a narrower "market for

16   Full-Service Cloud Storage on Apple Mobile Devices"—a market defined exclusively around

17   iCloud.  Plaintiffs continue to ignore the fact that Apple mobile-device owners who want to

18   securely back up their devices, sync device settings and data across their Apple devices, and

19   remotely store e-mail, notes, photos, videos, and messages, have many options.  Beyond a monthly

20   iCloud+ subscription for those needing more than iCloud's free 5GB of storage, Apple device

21   owners can and do use Dropbox, Sync.com, pCloud, Google One, Microsoft OneDrive and others.

22   iCloud is just one of many cloud storage options and one that many Apple mobile device owners

23   do not even use.

24   Plaintiffs' Amended Complaint nevertheless reasserts tying, monopolization, attempted

25   monopolization, and California Unfair Competition Law ("UCL") claims.  They all still fail.

26   1.    Plaintiffs' tying claim fails because Plaintiffs still cannot allege that Apple

27   conditions the sale of its mobile devices upon the use and purchase of iCloud.  As Plaintiffs

28   continue to acknowledge, Apple device users are not required to use iCloud or purchase additional

storage via an iCloud+ subscription:  "consumers can buy smartphones and tablets without also purchasing or using any cloud storage," and "approximately 30-48% of Apple users **do not purchase an iCloud subscription** (i.e., only use the free 0-5GB)."  Am. Compl. ¶¶ 40, 67 (emphasis added) (hereinafter, "AC").  Thus, Plaintiffs do not allege a tie (conditioning the sale of one product upon the purchase of another).  Rather, they allege the opposite:  that Apple provides an optional service—the ability to remotely restore data and device settings on a new Apple device—for free.  Plaintiffs' tying claim should be dismissed with prejudice.

2.     Plaintiffs' monopolization and attempted monopolization claims are now premised on dueling, inconsistent theories regarding the alleged relevant markets that Apple supposedly monopolizes.  Plaintiffs' new monopolization claim is premised on the faulty notion that iCloud constitutes its own narrow antitrust aftermarket, defined as one for "Full-Service Cloud Storage on Apple Mobile Devices."  But aftermarket claims are rare and highly disfavored.  *In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 995 (N.D. Cal. 2009).  They are viable only when one is *compelled* to purchase the aftermarket product (allegedly, iCloud) as a result of being locked-in, with no other alternative, after having purchased the foremarket product (an Apple mobile device).  As Plaintiffs continue to admit, Apple device owners are not required to use or purchase iCloud, and iCloud competes with other cloud and non-cloud solutions for storage and backup.  AC ¶¶ 32, 40, 67, 76–79, 94.  These admissions are fatal to Plaintiffs' aftermarket monopolization claim.

Plaintiffs' original monopolization theory, premised on the notion that iCloud monopolizes a broader market for all "cloud-based storage solutions" on Apple's mobile devices, still fails too.  This theory directly contradicts Plaintiffs' allegations that iCloud faces zero competition and exists in its own aftermarket, which alone is enough to warrant dismissal of Plaintiffs' monopolization claims.  *See Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1200 (N.D. Cal. 2008) (dismissing claims where relevant market allegations were "internally contradictory"); *Hernandez v. Select Portfolio, Inc.*, No. 15-cv-01896-MMM, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) ("Contradictory allegations . . . are inherently implausible.").

In any event, Plaintiffs fail to plausibly allege that Apple has monopoly power in any broader market for all "cloud storage on Apple mobile devices" or that the restriction complained

of—*i.e.*, Apple's decision to limit the remote backup of core app data and device files (so-called "Restricted Files") to iCloud Backup—constitutes anticompetitive conduct.  Plaintiffs acknowledge there are numerous alternative cloud storage options for Apple devices "offered by every major technology company" (AC ¶ 4) and fail to allege that iCloud pricing is supracompetitive.  This confirms that the limitation on remote backup of Restricted Files has not harmed competition in a market for "cloud storage on Apple mobile devices" and therefore is not anticompetitive.  Plaintiffs' suggestion that this feature gives Apple an edge over competing cloud storage solutions does not save their claims.  There is nothing anticompetitive about "a company using a competitive advantage gained from establishing an infrastructure that renders [it] uniquely situated to serve [its] customers or from a consequence of a superior product.'" *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1142 (9th Cir. 2022) (simplified).

3.     As for Plaintiffs' UCL claim, their unlawful-prong claim fails because they do not sufficiently allege tying, monopolization, or attempted monopolization.  And their unfair-prong claim fails because their allegations do not satisfy any of the tests for unfairness.

4.     Finally, Plaintiffs' claims are time-barred because, at their core, they challenge a design decision that Apple implemented *nearly 15 years ago*—in 2011—when iCloud first launched.  That design decision—to limit backup of Restricted Files to iCloud Backup or non-cloud options to protect users' security and privacy—underlies every one of Plaintiffs' claims.  Plaintiffs allege that this safeguard results in supposedly inflated iCloud+ subscription prices, but the payment of allegedly inflated prices does not restart the statute of limitations when those prices flow from a decision implemented before the limitations period, as is the case here.  Laches also bars Plaintiffs' injunctive relief claims given the prejudice that would result in now permitting claims that seek to unravel a feature that Apple implemented in 2011 and the significant ensuing investments Apple has made in iCloud over the last decade.

Plaintiffs' Amended Complaint should be dismissed with prejudice.

## II.     STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiffs' tying claim under Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1 & 3, should be dismissed given that, as Plaintiffs admit, Apple does not condition the

sale of any Apple devices on the use and purchase of iCloud.

2.     Whether Plaintiffs' monopolization and attempted monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2, should be dismissed where those claims rest on an implausible, single-brand market gerrymandered around iCloud and given Plaintiffs' failure to otherwise plead that Apple possesses monopoly power in a properly defined relevant market, or any cognizable anticompetitive conduct by Apple.

3.     Whether Plaintiffs' UCL claim, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, should be dismissed for failure to allege any unlawful or unfair conduct.

4.     Whether Plaintiffs' claims, based on a design decision Apple made in 2011, are untimely under the four-year statute of limitations for claims under the Sherman Act and the UCL.

## III.    BACKGROUND

*iCloud.*   In 2011, Apple introduced iCloud, a secure cloud storage service that allows users to remotely upload and store messages, photos, videos, and other data. AC ¶¶ 1, 3.  If an Apple device user decides to use iCloud, Apple offers up to 5GB of storage for free.  *Id.* ¶ 28.  If a user wants more than 5GB of storage on iCloud, Apple offers a paid monthly iCloud+ subscription, which offers six storage tiers ranging from 50GB to 12 terabytes (TB).  *Id.*

For the vast majority of commonly used file types—like messages, photos, and videos—iCloud is just one of many options for remotely storing data.  *Id.* ¶ 94.  "Cloud storage is . . . widely available on other platforms, with many well-known firms offering cloud storage products . . . available on Apple's mobile devices."   *Id.*   These firms, which include Google, Dropbox, Microsoft, Sync.com, pCloud, and others, offer paid storage tiers like Apple.  *Id.* ¶¶ 4, 32, 94.

