LATHAM & WATKINS LLP
  Belinda S Lee (SBN 199635)
  *belinda.lee@lw.com*
  Sarah M. Ray (SBN 229670)
  *sarah.ray@lw.com*
  Aaron T. Chiu (SBN 287788)
  *aaron.chiu@lw.com*
  Alicia R. Jovais (SBN 296172)
  *alicia.jovais@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JULIANNA FELIX GAMBOA and THOMAS DOROBIALA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>APPLE INC.,<br><br>                    Defendant. | CASE NO. 5:24-cv-01270-EKL<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**<br><br>Date:    December 11, 2024<br>Time:    10:00 a.m.<br>Place:   Courtroom 7<br>Judge:  The Honorable Eumi K. Lee |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 2

    A.    Whether Described as "Positive" or "Negative," Plaintiffs' Tying
        Claim Fails ................................................................................................. 2

    B.    Plaintiffs Fail to Plead Monopolization ................................................... 4

        1.    Plaintiffs Fail to Plead Monopolization Claims Based on an
            Alleged Market Comprised of "Full-Service Cloud Storage
            on Apple Mobile Devices" .......................................................... 4

        2.    Plaintiffs Fail to Plead Monopolization Claims Based on a
            Broader Market for All Cloud Storage Platforms on Apple
            Devices ........................................................................................ 8

        3.    Plaintiffs Do Not Allege the Specific Intent for Attempted
            Monopolization .......................................................................... 13

    C.    Plaintiffs Fail to Plead a UCL Claim .................................................... 13

    D.    Plaintiffs' Sherman Act and UCL Claims Are Time-Barred ............... 14

III.    CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aerotec International, Inc. v. Honeywell International, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ...................................................................... 2, 3, 4

*AFMS, LLC v. United Parcel Service Co.*,
  No. CV 10-5830, 2011 WL 13128436 (C.D. Cal. Nov. 23, 2011).......................... 6

*Beverage v. Apple, Inc.*,
  101 Cal. App. 5th 736 (Cal. Ct. App. 2024) ...................................................... 14

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
  65 F.3d 1406 (7th Cir. 1995) ............................................................................ 9

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com*,
  985 F. Supp. 2d 612 (S.D.N.Y. 2013).............................................................. 13

*California ex rel. Harris v. Safeway, Inc.*,
  651 F.3d 1118 (9th Cir. 2011) .......................................................................... 8

*Cascade Health Solutions v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) .......................................................................... 12

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001) ...................................................................... 13, 14

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ........................................................................ 15

*Crowder v. LinkedIn Corp.*,
  No. 22-CV-00237, 2023 WL 2405335 (N.D. Cal. Mar. 8, 2023)......................... 15

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) .......................................................................... 15

*Dream Big Media Inc. v. Alphabet Inc.*,
  No. 22-CV-02314-JSW, 2022 WL 16579322 (N.D. Cal. Nov. 1, 2022) ............... 2, 5

*Eastman Kodak Co. v. Image Technology Services, Inc.*,
  504 U.S. 451 (1992)......................................................................................... 4

*Epic Games, Inc. v. Apple Inc.*,
  559 F. Supp. 3d 898 (N.D. Cal. 2021) ............................................................. 10

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) .................................................................... 5, 8, 10

*Forsyth v. Humana, Inc.*,
    114 F.3d 1467 (9th Cir. 1997) ........................................................................... 10

*Garnica v. HomeTeam Pest Defense, Inc.*,
    230 F. Supp. 3d 1155 (N.D. Cal. 2017) ............................................................... 9

*Green Country Food Market, Inc. v. Bottling Group, LLC*,
    371 F.3d 1275 (10th Cir. 2004) ........................................................................... 7

*Image Technical Service, Inc. v. Eastman Kodak Co.*,
    903 F.2d 612 (9th Cir. 1990) ............................................................................... 3

*In re ATM Fee Litigation*,
    768 F. Supp. 2d. 984 (N.D. Cal. 2009) ............................................................ 5, 7

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust
    Litigation*,
    28 F.4th 42 (9th Cir. 2022) ................................................................................ 13

*In re Super Premium Ice Cream Distribution Antitrust Litigation*,
    691 F. Supp. 1262 (N.D. Cal. 1988) ................................................................... 6

*In re Zinc Antitrust Litigation*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016) .............................................................. 7, 8

*JBL Enterprises, Inc. v. Jhirmack Enterprises, Inc.*,
    509 F. Supp. 357 (N.D. Cal. 1981), *aff'd*, 698 F.2d 1011 (9th Cir. 1983) ............... 6

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................................. 15

*Newcal Industries, Inc. v. IKON Office Solutions*,
    513 F.3d 1038 (9th Cir. 2008) ............................................................................. 5

*Ohio v. American Express Co.*,
    585 U.S. 529 (2018) .......................................................................................... 7, 8

*Oliver v. SD3C LLC*,
    751 F.3d 1081 (9th Cir. 2014) ........................................................................... 14

*Pacific Steel Group v. Commercial Metals Co.*,
    No. 20-cv-07683, 2024 WL 3236705 (N.D. Cal. June 28, 2024) ......................... 8

*Packaging Systems, Inc. v. PRC-Desoto International, Inc.*,
    268 F. Supp. 3d 1071 (C.D. Cal. 2017) ............................................................... 3

*PLS.Com, LLC v. National Association of Realtors*,
    32 F.4th 824 (9th Cir. 2022) ................................................................................ 8

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Prime Healthcare Services, Inc. v. Service Employees International Union*,
   No. 11-cv-2652, 2013 WL 3873074 (S.D. Cal. July 25, 2013), *aff'd*, 642 F.
   App'x 665 (9th Cir. 2016) ................................................................................. 13

