1

2                    UNITED STATES DISTRICT COURT

3              FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                         SAN JOSE DIVISION

5

6    JULIANNA FELIX GAMBOA AND
     THOMAS DOROBIALA, INDIVIDUALLY
     AND ON BEHALF OF ALL OTHERS      CASE NO.  CV 24-01270 EKL
7    SIMILARLY SITUATED,
                                      SAN JOSE, CALIFORNIA
8              PLAINTIFFS,
                                      DECEMBER 11, 2024
9        VS.
                                      PAGES 1 - 43
10   APPLE INC.,

11             DEFENDANT.

12

13                    TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE EUMI K. LEE
14                 UNITED STATES DISTRICT JUDGE

15    A-P-P-E-A-R-A-N-C-E-S

16    FOR THE PLAINTIFFS:  HAGENS BERMAN SOBOL SHAPIRO LLP
                           BY:  BEN M. HARRINGTON
17                         715 HEARST AVENUE, SUITE 202
                           BERKELEY, CALIFORNIA 94710
18

19    FOR THE DEFENDANT:  LATHAM & WATKINS LLP
                          BY:  AARON CHIU
20                             SARAH RAY
                               ALICIA JOVAIS
21                        505 MONTGOMERY STREET, SUITE 2000
                          SAN FRANCISCO, CALIFORNIA 94111
22

     OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, RMR, CRR
23                              CERTIFICATE NUMBER 8074

24       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
     TRANSCRIPT PRODUCED WITH COMPUTER.
25

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
|       | 1  | SAN JOSE, CALIFORNIA                        DECEMBER 18, 2024          |
|       | 2  |                                                                       |
|       | 3  |                    P R O C E E D I N G S                              |
| 11:31AM | 4  |      (COURT CONVENED AT 11:31 A.M.)                                  |
| 11:31AM | 5  |             THE CLERK:  FOR OUR LAST CASE TODAY WE'RE CALLING        |
| 11:31AM | 6  | NUMBER 5:24-CV-1270 EKL, GAMBOA VERSUS APPLE INC.                     |
| 11:31AM | 7  |             COUNSEL, PLEASE COME TO THE PODIUM AND STATE YOUR        |
| 11:31AM | 8  | APPEARANCES ON THE RECORD STARTING WITH COUNSEL FOR THE              |
| 11:31AM | 9  | PLAINTIFF.                                                            |
| 11:31AM | 10 |             MR. HARRINGTON:  GOOD MORNING, YOUR HONOR.              |
| 11:31AM | 11 | BEN HARRINGTON OF HAGENS BERMAN FOR PLAINTIFFS.                       |
| 11:31AM | 12 |             THE COURT:  GOOD MORNING.                               |
| 11:31AM | 13 |             MR. CHIU:  GOOD MORNING, YOUR HONOR.                    |
| 11:31AM | 14 | AARON CHIU OF LATHAM & WATKINS FOR DEFENDANT APPLE, AND              |
| 11:31AM | 15 | WITH ME ARE SARAH RAY AND ALICIA JOVAIS.                             |
| 11:31AM | 16 |             THE COURT:  GOOD MORNING TO YOU.                        |
| 11:31AM | 17 |      ALL RIGHT.  ONE MOMENT, COUNSEL.  MY COMPUTER IS DOING          |
| 11:31AM | 18 | UPDATES, SO I NEED TO GET THE OLD FASHIONED NOTEPAD UP.              |
| 11:32AM | 19 |      ALL RIGHT.  WE'RE HERE THIS MORNING ON DEFENDANT'S MOTION       |
| 11:32AM | 20 | TO DISMISS.  I SENT A LENGTHY TENTATIVE IN TERMS OF WHERE THE        |
| 11:32AM | 21 | COURT WAS HEADED AND SOME QUESTIONS WHICH I HAD GENERALLY AND        |
| 11:32AM | 22 | HAD INDICATED THAT I THOUGHT THIS ARGUMENT WOULD TAKE A BIT OF       |
| 11:32AM | 23 | TIME.  SO 20 MINUTES PER SIDE AS A GUIDEPOST.                        |
| 11:32AM | 24 |      GIVEN THAT IT IS DEFENDANT'S MOTION, WOULD THE DEFENDANT        |
| 11:32AM | 25 | LIKE TO BEGIN?                                                        |

11:32AM 1          MR. CHIU:  SURE.

11:32AM 2          THE COURT:  OKAY.

11:32AM 3          MR. CHIU:  MAY IT PLEASE THE COURT, THERE ARE REALLY

11:32AM 4  FOUR KEY FACTS AND ADMISSIONS IN THE COMPLAINT THAT DOOM

11:32AM 5  PLAINTIFFS' CASE AND THEORIES.

11:32AM 6          THE FIRST IS THAT NO ONE WITH AN APPLE DEVICE IS REQUIRED

11:32AM 7  TO USE ICLOUD WHETHER TO BACK UP WHAT THEY CALL THE RESTRICTED

11:32AM 8  FILES NEEDED TO RESTORE THEIR IPHONE OR APPLE DEVICE OR FOR

11:33AM 9  CLOUD STORAGE MORE GENERALLY.

11:33AM 10         THE SECOND IS THAT NO ONE HAS TO BUY OR PAY FOR AN ICLOUD

11:33AM 11 SUBSCRIPTION.  PLAINTIFFS ADMIT THIS THROUGHOUT THE COMPLAINT

11:33AM 12 THAT THERE ARE MANY CUSTOMERS, OWNERS OF APPLE DEVICES THAT USE

11:33AM 13 ALTERNATIVES, AND MANY, INCLUDING 30 TO 40 PERCENT, OF APPLE

11:33AM 14 DEVICE OWNERS DON'T PAY FOR ICLOUD AT ALL.

11:33AM 15         THE THIRD IS THAT THERE ARE NON-CLOUD ALTERNATIVES FOR

11:33AM 16 BACKING UP THE CORE DEVICE FILES AND RESTRICTED FILES NEEDED TO

11:33AM 17 RESTORE AN APPLE DEVICE.  THESE INCLUDE KIND OF PLUG-IN

11:33AM 18 ALTERNATIVES, BACKING UP ON MAC OR PC.

11:33AM 19         AND THEN THE LAST ONE IS THAT THERE ARE NUMEROUS CLOUD

11:33AM 20 STORAGE OPTIONS ON APPLE DEVICES.  THE COMPLAINT ACKNOWLEDGES

11:33AM 21 THAT THERE ARE A NUMBER OF OTHER COMPETITORS IN THE SPACE THAT

11:33AM 22 HAVE OFFERED CLOUD STORAGE SOLUTIONS ON APPLE DEVICES,

11:33AM 23 INCLUDING GOOGLE, AMAZON, MICROSOFT ONE DRIVE, DROPBOX, JUST TO

11:34AM 24 NAME A FEW, AND MANY OTHERS.

11:34AM 25         AND REALLY, THESE REALITIES WITH RESPECT TO ICLOUD AND THE

11:34AM  1      PRODUCT REALLY DOOM ALL OF PLAINTIFFS' ANTITRUST CLAIMS.  AND

11:34AM  2      I'LL START WITH THE TYING CLAIM.

11:34AM  3                  THE COURT:  OKAY.

11:34AM  4                  MR. CHIU:  TYING REQUIRES THAT THE DEFENDANT

11:34AM  5      ACTUALLY CONDITION, AS A CONDITION OF RECEIVING THE PRODUCT OR

11:34AM  6      BUYING THE PRODUCT, THAT THEY MUST USE THE TIED PRODUCT.

11:34AM  7          AND IN THIS SCENARIO, RIGHT, THE PLAINTIFFS' THEORY IS

11:34AM  8      THAT FOR TYING TO WORK, THAT APPLE MUST ACTUALLY, AS A

11:34AM  9      CONDITION OR A POLICY, REQUIRE ITS USERS, ITS APPLE DEVICE

11:34AM  10     OWNERS TO ACTUALLY USE OR BUY ICLOUD IN ORDER TO BUY AN APPLE

11:34AM  11     DEVICE.

11:34AM  12         THERE ARE NO ALLEGATIONS IN THE COMPLAINT ABOUT THAT.  AND

11:34AM  13     PLAINTIFFS CAN'T ACTUALLY ALLEGE THAT BECAUSE AS THEY ADMIT,

11:34AM  14     ICLOUD IS OPTIONAL.  PEOPLE DON'T HAVE TO USE ICLOUD.  ANYONE

11:34AM  15     WHO OWNS AN IPHONE OR AN IPAD IS NOT REQUIRED TO USE ICLOUD TO

11:34AM  16     BACK UP, TO BACK UP RESTRICTED FILES OR RESTORE THEIR DEVICES.

11:35AM  17     THERE ARE OTHER OPTIONS.  THEY'RE NOT REQUIRED TO BUY IT.

11:35AM  18         SO THAT REALLY DEFEATS THE PRECONDITION THAT IS NECESSARY

11:35AM  19     FOR THERE TO BE AN ACTIONABLE TYING CLAIM.

11:35AM  20         UNDER THE NINTH CIRCUIT'S AEROTEC CASE, THE COURT MADE

11:35AM  21     VERY CLEAR THAT BOTH FOR POSITIVE AND NEGATIVE TYING, THIS

11:35AM  22     CONDITION IS KEY, RIGHT?  THAT THERE HAS TO BE A CONDITION THAT

11:35AM  23     IS PLACED BY THE DEFENDANT ON THE CONSUMER THAT IN ORDER TO --

11:35AM  24     AS A CONDITION OF BUYING A DEVICE OR A PRODUCT, THEY ARE

11:35AM  25     AGREEING AND BEING COMPELLED TO USE THE TIED PRODUCT.

11:35AM 1          THERE ARE NO SUCH ALLEGATIONS IN THIS COMPLAINT, AND

11:35AM 2     PLAINTIFFS CANNOT ALLEGE THAT BECAUSE THE REALITY IS NO ONE WHO

11:35AM 3     OWNS AN APPLE DEVICE IS REQUIRED TO EITHER USE OR BUY ICLOUD.

11:35AM 4          THE COURT:  TALK ME THROUGH THE RESTRICTED FILES AND

11:35AM 5     APPLE'S ARGUMENT THAT THERE ARE FEASIBLE ALTERNATIVES FOR THAT.

11:35AM 6          MR. CHIU:  SURE.  SO I THINK IT'S -- THE RESTRICTED

11:36AM 7     FILES, JUST TO KIND OF LEVEL SET, WHEN WE'RE TALKING ABOUT

11:36AM 8     RESTRICTED FILES, WHAT THEY REALLY ARE IS A LIMITED SET OF CORE

11:36AM 9     APP DATA, RIGHT, THAT IS NECESSARY FOR RESTORING, I'LL USE

11:36AM 10    IPHONE AS AN EXAMPLE, RESTORING KIND OF THE HOME SCREEN AND

11:36AM 11    KIND OF THE APPS IF YOU LOSE YOUR DEVICE OR LET'S SAY YOU GET A

11:36AM 12    NEW DEVICE, AN APPLE DEVICE, AND YOU WANT TO RESTORE IT TO HOW

11:36AM 13    YOUR EXISTING ONE WORKS.  THIS IS A VERY LIMITED UNIVERSE OF

11:36AM 14    CORE APP DATA.

11:36AM 15         AND THE REASON THAT APPLE HAS DECIDED TO FROM DAY ONE

11:36AM 16    DEBUT IT AND LIMIT THE CLOUD BACKUP OF THOSE RESTRICTED FILES

11:36AM 17    TO ICLOUD IS BECAUSE THERE ARE NUMEROUS KIND OF PRIVACY AND

11:36AM 18    SECURITY JUSTIFICATIONS FOR THAT.

11:36AM 19         NOW, IN TERMS OF ALTERNATIVES, THERE ARE NON-CLOUD

11:36AM 20    ALTERNATIVES, WHICH PLAINTIFFS ADMIT IN THE COMPLAINT THAT

11:36AM 21    USERS CAN USE, RIGHT?  THEY CAN ACTUALLY PLUG IN THEIR APPLE

11:36AM 22    DEVICE SO IF YOU HAVE AN OLD IPHONE AND A NEW PHONE, YOU CAN

11:37AM 23    PLUG THAT IN AND YOU CAN RESTORE YOUR DEVICE THAT WAY.  YOU CAN

11:37AM 24    BACK UP ON A MAC OR PC.  THESE ARE THE ALTERNATIVES THAT ARE

11:37AM 25    AVAILABLE TO APPLE DEVICE OWNERS.

11:37AM  1        AND AGAIN, GOING BACK TO TYING, FOR THERE TO BE AN

11:37AM  2   ACTIONABLE TIE, APPLE WOULD HAVE TO PLACE AS A CONDITION IN

11:37AM  3   ORDER TO BUY AN IPHONE, FOR EXAMPLE, THAT YOU MUST USE ICLOUD

11:37AM  4   BACKUP TO BACK UP THESE RESTRICTED FILES AND RESTORE YOUR

11:37AM  5   IPHONE.

11:37AM  6        NO ONE HAS TO USE THAT AT ALL.  THERE IS NO CONDITION THAT

11:37AM  7   APPLE PLACES ON ITS CUSTOMERS THAT IN ORDER TO BUY AN APPLE

11:37AM  8   DEVICE, YOU ARE COMPELLED OR YOU MUST USE THE ICLOUD BACKUP

11:37AM  9   FEATURE.  THERE ARE MANY OPTIONS AVAILABLE, AND THAT IS KEY FOR

11:37AM  10  THERE TO BE AN ACTUAL TYING CLAIM.

11:37AM  11       NOW, IN THE OPPOSITION, THE PLAINTIFFS RAISE THIS IDEA

11:37AM  12  THAT THEY ALSO -- WHAT THEY'RE ACTUALLY TRYING TO ALLEGE IS A

11:37AM  13  NEGATIVE TIE.

11:37AM  14       NOW, A NEGATIVE TIE ALSO REQUIRES THIS CONDITION.  IT'S

11:37AM  15  KIND OF THE OPPOSITE OF A POSITIVE TIE, BUT THERE STILL NEEDS

11:37AM  16  TO BE A CONDITION, RIGHT, THAT THE DEFENDANT PLACES ON THE

11:37AM  17  CUSTOMER WHEN SHE BUYS THE PRODUCT THAT THERE IS AN AGREEMENT

11:38AM  18  THAT YOU'RE NOT GOING TO USE A COMPETING ALTERNATIVE.