Apple device users are not required to use iCloud, much less purchase an iCloud+ subscription:  "consumers can buy smartphones and tablets without also purchasing or using any cloud storage" and "approximately 30-48% of Apple users ***do not purchase an iCloud subscription*** (*i.e.*, only use the free 0-5GB)."  *Id.* ¶¶ 40, 67 (emphasis added).  Apple device users who do not pay for an iCloud+ subscription either rely on the 5GB of free storage provided by Apple, purchase other cloud storage products, use some mixture of the two, or do not use cloud storage at all.  Users can (and do) use iCloud and other cloud storage solutions, including by

"splitting out their files and managing multiple cloud storage accounts." *Id.* ¶ 111.

   ***iCloud Backup for restoring Apple devices.***   For the backup of core app data and device files needed to restore an Apple device—such as the apps themselves and their associated data, passwords, and other device settings such as Home Screen layout and app organization (which Plaintiffs refer to as "Restricted Files")—Apple has always limited that functionality to iCloud Backup and other non-cloud-based solutions. *Id.* ¶ 5.  This has been Apple's approach since iCloud launched in 2011.  Apple designed iCloud this way to ensure the most secure and seamless way to restore core app data and device files—access to which could provide unfettered entry into an Apple device and access to a unique digital fingerprint comprising one's most sensitive and private information.  This coincides with Apple's "sandboxing" policy, which limits third-party apps' access to data from other apps on an Apple device in order to protect users against viruses, malware, and other exploits that could compromise the security of their devices.[1]  Plaintiffs allege this design feature, applied to iCloud Backup, "arbitrarily sequesters . . . app data and device settings," yet still allows "competing cloud providers" to "access and host" various "iPhone and iPad data," including commonly used files like "photos and videos." *Id.* ¶¶ 5, 32–33, 94.

   Plaintiffs claim that, because users can back up core app data and device files that "effectively restore the look and feel" of their devices using iCloud Backup but not with other cloud solutions, they are "effectively compel[led]" to choose iCloud+ subscriptions over competing cloud products. *Id.* ¶¶ 33, 38, 111.  That is conclusory, and undermined by Plaintiffs' admissions that use of iCloud is optional and that many users do not even purchase iCloud+ subscriptions. *Id.* ¶ 40.  Plaintiffs further concede that users are not required to use iCloud Backup to back up "Restricted Files" and can use non-cloud alternatives such as local storage on a Mac or PC. *Id.* ¶¶ 75–76, 115.  Users can also use direct, device-to-device transfer to restore their Apple

---

[1] *See* Apple, *iOS Security* (Oct. 2014) at 16–18, 48, https://www.apple.com/mx/privacy/docs/iOS_ Security_Guide_Oct_2014.pdf (incorporated by reference at AC ¶ 7 n.1).  The webpages cited in the Amended Complaint to support Plaintiffs' allegations are incorporated by reference. *See, e.g., Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465, 2023 WL 3933073, at *3 n.2 (N.D. Cal. June 9, 2023)  ("Incorporation by reference 'prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'"); *Freund v. HP, Inc.*, No. 22-CV-03794, 2023 WL 5184140, at *3 n.1 (N.D. Cal. Aug. 10, 2023) (webpage was incorporated by reference because plaintiff "used information from [the] webpage to support his complaint").

1  mobile device.[2]

2  ***Plaintiffs' Claims.***  On March 1, 2024, Plaintiff Julianna Felix Gamboa filed this antitrust

3  lawsuit.  ECF No. 1.  Apple moved to dismiss on May 10, 2024.  ECF No. 19.  Rather than oppose,

4  Plaintiffs filed the Amended Complaint on June 21, 2024, adding Thomas Dorobiala as a named

5  plaintiff.  Plaintiffs purport to represent a nationwide class of "consumers who purchased iCloud

6  storage plans and were overcharged."  AC ¶ 9.  As in their original complaint, Plaintiffs assert

7  claims of tying, monopolization, attempted monopolization, and a violation of the UCL.

8       Plaintiffs assert a tying claim under Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1

9  & 3, on the basis that Apple ties together "its mobile devices and iCloud."  *Id.* ¶ 10.  But Plaintiffs

10 cannot allege that users are required to use or purchase iCloud at all, or that Apple conditions the

11 sale of its mobile devices on the use and purchase of iCloud.  Instead, they admit the opposite—

12 that 30 to 48 percent of Apple users do not even pay for an iCloud+ subscription.  *Id.* ¶ 67.

13      Plaintiffs also assert two claims under Section 2 of the Sherman Act, 15 U.S.C. § 2, now

14 premised upon competing theories that Apple on one hand monopolizes a "market for Full Service

15 Cloud Storage on Apple Mobile Devices," *id.* ¶¶ 143–62—which they claim is an antitrust

16 "aftermarket" in which iCloud has 100% share—and alternatively, that Apple monopolizes a larger

17 market for "all cloud storage on Apple mobile devices," *id.* ¶ 105.  The Amended Complaint relies

18 exclusively on facially flawed calculations of Apple's supposed gross margins, market share and

19 extraterritorial pricing, *id.* ¶¶ 58–65, 95, 106, and ignores that iCloud+ pricing is competitive with

20 many other cloud storage solutions on Apple's devices.  Plaintiffs also assert that permitting users

21 to use only iCloud Backup to remotely back up "Restricted Files" is anticompetitive.  Yet they

22 continue to acknowledge that "every major technology company" and "numerous cloud-storage

23 specialists" offer alternative cloud storage options on Apple's devices.  *See, e.g.*, *id.* ¶¶ 4, 32, 94.

24      Finally, Plaintiffs assert a claim under California's UCL, alleging that the same conduct is

25 unlawful and unfair.  *Id.* ¶¶ 163–69.

26

27 ---

[2] *See* Apple Support, *Backup methods for iPhone, iPad, and iPod touch* (Feb. 21, 2024),

28 https://support.apple.com/en-us/HT204136#:~:text=iCloud%20backs%20up,Backups%20 from%20your%20computer,downloaded%20directly%20to%20Apple%20Books (incorporated by reference at AC ¶ 76 n.35).

## IV.   LEGAL STANDARD

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified).  And "a court must determine whether an antitrust claim is plausible in light of basic economic principles." *Coal. for ICANN Transparency, Inc. v. Verisign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010) (simplified).

## V.   ARGUMENT

### A.   Plaintiffs' Tying Claim Fails

Plaintiffs fail to plead the essential element of a tying claim:  conditioning the sale of one product on the purchase of another.  Plaintiffs assert that Apple ties together "its mobile devices and iCloud" (AC ¶ 10), but acknowledge that nearly fifty percent of Apple device owners neither need nor pay for an iCloud+ subscription (*id.* ¶¶ 28–29, 67).  This is fatal to their tying claim.

Tying occurs when "a supplier agrees to sell a buyer a product (the tying product), but 'only on the condition that the buyer also purchases a different (or tied) product.'"  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958)).  "[A]n invalid tying arrangement" requires "the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984), a*brogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006).

Plaintiffs readily admit that Apple does not condition the sale of its mobile devices on the use and purchase of iCloud.  As Plaintiffs concede, "consumers can buy smartphones and tablets without also purchasing or using any cloud storage."  AC ¶ 40.  Indeed, Plaintiffs' allegations go one step further—confirming not only that consumers *can* buy devices without purchasing iCloud

storage, but that a large percentage of Apple device holders *actually do*.  Plaintiffs concede that "approximately 30–48% of Apple users do not purchase an iCloud subscription (i.e., only use the free 0-5GB)."  *Id.* ¶ 67.  Plaintiffs thus acknowledge that (i) Apple device holders are not required to purchase or use any iCloud storage (and many in fact do not) and (ii) even amongst the Apple device holders who do use iCloud, a large percentage use the 5 GB or less storage tier, which is completely free.  *Id.*; *see also id.* ¶ 29.  These concessions defeat Plaintiffs' tying claim.