*PSI Repair Services, Inc. v. Honeywell, Inc.*,
   104 F.3d 811 (6th Cir. 1997) ............................................................................ 7

*RealPage, Inc. v. Yardi Systems, Inc.*,
   852 F. Supp. 2d 1215 (C.D. Cal. 2012) ........................................................... 4

*Rebel Oil Co. v. Atlantic Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ......................................................... 8, 10, 11, 12

*Reveal Chat Holdco LLC v. Facebook, Inc.*,
   No. 20-cv-00363, 2021 WL 1615349 (N.D. Cal. Apr. 26, 2021) ......................... 14

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
   471 F. Supp. 3d 981 (N.D. Cal. 2020) ............................................................. 15

*Ryman v. Sears, Roebuck & Co.*,
   505 F.3d 993 (9th Cir. 2007) ............................................................................ 14

*Safeway Inc. v. Abbott Laboratories*,
   761 F. Supp. 2d 874 (N.D. Cal. 2011) ............................................................. 10

*SaurikIT LLC v. Apple Inc.*,
   No. 22-16527, 2023 WL 8946200 (9th Cir. 2023) ........................................... 15

*Sheridan v. Marathon Petroleum Co.*,
   530 F.3d 590 (7th Cir. 2008) ............................................................................ 11

*Shields v. World Aquatics*,
   2024 WL 4211477 (9th Cir. Sept. 17, 2024) ..................................................... 8

*Sidibe v. Sutter Health*,
   4 F. Supp. 3d 1160 (N.D. Cal. 2013) ................................................................ 3

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ............................................................................ 9

*Streamcast Networks, Inc. v. Skype Technologies, S.A.*,
   547 F. Supp. 2d 1086 (C.D. Cal. 2007) ............................................................ 6

*Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*,
   875 F.2d 1369 (9th Cir. 1989) .......................................................................... 7

*Volkswagen Group of America, Inc. v. Smartcar, Inc.*,
   No. 21-cv-4895, 2024 WL 4312217 (N.D. Cal. Sept. 25, 2024) ......................... 7

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)......................................................................................................... 14

## TREATISES

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust
    Principles and Their Application  (Sept. 2021 update)................................................. 7, 9, 14

## I.    INTRODUCTION

Plaintiffs' opposition confirms that this remains a case in search of a viable antitrust theory. The original complaint alleged that iCloud Backup, which has always been the only solution for remotely backing up core data and files needed to restore an Apple device, somehow gives Apple a monopoly in a market for all cloud storage solutions on Apple devices.  This failed because, as Plaintiffs' original complaint admitted, there are numerous alternative cloud storage solutions available on Apple devices, and the pricing for iCloud+ is highly competitive.  Plaintiffs' Amended Complaint doubles down on that theory, but also advances a parallel—yet inconsistent—theory that iCloud faces *zero* competition, and instead comprises its own relevant antitrust "aftermarket." Not only are these two theories fundamentally at odds with each other, but neither can be squared with Plaintiffs' admissions that (i) there is no shortage of cloud storage options on Apple devices; (ii) non-cloud solutions for backing up core data and files exist; and (iii) Apple device owners are not required to use iCloud or iCloud Backup at all.  Plaintiffs' opposition fails to meaningfully confront these (admitted) realities, which warrant dismissal.

*First*, given their tying claim is infirm because no Apple device user has to use iCloud—either to backup core data or for cloud storage generally—Plaintiffs now pivot and contend that their claim is actually one for "negative" tying.  But neither the term "negative tying" nor the concept appears in the Amended Complaint.  Such a claim would fail anyway, as Apple does not condition the purchase of its devices on any agreement by users to forego alternatives to iCloud.

*Second*, in defending their aftermarket theory, Plaintiffs suggest that customers do not need to be locked-in to using the alleged aftermarket service or product (here, iCloud) by virtue of having purchased the foremarket product (an Apple device).  But that is precisely what the law requires.  Only in such a situation can the provider of the aftermarket good extract a monopoly price without any competitive restraint.  Here, as Plaintiffs admit, Apple device users are not required to use either iCloud Backup or purchase an iCloud+ subscription.  By definition, that means iCloud cannot be its own aftermarket.

*Third*, on their inconsistent, alternative theory that Apple instead monopolizes a broader market for all cloud storage solutions on Apple devices, Plaintiffs mostly reiterate their conclusory

allegations of "supracompetitive" prices, reduced output, and market share. Plaintiffs also ignore that any inference of monopoly power is precluded by their admission that iCloud+ pricing is competitive and disregard the law holding that margins alone are insufficient to plead that prices are supracompetitive. That is fatal to their ability to plead the monopoly power requirement.

*Fourth*, Plaintiffs cannot state a freestanding UCL claim under the "unfair" prong having failed to plead any Sherman Act violation.

*Last*, Plaintiffs cannot deny that this case fundamentally challenges a design decision made over a decade ago when Apple launched iCloud in 2011—and is thus untimely. Plaintiffs rely on cases involving covert antitrust conspiracies to suggest that later purchases of iCloud+ subscriptions restart the limitations period. But the law is clear that in monopolization cases like this one, the charging of an alleged "monopoly" price does not restart the statute of limitations.

The Court should dismiss the Amended Complaint with prejudice.

## II.    ARGUMENT

### A.    Whether Described as "Positive" or "Negative," Plaintiffs' Tying Claim Fails

Plaintiffs' new (and unpled) iteration of their tying claim fails. While "tying claims can be positive or negative, . . . '[t]he common element in both situations is that a seller explicitly or implicitly imposes conditions linking the sale of a tying product with the sale of the tied product." *Dream Big Media Inc. v. Alphabet Inc.*, No. 22-CV-02314, 2022 WL 16579322, at *3–4 (N.D. Cal. Nov. 1, 2022) (quoting *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016)) . Plaintiffs' claim does not fit either framework.