11:38AM  19       AND AGAIN, APPLE HAS NO POLICY OR REQUIREMENT AND PLACES

11:38AM  20  NO CONDITION ON ITS CUSTOMERS WHEN YOU BUY AN APPLE DEVICE THAT

11:38AM  21  YOU'RE AGREEING NOT TO USE ANOTHER METHOD OR SOMETHING ELSE

11:38AM  22  WITH RESPECT TO BACKING UP AND RESTORING YOUR DEVICE.

11:38AM  23       YOU DON'T HAVE TO USE IT AT ALL.  YOU DON'T HAVE TO USE

11:38AM  24  ICLOUD BACKUP AT ALL.  SO THAT IS KEY.  THERE HAS TO BE A

11:38AM  25  CONDITION.

11:38AM  1          AND I WOULD POINT THE COURT TO THE AEROTEC CASE IN THE

11:38AM  2   NINTH CIRCUIT WHERE THE COURT BASICALLY REJECTED A SIMILAR

11:38AM  3   ATTEMPT TO SAY THAT THERE WAS A DE FACTO TIE, WHETHER POSITIVE

11:38AM  4   OR NEGATIVE, BECAUSE THE PLAINTIFFS THERE WERE TRYING TO ALLEGE

11:38AM  5   THAT HONEYWELL BASICALLY ENGAGED IN THESE PRACTICES THAT MADE

11:38AM  6   IT MUCH MORE DIFFICULT FOR, YOU KNOW, PLANE MANUFACTURERS TO

11:38AM  7   USE THE PLAINTIFFS' SERVICES FOR REPAIRING AND BUYING THESE

11:39AM  8   AUXILIARY POWER UNITS FOR PLANES.

11:39AM  9          AND THE COURT THERE SAID, LOOK, ULTIMATELY THERE'S NO

11:39AM 10   POLICY THAT REQUIRES -- HONEYWELL DIDN'T IMPOSE A POLICY THAT

11:39AM 11   REQUIRES ITS CUSTOMERS TO JUST USE HONEYWELL SERVICES FOR THESE

11:39AM 12   AUXILIARY UNITS.

11:39AM 13          AND THERE, THE PLAINTIFF TRIED TO SAY, WELL, THERE IS

11:39AM 14   ESSENTIALLY A DE FACTO TIE, AND THE NINTH CIRCUIT REJECTED IT.

11:39AM 15   FOR THE SAME REASON HERE, RIGHT?  THAT THERE IS NO POLICY

11:39AM 16   REQUIREMENT.  IN FACT, ICLOUD IS NOT SOMETHING THAT ANY APPLE

11:39AM 17   DEVICE USER MUST USE OR MUST PAY FOR, AND THAT REALLY DEFEATS

11:39AM 18   THE ABILITY TO PLEAD A POSITIVE OR A NEGATIVE TIE.

11:39AM 19          I WANT TO TALK ABOUT THE MONOPOLIZATION CLAIM.

11:39AM 20              THE COURT:  YES.

11:39AM 21              MR. CHIU:  AND THERE WAS AN ORIGINAL COMPLAINT.  WE

11:39AM 22   MOVED TO DISMISS THE PLAINTIFFS' AMENDED.  I THINK THAT HISTORY

11:39AM 23   IS HELPFUL BECAUSE IN THE ORIGINAL COMPLAINT THE PLAINTIFFS

11:39AM 24   FIRST TRIED TO PLEAD A MONOPOLIZATION CLAIM ON THIS IDEA THAT

11:40AM 25   THIS ONE ICLOUD BACKUP FEATURE SOMEHOW GIVES APPLE THE ABILITY

11:40AM  1    TO EXCLUDE COMPETITION IN THIS BROADER MARKET FOR CLOUD STORAGE

11:40AM  2    SERVICES ON APPLE'S DEVICES.

11:40AM  3          THE COURT:  RIGHT.

11:40AM  4          MR. CHIU:  SO THEIR THEORY REALLY IS, LOOK, THERE IS

11:40AM  5    THIS ONE FEATURE WHERE APPLE HAS DECIDED ONLY ICLOUD COULD BE

11:40AM  6    USED TO REMOTELY STORE AND BACK UP THESE CORE FILES FOR

11:40AM  7    RESTORING A DEVICE.  AND THAT SOMEHOW GIVES APPLE THE ABILITY

11:40AM  8    TO EXCLUDE COMPETITION FOR CLOUD STORAGE SERVICES ON ITS

11:40AM  9    PLATFORM.

11:40AM  10    AND WE POINTED OUT IN OUR ORIGINAL MOTION TO DISMISS THAT

11:40AM  11   DOESN'T WORK BECAUSE AS YOU ADMIT IN THE COMPLAINT, THERE ARE

11:40AM  12   PLENTY OF ENTRANTS WITH RESPECT TO CLOUD STORAGE SOLUTIONS ON

11:40AM  13   APPLE'S DEVICES.

11:40AM  14    WHAT THAT MEANS IS THAT THIS ONE LIMITED RESTRICTION WITH

11:40AM  15   RESPECT TO BACKING UP KIND OF THE MOST SENSITIVE AND CORE APP

11:40AM  16   DATA THAT YOU NEED TO RESTORE YOUR IPHONE ISN'T CAUSING

11:40AM  17   COMPETITORS TO STAY OUT OF CLOUD STORAGE ON APPLE'S PLATFORM.

11:40AM  18   THERE ARE PLENTY OF ENTRANTS WHO STILL FIND IT VALUABLE AND

11:41AM  19   WORTH IT TO COME INTO THE MARKETPLACE AND OFFER CLOUD STORAGE

11:41AM  20   SOLUTIONS ON APPLE DEVICES LIKE GOOGLE AND OTHERS.  AND, YOU

11:41AM  21   KNOW, THEY GROW BY THE DAY.  THERE ARE DROPBOX AND PEACOCK AND

11:41AM  22   SYNC.COM.  PLAINTIFFS' OWN COMPLAINT ACKNOWLEDGES THAT THERE'S

11:41AM  23   A LOT OF COMPETITION THERE.

11:41AM  24    SO IN THE AMENDED COMPLAINT THEY COME BACK AND THEY TRY TO

11:41AM  25   PLEAD THIS NEW ALTERNATIVE YET INCONSISTENT MARKET, WHICH THEY

11:41AM 1    CLAIM TO BE AN AFTER MARKET.  AND NOW THEY'RE ADVANCING THIS

11:41AM 2    MARKET CONCEPT THAT ICLOUD SOMEHOW FACES NO COMPETITION AT ALL

11:41AM 3    IN WHAT THEY DEFINE AS THIS FULL STORAGE CLOUD MARKET.

11:41AM 4        AND THAT IS REALLY A UNIQUE -- THEY'RE ATTEMPTING TO

11:41AM 5    SHOEHORN WHAT IS REALLY A UNIQUE AFTER MARKET CONCEPT THAT

11:41AM 6    COURTS GENERALLY DON'T FIND VIABLE BY SAYING ICLOUD, BECAUSE OF

11:41AM 7    THIS ONE FEATURE OR RESTRICTION WITH RESPECT TO BACKING UP CORE

11:41AM 8    APP DATA FOR RESTORING A PHONE, SOMEHOW GIVES -- MAKES ICLOUD

11:41AM 9    IN ITS OWN MARKET THAT FACES ABSOLUTELY ZERO COMPETITION.

11:42AM 10       AND I WOULD TAKE THE COURT BACK TO THE REASON THAT

11:42AM 11   FUNDAMENTALLY FAILS IS, AGAIN, BECAUSE NO ONE HAS TO ACTUALLY

11:42AM 12   USE ICLOUD.  AND AFTER MARKET SCENARIOS IN WHICH COURTS HAVE

11:42AM 13   RECOGNIZED SINGLE BRAND MARKETS ALWAYS REQUIRE A SITUATION

11:42AM 14   WHERE THERE IS ACTUALLY A REQUIREMENT THAT THE CONSUMER IS

11:42AM 15   LOCKED INTO USING THE CLAIMED AFTER MARKET PRODUCT BECAUSE THEY

11:42AM 16   OWN IN THIS CASE AN APPLE DEVICE.

11:42AM 17       AND AGAIN, AS THE PLAINTIFFS ADMIT IN THIS CASE, NO ONE

11:42AM 18   HAS TO USE ICLOUD AT ALL.  NO APPLE DEVICE USER IS REQUIRED TO

11:42AM 19   USE ICLOUD TO BACK UP THEIR CORE FILES OR RESTRICTED FILES IN

11:42AM 20   ORDER TO RESTORE THEIR PHONE.

11:42AM 21           THE COURT:  BUT WITH ALL OF THESE -- I MEAN, THE

11:42AM 22   QUESTION IS WHETHER OR NOT, IN TERMS OF THE AFTER MARKET

11:42AM 23   QUESTION, WHETHER OR NOT THERE'S MEANINGFUL COMPETITION,

11:42AM 24   CORRECT?

11:42AM 25       LIKE, IT'S NOT SUFFICIENT TO SAY, OKAY, WELL, YOU HAVE

11:42AM 1   THIS OPTION, THAT OPTION, AND SO FORTH.  IT HAS TO BE

11:42AM 2   MEANINGFUL COMPETITION.

11:42AM 3         MR. CHIU:  YEAH.  THAT'S CORRECT, YOUR HONOR.  I

11:42AM 4   THINK WHERE THAT -- WHERE PLAINTIFFS FAIL WITH RESPECT TO THAT

11:43AM 5   IS THEIR THEORY IS STILL THAT FUNDAMENTALLY THE FACT THAT

11:43AM 6   ICLOUD BACKUP IS THE ONLY REMOTE SOLUTION FOR RESTORING YOUR

11:43AM 7   PHONE OR YOUR APPLE DEVICE SOMEHOW PRECLUDES MEANINGFUL

11:43AM 8   COMPETITION WITH RESPECT TO THIS BROADER CLOUD STORAGE MARKET.

11:43AM 9        AND WE KNOW THAT DOESN'T WORK BECAUSE, AS THEY ADMIT,

11:43AM 10  THERE ARE PLENTY OF OPTIONS WHEN IT COMES TO CLOUD STORAGE ON

11:43AM 11  APPLE DEVICES.  THAT ONE RESTRICTION, WHICH THEY CLAIM IS THE

11:43AM 12  MONOPOLY CONDUCT, IS NOT ACTUALLY PRECLUDING, IT'S NOT -- IT

11:43AM 13  DOESN'T CREATE ANY BARRIERS TO ENTRY TO COMPETITORS COMING IN

11:43AM 14  AND SAYING WE'RE GOING TO OFFER TO APPLE DEVICE OWNERS, YOU

11:43AM 15  KNOW, OUR OWN CLOUD STORAGE PRODUCT.  THAT'S REALLY WHERE THIS

11:43AM 16  FALLS APART.  IT'S CIRCULAR BECAUSE WITH THAT ADMITTED REALITY,

11:43AM 17  THEY'RE UNABLE TO TRY TO PLEAD A VIABLE MARKET DEFINITION THAT

11:43AM 18  IS LIMITED TO ICLOUD ONLY.  THAT'S REALLY WHERE THE AFTER

11:43AM 19  MARKET -- THE ATTEMPT TO PLEAD A RELEVANT AFTER MARKET FAILS.

11:44AM 20       ON THE MONOPOLY -- FOR THE REST OF THE MONOPOLIZATION

11:44AM 21  CLAIM, AS THE COURT HAS INDICATED IN ITS TENTATIVE, I THINK THE

11:44AM 22  COURT IS FOCUSSED ON THE RIGHT THINGS THERE.  YOU KNOW, THE

11:44AM 23  IDEA THAT PLAINTIFFS HAVE NOT ALLEGED A REDUCTION IN OUTPUT

11:44AM 24  WITH RESPECT TO DIRECT EVIDENCE OF MONOPOLY POWER, YOU KNOW,

11:44AM 25  THE NINTH CIRCUIT'S PRECEDENCE IN REBEL OIL AND ONE OF THE

11:44AM 1    SEMINAL CASES THAT WE CITE TALKS ABOUT IN ORDER TO HAVE DIRECT

11:44AM 2    EVIDENCE OF MONOPOLY POWER, YOU NEED TO PLEAD BOTH

11:44AM 3    SUPRACOMPETITIVE PRICING, THE ABILITY TO SUPRACOMPETITIVELY

11:44AM 4    PRICE AND REDUCE OUTPUT.

11:44AM 5        AND THE WAY THAT WORKS, RIGHT, IS THAT DIRECT EVIDENCE OF

11:44AM 6    MONOPOLY POWER MEANS A FIRM CAN -- THEY CAN CONSTRICT OUTPUT

11:44AM 7    AND AS A RESULT OF THAT PRICE, THAT INFLATED PRICES.

11:44AM 8        HERE, THERE IS REALLY NO ALLEGATIONS THAT, AGAIN, THE

11:44AM 9    CONDUCT OF APPLE DECIDING TO LIMIT CLOUD BACKUP OF THESE

11:45AM 10    RESTRICTED FILES FOR RESTORING ITS DEVICES SOMEHOW GIVES APPLE

11:45AM 11    THE POWER TO REDUCE OUTPUT IN A BROADER MARKET FOR CLOUD

11:45AM 12    STORAGE SOLUTIONS.

11:45AM 13        THERE'S REALLY NOTHING IN THE COMPLAINT THAT ALLEGES THAT

11:45AM 14    THERE'S ANY REDUCTION IN OUTPUT.

11:45AM 15        THE PLAINTIFFS TRIED -- YOU KNOW, IN ARGUMENT THEY TRIED

11:45AM 16    TO MAKE THE POINT THAT, WELL, THE FACT THAT IN A BUT-FOR WORLD

11:45AM 17    MORE PEOPLE MAY BE USING ICLOUD, BUT AGAIN, IT IGNORES THAT,

11:45AM 18    FOR EXAMPLE, I COULD USE ICLOUD AND USE ALTERNATE OTHER STORAGE

11:45AM 19    SOLUTIONS ON MY SAME APPLE DEVICE.  SO THERE'S REALLY NOTHING

11:45AM 20    IN THE COMPLAINT THAT COULD -- THAT DOES ALLEGE THAT APPLE HAS

11:45AM 21    THE ABILITY TO RESTRICT OUTPUT IN A MARKET FOR THESE SORT OF

11:45AM 22    CLOUD STORAGE SOLUTIONS ON ITS OWN DEVICES.