Plaintiffs' conclusory allegations that Apple's limitation on cloud backup of "Restricted Files" to iCloud Backup "effectively compel[s] Apple device holders to use iCloud if they wish to backup Restricted Files" (*id.* ¶ 38) and for "Apple device holder[s] that wish[] to backup Restricted Files . . . their only option is to retain iCloud for hosting Restricted Files, and then use one of the[] alternative providers to backup Accessible files" (*id.* ¶ 81), cannot save their tying claim.  Alleged inconveniences associated with backing up certain files locally (*see id.* ¶¶ 75–76) do not amount to "coercion" or "exploitation" required for a tying claim.  *Jefferson Par.*, 466 U.S. at 12 ("[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product."); *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1189 (9th Cir. 1984) ("Coercion occurs when the buyer must accept the tied item and forego possibly desirable substitutes.").[3]

Beyond being insufficient to plead an unlawful tie, these allegations are also contradicted by others in the Amended Complaint.  Plaintiffs elsewhere admit that "[a]n iPhone or iPad can theoretically be backed up locally to a hard drive on a Mac or PC" (AC ¶ 76), and "Apple mobile device holders can backup many types of Restricted Files on hard drives, including a PC" (*id.* ¶ 115).  These allegations confirm there is no requirement to use iCloud Backup, even for "Restricted Files."  Courts are not required to accept internally inconsistent allegations as true (or allegations in an amended complaint that contradict an initial complaint), and may dismiss such claims as implausible.  *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (affirming

---

[3] *See also hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1154 (N.D. Cal. 2020) (no coercion where use of the tying product not conditioned upon the purchase of the tied product); *Somers v. Apple Inc.*, 258 F.R.D. 354, 357 (N.D. Cal. 2009) ("[T]here can be no per se tying liability . . . where the only allegation is that there is a technological interrelationship between the two products that may induce purchasers of one to purchase the other.").

1    dismissal where plaintiff's "overcharge theory" was "implausible in the face of contradictory

2    market facts alleged in her complaint"); *Hernandez*, 2015 WL 3914741, at *10 ("Contradictory

3    allegations . . . are inherently implausible, and fail to comply with Rule 8, *Twombly*, and *Iqbal*.");

4    *Pac. Recovery Sols. v. United Behav. Health*, 508 F. Supp. 3d 606, 615 (N.D. Cal. 2020) ("The

5    Court does not consider these new allegations that contradict the allegations in the initial

6    complaint.").[4]  There is no tie because Apple mobile device users are not required to use iCloud,

7    let alone pay for an iCloud+ subscription.  *See Dream Big Media Inc. v. Alphabet Inc.*, No. 22-cv-

8    02314-JSW, 2022 WL 16579322, at *3 (N.D. Cal. Nov. 1, 2022) (no tie because defendant "d[id]

9    not condition the sale of one Google product on the purchase of [a] second"); *Blix Inc. v. Apple,

10   Inc.*, No. CV 19-1869-LPS, 2021 WL 2895654, at *5 (D. Del. July 9, 2021) (no tie because the

11   "tied" product, Sign In With Apple, need not be used with iOS); *see also* Order at 10, *Affinity

12   Credit Union v. Apple Inc.*, No. 22-cv-04174-JSW (N.D. Cal. Sept. 27, 2023), ECF No. 64

13   ("[T]here is no tie because iOS device consumers are not required to use Apple Pay and because

14   Apple Pay is free to consumers.").

15            **B.    Plaintiffs' Monopolization Claims Fail**

16            Plaintiffs assert both monopolization and attempted monopolization claims under Section 2

17   of the Sherman Act, 15 U.S.C. § 2.  Monopolization requires plausibly alleging that:  (1) the

18   defendant has monopoly power in the relevant market; and (2) the defendant has willfully acquired

19   or maintained monopoly power in that market.  *See Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948,

20   954 (9th Cir. 2023).  Attempted monopolization requires:  "(1) a specific intent to control prices

21   or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that

22

---

23   [4]  To the extent Plaintiffs claim the tied product is not iCloud generally, but instead iCloud Backup
     for "Restricted Files," they cannot plead that cloud storage of core app data and device files is a

24   separate product from Apple's mobile devices to sustain a tying claim.  iCloud Backup, which can
     be used to back up "Restricted Files" is integrated fully with the operating systems on Apple's

25   mobile devices, designed to enhance security, privacy, and the user experience, and has never been
     offered separately for sale or purchase.  *See Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532

26   F.3d 963, 974 (9th Cir. 2008) (there is no actionable tying arrangement if the tying and tied
     products are "'bundled' and related products or services"); *Response of Carolina, Inc. v. Leasco

27   Response, Inc.*, 537 F.2d 1307, 1330 (5th Cir. 1976) (antitrust violations are "limited to . . . where
     the technological factor tying the hardware to the software has been designed . . . [to tie] the

28   products, rather than to achieve some technologically beneficial result"), *abrogated on other
     grounds by Cont'l T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977).

purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 72 F. Supp. 3d 1012, 1019 (N.D. Cal. 2014).

Plaintiffs' original Complaint set forth a monopolization theory premised on the notion that Apple's limitation of the remote backup of "Restricted Files" to iCloud Backup somehow gives Apple the power to monopolize a market for all "cloud storage on Apple mobile devices."  In its original Motion to Dismiss, Apple identified why that theory fell short:  the Complaint failed to allege either that Apple has monopoly power or engaged in any anticompetitive conduct because notwithstanding Apple's restriction on the backup of "Restrict Files" to iCloud, there are numerous competing cloud-based and other storage options available on Apple devices.

The monopolization theory Plaintiffs advance in the Amended Complaint is fundamentally the same.  They still claim that Apple somehow monopolizes "a larger market for all cloud storage platforms on Apple mobile devices" (AC ¶ 42) by virtue of Apple's limitation on remote backup of "Restricted Files" to iCloud Backup.  But in an attempt to circumvent their inability to plead the required elements of market power and conduct, they now also advance a separate, narrower market for their monopolization claims—one for "Full-Service Cloud Storage on Apple Mobile Devices."  This is a fictitious single-brand "aftermarket" defined such that Apple has 100% share.  Regardless of which of these two inconsistent market definitions underlie Plaintiffs' monopolization claims, those claims remain defective.

        1.    <u>Plaintiffs Cannot Plead Monopolization Claims Based on a Single-Brand Aftermarket Defined as "Full-Service Cloud Storage on Apple Mobile Devices"</u>

To the extent Plaintiffs' monopolization claims are now premised on the notion that Apple monopolizes an "aftermarket" consisting of "Full-Service Cloud Storage on Apple Mobile Devices" (*id.* ¶ 11), defined as "cloud storage capable of storing all file types on Apple's mobile devices" (*id.* ¶ 68) such that Apple "enjoys a 100 percent [market] share" (*id.* ¶ 11), those claims fail.  Plaintiffs have not and cannot plead the prerequisites for a viable antitrust aftermarket.