***"Positive" Tie.*** Plaintiffs' "positive" tying claim fails because they concede that *nearly fifty percent* of Apple device owners neither need nor pay for an iCloud+ subscription. AC ¶¶ 28–29, 67. For Plaintiffs' tying theory to hold water, it would require a scenario where users *must* buy iCloud (the alleged tied product) as a prerequisite of buying an Apple mobile device (the alleged tying product). *See* Mot. at 7–9. But Plaintiffs readily admit the contrary: that "consumers can buy smartphones and tablets without also purchasing or using any cloud storage." AC ¶ 40. And not only *can* users buy devices without purchasing iCloud storage, but Apple devices holders *do*: "approximately 30–48% of Apple users do not purchase an iCloud subscription (i.e., only use the

free 0-5GB).” *Id.* ¶ 67.  These concessions are fatal to Plaintiffs' tying claim.

*“Negative” Tie.*  The “negative” tying theory to which Plaintiffs now pivot is equally deficient.  “A negative tie ‘occur[s] when the customer promises not to take the tied product from the defendant's competitor, but courts ‘rarely encounter[ ]’ such a situation.'” *Aerotec*, 836 F.3d at 1178 (citation omitted).  Plaintiffs do not (and cannot) allege that Apple conditions the use of Apple devices on an agreement not to purchase or use storage solutions that compete with iCloud.  There is no such agreement.  And again, Plaintiffs concede the opposite: “Google Drive, Microsoft OneDrive and other cloud platforms *are available on Apple mobile devices*,” AC ¶ 80 (emphasis added), and Apple devices can be backed up “locally to a hard drive on a Mac or PC,” *id.* ¶ 76.[1]

Plaintiffs' “negative” tying theory also fails for the independent reason that it rests on their contrived single-brand aftermarket:  the allegedly tied product is “Full-Service Cloud Storage,” Opp'n at 7, where iCloud is the only product and Apple “enjoys a 100 percent share.” AC ¶¶ 10–11.  Because Plaintiffs fail to plead a single-brand aftermarket limited to iCloud, *see infra* Section II.B.1.a; Mot. to Dismiss at 10–13, ECF No. 27, their “negative” tying claim fails.  *See Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1084 (C.D. Cal. 2017) (dismissing tying claim for “fail[ure] to adequately define the tied product market”); *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1177 (N.D. Cal. 2013) (plaintiffs asserting tying “must identify the relevant markets and support their allegations with some facts to show that they are plausible”).

Plaintiffs' reliance on *Kodak* and *RealPage* is misplaced.  The negative tying claim in *Kodak* survived because Kodak conditioned the sale of aftermarket parts for its copiers upon an agreement by its customers to *not* use third-party service providers for their Kodak-branded copiers.  *See Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 619 (9th Cir. 1990).  In *RealPage*, the negative tying claim survived because the defendant's licensing agreement “prohibited [its] licensees from using any ‘contractor' to implement or host the [defendant's]

---

[1] Plaintiffs' suggestion that local storage “is a *different product* than the tied product” (Opp'n at 8) also does not move the needle.  Outside of Plaintiffs' contrived iCloud-only market, local storage is an alternative to iCloud backup.  AC ¶¶ 76–77, 115.  And local storage is not like the “self-service” option at issue in *Kodak*, which explicitly prohibited users from accessing separate competing third-party products.  Here, Plaintiffs admit local storage options are available on any computer (including non-Apple PCs) and free.  AC ¶ 91.

software, and defined 'contractor' broadly to include both the [plaintiff] RealPage Cloud and any other potential vertical cloud services providers." *RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1220 (C.D. Cal. 2012). Plaintiffs do not allege any such agreement exists here.

*Kodak* and *RealPage* are inapposite for the additional reason that the only alternative to the tied product in those cases was self-service, an unrealistic option for many consumers. *See Eastman Kodak Co. v. Image Technology Services, Inc.*, 504 U.S. 451, 463 (1992); *RealPage*, 852 F. Supp. 2d at 1224. Moreover, in those cases, users had to use one of those two alternatives—the tied product or self-service—because their copiers and software (the tying products) would otherwise be inoperable. Here, however, Plaintiffs admit that there are alternatives to iCloud: "every major technology company" and "numerous cloud-storage specialists" offer cloud storage options on Apple's devices. *See, e.g.*, AC ¶¶ 4, 32, 80, 94. As explained above, Plaintiffs also concede that nearly *fifty percent* of Apple device owners do not use or pay for an iCloud+ subscription. It follows from Plaintiffs' concessions that the readily available alternatives to iCloud are realistic options consumers use and/or that consumers can elect not to use a cloud service product—and still have a fully functioning Apple mobile device.

Plaintiffs are left with only conclusory allegations regarding Apple's purported conduct toward competitors and that "Apple prevents rival cloud platforms from offering a full-service cloud solution that can compete effectively against iCloud." AC ¶ 34. Such claims are contradicted by Plaintiffs' allegations elsewhere in the Amended Complaint regarding cloud storage alternatives offered by rivals like Google, AC ¶¶ 4, 32, 80, 94, and are in any event insufficient to plead negative tying. *See Aerotec*, 836 F.3d at 1178 ("We decline to stretch the tying construct to accommodate the claim that Honeywell's conduct toward third party servicers . . . acts as an effective, or 'de facto,' condition on sale . . . ."). Plaintiffs' tying claim fails.