11:45AM 23            THE COURT:  I DO WANT TO MAKE SURE JUST THAT WE

11:45AM 24    WENT -- YOU HAD LISTED YOUR FOUR DIFFERENT PRIMARY POINTS, BUT

11:45AM 25    I ALSO WANT TO MAKE SURE THAT WE REACH THE STATUTE OF

11:46AM 1    LIMITATIONS QUESTIONS AS WELL.

11:46AM 2         MR. CHIU:  ABSOLUTELY.  YEAH.

11:46AM 3         JUST TO FINISH UP ON THE MONOPOLIZATION POINT TO THE

11:46AM 4    COURT'S QUESTION ON THE BARRIERS TO ENTRY.  I THINK WHAT IS

11:46AM 5    REALLY IMPORTANT THERE IS, AGAIN, THE PLAINTIFFS' THEORY AS

11:46AM 6    ALLEGED IN THE COMPLAINT REALLY UNDERMINES THE IDEA THAT THERE

11:46AM 7    ARE ANY SORT OF BARRIERS TO ENTRY.

11:46AM 8         AGAIN, GOING BACK TO THEIR CORE THEORY, WHICH IS THAT

11:46AM 9    SOMEHOW THIS ONE LIMITED RESTRICTION THAT APPLE HAS PLACED AND

11:46AM 10   ESSENTIALLY DEBUTED WHEN IT CAME OUT WITH ICLOUD TO LIMIT THE

11:46AM 11   BACKUP OF RESTRICTED FILES FOR RESTORING APPLE DEVICES SOMEHOW

11:46AM 12   ERECTS BARRIERS TO ENTRY.

11:46AM 13        WELL, THAT AGAIN IS UNDERMINED BY THE FACT THAT, AS THE

11:46AM 14   COMPLAINT ACKNOWLEDGES, THERE ARE PLENTY OF ENTRANTS AND THERE

11:46AM 15   IS PLENTY OF COMPETITION WHEN IT COMES TO CLOUD STORAGE MORE

11:46AM 16   GENERALLY IN APPLE'S DEVICES.

11:46AM 17        SO CLEARLY THE THING THAT THEY ARE TRYING TO COMPLAIN

11:46AM 18   ABOUT --

11:46AM 19        THE COURT:  PLAINTIFFS WOULD DISAGREE WITH YOU IN

11:46AM 20   TERMS OF WHETHER OR NOT IT IS A DEMEANINGFUL COMPETITION UNDER

11:47AM 21   REBEL OIL FOR SOME OF THESE THOUGH IN TERMS OF OTHER STORAGE.

11:47AM 22        MR. CHIU:  I THINK IF IT WAS A TRUE BARRIER TO

11:47AM 23   ENTRY, YOU WOULDN'T HAVE THEM ACKNOWLEDGING.  AND THE REALITY

11:47AM 24   WOULD BE, WELL, WHY -- THEIR WHOLE THEORY IS THAT THIS FEATURE

11:47AM 25   IS ENOUGH OF A DIFFERENTIATOR AND IT'S ENOUGH -- IT CREATES

11:47AM  1    ENOUGH FRICTION FOR CONSUMERS TO KIND OF THEN MOVE ON TO USE,

11:47AM  2    YOU KNOW, ICLOUD MORE GENERALLY THAT IT CREATES BARRIERS TO

11:47AM  3    THIS MARKET.

11:47AM  4         IF THAT WERE TRUE, RIGHT, WE WOULDN'T SEE, AS PLAINTIFFS

11:47AM  5    ADMIT, PLENTY OF ALTERNATIVES AND COMPETITORS WHO CAN'T OFFER

11:47AM  6    THIS FEATURE, RIGHT?  THEY CAN'T OFFER THE ABILITY TO PROVIDE

11:47AM  7    APPLE USERS WITH THE ABILITY TO REMOTELY BACK UP THE CORE FILES

11:47AM  8    FOR STORING A DEVICE, YET THEY STILL FIND IT VALUABLE TO COME

11:47AM  9    INTO THE MARKETPLACE AND OFFER THESE ALTERNATIVES AND COMPETE

11:47AM  10   WITH APPLE ON ICLOUD SUBSCRIPTION PRICING.  THEY'RE COMPETING

11:48AM  11   ON PRICE.

11:48AM  12        AGAIN, THE COMPLAINT HAS TO MAKE ECONOMIC SENSE.  AND WHEN

11:48AM  13   YOU HAVE ALLEGATIONS THAT ARE ON THE ONE HAND ADMITTING, THERE

11:48AM  14   ARE PLENTY OF ENTRANTS WHO ARE COMING IN UNABLE TO OFFER THE

11:48AM  15   ICLOUD BACKUP FEATURE BUT STILL FIND IT WORTHWHILE TO BUILD A

11:48AM  16   PRODUCT ON APPLE'S PLATFORM AND OFFER CLOUD STORAGE SOLUTIONS,

11:48AM  17   THAT TELLS YOU THAT THIS IDEA THAT THIS ONE RESTRICTION IS

11:48AM  18   ERECTING A BARRIER TO ENTRY IS NOT PLAUSIBLE.

11:48AM  19        I DO WANT TO GET TO THE COURT'S QUESTIONS ON THE STATUTE

11:48AM  20   OF LIMITATIONS.

11:48AM  21             THE COURT:  OKAY.

11:48AM  22             MR. CHIU:  NOW, THE COURT'S FIRST QUESTION WAS ABOUT

11:48AM  23   THIS IDEA OF WHEN UNDER THE PLAINTIFFS' THEORY APPLE AMASSED

11:48AM  24   MONOPOLY POWER AND THE RELATIONSHIP BETWEEN THAT AND WHEN THE

11:48AM  25   STATUTE OF LIMITATIONS RAN.

11:48AM  1      PLAINTIFFS' THEORY IN THIS CASE IS REALLY THAT WITH THE

11:48AM  2   DEBUT OF ICLOUD AND APPLE'S DECISION TO LIMIT THE REMOTE BACKUP

11:49AM  3   OF RESTRICTED FILES TO ICLOUD ONLY, WHICH IS A DESIGN DECISION

11:49AM  4   AND SOMETHING THAT APPLE DEBUTED WITH ICLOUD OVER A DECADE AGO.

11:49AM  5   THEIR THEORY IS THAT RESTRICTION SOMEHOW GAVE APPLE THE POWER,

11:49AM  6   RIGHT, MONOPOLY POWER OVER THIS BROADER MARKET.

11:49AM  7      SO I THINK THE ANSWER TO THE QUESTION IS THAT UNDER

11:49AM  8   PLAINTIFFS' THEORY, IT'S THE MOMENT THAT THEY -- APPLE DECIDED

11:49AM  9   TO DEBUT THE ICLOUD BACKUP PRODUCT THE WAY IT DID OVER A DECADE

11:49AM  10  AGO, THAT IS THE CONDUCT WHICH GAVE APPLE MONOPOLY POWER TO SET

11:49AM  11  PRICES AND RESTRICT OUTPUT.

11:49AM  12      THE COURT:  THEY ALSO ARGUE THAT WITH EVERY

11:49AM  13  OPERATING SYSTEM WITH EVERY GENERATION THEN THAT THERE'S A

11:49AM  14  RE-ADOPTION OF THAT POLICY, WHICH THEN WOULD --

11:49AM  15      MR. CHIU:  YEAH.  SO TWO POINTS ON THAT, YOUR HONOR.

11:49AM  16      THE COMPLAINT ACTUALLY DOES NOT ALLEGE THAT THE CONDUCT OF

11:49AM  17  MAINTAINING THE SO-CALLED MONOPOLY IS THAT APPLE RE-ADOPTS A

11:50AM  18  POLICY OR RE-EXTENDS.  THERE'S NO CONTRACT.  THERE'S NO POLICY.

11:50AM  19  THEY'RE FUNDAMENTALLY COMPLAINING THAT REALLY WHAT THE CONDUCT

11:50AM  20  IS, IS THAT APPLE MADE THIS DESIGN DECISION TO DEBUT ICLOUD,

11:50AM  21  THIS ICLOUD FEATURE OVER A DECADE AGO.

11:50AM  22      AND I WOULD POINT THE COURT TO ALLEGATIONS IN PARAGRAPH 5

11:50AM  23  AND PARTICULARLY PARAGRAPH 110 IN THE COMPLAINT WHICH REALLY

11:50AM  24  KIND OF SYNTHESIZES PLAINTIFFS' THEORY HERE.

11:50AM  25      THE COURT:  YOU SAID PARAGRAPHS 5 AND 110?

11:50AM 1     MR. CHIU:  110.  AND 110 IN PARTICULAR.  THE

11:50AM 2 PLAINTIFFS ALLEGE, QUOTE, "WHAT DRIVES ICLOUD'S SUCCESS IS THAT

11:50AM 3 APPLE HAS DESIGNED ITS ECOSYSTEM TO PREVENT RIVAL CLOUD STORAGE

11:50AM 4 PLATFORMS FROM MOUNTING A MEANINGFUL THREAT.  APPLE HAS DONE

11:50AM 5 THIS BY PREVENTING OTHER PLATFORMS FROM ACCESSING AND HOSTING

11:50AM 6 RESTRICTED FILES, WHICH ARE THE VERY FILES THAT THE USERS NEED

11:50AM 7 TO RESTORE THEIR DEVICE IN THE EVENT IT IS LOST OR REPLACED."

11:51AM 8    I THINK AT ITS PUREST FORM, THE PLAINTIFFS' THEORY OF THE

11:51AM 9 ANTICOMPETITIVE CONDUCT IS THAT APPLE DECIDED TO DESIGN ICLOUD

11:51AM 10 BACKUP IN THIS WAY.  THAT WAS A DESIGN DECISION THAT WAS FINAL

11:51AM 11 AND MADE WHEN APPLE DEBUTED ICLOUD BACK IN 2011.

11:51AM 12    AND THERE'S REALLY NO ALLEGATIONS THAT THERE WAS SOME SORT

11:51AM 13 OF ONGOING POLICY THAT APPLE KIND OF RE-UPPED EVERY TIME, FOR

11:51AM 14 EXAMPLE, THAT THERE WAS A NEW RELEASE OF, YOU KNOW, A SECURITY

11:51AM 15 UPDATE OR AN IOS OPERATING SYSTEM UPDATE.  THAT'S NOT IN THE

11:51AM 16 COMPLAINT.  THE PLAINTIFFS CANNOT ALLEGE THAT.

11:51AM 17    I THINK THE SECOND POINT, TOO, IS THAT EVEN IF THAT WERE

11:51AM 18 THE CASE, THE CASE LAW IS PRETTY CLEAR THAT WHERE YOU HAVE A

11:51AM 19 SITUATION WHERE THE DEFENDANT'S CONDUCT IS REALLY A MERE

11:51AM 20 REAFFIRMATION OF A PRE-LIMITATIONS DECISION THAT IS NOT A NEW

11:51AM 21 OVERT ACT THAT CAUSES NEW INJURY, THAT GENERALLY IS NOT ENOUGH

11:51AM 22 TO RESTART THE STATUTE OF LIMITATIONS.

11:51AM 23    AND SO THERE ARE CASES, FOR EXAMPLE, THAT WE CITED, THE

11:52AM 24 SAURIKIT VERSUS APPLE.  THERE, THERE WAS A SIMILAR THEORY ABOUT

11:52AM 25 APPLE'S POLICY, AND IN THAT CASE THERE WAS A POLICY WITH

| | |
|---|---|
| 11:52AM | 1 |
| 11:52AM | 2 |
| 11:52AM | 3 |
| 11:52AM | 4 |
| 11:52AM | 5 |

RESPECT TO DEVELOPERS AND THEIR ABILITY TO USE ALTERNATE APP
STORES TO USE APPS.

AND THERE, BOTH JUDGE GONZALEZ ROGERS IN THIS DISTRICT AND
IN THE NINTH CIRCUIT AFFIRMING HER DECISION HELD THAT THE
PLAINTIFFS CAN'T JUST POINT TO THE IDEA THAT THIS POLICY
REMAINED ONGOING AND THAT THAT CONSTITUTED ENOUGH OF AN OVERT
ACT TO RESTART THE LIMITATIONS PERIOD.  IT REALLY WAS THE FACT
THAT APPLE'S POLICY HAD ALWAYS BEEN THE SAME AND THAT AMOUNTED
TO KIND OF A REFUSAL.  AND BECAUSE THAT WAS JUST A MERE
REAFFIRMATION, THAT'S NOT ENOUGH TO RESTART THE LIMITATIONS
PERIOD.

I WANT TO ADDRESS THE COURT'S OTHER QUESTIONS ON STATUTE
OF LIMITATIONS.  THERE WAS A QUESTION ABOUT WHETHER THIS CASE
IS SIMILAR TO KIND OF HANOVER SHOE AND THE DISCUSSION IN THE
AREEDA TREATISE ABOUT, YOU KNOW, IN A MONOPOLIZATION CLAIM WHAT
IS KIND OF THE DIVIDING LINE OF WHETHER THERE'S AN OVERT ACT OR
THERE'S KIND OF JUST REALLY A SITUATION WHERE THERE'S CONDUCT
THAT HAPPENS OUTSIDE OF THE LIMITATIONS PERIOD THAT THE
PLAINTIFFS ARE COMPLAINING OF.

I THINK THIS CASE IS DIFFERENT FROM HANOVER SHOE.  THERE,
THERE WAS BASICALLY AN ONGOING CONDUCT BY THE DEFENDANT TO
ESSENTIALLY CONTINUE TO REFUSE TO SELL THE EQUIPMENT AND ADHERE
TO A POLICY OF ONLY LEASING THE EQUIPMENT.  THAT WAS REALLY THE
ISSUE.

AND THE SUPREME COURT SAID, LOOK, THERE ARE SOME ELEMENT

11:53AM 1    OF ONGOING CONDUCT THERE BY THE DEFENDANT THAT CAUSED NEW

11:53AM 2    INJURY, AND SO WE'RE NOT GOING TO ALLOW YOU TO KIND OF

11:53AM 3    CIRCUMVENT THE STATUTE BY SAYING, WELL, WE MADE THIS DECISION

11:53AM 4    LONG AGO AND SO THERE THE SUPREME COURT SAID, LOOK, THERE THE

11:53AM 5    CLAIMS ARE TIMELY.