"Single brand markets are, at a minimum, extremely rare." *ATM Fee*, 768 F. Supp. 2d at 995 (citation omitted).  Otherwise known as antitrust "aftermarkets," they arise in unique situations like *Eastman Kodak Co. v. Image Technology Services, Inc.*, 504 U.S. 451 (1992), where "once a

consumer buys . . . a good, like a photocopier, [the consumer] is 'locked in' to purchasing compatible parts and service for a considerable length of time, given the expense and difficulty of buying a new photocopier." *ATM Fee*, 768 F. Supp. 2d. at 997.  What is key in an aftermarket scenario is that the defendant must have changed its policy relating to the aftermarket parts or service (such as copier parts and services in *Kodak*) *after* a customer is locked-in by having purchased the foremarket product (the copier).  This creates a situation where the defendant can charge monopoly prices for the aftermarket parts and service because the customer, in order to continue using the foremarket product, now must be subjected to whatever prices and policies the defendant decides to impose. *See Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1050 (9th Cir. 2008).  In such a situation, courts recognize that an aftermarket limited to the single brand is viable as a relevant antitrust market because "customers did not knowingly bind themselves to a single brand of the aftermarket and market imperfections (information costs and switching costs) prohibited customers from imposing market discipline in the aftermarket by switching among competitors in the primary market." *Psystar*, 586 F. Supp. 2d at 1201.  Such circumstances are nothing like what Plaintiffs can or do allege with respect to iCloud.

*First*, as Plaintiffs admit throughout their Amended Complaint, no Apple device user is required to use iCloud (let alone required to use iCloud Backup), and they can and do use other alternatives (including non-cloud solutions to back-up "Restricted Files").  That confirms this case does not present an aftermarket scenario.  An aftermarket arises only when one is *compelled* to purchase the aftermarket product by virtue of being locked-in after first purchasing the foremarket product.  *See ATM Fee*, 768 F. Supp. 2d at 997; *see also* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles & Their Application ¶ 564b (Sept. 2021 update) ("[W]hen the primary good and the "aftermarket" good are sold at the same time, such as a computer together with its bundled software, there is no lock-in.").  Here, customers are by no means "locked in" to using iCloud by virtue of owning an Apple device.  As Plaintiffs allege:

- "[C]onsumers can buy smartphones and tablets without also purchasing or using any cloud storage" and "approximately ***30-48% of Apple users do not purchase an iCloud subscription*** (*i.e.*, only use the free 0-5GB)." AC ¶ 67 (emphasis added).

- For most file types, "***Apple mobile device holders can select from other cloud-based storage providers, including Google Drive, Sync.com, pCloud, and others***." *Id.* ¶ 32

(emphasis added).

- "Cloud storage is also widely available on other platforms, with **many well-known technology firms offering cloud storage products that are available on Apple's mobile devices**." *Id.* ¶ 94 (emphasis added).

- And even for "Restricted Files," users are not required to use iCloud, and can back up those files using non-remote alternatives such as local storage on a Mac or PC. *Id.* ¶¶ 76–77, 115.

Because no one has to use iCloud, and it admittedly competes with other cloud solutions to store most files and non-cloud solutions to backup "Restricted Files," iCloud cannot be an aftermarket.

*Second*, Plaintiffs' purported iCloud aftermarket depends on the implausible suggestion that iCloud faces zero competition from other cloud-based storage solutions because it is the only cloud-based solution that can backup "Restricted Files." Plaintiffs allege that "[a] salient feature of cloud-based storage is that it offers users relatively seamless access to stored data across devices." *Id.* ¶ 70. But, according to Plaintiffs, because "Restricted Files" are "mainly app data and device settings" for customers to "reinstall apps and device settings" on their Apple devices (*id.* ¶ 33), there is no reason a customer would want or need to back up these files on another cloud service to transfer them to a non-Apple device, where such "Restricted Files" would be useless. These logical inconsistencies in Plaintiffs' own allegations defeat their aftermarket claim.

*Third*, Plaintiffs have not alleged—and cannot allege—that Apple has ever changed its policy with respect to iCloud Backup being the only remote back-up option for "Restricted Files" on Apple's devices. The law recognizes an exception for single-brand aftermarkets only where a defendant changes its policy relating to the aftermarket product (here, iCloud) *after* a customer is locked-in by having first purchased the foremarket product (an Apple mobile device). *See Newcal*, 513 F.3d at 1050; *Dig. Equip. Corp. v. Uniq Dig. Techs., Inc.*, 73 F.3d 756, 762–63 (7th Cir. 1996) ("The material dispute [in *Kodak*] [regarding an aftermarket] . . . was whether the change in policy enabled Kodak to extract supra-competitive prices from customers who had already purchased its machines.").[5] Plaintiffs cannot plead that Apple has ever changed its policy with respect to iCloud

---

[5] *See Lee v. Life Ins. Co. of N. Am.*, 23 F.3d 14, 19–20 (1st Cir. 1994) ("[T]he timing of the 'lock-in' . . . in *Kodak* was central to the Supreme Court's decision" on the existence of an aftermarket, as "[a]t the time current Kodak copier owners bought their copiers, Kodak had not yet conditioned its sale of replacement parts on the purchase of Kodak servicing, and its later-announced policy to that effect was made applicable both to prospective and existing Kodak copier owners.").

Backup being the only remote solution for backing-up "Restricted Files" on Apple's mobile devices. Their theory is the opposite—that Apple has *never* permitted other cloud storage solutions on its devices to back-up "Restricted Files." *See* AC ¶ 34 ("Apple prevents rival cloud platforms from offering a full-service cloud solution."). That defeats any inference that iCloud constitutes its own aftermarket. *See PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 820 (6th Cir. 1997) ("[A]n antitrust plaintiff cannot succeed on a Kodak-type [aftermarket] theory when the defendant has not changed its policy after locking-in some of its customers . . . .").

*Finally*, Plaintiffs' attempt to plead an aftermarket cannot be saved by the remaining conclusory allegations that consumers "are nowhere advised that iCloud is the only cloud service capable of storing or backing up Restricted Files on their device" (AC ¶ 93) or that switching costs are supposedly high (*id.* ¶ 100). These allegations merely pay lip service to certain factors courts have identified as relevant in determining whether an aftermarket is cognizable. *See Newcal*, 513 F.3d at 1048–50. But they are insufficient to support a viable aftermarket here, given Plaintiffs' contrary and internally inconsistent admissions throughout the Amended Complaint that Apple device users are not compelled to use iCloud—to backup "Restricted Files" or otherwise—and the existence of other cloud and non-cloud storage solutions available on Apple's devices. *See Psystar*, 586 F. Supp. 2d at 1200 (dismissing aftermarket claims where relevant market allegations were "internally contradictory"); *Wolfire Games, LLC v. Valve Corp.*, No. C21-0563-JCC, 2022 WL 1443744, at *2 (W.D. Wash. May 6, 2022) (dismissing complaint where "the commercial realities alleged . . . undercut Plaintiffs' separate market theory").

*                    *                    *

Courts routinely reject attempts to stretch the bounds of *Kodak* aftermarket monopolization beyond the actual intent of that holding and the facts presented in that individualized case. *See, e.g.*, *Lee*, 23 F.3d at 20 ; *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 782 (5th Cir. 1999); *Dig. Equip. Corp.*, 73 F.3d at 762–63. Plaintiffs here have not pled the prerequisites to support a single-brand aftermarket consisting of "Full-Service Cloud Storage on Apple Mobile Devices" in which iCloud has 100% share. Their monopolization claims premised on that purported aftermarket fail.