## B.    Plaintiffs Fail to Plead Monopolization

### 1.    Plaintiffs Fail to Plead Monopolization Claims Based on an Alleged Market Comprised of "Full-Service Cloud Storage on Apple Mobile Devices"

Plaintiffs' monopolization claims based on a market limited to iCloud fail because iCloud is not a single-brand aftermarket. Plaintiffs argue that the Court need not "reach[] market

definition" where "monopoly power can be established with direct evidence," but this misunderstands the law. Opp'n at 2, 9.

### a.    iCloud Is Not a Single-Brand Aftermarket

Plaintiffs' "preferred" market for "Full-Service Cloud Storage" on Apple mobile devices is supposedly limited to iCloud, on the basis that only iCloud can back up core app data and device settings. Opp'n at 2, 12. Plaintiffs' attempt to shoehorn this fact into the narrow case law on single-brand aftermarkets fails as a matter of law. Plaintiffs' opposition—like the Amended Complaint—largely recites the legal elements of an aftermarket claim. *See* Opp'n at 14–16. But recitations of the elements set forth in *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023), and *Newcal Indus., Inc. v. IKON Off. Sol.*, 513 F.3d 1038 (9th Cir. 2008), are not enough to plead an aftermarket. *See Epic*, 67 F.4th at 977 ("[T]he aftermarkets inquiry does not end as soon as a plaintiff checks the *Kodak*-based boxes related to consumer knowledge, information costs, and switching costs."); *Dream Big Media*, 2022 WL 16579322, at *2 ("[F]ormulaic recitation of the elements of a cause of action will not do."). Stepping back and focusing on the rare circumstances in which aftermarkets arise, Plaintiffs do not (and cannot) allege that iCloud is its own market.

True single-brand aftermarkets arise in situations like *Kodak* and *Newcal*, where "[o]nce a consumer buys . . . a good, like a photocopier, [the consumer] is 'locked in' to purchasing compatible parts and service for a considerable length of time, given the expense and difficulty of buying a new photocopier." *In re ATM Fee Litig.*, 768 F. Supp. 2d 984, 997 (N.D. Cal. 2009). "In those circumstances, market imperfections prevent consumers from imposing market discipline in the derivative market because of the difficulty of switching among competitors in the primary market." *Id.*

That is nothing like what Plaintiffs allege, or can allege, with respect to iCloud. Consumers who buy an iPhone or any other Apple device are not required to use iCloud Backup or iCloud, or to buy an iCloud+ subscription. Plaintiffs admit this throughout the Amended Complaint, alleging that "approximately 30–48% of Apple users do not purchase an iCloud subscription," AC ¶ 67, that "Apple mobile device holders can select from other cloud-based storage providers, including Google Drive, Sync.com, pCloud, and others," *id.* ¶ 32, and that "many well-known technology

firms [are] offering cloud storage products that are available on Apple's mobile devices," *id.* ¶ 94.

The fact that iCloud is the only cloud-based solution that can back up "Restricted Files" does not somehow make it an aftermarket. Not only do Plaintiffs admit that there are non-cloud alternatives to iCloud Backup, but "unique attributes and components" that allegedly make iCloud Backup "more attractive and efficient" do not distinguish it from other non-cloud alternatives that "permit users to accomplish the same basic task." *Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1095 (C.D. Cal. 2007) (rejecting plaintiff's argument for single-brand aftermarket of "FastTrack" internet peer-to-peer (P2P) search and download product on the basis that it "possesse[d] some unique attributes and components that may make it more attractive and efficient"); *In re Super Premium Ice Cream Distrib. Antitrust Litig.*, 691 F. Supp. 1262, 1268 (N.D. Cal. 1988), *aff'd* 895 F.2d 1417 (9th Cir. 1990) ("Courts have repeatedly rejected efforts to define markets by price variances or product quality variances."); *JBL Enters., Inc. v. Jhirmack Enters., Inc.*, 509 F. Supp. 357, 371 (N.D. Cal. 1981), *aff'd*, 698 F.2d 1011 (9th Cir. 1983) ("A distinct submarket . . . does not come into existence, however, simply because particular brands may be distributed exclusively through [certain] outlets."). Plaintiffs allege that "[c]loud storage . . . does away with physical hard drives and other storage that require a physical connection to port data to and from a device." AC ¶ 70. But this is at best a distinction on the basis of product quality—not functionality—which legally is not enough to isolate iCloud into its own market.

Plaintiffs' aftermarket claim otherwise fails because they do not and cannot plead that Apple device users are locked-in to using iCloud. Plaintiffs instead argue that an aftermarket does not require that users actually be locked-in to using the claimed aftermarket service or product. Opp'n at 16–17. That is incorrect. The key underlying condition for a single brand of a product to be its own aftermarket is that customers must be locked-in to using (and purchasing) the aftermarket service or parts (iCloud) because they have purchased the foremarket product (an Apple device). *See AFMS, LLC v. United Parcel Serv. Co.*, No. CV 10-5830, 2011 WL 13128436, at *19 (C.D. Cal. Nov. 23, 2011) ("The [aftermarket] cases hold that whether a viable antitrust claim exists turns on whether, by buying the defendant's primary product, the customers knowingly and voluntarily agreed to be locked in to using only the defendant's services in the

aftermarket."); *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1283 (10th Cir. 2004) ("Because Kodak equipment owners were locked into Kodak parts and services, Kodak parts and services were not interchangeable with the parts and services of other manufacturers."). Plaintiffs cannot escape the admissions that Apple device owners are not required to (and many do not) use iCloud. Because the purchase of an Apple device is not conditioned upon the use of iCloud, this case does not present an aftermarket situation.[2]