11:53AM 6         I THINK THERE'S A FUNDAMENTAL DIFFERENCE HERE BECAUSE,

11:54AM 7    AGAIN, PLAINTIFFS ARE NOT ALLEGING THAT THERE IS SOME SORT OF

11:54AM 8    ONGOING POLICY OR THAT APPLE CONTINUES TO RE-UP A POLICY OVER

11:54AM 9    TIME OF REFUSING TO ALLOW ALTERNATIVE CLOUD SOURCE SOLUTIONS TO

11:54AM 10   BACK UP THESE RESTRICTED FILES.

11:54AM 11        AND I THINK THAT WHAT IS ALSO IMPORTANT TO UNDERSTAND IS

11:54AM 12   THAT THE CASE LAW DOES DRAW A DISTINCTION IN THE MONOPOLIZATION

11:54AM 13   CONTEXT BETWEEN ACTS THAT HAPPEN OUTSIDE OF THE LIMITATIONS

11:54AM 14   PERIOD AND ARE IN SOME SENSE FINAL.

11:54AM 15        AND IF A PLAINTIFF IS COMPLAINING ABOUT A PRE-LIMITATIONS

11:54AM 16   PERIOD ACT AS THE CONDUCT THAT CREATES THE MONOPOLY AND CAUSES

11:54AM 17   INJURY FLOWING FROM A MONOPOLY, GENERALLY THAT IS NOT ENOUGH TO

11:54AM 18   RESTART THE LIMITATIONS PERIOD.

11:54AM 19        NOW, THERE'S A SEPARATE CATEGORY OF MONOPOLY CONDUCT THAT

11:54AM 20   DOES REQUIRE SOME SORT OF ONGOING OVERT ACTS BY THE DEFENDANT

11:54AM 21   TO MAINTAIN ITS MONOPOLY POSITION, AND IN THOSE CASES COURTS

11:54AM 22   HAVE FOUND, FOR EXAMPLE, A RE-UPPING OF A POLICY, A RENEWAL OF

11:55AM 23   A CONTRACT THAT CAUSES A MONOPOLY TO PERPETUATE, THAT GENERALLY

11:55AM 24   IS ENOUGH TO CONSTITUTE OVERT ACTS THAT CAUSE NEW INJURY.

11:55AM 25        AND WE POINT THE COURT TO, AND WE CITE THIS IN OUR PAPERS,

11:55AM  1    THERE'S A DISCUSSION OF THIS KIND OF PRINCIPLE IN THE AREEDA

11:55AM  2    TREATISE AT SECTION 320(C)(4) AND THE SAME KIND OF

11:55AM  3    DISCUSSION -- AND I KNOW THE COURT IDENTIFIED PARTS OF THE

11:55AM  4    TREATISE WHICH THIS QUESTION IS GROUNDED IN.  AND THERE THE

11:55AM  5    TREATISE KIND OF SUMMARIZES THE LAW VERY NICELY AND IT SAYS,

11:55AM  6    "THE COURTS CONSISTENTLY HOLD THAT IF THE MONOPOLY IS CREATED

11:55AM  7    BY A SINGLE IDENTIFIABLE ACT, IT IS NOT PERPETUATED BY AN

11:55AM  8    ONGOING POLICY.  THE STATUTE OF LIMITATIONS RUNS FROM THE TIME

11:55AM  9    OF THE COMMISSION OF THE ACT, NOTWITHSTANDING THAT HIGH PRICES

11:55AM  10   MAY LAST INDEFINITELY INTO THE FUTURE.

11:55AM  11       HERE, AGAIN, THE MONOPOLY CONDUCT THAT THE PLAINTIFFS ARE

11:55AM  12   COMPLAINING ABOUT IS A DESIGN DECISION BY APPLE TO DEBUT ICLOUD

11:55AM  13   BACKUP A CERTAIN WAY FOR OVER A DECADE AGO.  THERE REALLY ARE

11:56AM  14   NO ALLEGATIONS THAT THERE IS AN ONGOING POLICY OR A CONTRACT

11:56AM  15   THAT APPLE IS KIND OF RE-UPPING OVER TIME.

11:56AM  16       THE COURT:  AND THE COURT'S TENTATIVE ON THIS WAS TO

11:56AM  17   DENY WITHOUT PREJUDICE BECAUSE WE'RE TALKING ABOUT A LOT OF

11:56AM  18   FACTS OF JUST WHAT IS -- WHAT HAPPENED IN TERMS OF THE ADOPTION

11:56AM  19   OF THIS?  THE ADOPTION OF THE POLICY?  AND THEN AFTERWARDS WHAT

11:56AM  20   HAPPENED IN TERMS OF -- I'M NOT SURE.

11:56AM  21       MR. CHIU:  YEAH.  I WOULD JUST IDENTIFY FOR THE

11:56AM  22   COURT THAT THE COMPLAINT DOES NOT ALLEGE THAT THE CONTINUING

11:56AM  23   THEORY OF VIOLATION WAS THAT APPLE HAD A POLICY AND THAT IT WAS

11:56AM  24   CONSTANTLY UPPING THAT POLICY.

11:56AM  25       AGAIN, THE ESSENCE OF THE COMPLAINT AND THE THEORY OF

11:56AM  1    MONOPOLY CONDUCT IS FUNDAMENTALLY THAT APPLE MADE A DESIGN

11:56AM  2    DECISION ABOUT HOW IT WAS GOING TO OFFER THE ICLOUD BACKUP

11:56AM  3    PRODUCT WHICH DEBUTED OVER A DECADE AGO AND HASN'T CHANGED

11:56AM  4    SINCE.

11:56AM  5         I THINK THIS IS ALSO DIFFERENT FROM SITUATIONS WHERE --

11:57AM  6              THE COURT:  OR IF IT'S AN ONGOING -- YES, ARGUABLY

11:57AM  7    AN ONGOING POLICY.

11:57AM  8         BUT, AGAIN, THE REASON THE TENTATIVE WAS DENIAL WITHOUT

11:57AM  9    PREJUDICE IS I COULD SEE FACTS AND SUCH BEAR ITSELF OUT OR TAKE

11:57AM  10   INTO ACCOUNT FACTS TO -- THAT DISTINCTIONS MAY BE DRAWN.

11:57AM  11             MR. CHIU:  YEAH.  I THINK ONE LAST POINT ON THAT,

11:57AM  12   WHICH IS THAT THERE ARE CASES THAT RECOGNIZE THAT EVEN IF THERE

11:57AM  13   IS A, QUOTE-UNQUOTE, "ONGOING POLICY," SO LONG AS THOSE ARE

11:57AM  14   MERE REAFFIRMATIONS OF A PRE-LIMITATIONS POLICY OR A REFUSAL,

11:57AM  15   THAT GENERALLY IS NOT ENOUGH TO CONSTITUTE AN OVERT ACT.

11:57AM  16             THE COURT:  AND WHAT ARE THOSE CASES?

11:57AM  17             MR. CHIU:  THOSE CASES ARE -- SO IN THE SAMSUNG CASE

11:57AM  18   THAT WE CITE.  THE SEMINAL NINTH CIRCUIT CASES ARE AMF VERSUS

11:57AM  19   GENERAL MOTORS AND PACE INDUSTRIES VERSUS THREE PHOENIX, AND I

11:57AM  20   CAN GIVE YOU THE CITES.

11:57AM  21             THE COURT:  WAS THE LAST CASE YOU CITED, WAS IT IN

11:57AM  22   THE PAPERS?  I SHOULD HAVE THE CITATIONS.

11:58AM  23             MR. CHIU:  AFM VERSUS GENERAL MOTORS IS 591 F.2D

11:58AM  24   868.

11:58AM  25             THE COURT:  YES, WE HAVE THESE.

11:58AM 1            MR. CHIU:  OKAY.

11:58AM 2            THE COURT:  THANK YOU.

11:58AM 3            MR. CHIU:  AND THEN THE LAST QUESTION THE COURT HAD

11:58AM 4    ON THE STATUTE OF LIMITATIONS WAS WHAT IS APPLE'S BEST LEGAL

11:58AM 5    AUTHORITY SUPPORTING A STATUTE OF LIMITATIONS DEFENSE IN AN

11:58AM 6    ANTITRUST CASE BROUGHT BY CONSUMERS AND NOT COMPETITORS.

11:58AM 7        I WOULD POINT THE COURT TO THE CROWDER VERSUS LINKEDIN

11:58AM 8    DECISION WHICH IS CITED IN OUR PAPERS.  THERE, THE CLAIM

11:58AM 9    INVOLVED -- THE CLAIM WAS BROUGHT BY A PUTATIVE CLASS OF

11:58AM 10   LINKEDIN SUBSCRIBERS.  AND THERE, THEY CHALLENGE A NUMBER OF

11:58AM 11   PRACTICES BY LINKEDIN WITH RESPECT TO THE SALE OF PRIVATE DATA

11:58AM 12   AND ALSO IN AN ALLEGED AGREEMENT WITH FACEBOOK WITH RESPECT TO

11:58AM 13   ALLOCATION MARKETS.

11:58AM 14       AND IN THAT CASE JUDGE GILLIAM IN THIS DISTRICT HELD THAT

11:58AM 15   WITH RESPECT TO THE SECTION 1 ANTITRUST CLAIM, THAT THE CLAIM

11:58AM 16   WAS TIME BARRED UNDER THE STATUTE OF LIMITATIONS BECAUSE THE

11:58AM 17   PLAINTIFFS WERE COMPLAINING OF AN AGREEMENT THAT WAS ALLEGEDLY

11:59AM 18   HATCHED OUTSIDE OF THE LIMITATIONS PERIOD.

11:59AM 19       SO I THINK THE OTHER POINT THERE IS THAT THE CASE LAW DOES

11:59AM 20   NOT DRAW A DISTINCTION BETWEEN THE TYPES OF PLAINTIFFS' GROUPS

11:59AM 21   WHO ARE BRINGING CLAIMS WHEN IT COMES TO THE APPLICATION OF THE

11:59AM 22   ANTITRUST STATUTE OF LIMITATIONS.

11:59AM 23       UNDER SECTION 15 OF THE CLAYTON ACT, WHICH IS THE STATUTE

11:59AM 24   OF LIMITATIONS, CONGRESS HAS MADE A CALL WITH RESPECT TO THE

11:59AM 25   NEED FOR REPOSE, AND THE COURTS HAVE NOT KIND OF DRAWN

11:59AM  1    DISTINCTIONS WITH RESPECT TO WHETHER IT'S A COMPETITOR OR A

11:59AM  2    CONSUMER BRINGING THE CLAIM.  IT FUNDAMENTALLY STILL LOOKS AT

11:59AM  3    WHAT IS THE ALLEGED CONDUCT, AND WHETHER THE CONDUCT THAT IS

11:59AM  4    ALLEGED TO HAVE CAUSED ANTICOMPETITIVE HARM IS SOMETHING THAT

11:59AM  5    HAPPENED OUTSIDE OF THE LIMITATIONS PERIOD, AND WHETHER THE

11:59AM  6    DEFENDANT HAS SUBSEQUENTLY TAKEN OVERT ACTS IN FURTHERANCE OF

11:59AM  7    THAT ORIGINAL PRE-LIMITATIONS PERIOD CONDUCT THAT CAUSES NEW

11:59AM  8    INJURY.

11:59AM  9        THAT'S THE INQUIRY.  THAT'S KIND OF WHERE THE COURTS KIND

11:59AM  10   OF DRAW THE LINE BETWEEN SOMETHING THAT IS TIME BARRED AND NOT.

12:00PM  11   GENERALLY COURTS HAVE NOT DRAWN DISTINCTIONS BETWEEN

12:00PM  12   PLAINTIFFS' GROUPS, WHETHER IT'S A CONSUMER.

12:00PM  13            THE COURT:  BUT I THINK THE REALITIES ARE HOW FACTS

12:00PM  14   ARE GOING TO PLAY THEMSELVES OUT.

12:00PM  15       I MEAN, MAYBE THAT DISTINCTION ISN'T CLEARLY DRAWN IN THE

12:00PM  16   CASE LAW BUT HOW FACTS THEMSELVES WILL PLAY OUT IN TERMS OF

12:00PM  17   WHEN CONSUMERS WOULD KNOW VERSUS WHEN COMPETITORS WOULD KNOW OR

12:00PM  18   FEEL THOSE EFFECTS.

12:00PM  19       AREEDA ITSELF RECOGNIZES THAT THERE IS -- THAT THE EFFECTS

12:00PM  20   OF MONOPOLIZATION WOULD REACH CONSUMERS LATER, THEN

12:00PM  21   COMPETITORS.  SO IT SEEMS LIKE THAT WOULD THEN IMPACT POSSIBLY

12:00PM  22   THAT ANALYSIS IN TERMS OF LOOKING AT THE STATUTE OF

12:00PM  23   LIMITATIONS.