2.   <u>Plaintiffs Still Fail to Plead Monopolization Claims Premised on a Broader Market for All Cloud Storage Platforms on Apple Devices</u>

Beyond Plaintiffs' attempt to plead monopolization claims on the basis that iCloud exists in its own, single-brand aftermarket, the Amended Complaint also still seeks to assert "a larger market for all cloud storage platforms on Apple mobile devices."  AC ¶ 42.  At the threshold, the mere fact that Plaintiffs seek to maintain two conflicting and inconsistent theories regarding the markets that Apple allegedly monopolizes renders both monopolization theories implausible. Plaintiffs allege both that iCloud faces zero competition and exists in a market of its own (as required for an aftermarket theory) *and* that iCloud competes with other cloud storage solutions on Apple devices, but nevertheless has monopoly share (as required to support Plaintiffs' alternate monopolization theory).  The two cannot both be true, and Plaintiffs' allegations regarding iCloud undermine each other.  But in all events, Plaintiffs also fail to plausibly allege the required elements to support a monopolization theory premised on a broader market for "all cloud storage platforms" on Apple's devices.

a.   *Plaintiffs Fail to Allege that Apple Has Monopoly Power in a Broader Market for All Cloud Storage Platforms*

Monopoly power is a required element of claims for monopolization and attempted monopolization.  *See Dreamstime.com*, 54 F.4th at 1137; *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1432–33 (9th Cir. 1995).  It is "the power to control prices or exclude competition," *Dreamstime.com*, 54 F.4th at 1137 (citation omitted), and a plaintiff may plead it in two ways: (1) with direct evidence—*i.e.*, "evidence of restricted output and supracompetitive prices," or (2) with indirect evidence, which requires the plaintiff to "[a] define the relevant market, [b] show that the defendant owns a dominant share of that market, and [c] show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run."  *Rebel Oil*, 51 F.3d at 1434.

(1)   Plaintiffs Fail to Allege Direct Evidence of Monopoly Power in a Market for "All Cloud Storage Platforms"

Direct proof of market power requires "evidence of restricted output *and* supracompetitive

prices." *Id.* (emphasis added); *see also Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007); *Safeway Inc. v. Abbott Laboratories*, 761 F. Supp. 2d 874, 887 (N.D. Cal. 2011) ("[S]upracompetitive pricing, on its own, is not direct evidence of monopoly power."). That is because a firm has market power only when, "by restricting its own output, it can restrict marketwide output and, hence, increase marketwide prices." *Rebel Oil Co.*, 51 F.3d at 1434. Without this ability "to increase prices above competitive levels" by restricting output, "and sustain them for an extended period," a firm's "actions do not threaten consumer welfare." *Id.* Here, Plaintiffs allege neither supracompetitive prices nor restricted output.

***No Supracompetitive Prices.*** Plaintiffs' efforts to plead supracompetitive prices for iCloud fail. *See* AC ¶¶ 57–65. This section of the Amended Complaint is based *entirely* on Apple's alleged 65% gross margins for iCloud. But "inferring market power from gross margins is a dicey proposition." *Garnica v. HomeTeam Pest Def., Inc.*, 230 F. Supp. 3d 1155, 1159 (N.D. Cal. 2017). That is because "competitive firms may be highly profitable merely by virtue of having low costs as a result of superior efficiency." *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1412 (7th Cir. 1995) (Posner, J.) ("[I]t is always treacherous to try to infer monopoly power from a high rate of return."). More importantly, the gross margins alleged—based on "Apple's per-GB cost of acquiring [third-party] storage infrastructure," AC ¶ 60—are fundamentally flawed. Plaintiffs (1) cite an industry report stating that Apple pays Google $300 million annually for 8 billion GB of storage; (2) assume that the *entirety* of Apple's costs associated with iCloud must be $0.0031 per GB per month ($300 million divided by 8 billion, divided by 12); and (3) compare this cost to Apple's monthly charge for each of its iCloud+ subscription plans. *Id.* ¶¶ 60–61. This calculation is facially implausible. It assumes without any factual basis that Apple incurs *zero* costs beyond third-party storage in providing iCloud+ storage, and it is inconsistent with Plaintiffs' acknowledgment that nearly half of iCloud users do not pay to use iCloud because they use 5GB or less of iCloud storage. *See id.* ¶ 67. There is nothing else to support an inference that iCloud+ pricing is supracompetitive.

Plaintiffs' claim of supracompetitive prices for iCloud+ also fails because it ignores comparable prices of competitors, which are publicly available. According to an article

incorporated by reference in the Amended Complaint, iCloud's pricing is on par with—and often lower than—the alleged competition. *See* AC ¶ 109 n.51. The following table compares iCloud+ pricing with certain of its competitors, highlighting when competitors' prices are the same as iCloud+ or higher:[6]

| | Free | 50GB | 200GB | 2TB | 6TB | 12TB |
|---|---|---|---|---|---|---|
| **iCloud** | 5GB | $0.99/mo | $2.99/mo | $9.99/mo | $29.99/mo | $59.99/mo |
| **Google Drive** | 15GB | $1.67/mo for 100GB | $2.50/mo | $8.33/mo | | $49.99/mo for 10TB |
| **Icedrive** | 10GB | | $4.99/mo for 100GB | $7.99/mo for 1TB | | |
| **Sync** | 5GB | $1.99/mo for 100GB ($0.99/mo for 50GB) | $1.99/mo for 100GB ($3.98/mo for 200GB) | $8.00/mo | $20.00/mo | |
| **DropBox** | 2GB | | | $9.99/mo | | |
| **pCloud** | 10GB | | | $99.99/yr ($9.99/mo) | | |

Plaintiffs' allegations of supracompetitive pricing, based entirely on dubious allegations regarding margins, are implausible given this contradictory, public information confirming that iCloud+ pricing is competitive. *See Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 835 (N.D. Cal. 2015) (dismissing monopolization claim in part for failure to allege "how [defendant's prices] compare to competitive prices"); *Intellectual Ventures I LLC v. Cap. One Fin. Corp.*, No. 13-CV-00740, 2013 WL 6682981, at *6 (E.D. Va. Dec. 18, 2013) (dismissing monopolization claim where "[plaintiff] does not allege specifically that [defendant] charges or demands . . . fees higher than other [competitors]"); *see also Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2288 (2018) (no unreasonable restraint where, *inter alia*, "the evidence about whether Amex charges more than its competitors was ultimately inconclusive").[7]

**No Restricted Output.** Plaintiffs likewise do not allege any restricted output in a broader market for all "cloud storage platforms" on Apple's mobile devices. *See Fed. Trade Comm'n v.*

---

[6] *Best Cloud Storage for iPhone 2024*, CloudWards (Jan. 27, 2024), https://www.cloudwards.net/best-cloud-storage-for-iphone/ (incorporated by reference in AC ¶ 109 n.51).

[7] Plaintiffs' new allegations regarding iCloud price increases in the UK and other non-U.S. regions also do not support Plaintiffs' assertion that iCloud pricing in the U.S.—the relevant geographic market alleged—is supracompetitive. *Cf. In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 784–86 (N.D. Cal. 2007) (allegations of a single worldwide price increase insufficient to establish proximate cause for domestic antitrust claims).

1   *Qualcomm Inc.*, 969 F.3d 974, 989 (9th Cir. 2020) (direct evidence must "include[] proof of actual

2   detrimental effects on competition . . . *in the relevant market*") (cleaned up; emphasis added).