### b.    Plaintiffs Must Plead a Plausible Relevant Market

Plaintiffs alternatively suggest that they need not plead a relevant market *at all* because they have pled direct evidence of monopoly power. Opp'n at 9. But "defining the relevant market is indispensable to a monopolization claim." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir. 1989). This is because, "[w]ithout a definition of [the] market[,] there is no way to measure [the defendant's] ability to lessen or destroy competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018). Courts therefore reject the notion that a plaintiff alleging monopolization can avoid pleading a relevant market simply by alleging direct evidence of monopoly power. *See, e.g.*, *Volkswagen Grp. of Am., Inc. v. Smartcar, Inc.*, No. 21-cv-4895, 2024 WL 4312217, at *6 n.4 (N.D. Cal. Sept. 25, 2024) ("[W]hile 'direct evidence' of supracompetitive pricing and restricted output can sometimes establish market power, it does not eliminate the need to accurately define the relevant market . . . ." (citation omitted)); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 378 (S.D.N.Y. 2016) (granting motion to dismiss; explaining that a "plaintiff cannot escape proving her claims with reference to a particular market even if she intends to proffer direct evidence of controlling prices or excluding competition" (citation omitted)).

None of the cases Plaintiffs cite holds otherwise. *See* Opp'n at 9. In *Epic*, the Ninth Circuit

---

[2] Because there is no lock-in, Plaintiffs' arguments and allegations about the purported switching costs of moving from Apple to non-Apple devices are irrelevant. Plaintiffs' contention that the Ninth Circuit does not require a change in policy for an aftermarket (Opp'n at 16) is also irrelevant given their admission that customers are not locked-in to using iCloud—for backing up "Restricted Files" or any other files. Lock-in is a "precondition to market power [in an aftermarket]." Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ("Areeda") ¶ 564b (4th ed. 2021); *see also ATM Fee*, 768 F. Supp. 2d at 997; *PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 820 (6th Cir. 1997) ("[A]n antitrust plaintiff cannot succeed on a *Kodak*-type [aftermarket] theory when the defendant has not changed its policy after locking-in some of its customers . . . .").

acknowledged two exceptions to the "threshold step" of "defining the relevant market in which the alleged restraint occurs": (1) cases alleging *per se* violations of the antitrust laws, and (2) cases involving restraints that are so obviously anticompetitive that they warrant only a "quick look" rule of reason analysis.[3] 67 F.4th at 974–75, 974 n.6. Plaintiffs allege neither, and nothing in *Epic* supports the proposition that pleading direct evidence of monopoly power invariably relieves a plaintiff of having to allege a plausible relevant market. *See Pac. Steel Grp. v. Com. Metals Co.*, No. 20-cv-07683, 2024 WL 3236705, at *5 (N.D. Cal. June 28, 2024) (analyzing *Epic* and rejecting the same argument Plaintiffs make here). *PLS.com* and *Shields* likewise do not support Plaintiffs; unlike here, those cases involved horizontal restraints. *See PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 837 (9th Cir. 2022) (*per se* group boycott); *Shields v. World Aquatics*, No. 23-15092, No. 23-15156, 2024 WL 4211477, at *2 (9th Cir. Sept. 17, 2024) ("quick look" Section 1 case involving a "naked restraint on price and output"); *Ohio v. Am. Express Co.*, 585 U.S. at 543 n.7 (because "horizontal restraints involve agreements between competitors not to compete in some way," a court may "not need to precisely define the relevant market to conclude that [horizontal] agreements [are] anticompetitive").

## 2. Plaintiffs Fail to Plead Monopolization Claims Based on a Broader Market for All Cloud Storage Platforms on Apple Devices

### a. No Direct Evidence

"[D]irect proof" of monopoly power is proof of "restricted output and supracompetitive prices." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Such proof is "absent" in "most cases," *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d at 377, and is not pled here.

***No Supracompetitive Prices.*** Plaintiffs rely entirely on their gross margin calculation to plead supracompetitive prices, but they do not grapple with the fundamental flaws Apple identified in their calculation. *See* Opp'n at 9–11; Mot. at 15. Plaintiffs do not dispute that their math rests on the implausible assumption that Apple incurs *zero* costs beyond third-party storage. *See* Opp'n at 10. And they undermine their own calculation—which is based on the storage costs Apple pays

---

[3] "Quick look" applies where "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *Cal. ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir. 2011).

to *Google only*, AC ¶ 60—by now arguing that Apple pays not only Google but also "*other third parties* for storage infrastructure." Opp'n at 10 (emphasis added). Plaintiffs' arguments only highlight the problems with trying to use margins to infer monopoly power. *See* Areeda ¶ 504b ("The excess of price over marginal cost measures market power only *if* the 'correct' marginal costs are chosen, but that choice is often not obvious and frequently arbitrary.").

Nor do Plaintiffs address the case law in this District that "inferring market power from gross margins is a dicey proposition . . . ." *Garnica v. HomeTeam Pest Def., Inc.*, 230 F. Supp. 3d 1155, 1159 (N.D. Cal. 2017). Instead, they attempt to distinguish the Seventh Circuit's decision in *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1412 (7th Cir. 1995)—in which Judge Posner explained that firms may be profitable due to superior efficiency, not market power—by claiming that "Apple has not built out an infrastructure to achieve cost efficiencies." Opp'n at 10. That is conclusory, speculative, and again based on the implausible assumption that Apple's *only* costs to provide iCloud+ are storage fees paid to third parties. *Id.*