12:00PM  24       NOT DIRECTLY IN TERMS OF BRIGHT LINE RULE, BUT JUST IN

12:00PM  25   TERMS OF --

| | | |
|---|---|---|
| 12:00PM | 1 | MR. CHIU:  I THINK IN THIS CASE, THOUGH, AGAIN THE |
| 12:00PM | 2 | PLAINTIFFS ARE ALLEGING -- THEIR THEORY IS THAT APPLE'S ABILITY |
| 12:00PM | 3 | TO PRICE AT MONOPOLY LEVELS WAS ESSENTIALLY INSTANTANEOUS THE |
| 12:01PM | 4 | MOMENT APPLE DECIDED TO DEBUT ICLOUD BACKUP THE WAY IT DID OVER |
| 12:01PM | 5 | A DECADE AGO.  AND SO THIS NOTION THAT CONSUMERS MAY NOT HAVE |
| 12:01PM | 6 | BEEN AFFECTED I THINK IS NOT SUPPORTED BY THE COMPLAINT. |
| 12:01PM | 7 | I'D LIKE TO RESERVE WHATEVER TIME I HAVE LEFT. |
| 12:01PM | 8 | THE COURT:  BY THE 20 MINUTE GUIDEPOST, YOU HAVE |
| 12:01PM | 9 | ZERO TIME LEFT.  BUT I WILL GIVE YOU A COUPLE OF MINUTES |
| 12:01PM | 10 | AFTERWARDS. |
| 12:01PM | 11 | MR. CHIU:  THANK YOU. |
| 12:01PM | 12 | THE COURT:  GOOD MORNING, MR. HARRINGTON. |
| 12:01PM | 13 | MR. HARRINGTON:  GOOD MORNING.  THANK YOU. |
| 12:01PM | 14 | YOUR HONOR, FROM THE TENTATIVE, WE UNDERSTAND THE COURT |
| 12:01PM | 15 | HAS THOUGHT ABOUT ALL OF THESE ISSUES AND IS INCLINED TO RULE |
| 12:01PM | 16 | AGAINST US. |
| 12:01PM | 17 | SO MY JOB I THINK TODAY IS TO HOPEFULLY DISSUADE YOU OF |
| 12:01PM | 18 | THIS.  BUT IF I CAN'T, I DO THINK THIS IS A CASE WHERE LEAVE TO |
| 12:01PM | 19 | AMEND SHOULD BE GRANTED.  IF WE ARE GRANTED LEAVE, THERE ARE A |
| 12:01PM | 20 | HOST OF ADDITIONAL FACTS THAT WE CAN ALLEGE. |
| 12:01PM | 21 | FIRST AND FOREMOST, AFTER FILING THE COMPLAINT IN THIS |
| 12:01PM | 22 | CASE, WE IDENTIFIED A SURVEY OF ICLOUD SUBSCRIBERS THAT APPLE |
| 12:01PM | 23 | ITSELF CONDUCTED WITH AN EXPERT IN ANOTHER CASE, AND THE |
| 12:02PM | 24 | FINDINGS OF THAT SURVEY SUPPORT US ACROSS THE BOARD.  SO IF WE |
| 12:02PM | 25 | WERE TO AMEND, THAT WOULD FEATURE VERY PROMINENTLY IN WHAT THE |

12:02PM  1    COURT REVIEWED.  I'M NOT GOING TO GET INTO IT NOW BECAUSE IT'S

12:02PM  2    NOT IN THE RECORD OBVIOUSLY, BUT I WANT YOU TO KNOW THAT

12:02PM  3    THERE'S A LOT THAT WE CAN DO HERE IN AN AMENDED COMPLAINT, BUT

12:02PM  4    WE DON'T THINK WE HAVE TO.

12:02PM  5         WE DON'T HAVE TO PROVE OUR CASE AT THIS STAGE.  WE'RE AT

12:02PM  6    THE MOTION TO DISMISS STAGE.  AS SOME OF YOUR QUESTIONS HAVE

12:02PM  7    HIGHLIGHTED, THERE ARE A LOT OF FACTUAL ISSUES INVOLVED.  THESE

12:02PM  8    CAN'T BE RESOLVED AGAINST US NOW.

12:02PM  9         THE QUESTION IS JUST WHETHER WE'VE ALLEGED ENOUGH FACTS TO

12:02PM  10   CROSS THAT THRESHOLD FROM POSSIBLE TO PROBABLE OR PLAUSIBLE,

12:02PM  11   AND I THINK WE HAVE.

12:02PM  12        SO I'LL START WITH TYING BECAUSE THAT'S THE FIRST CLAIM

12:02PM  13   ADDRESSED IN THE TENTATIVE.

12:02PM  14        SO WE AGREE WITH THE COURT THAT TYING IS AT LEAST IN THIS

12:02PM  15   CASE SUBJECT TO A RULE OF REASON ANALYSIS UNDER THE EPIC V.

12:02PM  16   APPLE DECISION.

12:02PM  17        WHAT WE HAVE HERE IS TRULY A QUINTESSENTIAL WHAT IS CALLED

12:03PM  18   A NEGATIVE TIE.  AND THE SEMINAL DECISION AND I THINK THE ONLY

12:03PM  19   DECISION THAT THE COURT WOULD NEED TO READ TO RESOLVE THIS IS

12:03PM  20   EASTMAN KODAK.

12:03PM  21             THE COURT:  YES, I HAVE READ THAT DECISION.

12:03PM  22             MR. HARRINGTON:  OKAY.  SO AS YOU KNOW, THAT CASE

12:03PM  23   INVOLVED A NEGATIVE TIE.  THERE WASN'T ANY REQUIREMENT THAT

12:03PM  24   CONSUMERS OR ANYONE PURCHASED THE TIED PRODUCT.  THE TIE

12:03PM  25   OPERATES SIMPLY BY FORECLOSING THE ABILITY TO PURCHASE THE

12:03PM 1    PRODUCT FROM A RIVAL, RIGHT?

12:03PM 2        SO WHAT HAPPENED WAS EASTMAN KODAK HAD A POLICY WHERE IF

12:03PM 3    YOU SERVICED YOUR KODAK MACHINES WITH A THIRD PARTY SERVICE

12:03PM 4    PROVIDER, KODAK WOULDN'T SELL YOU PARTS.  THAT WAS THE POLICY,

12:03PM 5    RIGHT?  THERE WASN'T ANY REQUIREMENT THAT YOU GET PARTS OR

12:03PM 6    SERVICE FROM ANYONE.  IT WAS A PROHIBITION ON TAKING THOSE

12:03PM 7    PRODUCTS FROM SOMEONE ELSE.

12:03PM 8        AND I WILL SAY ALSO A LOT OF THE ARGUMENTS YOU HEARD THIS

12:04PM 9    MORNING WERE ABOUT WHETHER OR NOT THERE'S AN EXPRESS TYING

12:04PM 10   CONDITION IN THE SENSE IF YOU BY X, YOU MUST BUY Y.  THAT

12:04PM 11   DIDN'T EXIST IN KODAK EITHER, RIGHT?  THE TIE THAT THE COURT

12:04PM 12   WAS FOCUSSED ON WAS THIS POLICY, THIS POLICY BY KODAK OF NOT

12:04PM 13   SELLING PARTS TO ANYONE WHO WAS SERVICING THEIR MACHINE THROUGH

12:04PM 14   A THIRD PARTY.  AND THAT WASN'T EXPRESSED.  THAT WASN'T A

12:04PM 15   CONDITION AT THE POINT OF SALE.  IT WAS AN IMPLICIT POLICY THAT

12:04PM 16   WAS ENFORCED OVER TIME, AND THE COURT SAID THAT AMOUNTED TO A

12:04PM 17   TIE.  THAT'S EFFECTIVELY WHAT WE HAVE HERE.  IT'S VERY CLOSE

12:04PM 18   FACTUALLY.

12:04PM 19       SO WE JUST DON'T AGREE.  WE CONCEDE THAT THERE'S NO,

12:04PM 20   THERE'S NO COMPULSORY PURCHASE OF THE TIED PRODUCT HERE, AND WE

12:04PM 21   CONCEDE THAT THERE IS NO EXPRESS TYING CONDITION.

12:04PM 22       BUT WHAT WE DISAGREE WITH IS THE PREMISE THAT THAT

12:04PM 23   FORECLOSES OUR TIEING CLAIM BECAUSE IT DIDN'T IN EASTMAN KODAK,

12:04PM 24   AND THAT'S BINDING AUTHORITY.

12:05PM 25       UNLESS THE COURT HAS QUESTIONS ON TYING, I'LL MOVE TO

12:05PM 1    MONOPOLIZATION.

12:05PM 2        SO ON MARKET DEFINITION, I MEAN FUNDAMENTALLY MARKET

12:05PM 3    DEFINITION IS FACTUAL.  IT REQUIRES AN ANALYSIS OF THE DEGREE

12:05PM 4    OF SUBSTITUTION BETWEEN PRODUCTS.  AND NORMALLY THE WAY THIS IS

12:05PM 5    DONE IN AN ANTITRUST CASE IS WITH A MODEL, AN EMPIRICAL MODEL

12:05PM 6    THAT LOOKS AT THE DEGREE OF SUBSTITUTION THAT IS OCCURRING.

12:05PM 7        SO FOR AN ACTUAL COMPLAINT TO BE PLAUSIBLE, WE DON'T NEED

12:05PM 8    A MODEL.  WE NEED TO ALLEGE THAT THE ESSENTIAL FACTS THAT PUSH

12:05PM 9    THE COMPLAINT ACROSS THAT THRESHOLD TO PLAUSIBILITY.

12:05PM 10       AND WE'VE DONE THAT HERE.  SO I'LL START WITH THE

12:05PM 11   AFTERMARKET.  THAT'S THE SORT OF THE PRIMARY MARKET HERE.  AND,

12:05PM 12   YOU KNOW, GENERALLY SPEAKING, AN AFTERMARKET CAN BE FOUND

12:05PM 13   WHENEVER YOU HAVE A DURABLE GOOD, HERE IT'S IPHONES AND IPADS,

12:05PM 14   THAT ARE SOLD AND THERE'S A MARKET, DERIVATIVE TO THAT MARKET

12:06PM 15   WHERE THERE'S A SEPARATE SORT OF ZONE OF COMPETITION.

12:06PM 16       AND HERE APPLE, THROUGH ITS BUSINESS MODEL, CREATES ALL

12:06PM 17   SORTS OF AFTER MARKETS.  IT'S SELLING, YOU KNOW, MOBILE DEVICES

12:06PM 18   AND THEN COMPETING IN DERIVATIVE MARKETS FOR VARIOUS SERVICES,

12:06PM 19   AND CLOUD SERVICES ARE ONE OF THEM.

12:06PM 20       THE TEST FOR AFTER MARKETS IS LAID OUT IN EPIC V. APPLE BY

12:06PM 21   THE NINTH CIRCUIT.  IT'S VERY CLEAR WHAT THE ELEMENTS ARE.

12:06PM 22   WE'VE PLEADED ALL OF THEM.  AND THERE'S NO REAL DISPUTE IF I

12:06PM 23   LOOK AT APPLE'S MOTION OR ITS REPLY THAT WE HAVE.  THEY DON'T

12:06PM 24   CONTEST OUR SHOWING ON ANY OF THE ELEMENTS, AT LEAST NOT

12:06PM 25   DIRECTLY.

12:06PM  1        SO YOU HAVE TO SHOW THAT THERE'S GENERALLY NO KNOWLEDGE OF

12:06PM  2   THE AFTER MARKET RESTRICTION WHEN YOU MADE YOUR FOREMARKET

12:06PM  3   PURCHASE.  WE'VE ALLEGED THAT.  THERE'S NO DISPUTE.

12:06PM  4        YOU HAVE TO SHOW THAT THERE'S GENERALLY AN INABILITY TO

12:06PM  5   PRICE THE EFFECTS OF THE RESTRAINT OVER TIME.  IT'S CALLED

12:06PM  6   LIFECYCLE PRICING.  WE'VE ALLEGED THAT.  THERE'S NO DISPUTE.

12:07PM  7        YOU GENERALLY HAVE TO SHOW THAT THERE'S A SIGNIFICANT

12:07PM  8   DEGREE OF SWITCHING COSTS IN THE FOREMARKET, MEANING IF YOU

12:07PM  9   WERE TO SELL YOUR IPHONE AND BUY AN ANDROID INSTEAD, THOSE

12:07PM  10  COSTS ARE SIGNIFICANT.  WE'VE ALLEGED THAT.  THERE'S NO

12:07PM  11  DISPUTE.

12:07PM  12       AND THEN YOU ALSO HAVE TO SHOW THAT GENERAL MARKET

12:07PM  13  DEFINITION PRINCIPLES DON'T UNDERMINE YOUR MARKET.  AND ON

12:07PM  14  THAT, APPLE DOESN'T ENGAGE ANY OF OUR PROOF.  WE HAVE THE

12:07PM  15  OUTLINES IN OUR COMPLAINT OF A SSNIP TEST, WHICH IS SORT OF THE

12:07PM  16  CONVENTIONAL METHODOLOGY THAT ECONOMISTS USE TO DEFINE THE

12:07PM  17  CONTOURS OF A MARKET.

12:07PM  18       NORMALLY THAT REQUIRES DISCOVERY TO DEVELOP, BUT WE HAVE A

12:07PM  19  REALLY GREAT NATURAL EXPERIMENT HERE BECAUSE --

12:07PM  20            THE COURT:  AND THE SSNIP HERE, WAS IT U.K.?  U.S.?

12:07PM  21            MR. HARRINGTON:  IT WAS U.K.  EXACTLY.  SO IN THE

12:07PM  22  U.K. --

12:07PM  23            THE COURT:  OKAY.

12:07PM  24            MR. HARRINGTON:  DID YOU HAVE A QUESTION,

12:07PM  25  YOUR HONOR?

12:07PM  1          THE COURT:  WELL, I THINK THAT WAS PART OF THE ISSUE

12:07PM  2  OF THE FACT THAT IT'S A U.K. COMPARISON, BUT GO AHEAD.

12:07PM  3          MR. HARRINGTON:  WELL, THERE ISN'T ANY DIFFERENCE IN

12:07PM  4  THE SUBSTITUTES THAT ARE THEORETICALLY AVAILABLE IN THE U.K.,

12:08PM  5  SO IT DOES PROVIDE A VERY GOOD TEST OF HOW DO CONSUMERS REACT

12:08PM  6  TO PRICE INCREASES AT APPLE?  DO THEY SHIFT THEIR TRANSACTIONS

12:08PM  7  TO GOOGLE DRIVE, DROPBOX, AND ALL OF THESE ALTERNATIVES THAT

12:08PM  8  APPLE SAYS SHOULD BE IN THE MARKET, RIGHT?

12:08PM  9          AND THE WAY YOU WOULD LOOK AT THAT IS WHETHER OR NOT APPLE

12:08PM  10  IN THE U.K. MARKET, WHERE ALL OF THESE OTHER SUPPOSED

12:08PM  11  COMPETITORS ARE OPERATING, IS APPLE ABLE TO SUSTAIN A

12:08PM  12  SIGNIFICANT PRICE INCREASE?  AND THE RESULTS IN THE U.K. SHOW

12:08PM  13  THAT IT CAN, RIGHT?

12:08PM  14          SO IF ALL OF THOSE OTHER ALTERNATIVES WERE IN THE SAME

12:08PM  15  MARKET AND WERE SUBSTITUTES FOR APPLE, THEN APPLE WOULDN'T BE

12:08PM  16  ABLE TO IMPOSE IN THAT CASE 20 TO 30 PERCENT PRICE INCREASES ON

12:08PM  17  THE PRODUCT.  CONSUMERS WOULD SWITCH.  THEY WOULD SWITCH TO

12:08PM  18  GOOGLE DRIVE.  THEY WOULD SWITCH TO DROPBOX.  AND THAT WOULD

12:08PM  19  DISCIPLINE APPLE'S ABILITY TO INCREASE PRICE.