3   Plaintiffs allege that Apple restricts output by "preclud[ing] any other cloud provider from

4   accessing and hosting Restricted Files on its mobile devices," which supposedly prevents those

5   providers from offering "full-service cloud solutions" to Apple mobile device users.  AC ¶ 66.  But

6   there are no allegations that Apple's limitation on the backup of "Restricted Files" to iCloud

7   Backup restricts output in the broader market for all "Cloud Storage on Apple devices" in a way

8   that allows Apple to charge supracompetitive prices for iCloud+.  Instead, all Plaintiffs allege is a

9   purported competitive advantage *without* a reduction in output.  That is fatal to pleading direct

10  evidence of monopoly power.  *See, e.g.*, *BanxCorp v. Bankrate, Inc.*, 847 F. App'x 116, 120 (3d

11  Cir. 2021) ("Even assuming the prices were supracompetitive," absent "restrict[ed] output during

12  the challenged period," the plaintiff failed to prove "monopoly power through direct evidence.").

13
            (2)     Plaintiffs Fail to Allege Indirect Evidence of Monopoly
14                  Power in a Broader Market for All Cloud Storage Platforms
                    on Apple's Devices

15          To plead monopoly power indirectly, a plaintiff must plausibly allege that the defendant

16  has a dominant share of a properly defined market, plus significant barriers to entry and expansion

17  in the alleged market.  *See Rebel Oil*, 51 F.3d at 1434.  "A mere showing of substantial or even

18  dominant market share alone cannot establish market power sufficient to carry out a predatory

19  scheme."  *Id.* at 1439.  A plaintiff must also "show that new rivals are barred from entering the

20  market" and that "existing competitors lack the capacity to expand their output to challenge the

21  predator's high price."  *Id.*  Here, Plaintiffs fail to plausibly allege either element.

22          ***Plaintiffs' Fabricated Market Share Calculation.***  Plaintiffs attempt to plead a dominant

23  market share by alleging that "iCloud's share of the market for all cloud storage on Apple mobile

24  devices exceeds 70 percent."  AC ¶¶ 104–05.  Plaintiffs' sole support for that number is footnotes

25  46–48:  according to an unidentified survey from 2020, 33% of people using personal cloud storage

26  in the U.S. used iCloud; therefore, Plaintiffs surmise, because iCloud can be accessed from non-

27  mobile Apple devices and from non-Apple devices, that number must underestimate iCloud's

28  share in an iOS aftermarket; so, to arrive at a market share figure, Plaintiffs divide iCloud's alleged

share across all Apple and non-Apple devices (allegedly 33%) by Apple's 2020 average share of the smartphone and tablet markets (allegedly 45.5%), to arrive at 72.5%. *Id.* ¶ 106 nn.46–48.

The fundamental problem with this calculation is that it disregards that someone who uses iCloud may *also* use other cloud storage services. Indeed, Plaintiffs admit that at least some consumers will have "multiple cloud storage accounts." *Id.* ¶ 111. If that is true, then it cannot be the case that the alleged 33% of iCloud users represents Apple's share of any market. That 33% may well be using Google Drive, Dropbox, and other services in addition to iCloud—and may well include iCloud users who use only the 5GB of free storage Apple provides.

Stripped of the flawed math, the Amended Complaint contains "no quantitative allegations suggesting" that Apple has monopoly power, nor "any other facts that would move the hypothesis of [monopoly] power across the line from conceivable to plausible." *Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 693–94 (9th Cir. 2022) (citation omitted) (affirming dismissal for failure to plausibly allege market power); *see also Korea Kumho Petrochemical v. Flexsys Am. LP*, No. 07-cv-01057, 2008 WL 686834, at *9 (N.D. Cal. Mar. 11, 2008) ("Although Plaintiff need not necessarily quantify [defendant's] market share with precision, Plaintiff must assert some *facts* in support of its assertions of market power that suggest those assertions are plausible."); *Med Vets Inc. v. VIP Petcare Holdings, Inc.*, No. 18-CV-02054, 2019 WL 1767335, at *6 (N.D. Cal. Apr. 22, 2019), *aff'd*, 811 F. App'x 422 (9th Cir. 2020) (cherry-picked market share figures that "[did] not correspond to the alleged market" warranted dismissal); *Fed. Trade Comm'n v. Facebook, Inc.*, 560 F. Supp. 3d 1, 17–18 (D.D.C. 2021) (collecting cases and explaining that "bare" assertions a defendant possesses market share "in excess of 60%" are insufficient to plead market power).

***No Barriers to Entry.*** Beyond their flawed market share calculation, Plaintiffs still fail to plead monopoly power because new rivals are admittedly not "barred from entering" the alleged market for cloud storage on Apple mobile devices, and existing competitors do not "lack the capacity to expand their output" within that market (*e.g.*, by offering a cheaper product). *Rebel Oil*, 51 F.3d at 1439. To the contrary, Plaintiffs allege that "every major technology company" and "numerous cloud-storage specialists" are actively competing in the market for cloud storage platforms on Apple mobile devices. AC ¶ 4. That dooms Plaintiffs' ability to plead the requisite

barriers to entry and expansion.  *See Flaa*, 55 F.4th at 694 (affirming dismissal of monopolization claim where allegations "describe[d] a healthy and competitive market"); *De Soto Cab Co., Inc. v. Uber Techs., Inc.*, No. 16-CV-06385, 2021 WL 5860917, at *2 (N.D. Cal. Nov. 18, 2021) (dismissing complaint where "allegations concerning market barriers" were "deficient").  Plaintiffs' claim that "would-be competitors" cannot "offer[] cloud storage solutions for the full range of files" on Apple mobile devices also misses the mark.  AC ¶ 102.  Nothing prevents entry in a broader market for all "cloud storage platforms on Apple mobile devices."

> b.    *Plaintiffs Fail to Plead Any Anticompetitive Conduct by Apple*

Both monopolization and attempted monopolization require anticompetitive conduct.  *See Dreamstime.com*, 54 F.4th at 1137 (monopolization requires that the alleged monopoly power be accompanied by "a showing that [the] defendant . . . undertook 'anticompetitive conduct'" (citing *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407–08 (2004))); *Rebel Oil*, 51 F.3d at 1434.  This conduct element requires not only "a showing that a defendant possessing monopoly power undertook anticompetitive conduct," but also that the defendant did so with an "intent to control prices or exclude competition in the relevant market." *Dreamstime.com*, 54 F.4th at 1137 (simplified).  Conduct is anticompetitive only if it "tends to impair the opportunities of rivals" and "does not further competition on the merits or does so in an unnecessarily restrictive way." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008).  The challenged conduct must impact "the competitive process" as a whole.  *Id.* at 902. And because "the antitrust laws do not punish economic behavior that benefits consumers and will not cause long-run injury to the competitive process," *id.* at 903, anticompetitive conduct does not include "growth or development" that occurs "as a consequence of a superior product, business acumen, or historic accident," *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).

The conduct Plaintiffs complain of here is a feature unilaterally designed by Apple to limit the cloud backup of "Restricted Files"—core app data and device files—to iCloud Backup.  But this restriction is not anticompetitive conduct:  it does not and cannot harm competition in the alleged market Plaintiffs claim is being monopolized—one for "all cloud storage on Apple mobile devices."  AC ¶¶ 42, 105.  As the Amended Complaint admits, there are numerous alternative

cloud storage solutions for Apple devices, "including Google Drive, Sync.com, pCloud, and others." *Id.* ¶ 32. And, as set forth above (at Section V.B.2.a(1)), the articles incorporated by reference in the Complaint establish that iCloud's prices are not supracompetitive, but rather on par with or lower than the prices of competitors. This confirms that Apple's limited restriction on the use of iCloud Backup for cloud backup of Restricted Files is not exclusionary, and otherwise has not impaired the ability of rivals to compete in the alleged market.