Plaintiffs argue that the chart in Apple's Motion—showing that iCloud+ pricing is comparable to the competition and therefore not supracompetitive—"interjects premature factual questions" and "does not reveal what *other* cloud providers charge" at "effective rate[s]." Opp'n at 11. But the information in Apple's chart is the information Plaintiffs incorporate by reference in the Amended Complaint. *See* AC ¶ 109 n.51; Mot. at 16 & n.6. And it establishes that iCloud+ pricing is on par with—and often lower than—competitors' pricing. The mere fact that "at each storage tier" there may be "more cost-effective options," or that "Apple provides only 5GB of free storage" while some competitors provide more, says nothing about whether Apple's prices are supracompetitive. Opp'n at 11; *see Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013) ("[T]he bare allegation that [a competitor] charged a lower introductory price does not mean that Apple charged supracompetitive prices when such variations in pricing exist even in competitive markets.").[4] At bottom, Plaintiffs ask the Court to find that iCloud+ prices are supracompetitive

---

[4] Plaintiffs take issue with Apple's chart because "the GB ranges for storage tiers do not align across platforms." Opp'n at 11. True enough (not every cloud storage competitor prices uses the same GB increments), but Plaintiffs do not dispute that simple math illustrates iCloud+ pricing is competitive. For the $1.67/mo 50 GB Google Drive plan, based on Apple's 50GB and 200GB

1   based solely on a dubious calculation of Apple's margins, when Apple's competitors price their

2   cloud storage products similarly.  More is required.

3       ***No Restricted Output.***  With respect to restricted output, Plaintiffs first argue that they need

4   not plead restricted output at all.  Opp'n at 12.  That is incorrect:  even where "plaintiffs submit[]

5   evidence that [a defendant] routinely charged higher prices than [competitors] while reaping high

6   profits," if there is "no accompanying showing of restricted output," then "the plaintiffs have failed

7   to present direct evidence of market power."  *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1476 (9th

8   Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir.

9   2012); *see also Rebel Oil*, 51 F.3d at 1434 ("[E]vidence of restricted output *and* supracompetitive

10  prices . . . is direct proof of . . . the actual exercise of market power." (emphasis added)); *Safeway

11  Inc. v. Abbott Lab'ys* 761 F. Supp. 2d 874, 887 (N.D. Cal. 2011) (collecting cases holding that

12  "supracompetitive pricing, on its own, is not direct evidence of monopoly power").

13      Plaintiffs again rely on *Epic Games*, but they admit that the decision did not address direct

14  evidence of *monopoly power*.  Opp'n at 12.  Instead, *Epic Games* discussed direct evidence of the

15  *anticompetitive effects* of an alleged anticompetitive restraint in a defined relevant market under

16  the rule of reason.  67 F.4th at 983–84.  This is an important distinction: whereas increased prices

17  standing alone (once a relevant market is established) can be evidence of anticompetitive effects,

18  a company could increase its prices without having monopoly power.  Apple's argument here is

19  *not* about the role of increased prices for establishing anticompetitive effects under the rule of

20  reason; it is about the role of supracompetitive prices in pleading monopoly power.  *See Epic

21  Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1031, 1036–37 (N.D. Cal. 2021) (finding "direct

22  evidence" of "anticompetitive effects" in the form of high commission rate for a Section 1 claim,

23  but the "lack of evidence of decreased output" in the same market "fatal in demonstrating

24  monopoly power using direct evidence"), *aff'd in relevant part*, 67 F.4th at 984–85, 998–99.

25      Plaintiffs fail to allege reduced output in a market for all cloud storage solutions on Apple

26  mobile devices.  *See* Opp'n at 12.  Direct evidence requires showing that a defendant "restrict[ed]

27

28  _____

    tiers, the estimated cost of a hypothetical 100 GB iCloud+ tier would be $1.6567/mo—nearly
    identical to Google's $1.665/mo.

1    its own output," thereby "restrict[ing] marketwide output and, hence, increas[ing] marketwide

2    prices." *Rebel Oil*, 51 F.3d at 1434; *see Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590, 594

3    (7th Cir. 2008) (explaining connection between "the price increase" and "reduc[tion] [in] the

4    seller's output" when assessing market power).  Plaintiffs do not argue that Apple restricted its

5    *own* cloud storage output.  Their direct evidence claim fails for this reason alone.

6         Plaintiffs' argument still fails even if competitors' output is considered.  Plaintiffs contend

7    that, if third-party cloud storage service providers could back up core app data and device files,

8    they "could meaningfully compete with iCloud" and would "appeal to a larger segment of Apple's

9    users" (including "untapped" users who do not currently purchase iCloud+), which would

10   "generat[e] more cloud service transactions overall."  Opp'n at 12.  But Plaintiffs admit that third

11   parties already *do* "meaningfully compete" with iCloud—in fact, "every major technology

12   company" and "numerous cloud-storage specialists" offer alternative cloud storage options on

13   Apple devices.  AC ¶¶ 4, 32, 94.  Plaintiffs also admit that some users have "multiple cloud storage

14   accounts," *id.* ¶ 111, which means that, even if certain "untapped" (i.e., non-iCloud+) users might

15   start using a non-Apple service to back up "Restricted Files," that may *not* increase "cloud service

16   transactions overall" because those users may already use non-Apple storage options.

17            *b.    No Indirect Evidence*

18        Plaintiffs also fail to plead indirect evidence of monopoly power, which requires that they

19   plausibly allege that (a) Apple has a dominant share of the alleged market and (b) there are

20   significant barriers to entry and expansion in that market.  *Rebel Oil*, 51 F.3d at 1434.