12:08PM  20          AND THAT DIDN'T HAPPEN HERE.  WE'VE PLEADED THAT IN DETAIL

12:08PM  21  IN THE COMPLAINT, AND APPLE HAS NO ANSWER TO THAT.

12:08PM  22          SO JUST IN TERMS OF --

12:08PM  23          THE COURT:  IN THE COMPLAINT THERE WASN'T --

12:09PM  24  PLAINTIFFS HAVEN'T ALLEGED THAT THOSE MARKETS ARE COMPARABLE IN

12:09PM  25  TERMS OF THE U.K. AND THE U.S.  THEY HAVEN'T ALLEGED THAT THE

12:09PM 1    PROFITABILITY -- I'M TRYING TO REMEMBER THE PROFITABILITY AND

12:09PM 2    WHETHER OR NOT -- THERE WAS A RAISE IN PRICE, BUT WHETHER OR

12:09PM 3    NOT THERE'S A SPECIFIC ALLEGATION CONCERNING PROFITABILITY.

12:09PM 4         MR. HARRINGTON:  YES, THERE IS AN ALLEGATION THAT --

12:09PM 5    WELL, THE ALLEGATION CONCERNING PROFITABILITY IS THAT APPLE

12:09PM 6    WOULDN'T HAVE DONE THAT UNLESS IT WOULD HAVE BEEN PROFITABLE.

12:09PM 7    IT DOESN'T MAKE A LOT OF SENSE FOR APPLE TO HAVE INCREASED

12:09PM 8    PRICES BY 20 PERCENT AND TAKING A HIT ON THAT CERTAINLY BECAUSE

12:09PM 9    IT SUSTAINED THOSE PRICES OVER TIME.

12:09PM 10        BUT OBVIOUSLY WE'LL NEED DISCOVERY AT THE END OF THE DAY

12:09PM 11   TO LOOK AT APPLE'S PROFITABILITY.

12:09PM 12        THE COURT:  AND DID PLAINTIFF ALLEGE THAT IT WAS A

12:09PM 13   RELATIVE PRICE CHANGE IN TERMS THE ALLEGED -- I'M JUST TRYING

12:09PM 14   TO PULL UP YOUR COMPLAINT AT THE SAME TIME SINCE THE COMPUTER

12:09PM 15   RESTARTED.  I'M TRYING TO FIND --

12:09PM 16        MR. HARRINGTON:  THAT'S OKAY.

12:09PM 17        THE COURT:  -- THOSE PARAGRAPHS.

12:09PM 18        MR. HARRINGTON:  I THINK IF YOU LOOK AROUND -- 86

12:10PM 19   HAS THE CHART WHICH IS THE MOST VISUAL DEPICTION OF THIS, BUT

12:10PM 20   THE SSNIP IS AT 83 TO 91.

12:10PM 21        THE COURT:  BECAUSE I DON'T BELIEVE THAT THERE ARE

12:10PM 22   ALLEGATIONS REGARDING WHAT HAPPENED TO THE PRICE OF THE ALLEGED

12:10PM 23   COMPETITIVE PRODUCTS.

12:10PM 24        MR. HARRINGTON:  I DON'T THINK WE HAVE THAT.  I

12:10PM 25   MEAN, THAT'S CERTAINLY SOMETHING THAT WE CAN LOOK AT.

12:10PM 1        I MEAN, THE OTHER THING THAT WE CAN DO, CANDIDLY, IN AN

12:10PM 2    AMENDED COMPLAINT IF WE HEAD DOWN THAT PATH IS THERE ARE DATA

12:10PM 3    ABOUT USAGE OF THOSE APPS.  SO WE CAN SHOW THAT IN RESPONSE TO

12:10PM 4    THIS PRICE INCREASE BY APPLE, FOR EXAMPLE, IF THEY WERE IN THE

12:10PM 5    SAME MARKET, IF APPLE'S PRICE WENT UP, YOU WOULD EXPECT

12:10PM 6    CONSUMERS TO SWITCH OVER TO GOOGLE DRIVE AND USAGE OF GOOGLE

12:10PM 7    DRIVE GOES UP.

12:10PM 8        THE COURT:  IT GOES UP.

12:10PM 9        MR. HARRINGTON:  IT DIDN'T.  IT WENT DOWN.  THAT'S

12:10PM 10   NOT IN THE COMPLAINT.  WE CAN ALLEGE THAT IF THE COURT WANTS,

12:10PM 11   BUT I SUBMIT WHAT WE'VE DONE HERE IS MORE THAN ADEQUATE TO

12:11PM 12   PLEAD A RELEVANT MARKET.  WE'RE TALKING NOW ABOUT PROVING IT,

12:11PM 13   AND THAT'S THE TYPE OF EXPERT ANALYSIS THAT WE WOULD DO AT

12:11PM 14   CLASS CERTIFICATION, SUMMARY JUDGMENT.

12:11PM 15       RIGHT NOW WE JUST NEED TO ALLEGE FACTS SUFFICIENT TO HAVE

12:11PM 16   A PLAUSIBLE CLAIM TO RELIEF.  AND THE OUTLINES OF THE SSNIP

12:11PM 17   WE'VE LAID OUT HERE I THINK MORE THAN ADEQUATELY DO THAT IN

12:11PM 18   CONJUNCTION WITH ALL OF THE OTHER ALLEGATIONS.

12:11PM 19       THE COURT:  OKAY.

12:11PM 20       MR. HARRINGTON:  LIKE I SAID, APPLE DOESN'T ENGAGE

12:11PM 21   IN ANY OF THIS.  THE ARGUMENT ON AFTER MARKETS FROM APPLE, THE

12:11PM 22   PRIMARY ARGUMENT IS THAT IN ORDER FOR THERE TO BE AN AFTER

12:11PM 23   MARKET, THERE NEEDS TO BE LOCK IN, WHICH APPLE READS AS MEANING

12:11PM 24   YOU AS A CONSUMER ARE REQUIRED TO PURCHASE THE AFTER MARKET

12:11PM 25   PRODUCT.

12:11PM  1        SO IN THIS CASE, IT WOULD MEAN YOU AS A CONSUMER, WHEN YOU

12:11PM  2   BOUGHT YOUR IPHONE OR YOUR IPAD, YOU WERE LOCKED IN TO BUYING

12:11PM  3   ICLOUD.  AND APPLE SAYS THAT DIDN'T OCCUR AND SO, THEREFORE,

12:11PM  4   THERE'S NO AFTER MARKET.

12:11PM  5        RESPECTFULLY, I THINK THAT GETS THE LOCK-IN CONCEPT

12:12PM  6   COMPLETELY BACKWARDS.  AND IF YOU LOOK AT THE LEADING CASES, I

12:12PM  7   MEAN EPIC V. APPLE DISPELS OF THIS VERY WELL.  YOU LOOK AT THE

12:12PM  8   NEWCAL CASE, WHICH IS A LEADING NINTH CIRCUIT AFTER MARKET

12:12PM  9   DECISION.

12:12PM  10       THE IDEA OF LOCK IN GOES BACK TO THE FUNDAMENTAL SORT OF

12:12PM  11  ANALYSIS THAT AFTER MARKET JURISPRUDENCE IS LOOKING AT.  IT'S

12:12PM  12  WHETHER OR NOT THERE'S ENOUGH COMPETITION IN THE FOREMARKET,

12:12PM  13  WHICH IN THIS CASE IS THE MARKET FOR IPHONES AND IPADS, TO

12:12PM  14  DISCIPLINE WHAT IS HAPPENING IN THE AFTER MARKET.

12:12PM  15       SO WHAT THE COURTS LOOK AT IS THE EXTENT TO WHICH THE

12:12PM  16  CONSUMERS ARE LOCKED INTO THE FOREMARKET.  MEANING WHEN YOU BUY

12:12PM  17  YOUR IPHONE, HOW EASY IS IT FOR YOU TO SWITCH OUT AND GET AN

12:12PM  18  ANDROID BECAUSE IF IT'S REALLY EASY, THAT MEANS THAT THAT

12:12PM  19  ABILITY TO SWITCH IN THE FOREMARKET CAN DISCIPLINE WHAT IS

12:12PM  20  HAPPENING IN THE AFTER MARKET.

12:12PM  21       SO THE LOCK-IN CONCEPT IS ALMOST THE OPPOSITE OF WHAT

12:12PM  22  APPLE IS ARGUING.  YOU DON'T HAVE TO BE LOCKED IN TO BUYING THE

12:12PM  23  AFTER MARKET PRODUCT.  THE QUESTION IS WHETHER OR NOT THE

12:12PM  24  EXTENT TO WHICH YOU'RE LOCKED INTO THE FOREMARKET.  AND THAT'S

12:13PM  25  WHAT ALL OF THE CRITERIA THAT ARE LAID OUT IN EPIC V. APPLE GO

12:13PM 1 TO, THE QUESTION ABOUT DID YOU KNOW ABOUT THE AFTER MARKET

12:13PM 2 RESTRAINT WHEN YOU BOUGHT IN THE FOREMARKET, YOUR ABILITY TO

12:13PM 3 LIFECYCLE PRICE, SWITCHING COSTS, ALL OF THAT GOES INTO THIS

12:13PM 4 QUESTION OF LOCK IN, BUT JUST FOCUS ON WHETHER OR NOT YOU'RE

12:13PM 5 LOCKED IN OR THE EXTENT TO WHICH YOU'RE LOCKED IN IN THE

12:13PM 6 FOREMARKET.

12:13PM 7        THE COURT:  THE COURT IS INCLINED TO AGREE IN TERMS

12:13PM 8 OF THE LOCKED IN.

12:13PM 9        MR. HARRINGTON:  THERE'S ALSO AN ARGUMENT THAT WE

12:13PM 10 NEED TO SHOW A POLICY CHANGE IN THE AFTER MARKET, AFTER THE

12:13PM 11 FOREMARKET PURCHASE.  THAT'S ONE OF APPLE'S OTHER ARGUMENTS ON

12:13PM 12 AFTER MARKET.  THIS WAS ALSO REJECTED IN EPIC V. APPLE.  I

12:13PM 13 THINK IT'S PRETTY CLEAR.

12:13PM 14     I THINK MAYBE WITH THE TIME I HAVE I SHOULD TRANSITION TO

12:13PM 15 MONOPOLY POWER BECAUSE THAT WAS ANOTHER ONE OF THE COURT'S

12:13PM 16 ISSUES RAISED IN THE TENTATIVE.

12:13PM 17     SO WITH MONOPOLY POWER, I THINK IT'S AN OPEN QUESTION NOW

12:14PM 18 IN THE NINTH CIRCUIT WHETHER OR NOT YOU NEED TO SHOW THE

12:14PM 19 ABILITY TO SUPPRESS OUTPUT IN ADDITION TO THE ABILITY TO CHARGE

12:14PM 20 SUPRACOMPETITIVE PRICES BECAUSE IN EPIC V. APPLE, THE

12:14PM 21 NINTH CIRCUIT DECISION, THE COURT MADE VERY CLEAR THAT IN ORDER

12:14PM 22 TO SHOW ANTICOMPETITIVE EFFECTS, YOU ONLY HAVE TO SHOW

12:14PM 23 SUPRACOMPETITIVE PRICES.  YOU DO NOT NEED TO SHOW A SUPPRESSION

12:14PM 24 AND OUTPUT.

12:14PM 25        AND MONOPOLY POWER BY DEFINITION IS THE ABILITY TO IMPOSE

12:14PM 1    ANTICOMPETITIVE EFFECTS.  SO IF SUPRACOMPETITIVE PRICES ARE

12:14PM 2    ENOUGH TO SHOW ANTICOMPETITIVE EFFECTS, PERFORCE IT'S ENOUGH TO

12:14PM 3    SHOW MONOPOLY POWER.  THAT LOGIC I THINK IS PRETTY

12:14PM 4    STRAIGHTFORWARD.  ALTHOUGH I THINK IT'S UNSTATED AND WE DON'T

12:14PM 5    KNOW EXACTLY WHAT THE -- THE COURT DIDN'T STATE THAT

12:14PM 6    EXPLICITLY, AND WE CONCEDE THAT IN OUR PAPERS.  IT'S JUST A

12:14PM 7    LOGICAL OUTCOME OF WHAT THE COURT HELD.

12:14PM 8        BUT EVEN IF WE'RE REQUIRED TO SHOW A SUPPRESSION OF

12:14PM 9    OUTPUT, I THINK WE'VE DONE IT HERE.  SO THE MOST FUNDAMENTAL

12:15PM 10   WAY OUTPUT -- APPLE IS RESTRICTING OUTPUT IS BY LITERALLY

12:15PM 11   FORECLOSING CLOUD PROVIDERS FROM OFFERING OUR PRODUCT, FULL

12:15PM 12   SERVICE CLOUD STORAGE.

12:15PM 13       THE RESTRAINT HERE LITERALLY BARS THEM FROM OFFERING A

12:15PM 14   PRODUCT.  THAT IS THE MOST DIRECT REDUCTION IN OUTPUT I CAN

12:15PM 15   IMAGINE, RIGHT?  IT'S JUST YOU CANNOT OFFER IT.  IT'S A BAR.

12:15PM 16   ONLY APPLE IS ALLOWED TO OFFER IT.

12:15PM 17       AND WHAT WE ALLEGE IN THE COMPLAINT IS THAT IN A MARKET

12:15PM 18   WITHOUT THIS CONSTRAINT, COMPETITORS WOULD OFFER THAT PRODUCT,

12:15PM 19   THEY WOULD INNOVATE, PRICES WOULD BE LOWER, THIS WOULD DRIVE

12:15PM 20   TRANSACTIONS, IT WOULD DRIVE OUTPUT IN THE MARKET.  SO APPLE

12:15PM 21   HAS SUPPRESSED OUTPUT IN THAT WAY.

12:15PM 22       AND THE OTHER WAY APPLE HAS SUPPRESSED OUTPUT IS JUST BY

12:15PM 23   CHARGING SUPRACOMPETITIVE PRICES, YOU DIMINISH DEMAND.  THIS IS

12:15PM 24   JUST BASIC SUPPLY AND DEMAND, RIGHT?  THE ONE WAY TO CONTROL

12:15PM 25   OUTPUT IS BY REDUCING OUTPUT DIRECTLY OR YOU CAN INCREASE

12:15PM  1       PRICES AND HAVE DEMAND GO DOWN AND REDUCE OUTPUT THAT WAY.