In *Dreamstime.com v. Google*, the Ninth Circuit affirmed dismissal of a complaint for a similar failure to plausibly allege anticompetitive conduct. There, the plaintiff—an online supplier of stock images that advertised on Google—asserted a Section 2 claim on the theory that Google monopolized the online search advertising market. *See* 54 F.4th at 1134–36. The plaintiff claimed that Google furthered its monopoly through conduct such as rigging its ad-bidding processes, demoting the plaintiff's organic search results, favoring Google's stock photo partners over photos supplied by the plaintiff's site, and elevating inferior stock photo websites in search results. *See id.* at 1140. The Ninth Circuit held that these allegations demonstrated that "Google mistreated [the plaintiff]," but did not allege "harm[] [to] competition in the online search advertising market." *Id.* at 1141. Because none of the alleged conduct harmed competition in the alleged market, the plaintiff failed to allege any anticompetitive conduct to sustain its Section 2 claim. *Id.* at 1142.

A similar problem plagues Plaintiffs' allegations. The acknowledgement (AC ¶¶ 4, 32, 94) that there are numerous alternatives to iCloud in the market for "cloud storage on Apple mobile devices," combined with iCloud+'s comparable prices to the competition, defeats any notion that Apple's limitation on the backup of "Restricted Files" to iCloud Backup excludes rivals or impairs competition. Absent allegations that the alleged conduct—Apple's limitation of cloud backup of "Restricted Files" to iCloud Backup—harms competition in the alleged market, the Amended Complaint does not allege anticompetitive conduct. *See Dreamstime.com*, 54 F.4th at 1141–42.

That Apple's limitation of remotely backing up "Restricted Files" to iCloud Backup "handicap[s] all would-be rivals" (AC ¶ 112) because it requires "Apple device holders . . . [to] either use iCloud for cloud-based storage or undertake the added expense and burden of splitting out their files and managing multiple cloud storage accounts" (*id.* ¶ 111), also does not make the

restriction anticompetitive.  At best, these are allegations about how Apple's unilateral limitation on the backup of "Restricted Files" makes iCloud more attractive to users than competing cloud storage solutions.  Such unilateral conduct falls within the universe of what courts recognize is permissible—and procompetitive—under Section 2.  Plaintiffs' allegations are nothing more than "an example of a company using a competitive advantage gained from 'establishing an infrastructure that renders [it] uniquely suited to serve [its] customers.'"  *Dreamstime.com*, 54 F.4th at 1142 (first quoting *Trinko*, 540 U.S. at 407, and then quoting *Grinnell*, 384 U.S. at 571).

At bottom, Plaintiffs attempt to misuse the antitrust laws to change Apple's design for backing up and restoring its devices.  But "the introduction of technologically related products, even if incompatible with the products offered by competitors, is alone neither a predatory nor anticompetitive act."  *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 544 (9th Cir. 1983), *overruled on other grounds by Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034 (9th Cir. 1987); *see also Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 999–1000 (9th Cir. 2010) ("[P]roduct improvement by itself does not violate Section 2[.]").  Plaintiffs' failure to allege any anticompetitive conduct dooms their Section 2 claims.

### 3.   Plaintiffs' Attempted Monopolization Claim Also Fails Given the Lack of Allegations Regarding the Specific Intent to Monopolize

The attempted monopolization claim further fails because Plaintiffs do not allege Apple had a specific intent to monopolize either the implausible aftermarket consisting of "Full-Service Cloud Storage" or the alternative (and inconsistent) market for "cloud storage platforms" on Apple's mobile devices.  Attempted monopolization requires the "specific intent to prevail in the market by some untoward means."  *Gen. Commc'ns Eng., Inc. v. Motorola Commc'ns and Elec., Inc.*, 421 F. Supp. 274, 286 (N.D. Cal. 1976).  Specific intent may not be inferred from legitimate business practices aimed at succeeding in competition.  *See Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 627 (1952).  There must be more than conclusory allegations that a defendant had the specific intent to "exclude competition or control prices."  *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. 09-0560, 2011 WL 2678879, at *12 (E.D. Cal. July 7, 2011).

Plaintiffs do not plead facts suggesting that Apple intended to exclude competition or

control prices.  Rather, they (1) admit Apple faces robust competition in the alleged market (AC ¶ 4); and (2) incorporate by reference articles confirming Apple prices iCloud similarly with or lower than competitors.  *See supra* Section V.B.2.a(2).  These allegations are inconsistent with an intent to exclude competition or control prices.  Absent allegations of a specific intent to monopolize, Plaintiffs' attempted monopolization claim fails.  *See Stanislaus*, 2011 WL 2678879, at *14 (dismissing attempted monopolization claim where "plaintiff d[id] not allege competition was excluded . . . and no price increase occurred for over 3 years").

### C.    Plaintiffs' UCL Claim Fails

Plaintiffs also fail to plead a cognizable claim under California's UCL.  Under the UCL, there are "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citation omitted).  The Amended Complaint fails to plead a UCL violation under each of these prongs.

***Unlawful Prong.***  Because Plaintiffs fail to state either a tying, attempted monopolization, or monopolization claim, their UCL claim premised on the unlawful prong fails.  *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 54 n.7 (9th Cir. 2022) (dismissing a UCL claim "premised upon the existence of an antitrust conspiracy, and therefore [should] rise and fall with the Sherman Act claim").

***Unfair Prong.***  Under this prong, courts consider whether the alleged conduct is "tethered to any underlying constitutional, statutory or regulatory provision, . . . threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law"; or whether it has an impact on the alleged victim that "outweighs the reasons, justifications and motives of the alleged wrongdoer," including because it "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (simplified); *see also Davis v. HSBC Bank Nev. N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012).

At the outset, "the determination that [] conduct is not an unreasonable restraint of trade necessarily implies that [it] is not 'unfair' towards consumers," requiring dismissal.  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018) (citation omitted); *Beverage v. Apple, Inc.*, 101 Cal. App. 5th 736, 755–56 (2024).  Because Plaintiffs fail to plead tying and monopolization

1  claims, any UCL claim premised on the unfair prong fails too.

2  Plaintiffs also fail to satisfy any of the tests for unfairness.  Because the underlying

3  Sherman Act claims fail, Plaintiffs have not shown that Apple's conduct threatens any incipient

4  violation of or "violates the policy or spirit" of any antitrust laws.  *CVS Pharm.*, 982 F.3d at 1214;

5  *see also The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) ("Unilateral

6  conduct by a single firm, even if it appears to restrain trade unreasonably, is not unlawful under

7  section 1.") (cleaned up).  Nor do Plaintiffs plead that the utility of the security provisions put into

8  place by Apple over a decade ago are outweighed by the alleged harm to consumers.  *See Cal.*

9  *Crane Sch., Inc. v. Google LLC*, --- F. Supp. 3d ---, 2024 WL 1221964, at *9 (N.D. Cal. Mar. 21,

10  2024).  And Plaintiffs do not allege that Apple's conduct is immoral, unethical, oppressive,

11  unscrupulous, or substantially injurious to consumers.  *See Nazemi v. Specialized Loan Servicing,*

12  *LLC*, 637 F. Supp. 3d 856, 864 (C.D. Cal. 2022) (dismissing UCL claim where plaintiff only

13  mentioned test for immorality in passing in his brief without analysis).