21        ***Plaintiffs' Fabricated Market Share Calculation.***  Plaintiffs do not offer any meaningful

22   response to the critical flaws in their market share calculation.  *See* Opp'n at 17–18.  They instead

23   argue that no explanation of market share is required, so the Court can ignore the explanation they

24   provided and the inherent problems with it that Apple identified.  *Id.* at 18.  Plaintiffs must answer

25   for the allegations in their Amended Complaint—and they make no sense.  As explained in Apple's

26   Motion, Plaintiffs' market share calculation assumes that someone who uses iCloud is *not* also

27   using other cloud storage services.  Mot. at 17–18.  That is contradicted by Plaintiffs' own

28   allegations that certain consumers have "multiple cloud storage accounts."  AC ¶ 111.  These

contradictions confirm the implausibility of their market share calculations.[5]

**No Barriers to Entry.**  Plaintiffs acknowledge that they must plausibly allege barriers to entry to plead indirect evidence of monopoly power.  Opp'n at 19.  But they cannot credibly argue that "major technology compan[ies]" like Google and "cloud-storage specialists" like DropBox somehow "lack the capacity to expand their output" of cloud storage services on Apple devices. *Rebel Oil*, 51 F.3d at 1439; AC ¶¶ 4, 32, 94.  So Plaintiffs revert to their flawed market share figure, arguing that Apple's alleged 72.5% share means "entrants are not taking business away from Apple in any meaningful extent."  Opp'n at 19.  This argument improperly collapses the market share and barriers to entry inquiries.  Apple's alleged market share says nothing about whether new rivals are "barred from entering" the market (they are not), nor about whether existing competitors like Google could "expand their output" such as by offering a cheaper product (they can and do).  *Rebel Oil*, 51 F.3d at 1439.  Plaintiffs also conflate the alleged markets:  they claim that "would-be rivals simply cannot offer a full-service cloud solution," Opp'n at 19, but that is meaningless in a market for *all* cloud storage solutions on Apple devices.

<em>c.       No Anticompetitive Conduct</em>

Plaintiffs' monopolization claims require plausible allegations that the restraint—i.e., the limitation on backing up core app data and device settings to iCloud only—"impair[s] the opportunities of rivals" to compete in a market for "*all* cloud storage on Apple mobile devices." *See Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008); AC ¶ 105.  But Plaintiffs admit that rivals can and do compete vigorously in this market:  even though only iCloud Backup can back up core app data and device settings, competitors like "Google Drive, Sync.com, [and] pCloud," along with "every major technology company," not only compete with iCloud but price their products similarly to iCloud and to one another.  AC ¶¶ 4, 32; *see supra* Section II.B.2.a. There are no plausible allegations that Apple has impaired its rivals' opportunities in this broader—and plainly competitive—market.

---

[5] Plaintiffs claim that if iCloud users also use other cloud storage platforms then "the products are not substitutes, but rather 'complements,'" and their iCloud-only market must be correct.  Opp'n at 18–19.  That is nonsense.  Consumers have both Netflix and Hulu accounts; that does not mean Netflix and Hulu are each in their own market.

1    Plaintiffs again rely on their fabricated market share figure.  They claim that "other cloud

2    platforms" are not "engaging in unrestrained competition with iCloud" because iCloud allegedly

3    has "70–80% market share."  Opp'n at 20.  But that is circular and again improperly collapses the

4    elements of Plaintiffs' claims:   alleging high market share to support indirect evidence of

5    monopoly power does not somehow relieve Plaintiffs of their burden to plausibly allege

6    anticompetitive conduct.  Plaintiffs fail to plead anticompetitive conduct.

7                    3.    Plaintiffs Do Not Allege the Specific Intent for Attempted Monopolization

8    Plaintiffs point to three allegations as sufficient to plead Apple's specific intent to

9    monopolize:  (1) Apple "achieved market dominance by rigging the competitive playing field so

10   that only iCloud can win," AC ¶ 4; (2) "Apple's actions are designed to destroy competition as

11   alleged herein," *id.* ¶ 150; and (3) "Apple has a specific intent to monopolize," *id.* ¶ 156.  The first

12   says nothing about Apple's specific intent; it simply restates the assertion that only iCloud can

13   back up core app data and device settings, dressed up in antitrust buzzwords.  The second and third

14   allegations are conclusory recitations of the legal elements of an attempted monopolization claim,

15   which are insufficient to survive a motion to dismiss.  *See, e.g.*, *Prime Healthcare Servs., Inc. v.*

16   *Serv. Emps. Int'l Union*, No. 11-cv-2652, 2013 WL 3873074, at *15 (S.D. Cal. July 25, 2013),

17   *aff'd*, 642 F. App'x 665 (9th Cir. 2016) (allegation that defendants "purposefully engaged" in

18   anticompetitive conduct "with the specific design and purpose to raise the costs of competitors"

19   was insufficient); *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com*, 985 F. Supp. 2d 612, 623

20   (S.D.N.Y. 2013) ("merely reciting" specific intent to monopolize is grounds for dismissal).

21   Plaintiffs have not alleged the requisite specific intent for an attempted monopolization claim.

22            **C.    Plaintiffs Fail to Plead a UCL Claim**

23   Plaintiffs concede that "to prevail under the 'unlawful' prong of the UCL, Plaintiffs must

24   establish a violation of some other legal regime."  Opp'n at 21.  Because Plaintiffs fail to state

25   tying or monopolization claims, their "unlawful" UCL claim fails.  *In re Dynamic Random Access*

26   *Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 54 n.7 (9th Cir. 2022).

27   Plaintiffs' argument that a freestanding UCL claim can persist where the *same* underlying

28   conduct does not violate the antitrust laws is also wrong.  *See Chavez v. Whirlpool Corp.*, 93 Cal.