12:16PM  2          SO WE'VE ALLEGED IT IN THAT OTHER RESPECT.  SO IF WE'RE

12:16PM  3       JUST TALKING ABOUT APPLE'S OWN OUTPUT, APPLE HAS REDUCED IT

12:16PM  4       THROUGH SUPRACOMPETITIVE PRICES.

12:16PM  5          YOU KNOW, THE COURT DIDN'T HAVE ANY QUESTIONS IN THE

12:16PM  6       TENTATIVE ABOUT OUR SHOWING OF SUPRACOMPETITIVE PRICES.  IS

12:16PM  7       THAT AN ISSUE THAT WOULD BE A GOOD USE OF MY TIME OR --

12:16PM  8              THE COURT:  WHY DON'T YOU CONTINUE, AND I'LL COME

12:16PM  9       BACK TO IT IF THERE ARE A COUPLE OF FOLLOW-UP QUESTIONS WHICH I

12:16PM  10      HAD ABOUT THEM.

12:16PM  11             MR. HARRINGTON:  I DO WANT TO ADDRESS BARRIERS TO

12:16PM  12      ENTRY, WHICH THE COURT FLAGGED IN THE TENTATIVE AS WELL.

12:16PM  13         SO I THINK APPLE'S ARGUMENTS ARE FUNDAMENTALLY

12:16PM  14      MISCHARACTERIZING WHAT THE BARRIERS TO ENTRY INQUIRY LOOKS

12:16PM  15      LIKE.

12:16PM  16         SO THE QUESTION ON WHETHER THE BARRIERS TO ENTRY IS NOT

12:16PM  17      WHETHER THERE ARE COMPETITORS IN THE MARKET OR IN SOME WAY IN

12:16PM  18      THIS SPHERE OF THE DEFENDANT WHO COULD POTENTIALLY COMPETE.

12:16PM  19         THE QUESTION IS WHETHER ANY ENTRANTS HAD THE ABILITY TO

12:16PM  20      TAKE BUSINESS AWAY FROM THE ALLEGED MONOPOLIST.  THAT'S STATED

12:17PM  21      CLEARLY IN REBEL OIL AND THE OTHER CASES CITED IN OUR BRIEF.

12:17PM  22         SO THE FACT THAT GOOGLE DRIVE HAS A PRODUCT THAT APPLE'S

12:17PM  23      CUSTOMERS CAN BUY OR THAT DROPBOX DOES, DOESN'T TELL US

12:17PM  24      ANYTHING.

12:17PM  25         THE QUESTION IS WHETHER THOSE PRODUCTS ARE TAKING BUSINESS

12:17PM 1      AWAY FROM APPLE.

12:17PM 2          AND AS WE HAVE SHOWN IN THE COMPLAINT, APPLE HAS SUSTAINED

12:17PM 3      AN ENORMOUS MARKET SHARE DESPITE THE, QUOTE-UNQUOTE, "ENTRANCE

12:17PM 4      OF THESE COMPETITORS."  THEY'RE NOT DISCIPLINING APPLE'S

12:17PM 5      PRICING POWER, AND, THEREFORE, YOU JUST -- IT'S NOT POSSIBLE, I

12:17PM 6      THINK, TO FIND THAT THERE ARE NO BARRIERS TO ENTRY.  THERE ARE

12:17PM 7      EXTREMELY SIGNIFICANT BARRIERS TO ENTRY WHICH ARE CONFIRMED BY

12:17PM 8      THE FACT THAT THESE OTHER RIVALS ARE NOT MEANINGFULLY COMPETING

12:17PM 9      AND TAKING SHARES FROM APPLE.  THAT'S THE TEXTBOOK DEFINITION

12:17PM 10     OF BARRIERS TO ENTRY.

12:17PM 11         THIS IS ANOTHER ISSUE ON WHICH THE SURVEY EVIDENCE THAT

12:18PM 12     WE'VE COLLECTED BEARS.  BUT EVEN FROM WHAT IS IN THE --

12:18PM 13             THE COURT:  WHAT YOU HAD CITED EARLIER AT THE

12:18PM 14     BEGINNING?

12:18PM 15             MR. HARRINGTON:  YES.

12:18PM 16         BUT EVEN FROM WHAT IS IN THE COMPLAINT, I THINK WE'VE

12:18PM 17     SUFFICED HERE BASED ON THE CASE LAW.  IT IS NOT ENOUGH TO LOOK

12:18PM 18     JUST AT THE FACT THAT GOOGLE DRIVE EXISTS.

12:18PM 19         THE QUESTION IS WHETHER OR NOT GOOGLE DRIVE IS TAKING

12:18PM 20     BUSINESS AWAY FROM APPLE, AND WE'VE SHOWN IN THE COMPLAINT, AND

12:18PM 21     I THINK ALLEGED WITH PARTICULARITY THAT IT'S NOT.

12:18PM 22         IF I COULD JUST ON THE -- I SHOULD GET TO THE STATUTE OF

12:18PM 23     LIMITATIONS.  I THINK ANALYTICALLY ON THE STATUTE OF

12:18PM 24     LIMITATIONS IT MAKES SENSE TO THINK OF THE PLAINTIFFS

12:18PM 25     SEPARATELY BECAUSE THE ISSUES ARE VERY DIFFERENT.  SO --

12:18PM  1              THE COURT:  THE TWO --

12:18PM  2              MR. HARRINGTON:  THE TWO PLAINTIFFS IN OUR CASE,

12:18PM  3      RIGHT?

12:18PM  4         BECAUSE ONE OF THE PLAINTIFFS PURCHASED HER FIRST ICLOUD

12:18PM  5      PLAN IN 2022, SO TWO YEARS BEFORE WE BROUGHT THIS SUIT.

12:18PM  6         WHEN SHE BOUGHT HER ICLOUD PLAN, THAT WAS THE MOMENT SHE

12:18PM  7      WAS INJURED.  NOT EARLIER.  SHE WASN'T INJURED BY THE EXISTENCE

12:19PM  8      OF ICLOUD OR THE POSSIBILITY THAT APPLE HAD A MONOPOLY BECAUSE

12:19PM  9      SHE IS NOT A COMPETITOR.  SHE WASN'T FORECLOSED FROM COMPETING

12:19PM  10     IN ANY MARKET.  SHE'S A CONSUMER.

12:19PM  11        SO HER INJURY, TO THE EXTENT SHE HAS ONE, IS DERIVED FROM

12:19PM  12     THE OVERCHARGE SHE INCURRED WHEN SHE BOUGHT HER ICLOUD PLAN,

12:19PM  13     AND THAT HAPPENED IN 2022.  AND THEN SHE SUED IN 2024.

12:19PM  14        HER CLAIMS ARE TIMELY, I SUBMIT, ON THEIR FACE JUST BASED

12:19PM  15     UNDER STANDARD ACCRUAL RULES FOR ANTITRUST CLAIMS.  SHE HAS

12:19PM  16     FOUR YEARS FROM HER INJURY TO SUE, SHE WAS TWO YEARS WITHIN HER

12:19PM  17     INJURY, HER CLAIMS ARE TIMELY FULL STOP.  IT'S NOT A CONTINUING

12:19PM  18     VIOLATIONS ISSUE, RIGHT?

12:19PM  19        AND WE HAVE MORE CASE LAW ON THIS THAN WAS CITED IN THE

12:19PM  20     BRIEF, BUT I HEARD THE COURT EARLIER THAT THE COURT IS NOT

12:19PM  21     SUPER EXCITED ABOUT GETTING NEW CITES THAT WEREN'T IN THE

12:19PM  22     PAPERS, SO UNLESS YOU WOULD LIKE THEM, I'LL HOLD THEM BACK.

12:19PM  23        BUT THERE'S A LOT OF CASE LAW OUT THERE RECOGNIZING THAT

12:19PM  24     ANTITRUST CLAIMS ACCRUE ONLY AT THE TIME OF INJURY AND FOR A

12:19PM  25     CONSUMER THEY CAN'T SUE ANY EARLIER THAN THEIR OVERCHARGE

```
12:20PM   1    BECAUSE THEY WOULDN'T HAVE STANDING.

12:20PM   2         IMAGINE IF GAMBOA, WHO BOUGHT HER FIRST ICLOUD PLAN IN

12:20PM   3    2022, CAME INTO COURT IN 2014 BEFORE SHE EVEN BOUGHT AN ICLOUD

12:20PM   4    PLAN AND PAID ANYTHING TO APPLE AND SAID APPLE HAS A MONOPOLY,

12:20PM   5    WHAT WOULD HAPPEN TO HER CASE?  SHE WOULD BE DISMISSED.  SHE

12:20PM   6    HAS NO STANDING.  SHE HAS NO INJURY, RIGHT?

12:20PM   7         HER CLAIMS CAN'T ACCRUE BEFORE SHE'S INJURED.  AND THAT

12:20PM   8    HAPPENED IN 2022.

12:20PM   9              THE COURT:  I MEAN, THIS IS -- I'M TRYING TO

12:20PM   10   REMEMBER HOW MUCH -- HOW IN DEPTH I WENT INTO THIS IN TERMS OF

12:20PM   11   THE TENTATIVE, WHICH I'D SENT COUNSEL.  BUT, I MEAN, THE INJURY

12:20PM   12   ARGUMENT, WHICH IS DISCUSSED, I BELIEVE, IN DEFENDANT'S PAPERS

12:20PM   13   IS -- IF THE COURT WERE TO ADOPT WHAT PLAINTIFFS ARE ARGUING

12:20PM   14   RIGHT NOW, IT WOULD BASICALLY BE -- THERE WOULD BE NO -- IT

12:20PM   15   WOULD EVISCERATE THE STATUTE OF LIMITATIONS THAT THE INJURY

12:20PM   16   WERE TO ARISE.  AND THE OPINION BY JUDGE GONZALEZ ROGERS AND

12:21PM   17   OTHERS, WHICH IS CITED IS MY RECOLLECTION, BUT IT'S BEEN A

12:21PM   18   WHILE SINCE I LOOKED AT THE CASE LAW, RAISE THAT QUESTION OF

12:21PM   19   BASICALLY BY SAYING THAT IT IS GOING TO ARISE EVERY SINGLE TIME

12:21PM   20   THAT THERE'S A PURCHASE PUTS NO END TO THIS.

12:21PM   21              MR. HARRINGTON:  RIGHT.  THAT'S THE CONTINUING

12:21PM   22   VIOLATIONS DOCTRINE.  SO THAT'S ENTIRELY DIFFERENT.

12:21PM   23         SO IF WHAT WE WERE SAYING WAS -- YOU KNOW, IT'S NOT -- FOR

12:21PM   24   GAMBOA'S CLAIMS, SHE DOES NOT HAVE TO RELY ON THE CONTINUING

12:21PM   25   VIOLATIONS DOCTRINE OR THE NOTION THAT EVERY SINGLE PURCHASE
```

12:21PM  1    RESTARTS THE STATUTE OF LIMITATIONS.

12:21PM  2        ALL SHE NEEDS TO RELY ON IS THE STANDARD ACCRUAL RULE FOR

12:21PM  3    ANTITRUST CLAIMS, AND, FRANKLY, MOST CLAIMS.  THEY ACCRUE AT

12:21PM  4    THE TIME OF INJURY.  AND BY DEFINITION, SHE WAS NOT INJURED ANY

12:21PM  5    EARLIER THAN 2022.

12:21PM  6        THE COURT:  SO THE COURT HAD CITED TWO CASES AND

12:21PM  7    ASKED COUNSEL TO DISCUSS THEM.  AND SO IN TERMS OF DISCUSSING

12:21PM  8    THE TWO PLAINTIFFS, WHY DON'T YOU INTERWEAVE THE DISCUSSION

12:22PM  9    REGARDING -- AND DISTINGUISH I WOULD GUESS SAURIKIT,

12:22PM  10   S-A-U-R-I-K-I-T, VERSUS APPLE, AS WELL AS THE MEDIA STREAM CASE

12:22PM  11   ALSO CITED.

12:22PM  12       MR. HARRINGTON:  SURE.  I'M GOING TO STRUGGLE WITH

12:22PM  13   THE PRONUNCIATION ON THE FIRST ONE AS WELL.

12:22PM  14       THE COURT:  I'M JUST SPELLING IT SO THAT YOU CAN

12:22PM  15   PRONOUNCE IT FOR ME.

12:22PM  16       MR. HARRINGTON:  I WILL TRY.  SO JUST TO SORT OF TIE

12:22PM  17   THIS TOGETHER.  SO WITH RESPECT TO GAMBOA, WE SUBMIT OUR CLAIMS

12:22PM  18   ARE TIMELY ON THEIR FACE BASED ON THE STANDARD OF ACCRUAL

12:22PM  19   PRINCIPLES.

12:22PM  20       NOW, WITH RESPECT TO DOROBIALA, THAT'S WHEN WE GET INTO

12:22PM  21   THE CONTINUING VIOLATIONS DOCTRINE.  AND FOR HIS CLAIMS TO BE

12:22PM  22   TIMELY, WE ACKNOWLEDGE THAT BECAUSE HE MADE A PURCHASE BACK IN

12:22PM  23   2013, HE NEEDS TO SATISFY THE REQUIREMENTS OF THE CONTINUING

12:22PM  24   VIOLATIONS DOCTRINE.  OKAY?

12:22PM  25       SO I WILL ADDRESS I THINK IT'S SAURIKIT AND MEDIA STREAM.

12:22PM 1    I FIRST WANT TO ADDRESS JUST ADDRESS HANOVER SHOE BECAUSE THAT

12:23PM 2    IS THE FOUNTAIN HEAD CASE UNDER WHICH EVERY OTHER LOWER COURT

12:23PM 3    CASE NEEDS TO BE RECONCILED, RIGHT?  AND THE FACTS THERE WERE

12:23PM 4    THAT THE DEFENDANT ADOPTED A POLICY OF NOT LEASING, OR NOT

12:23PM 5    SELLING I SHOULD SAY, CERTAIN EQUIPMENT TO THE PLAINTIFF IN

12:23PM 6    1912.  WE'RE GOING BACK HERE.

12:23PM 7        THE PLAINTIFF DIDN'T SUE UNTIL 1955, 40 YEARS LATER.  THE

12:23PM 8    POLICY THAT HAD BEEN IN PLACE, IT WAS AN UNSTATED POLICY OF

12:23PM 9    JUST NOT SELLING EQUIPMENT TO THE PLAINTIFF FOR OTHERS, HAD

12:23PM 10   BEEN CONTINUOUS FOR 40 YEARS.  AND THE COURT SAID, WELL, SURE,

12:23PM 11   THE PLAINTIFF COULD HAVE SUED IN 1912.  THEY WERE IMPACTED BY

12:23PM 12   THIS POLICY THEN.