14  **D.    Plaintiffs' Sherman Act and UCL Claims Are Time-Barred**

15  Plaintiffs' claims are time-barred.  Antitrust damages are not recoverable unless a plaintiff

16  files suit within four years of the cause of action's accrual.  *See* 15 U.S.C. § 15(b).  A California

17  UCL claim is subject to the same limitations period and accrual rules.  *See* Cal. Bus. & Prof. Code

18  § 17208; *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208, 1210–11 (N.D. Cal.

19  2015).  Courts may dismiss claims as time-barred when "the running of the statute is apparent on

20  the face of the complaint."  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006).

21  Here, Plaintiffs' claims are premised on Apple's original design decision to limit backup

22  of core app data and device files to iCloud Backup and non-cloud options.  This decision was made

23  when iCloud first launched in 2011, and it has remained unchanged since then.  *See* AC ¶ 3.[8]

24  Plaintiffs' purported injuries—inflated prices for an iCloud+ subscription (*id.* ¶ 141)—flow from

25  this design decision made well outside the four-year statute of limitations. Their federal antitrust

26  
_____

27  [8] Plaintiffs omit the date Apple implemented the alleged restriction on third-party backups, but
materials incorporated by reference confirm Apple made the design decision to restrict third-party
apps from accessing core app data and device files by "sandboxing" app data over a decade ago.
28  *See* Apple, *iOS Security* (Oct. 2014) at 17, https://www.apple.com/mx/privacy/docs/
iOS_Security_Guide_Oct_2014.pdf (incorporated by reference at AC ¶ 7 n.1).

1    damages and UCL claims are therefore time-barred.

2              1.    Plaintiffs Do Not and Cannot Plead a Continuing Violation Necessary to
3                    Restart the Antitrust Statute of Limitations

4          Plaintiffs cannot circumvent the statute of limitations by relying on the continuing

5    violations doctrine.  To plead a continuing violation, Plaintiffs must allege an "overt act" by Apple

6    within the limitations period that is both (1) a new and independent act that is not merely a

7    reaffirmation of a previous act and (2) one that inflicts new and accumulating injury on the

8    plaintiff.  *See Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014).

9          Here, the sole conduct underlying the alleged antitrust violation—Apple's design decision

10   to limit cloud backup of core app data and device settings in 2011—occurred outside the

11   limitations period.  Plaintiffs cannot allege that, since the launch of iCloud in 2011, Apple ever

12   modified this limitation with respect to iCloud, and the continued application of Apple's 2011

13   design decision does not restart the statute of limitations.   "Merely carrying out during the

14   limitations period a final, binding decision made prior to the limitations period does not qualify as

15   a new overt act" to trigger the continuing violation doctrine.  *Garrison v. Oracle Corp.*, 159 F.

16   Supp. 3d 1044, 1071–72 (N.D. Cal. 2016).  Because the only conduct complained of is a product

17   design decision that Apple made in 2011, Plaintiffs have not alleged any new or independent act

18   for their claims to be timely.  *See SaurikIT, LLC v. Apple Inc.*, No. 4:20-CV-08733-YGR, 2022

19   WL 1768845, at *3 (N.D. Cal. May 26, 2022) (dismissing complaint that "lack[ed] factual

20   allegations about the changes in the character of [] preexisting contracts necessary to render them

21   a 'new and independent act'"), *aff'd*, 2023 WL 8946200 (9th Cir. Dec. 28, 2023); *MedioStream,*

22   *Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1107 (N.D. Cal. 2012) (dismissing claim as time-

23   barred where the alleged "practices have been in place since Windows Media was first introduced"

24   and plaintiff "alleges no *additional* anticompetitive conduct associated with subsequent releases").

25         The alleged injury that Plaintiffs claim flows from the challenged restriction—*i.e.*, the

26   prices users pay for iCloud+—also arises entirely from Apple's 2011 design decision to "sandbox"

27   core app data and device settings.  *Supra* Section III.  Courts routinely reject the notion that "each

28   payment of a monopoly price, on its own, gives rise to a continuing violation" because "the mere

charging of monopoly prices is not unlawful." *Crowder v. LinkedIn Corp.*, No. 22-CV-00237, 2023 WL 2405335, at *3 (N.D. Cal. Mar. 8, 2023).  So, even if Plaintiffs plausibly alleged that they paid monopoly prices for iCloud+ (they do not), that would not revive their untimely claims.

### 2.   Plaintiffs Do Not and Cannot Plead Fraudulent Concealment

Plaintiffs also do not and cannot plead that Apple fraudulently concealed the alleged limitation on cloud backup of "Restricted Files."  "To show fraudulent concealment, [a] plaintiff[] must plead facts showing that the defendant affirmatively misled it." *Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*, No. 21-15863, 2022 WL 595696, at *2 (9th Cir. Feb. 28, 2022) (mem.) (citing *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012)).  Plaintiffs' theory precludes fraudulent concealment:  it assumes iCloud users *are* aware of Apple's restriction on cloud backup, because that restriction supposedly incentivizes users to "select a single iCloud storage plan, rather than juggle multiple cloud-storage accounts."  AC ¶ 111.  Plaintiffs' theory precludes any inference that Apple fraudulently concealed the alleged restraint.

### 3.   Laches Bars Plaintiffs' Injunctive Relief Claims

For these same reasons, the Court should dismiss Plaintiffs' claims for injunctive relief. Where a damages claim is untimely, injunctive relief is presumptively barred under the doctrine of laches. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002).  Like their damages claims, Plaintiffs' injunctive relief claims are premised on a design decision Apple made over a decade ago.  AC ¶ 3.  During that time, Apple has invested "substantial" resources to develop iCloud into a commercial success.  *Id.* ¶¶ 3, 101.  Plaintiffs cannot now advance claims that seek to undermine those significant investments and undo iCloud's security and privacy foundation.[9]

## VI.   CONCLUSION

For the reasons set forth above, the Complaint should be dismissed with prejudice.

---

[9] *See Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 927 (9th Cir. 1975) ("The potential for economic disruption is so great that when placed in private hands[,] it should be circumscribed by the requirement that injunction-seeking plaintiffs act with reasonable promptness unless excused by equitable considerations."); *Jarrow*, 304 F.3d at 839 (laches barred the plaintiff's false advertising claims given, among other factors, that the defendant had "invested enormous resources" in marketing and building the identity of its product).

1   Dated:  August 16, 2024           LATHAM & WATKINS LLP

2

3                                 By:   */s/  Belinda S Lee*
                                       Belinda S Lee

4                            Belinda S Lee (SBN 199635)
                             *belinda.lee@lw.com*

5                            Sarah M. Ray (SBN 229670)
                             *sarah.ray@lw.com*

6                            Aaron T. Chiu (SBN 287788)
                             *aaron.chiu@lw.com*

7                            Alicia R. Jovais (SBN 296172)
                             *alicia.jovais@lw.com*

8                            505 Montgomery Street, Suite 2000
                            San Francisco, California 94111-6538

9                            Telephone: +1.415.391.0600
                            Fax: +1.415.395.8095

10

11                         *Attorneys for Defendant Apple Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28