App. 4th 363, 375 (2001) (a failed antitrust claim cannot serve as the basis for an unfair business practice under the UCL).  While "an 'unfair' business act or practice need not violate an antitrust law to be actionable under the UCL," *Beverage v. Apple, Inc.*, 101 Cal. App. 5th 736, 755 (Cal. Ct. App. 2024), *review denied* (July 10, 2024), "[i]f the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—*the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers*," *Chavez*, 93 Cal. App. 4th at 375 (emphasis added) (citation omitted).  That is exactly the case here.  Plaintiffs chose to plead their Sherman Act claims and UCL claim as completely overlapping.  Because Plaintiffs' antitrust claims fail, their "unfair" UCL claim likewise fails.  *Id*.[6]

## D.    Plaintiffs' Sherman Act and UCL Claims Are Time-Barred

To circumvent the statute of limitations, Plaintiffs aver that "Apple's continued imposition of supracompetitive iCloud prices—which all Plaintiffs continue to pay—can be considered a separate overt act that restarts the limitations period with each purchase."  Opp'n at 25.  But Plaintiffs' supporting authorities all "involve allegations of illegal price-fixing, a different antitrust violation than what Plaintiffs have alleged here"—monopolization and tying.  *Reveal Chat Holdco LLC v. Facebook, Inc.*, No. 20-cv-00363, 2021 WL 1615349, at *7 (N.D. Cal. Apr. 26, 2021).[7] This distinction matters because in the context of a price-fixing conspiracy, the continued charging of supracompetitive prices generally requires "a series of ongoing meetings to correct a cartel and adjust its prices," which are overt acts sufficient to restart the statute of limitations.  Areeda ¶ 320c.  But this is not a price-fixing conspiracy case, and "[c]ontinuing violations have not been found outside the . . . Sherman Act conspiracy context, . . . because acts that 'simply reflect or implement

---

[6] Plaintiffs' reliance on *Epic* is unavailing.  The California Court of Appeal in *Beverage* confirmed the Ninth Circuit's analysis in *Epic* was incorrect, and instead followed longstanding state law doctrine described in *Chavez*.  "[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts."  *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007).  Under *Beverage*, Plaintiffs' UCL claim falls with their Sherman Act claims.

[7] *Cf. Oliver v. SD3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) ("[E]ach time a defendant sells its *price-fixed* product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act." (emphasis added)); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 339 (1971) ("[I]f a plaintiff feels the adverse impact of an antitrust *conspiracy* on a particular date . . . ." (emphasis added)).

1    a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do

2    not restart the statute of limitations.'" *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039,

3    1052 (8th Cir. 2000) (citation omitted).  Indeed, "[i]f the mere charging of a monopoly price

4    constitutes a 'continuing violation' . . . , then we have indefinitely lengthened the statute of

5    limitation on claims of successful monopolization."   Areeda ¶ 320c.   That is because a

6    "monopolist's simple charging of its profit-maximizing price is a naturally expected consequence

7    of a monopoly and can hardly be said to be independent." *Id.* ¶ 320c4; *Crowder v. LinkedIn Corp.*,

8    No. 22-CV-00237, 2023 WL 2405335, at *3 (N.D. Cal. Mar. 8, 2023) (rejecting "that each

9    payment of a monopoly price, on its own, gives rise to a continuing violation," as "Plaintiffs'

10   interpretation would unduly expand the continuing violations exception in the antitrust context").

11          The only conduct complained of is a product design decision made by Apple more than a

12   decade ago.  Beyond the "continued imposition of supracompetitive iCloud prices," Opp'n at 25,

13   Plaintiffs do not allege any new overt acts that restart the limitations period.  *See MedioStream,*

14   *Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1105, 1107 (N.D. Cal. 2012) (dismissing claims

15   filed in 2007 because the limitations period "began to run in 2002, when Microsoft allegedly

16   launched the Windows Media platform," and plaintiff "alleges no *additional* anticompetitive

17   conduct associated with subsequent releases of . . . Windows"); *SaurikIT LLC v. Apple Inc.*, No.

18   22-16527, 2023 WL 8946200, at *1 (9th Cir. 2023) (neither new product sales nor longstanding

19   App Store contractual terms set in 2008 restarted the limitations period for claims brought in 2020).

20          Finally, Plaintiffs' reliance on *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959–60 (9th Cir.

21   2001) to suggest that laches does not bar their injunctive relief claim fails, as they "do not articulate

22   why *Danjaq*"—a copyright case—"should apply in the antitrust context."  *Reveal Chat Holdco,*

23   *LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 991–92 (N.D. Cal. 2020) (applying laches to claims

24   regarding Facebook's integration of Instagram and WhatsApp following their acquisition in 2012

25   and 2014).  Plaintiffs seek to undermine a 13-year-old policy and undo iCloud's security and

26   privacy foundation.  Laches applies to their request for injunctive relief.

27   **III.    CONCLUSION**

28          For the foregoing reason, the Court should dismiss the Amended Complaint with prejudice.

1    Dated:  November 8, 2024                    LATHAM & WATKINS LLP

2

3                                               By:    /s/Aaron T. Chiu
                                                       Aaron T. Chiu

4
                                                Belinda S Lee (SBN 199635)
5                                                belinda.lee@lw.com
                                                Sarah M. Ray (SBN 229670)
6                                                sarah.ray@lw.com
                                                Aaron T. Chiu (SBN 287788)
7                                                aaron.chiu@lw.com
                                                Alicia R. Jovais (SBN 296172)
8                                                alicia.jovais@lw.com
                                                505 Montgomery Street, Suite 2000
9                                               San Francisco, California 94111-6538
                                                Telephone: +1.415.391.0600
10                                              Fax: +1.415.395.8095

11                                              *Attorneys for Defendant Apple Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28