12:23PM 13       BUT THEY DIDN'T HAVE TO.  THEIR CLAIMS WERE EQUALLY TIMELY

12:23PM 14   IN 1955, 40 YEARS LATER BECAUSE THE POLICY WAS ONGOING.

12:23PM 15       AND THAT'S -- THAT IS WHAT WE HAVE HERE.  WE HAVE A POLICY

12:23PM 16   WHENEVER IT STARTED, APPLE SAID 2011 AND LET'S ACCEPT THAT FOR

12:24PM 17   PURPOSES OF ARGUMENT, FROM 2011 ONWARD APPLE HAS HAD A POLICY

12:24PM 18   OF DENYING RIVAL CLOUD PROVIDERS ACCESS TO RESTRICTED FILES.

12:24PM 19   IT'S A CONTINUOUS POLICY, AND IT'S GONE ON UNABATED.

12:24PM 20       UNDER HANOVER SHOE, DOROBIALA'S CLAIMS ARE TIMELY NOW.  HE

12:24PM 21   COULD HAVE SUED WHEN HE FIRST SUFFERED AN INJURY, I THINK IT

12:24PM 22   WAS BACK IN 2016, BUT UNDER HANOVER SHOE HE DIDN'T HAVE TO

12:24PM 23   BECAUSE THIS POLICY IS ONGOING.

12:24PM 24       HOW DOES THAT FIT IN WITH SAURIKIT?  THAT'S THE CHALLENGE.

12:24PM 25   AND I THINK THERE'S A -- THE STATUTE OF LIMITATIONS DOCTRINE, I

1    THINK IT'S REALLY MUDDLED.  CANDIDLY, WHEN YOU LOOK DEEPLY AT

2    ALL OF THESE CASES, THERE'S LANGUAGE THAT IS DIFFICULT TO

3    RECONCILE.

4        HERE'S HOW I RECONCILED IT.  SO IN SAURIKIT THE

5    PRE-LIMITATIONS CONDUCT IN WHICH THE RESTRAINT AROSE WAS A

6    CONTRACT, RIGHT?  APPLE HAD ENTERED A CONTRACT WITH DEVELOPERS

7    AND WARRANTY AGREEMENTS THAT PREDATED THE LIMITATIONS PERIOD

8    AND THE RESTRAINT WAS EMBEDDED IN THOSE CONTRACTS.

9        IN THE CONTEXT OF A CONTRACT CLAIM LIKE THAT, WHILE IT'S

10   NOT IMPOSSIBLE TO SHOW THAT THE CONTINUATION OF THE CONTRACT

11   WAS AN ONGOING SORT OF COURSE OF CONDUCT, IT'S MUCH MORE

12   DIFFICULT, RIGHT, BECAUSE THERE'S A BETTER ARGUMENT FROM THE

13   DEFENDANT'S PERSPECTIVE THAT THE RESTRAINTS WERE CEMENTED

14   CONTRACTUALLY IN PLACE PRIOR TO THE LIMITATIONS PERIOD.

15       WE DON'T HAVE THAT HERE.  THERE'S NO CONTRACT.  IN FACT,

16   COUNSEL CONCEDED THAT IN THE ARGUMENT EARLIER.  THERE'S NO

17   CONTRACT THAT COMPELS CONSUMERS TO ONLY PURCHASE ICLOUD.

18   THERE'S NO CONTRACT THAT FORECLOSES THEM FROM PURCHASING FROM

19   RIVALS.  THERE'S A POLICY.

20       SO THIS CASE IS LIKE HANOVER SHOE.  IT'S A POLICY THAT HAS

21   BEEN IN PLACE FOR A LONG TIME, BUT IT'S STILL A POLICY AND

22   NOTHING WAS CEMENTED IN PLACE THAT IS IRREVOCABLE OR COULD NOT

23   HAVE BEEN REMOVED, AND THAT'S THE SAMSUNG TEST FROM THE

24   NINTH CIRCUIT.

25       SO I THINK THAT'S THE CORE DISTINCTION BETWEEN SAURIKIT

12:26PM  1    AND THIS CASE IS JUST THE NATURE OF THE RESTRAINT.

12:26PM  2         MEDIA STREAM IS SIMILAR AND DIFFERENT.  SO MEDIA STREAM

12:26PM  3    ALSO INVOLVED PRE-ELIMINATIONS PERIOD CONTRACTS, AND I THINK

12:26PM  4    THAT PIECE OF IT IS DISTINGUISHABLE ON THE SAME GROUNDS.

12:26PM  5         MEDIA STREAM ALSO INVOLVED A CLAIM OF PRODUCT INTEGRATION.

12:26PM  6    SO THE PLAINTIFF THERE WAS ALLEGING THAT MICROSOFT WAS

12:26PM  7    EMBEDDING ITS OWN MEDIA PLAYER IN ITS OPERATING SYSTEM,

12:26PM  8    BASICALLY INTEGRATING THE PRODUCT TOGETHER INTO ONE PRODUCT AND

12:26PM  9    OFFERING IT OUT INTO THE WORLD.

12:26PM  10        AND THE COURT SAID IN THE CONTEXT OF THAT CLAIM, THE

12:26PM  11   PRODUCT INTEGRATION THAT HAPPENED BEFORE THE LIMITATIONS PERIOD

12:26PM  12   WAS THE ACT THAT ESSENTIALLY CAUSED THE HARM.  I THINK IT'S

12:26PM  13   EASIER TO SEE PRODUCT INTEGRATION AS SORT OF A ONE-TIME EVENT,

12:27PM  14   RIGHT, THAT CAUSES THE INJURY WHEN THE PRODUCT BECOMES

12:27PM  15   INTEGRATED.

12:27PM  16        HERE, WE'RE NOT ALLEGING A PRODUCT INTEGRATION.  IN FACT,

12:27PM  17   IN RESPONSE TO THE TYING ARGUMENTS, ONE OF THE THINGS WE HAVE

12:27PM  18   SAID IS THAT ICLOUD IS NOT INTEGRATED WITH THE PHONES.  IT'S A

12:27PM  19   SEPARATE PRODUCT, RIGHT?

12:27PM  20             THE COURT:  RIGHT.

12:27PM  21             MR. HARRINGTON:  SO WHAT WE HAVE AGAIN IS IT'S NOT A

12:27PM  22   PRODUCT INTEGRATION THAT HAPPENED AT SOME POINT IN TIME AND

12:27PM  23   GETS RE-UPPED.  IT'S LITERALLY A POLICY THAT HAS BEEN

12:27PM  24   CONTINUING OVER TIME AND UNDER HANOVER SHOE, DOROBIALA'S CLAIM

12:27PM  25   IS TIMELY.

12:27PM  1                    THE COURT:  ALL RIGHT.  SUBMITTED?

12:27PM  2                    MR. HARRINGTON:  THANK YOU.

12:27PM  3                    THE COURT:  THANK YOU.  ALL RIGHT.

12:27PM  4               MR. CHIU, BRIEFLY.  I'LL GIVE YOU TWO MINUTES.

12:27PM  5                    MR. CHIU:  SURE.  I JUST WANT TO HIT PLAINTIFFS'

12:27PM  6       ARGUMENT ABOUT TYING AND HOW THIS IS MORE LIKE KODAK VERSUS --

12:27PM  7       AS OPPOSED TO, YOU KNOW, CASES LIKE AEROTEC.

12:27PM  8          AND I WOULD JUST POINT THE COURT TO THE NINTH CIRCUIT'S

12:27PM  9       DISCUSSION IN AEROTEC WHERE, YOU KNOW, PLAINTIFFS IN THAT CASE

12:27PM  10      TRIED TO MAKE A SIMILAR ARGUMENT ABOUT HOW THERE THEY WERE

12:28PM  11      TRYING TO ALLEGE A DE FACTO TIE LIKE IN KODAK.

12:28PM  12         AND THE COURT AND THE NINTH CIRCUIT IN AEROTEC MADE VERY

12:28PM  13      CLEAR THAT AGAIN THIS COMES DOWN TO WHETHER THERE IS -- WHETHER

12:28PM  14      THE DEFENDANT EITHER EXPLICITLY OR IMPLICITLY TIES THE

12:28PM  15      CONDITION OF THE SALE OF THE APU PARTS TO APU OWNERS ON THE

12:28PM  16      REQUIREMENT THAT THE OWNERS BUY AND REPAIR HONEYWELL AND/OR

12:28PM  17      FOREGO SERVICES FROM INDEPENDENT SERVICE PROVIDERS.

12:28PM  18         SO, AGAIN, THERE NEEDS TO BE AN ACTUAL CONDITION THAT

12:28PM  19      APPLE PLACES ON ITS CUSTOMERS THAT IN ORDER TO GET AN APPLE

12:28PM  20      DEVICE, YOU HAVE TO USE ICLOUD AND THERE'S JUST NOTHING LIKE

12:28PM  21      THAT HERE.

12:28PM  22         I WANT TO TOUCH QUICKLY ON THE KODAK AFTER MARKET

12:28PM  23      ARGUMENTS THAT PLAINTIFFS MADE.

12:28PM  24         FUNDAMENTALLY, THERE ARE MANY CASES IN THIS DISTRICT WHERE

12:28PM  25      THE COURTS AT THE PLEADING STAGE HAVE LOOKED AT THE ATTEMPT

12:28PM 1    LIKE PLAINTIFFS TRY TO DO HERE TO BASICALLY CONSTRICT A MARKET

12:28PM 2    AROUND A SINGLE BRAND OF PRODUCT AND HAVE LOOKED AT IF THERE

12:28PM 3    ARE INCONSISTENCIES IN THE COMPLAINT THAT UNDERMINE THAT

12:29PM 4    CONCEPT, THAT IS ENOUGH TO UNDERMINE THEIR ABILITY TO PLEAD A

12:29PM 5    PLAUSIBLE RELEVANT MARKET.

12:29PM 6        I WOULD POINT THE COURT TO THE PSYSTAR VERSUS APPLE CASE,

12:29PM 7    WHICH IS A JUDGE ALSUP DECISION FROM 2008.  THERE, THE

12:29PM 8    PLAINTIFFS TRIED TO PLEAD A SINGLE BRAND AFTER MARKET AROUND

12:29PM 9    MAC OS AS THE ONLY PRODUCT IMMUNE FROM OTHER OPERATING SYSTEM

12:29PM 10   COMPETITION.

12:29PM 11       AND JUDGE ALSUP SAID, LOOK, YOUR COMPLAINT ALSO HAS

12:29PM 12   ALLEGATIONS ELSEWHERE THAT SUGGEST APPLE IS DOING THINGS TO

12:29PM 13   PROMOTE MAC OS, AND THAT UNDERMINES THIS IDEA THAT MAC OS IS IN

12:29PM 14   ITS MARKET COMPLETELY INSULATED FROM COMPETITION.

12:29PM 15       SO THE NOTION THAT IF YOU LOOK AT A COMPLAINT AND THERE

12:29PM 16   ARE INCONSISTENCIES THAT UNDERMINE THIS IDEA THAT ICLOUD COULD

12:29PM 17   BE IN ITS OWN MARKET WITHOUT ANY SORT OF COMPETITION, THAT'S

12:29PM 18   ENOUGH FOR A COURT TO DISMISS ON THE BASIS FOR A FAILURE TO

12:29PM 19   PLEAD A RELEVANT MARKET.

12:29PM 20       I WANT TO TOUCH BRIEFLY ON JUST THIS IDEA OF MARKET POWER.

12:29PM 21   I THINK PLAINTIFF -- COUNSEL CONTINUES TO CONFLATE THIS IDEA OF

12:29PM 22   WHAT YOU NEED TO SHOW DIRECT EVIDENCE OF MARKET POWER, WHICH

12:30PM 23   REQUIRES BOTH THE ABILITY TO SUPRACOMPETITIVELY PRICE AND

12:30PM 24   REDUCE OUTPUT BECAUSE THE IDEA THERE IS IF YOU HAVE MARKET

12:30PM 25   POWER, YOU HAVE TO BE ABLE TO REDUCE OUTPUT IN ORDER TO SUSTAIN

12:30PM 1    AN INFLATED PRICE.

12:30PM 2         THAT IS VERY DIFFERENT FROM WHEN COURTS TALK ABOUT WHAT IS

12:30PM 3    EVIDENCE OF MARKET WIDE ANTICOMPETITIVE EFFECTS, AND THE CASES

12:30PM 4    THEY CITE LIKE FDC VERSUS QUALCOMM AND OTHERS TALK ABOUT IN THE

12:30PM 5    CONTEXT OF THE RULE OF REASON WHEN YOU HAVE SHOWN

12:30PM 6    ANTICOMPETITIVE EFFECTS, YOU CAN POINT TO SUSTAINED

12:30PM 7    SUPRACOMPETITIVE PRICES ALONE, FOR EXAMPLE, MARKET WIDE OVER

12:30PM 8    TIME AS EVIDENCE THAT THERE HAS BEEN ANTICOMPETITIVE EFFECTS

12:30PM 9    FROM MONOPOLY CONDUCT.

12:30PM 10              THE COURT:  SUBMIT IT?

12:30PM 11              MR. CHIU:  SUBMIT IT.

12:30PM 12              THE COURT:  ALL RIGHT.  THANKS.  THANK YOU TO BOTH

12:30PM 13   COUNSEL FOR BOTH OF THE PAPERS AS WELL AS YOUR ARGUMENT TODAY.

12:30PM 14        THE COURT IS TAKING THE MOTION UNDER SUBMISSION AND WILL

12:30PM 15   ISSUE A RULING.

12:30PM 16        IN THE MEANTIME, HAVE A WONDERFUL HOLIDAY.

12:30PM 17              MR. HARRINGTON:  THANK YOU.

12:30PM 18              THE COURT:  THANK YOU.  WE ARE NOW ADJOURNED.

12:31PM 19        (COURT CONCLUDED AT 12:31 P.M.)

20

21

22

23

24

25

1

2

3                      CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16       IRENE RODRIGUEZ, CSR, RMR, CRR
         CERTIFICATE NUMBER 8074

17

18       DATED:  DECEMBER 20, 2024

19

20

21

22

23

24

25