Belinda S Lee (SBN 199635)
Sarah M. Ray (SBN 229670)
Aaron T. Chiu (SBN 287788)
Alicia R. Jovais (SBN 296172)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
belinda.lee@lw.com
sarah.ray@lw.com
aaron.chiu@lw.com
alicia.jovais@lw.com

*Attorneys for Defendant Apple Inc.*

Ben M. Harrington (SBN 313877)
Benjamin J. Siegel (SBN 256260)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
benh@hbsslaw.com
bens@hbsslaw.com

*Attorneys for Plaintiff and the Proposed Class*
*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JULIANNA FELIX GAMBOA and THOMAS DOROBIALA, individually and behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 5:24-cv-01270-EKL (VKD)<br><br>**INITIAL JOINT CASE MANGEMENT CONFERENCE STATEMENT**<br><br>Date: February 5, 2025<br>Time: 1:30 p.m.<br>Place: Via Zoom<br><br>Judge: The Honorable Eumi K. Lee |

Pursuant to Local Rules 16-9 and 16-10 and the Standing Order for All Judges of the Northern District of California, Plaintiffs Julianna Felix Gamboa and Thomas Dorobiala (together, "Plaintiffs"), and Defendant Apple Inc. ("Apple" and, together with Plaintiffs, the "Parties") submit this Initial Joint Case Management Conference Statement.

## I. JURISDICTION AND SERVICE

Plaintiffs allege this Court has subject matter jurisdiction over this action under 28 U.S.C § 1331 because Plaintiffs allege violations of federal law, namely, the Sherman Act.

Apple was properly served with Plaintiffs' Complaint on March 5, 2024.

## 2. FACTS

**Plaintiffs' Statement:** The Court is familiar with the facts of this case. To briefly summarize, Plaintiffs allege that Apple has restricted competition from other cloud providers by quarantining a set of user files ("Restricted Files") and granting only its own cloud product, iCloud, permissions to host them. This restriction surgically protects iCloud from vigorous competition. It ensures that only iCloud can offer a "full service" cloud product capable of hosting all user files. This full-service functionality is important to cloud users, because, among other things, it allows users to backup *all* files on a single platform without the need to maintain multiple cloud accounts and juggle files between them. Capable of offering only partial cloud storage—*i.e.*, storage for some files but not all—other cloud providers do not meaningfully compete with iCloud.

This is evidenced by, among other things, iCloud's dominance of cloud storage on Apple's mobile devices. With respect full-service cloud storage, iCloud has a 100 percent market share. Even in a larger market that includes cloud providers offering partial storage, Plaintiffs conservatively estimate that iCloud has (at minimum) a 72.5 percent market share, which is more than sufficient to command monopoly power. This is also exhibited in the extraordinary profits Apple generates from iCloud—gross margins conservatively estimated to exceed 70-80 percent.

Apple's restraints also reduce output. Specifically, they strictly forbid would-be rivals from offering full-service cloud storage, an overt restriction on output, while also disincentivizing

1  output-enhancing innovation that would appeal to Apple users who do not currently purchase cloud storage. Apple's own output is further restrained, Plaintiffs allege, by virtue of Apple's supracompetitive prices which diminish demand for iCloud and, thus, the quantity of iCloud subscriptions sold.

While Apple contends that it quarantines Restricted Files for security reasons, in reality, Apple contracts with third-party cloud providers (including Google) to host users' iCloud data. Accordingly, Apple itself is using third parties to host the data it claims is too sensitive for third parties to host. There is also nothing particularly sensitive about Restricted Files, which include basic device settings (like ringtones), whereas the Unrestricted Files that users can back up on other platforms include some of the most sensitive files users accumulate (photos and videos). Apple's restraints cannot be coherently explained as an effort to protect user security, as Plaintiffs' complaint alleges in detail.

**Apple's Statement:** Apple designed and operates iCloud, a secure and seamless cloud storage service that allows users to remotely upload, store, and access their data across Apple devices (including iPhones, iPads, and Macs), as well as on Windows and Android. iCloud provides users with the ability to back up files such as photos, videos, documents, and app data, ensuring that their information is safely stored and easily retrievable. Apple offers 5GB of free iCloud storage to all users, with additional storage plans available for purchase (called iCloud+) to accommodate varying user needs.

Apple does not require users to purchase iCloud storage or use iCloud to back up their devices. Rather, users may choose from a variety of cloud storage options available on Apple devices, including Google Drive, Microsoft OneDrive, and Dropbox, among others. Additionally, users can back up their devices locally to a Mac or PC, which provides flexibility and optionality in how users manage their data.

For a small category of files—specifically, core app data and device settings, which include apps, passwords, and device settings like Home Screen layout and app organization—iCloud is

the only remote back-up option. This has been true since iCloud's launch in 2011. It has also always been true that users can back up these file types locally. Apple's decision to limit the remote backup of core app data and device settings to iCloud ensures security and privacy for users. Access to these files by third parties could provide unfettered entry into an Apple device and access to a unique digital fingerprint comprising a user's most sensitive and private information. This design aligns with Apple's "sandboxing" policy, which limits third-party apps' access to data from other apps on an Apple device to protect users against viruses, malware, and other exploits that could compromise the security of their devices. Plaintiffs therefore challenge the mechanism through which Apple ensures that users' most sensitive data and private information are securely protected and easily restored.

iCloud competes in a robust and competitive market for cloud storage services, where numerous alternatives are available to consumers. Many of these third-party cloud storage solutions are available on Apple devices through Apple's App Store. The presence of these many successful alternatives on Apple devices demonstrates that the challenged conduct—Apple's limitation on remote backup of core app data and device settings to Cloud—does not stifle competition or innovation. Instead, iCloud's success is the result of its innovative features, ease of use, and overall value proposition for users.

Pricing for iCloud+ is similar to pricing for competing cloud services. Pricing for cloud storage takes into consideration factors such as physical server real estate, digital server storage and maintenance, and wages for teams of engineers who work to service and improve cloud storage capabilities.

As outlined in Apple's Motion to Dismiss, ECF No. 27, Plaintiffs' claims suffer various legal flaws and should be dismissed on multiple grounds.

### III.   LEGAL ISSUES

**Plaintiffs' Statement:** The principal legal issues in this case are largely intertwined with questions of fact, and include (without limitation) the following:

- Whether Apple's restraints on Restricted Files have generated anticompetitive effects, including supracompetitive prices, diminished output, or diminution in market alternatives;
- Whether Apple has any procompetitive justification for the challenged restraints that could not be achieved through less restrictive means;
- Whether Plaintiffs have alleged a relevant antitrust market or markets, considering the extent and degree to which iCloud competes with other cloud platforms;
- Whether Apple has monopolized or attempted to monopolize a relevant market;
- Whether Apple has unlawfully tied two products together; and
- Whether Apple's conduct could be found "unfair" under the UCL.

Some of these legal issues are previewed on Apple's pending motion to dismiss, and (without re-argument), Plaintiffs respectfully refer the Court to Plaintiffs' opposition brief for Plaintiffs' legal positions. *See* ECF No. 31. Plaintiffs respectfully submit that Apple has not identified any pleading deficiency sufficient to dismiss any of Plaintiffs' claims.

**Apple's Statement:** Apple denies that it violated any laws. Plaintiffs have not stated a claim under any of their legal theories, this case is not maintainable as a class action, and Plaintiffs are not entitled to any relief.

Apple filed a Motion to Dismiss. ECF No. 27. The Court heard oral argument on December 11, 2024. ECF No. 45. A decision on the Motion to Dismiss is pending and may impact the legal issues in this case.

Apple maintains that (1) Plaintiffs' tying claim fails because Plaintiffs fail to allege that Apple conditions the sale of its mobile devices upon the use and purchase of iCloud; (2) Plaintiffs' monopolization and attempted monopolization claims fail, as they are premised on inconsistent and implausible theories regarding the alleged relevant markets, and Plaintiffs fail to plausibly allege that Apple has monopoly power in any broader market for cloud storage on Apple mobile devices; (3) Plaintiffs' UCL claim fails because they do not allege a predicate antitrust violation

nor do they satisfy the prongs of any of the tests for unfairness; and (4) Plaintiffs' claims are time-barred because they challenge a design decision that Apple implemented 14 years ago, well beyond the 4-year statute of limitations.

## IV. MOTIONS

***Pending Motions:*** Plaintiffs filed their Complaint on March 1, 2024.  ECF No. 1.  Apple filed a Motion to Dismiss the Complaint on May 10, 2024.  ECF No. 19.  In response to the Motion to Dismiss, Plaintiffs filed an Amended Complaint on June 21, 2024.  ECF No. 24.  Apple filed a Motion to Dismiss Plaintiffs' Amended Complaint on August 16, 2024.  ECF No. 27.  Plaintiffs filed their opposition on October 11, 2024, ECF No. 31, and Apple filed its reply on November 8, 2024, ECF No. 36.  On December 11, 2024, the Court held a hearing on Apple's Motion to Dismiss and indicated it would take the motion under submission.  ECF No. 45.

***Anticipated Motions:*** Should the Court grant Apple's Motion to Dismiss and provide Plaintiffs leave to amend, Apple will consider whether to file another Rule 12 motion.  Plaintiffs reserve all rights to oppose any successive Rule 12 motion filed by Apple.  The Parties anticipate further pre-trial motions, including a motion for class certification and a motion for summary judgment.

## V. AMENDMENT OF PLEADINGS

Plaintiffs amended their complaint on June 21, 2024.  ECF No. 24.  Any subsequent amendment would require leave of Court or consent of Apple.  *See* Fed. R. Civ. P. 15(a)(2).  Plaintiffs reserve all rights regarding further amendments to the complaint.

## VI. EVIDENCE PRESERVATION

The Parties certify that they have reviewed the Court's ESI Guidelines and confirm that they have taken steps to preserve ESI and will continue to do so.  Apple has issued legal holds to potentially relevant personnel and on potentially relevant databases.

## VII. DISCLOSURES

The Parties' initial disclosures are due to be exchanged on January 22, 2025.  *See* ECF No. 30.

## VIII.  DISCOVERY

**Joint Statement:**  In early May 2024, Apple requested and Plaintiffs agreed to stay discovery pending a decision by the Court on Apple's Motion to Dismiss.  On May 16, 2024, the Parties filed a Stipulation to Adjourn Case Management Conference and Stay ADR Deadlines and Discovery Pending Resolution of Defendant's Motion to Dismiss the Complaint.  ECF No. 20. The Court entered that Stipulation, staying discovery, on May 16, 2024.  ECF No. 21.  The Court's May 16, 2024 Order has not been withdrawn.

In September 2024, the Parties met and conferred regarding the efficient administration of the case in light of Apple's Motion to Dismiss and agreed that further staying case management deadlines would be in the best interest of judicial efficiency for the Court, as well as financial efficiency for the Parties.  The Parties then filed a joint stipulation to stay case management deadlines on September 13, 2024.  ECF No. 29.  The Court did not enter the Stipulation, instead issuing an Order Setting Case Management Deadlines on September 17, 2024.  ECF No. 30.

Following briefing and oral argument on the Motion to Dismiss, the Parties once again met and conferred regarding the efficient procession of the case.  The Parties again agreed that staying case management deadlines pending a decision on Apple's Motion to Dismiss would be in the interest of judicial economy and the Parties' efficient litigation of the case.  To that end, on January 10, 2025, the Parties filed another stipulation to stay case management deadlines pending a decision on Apple's Motion to Dismiss had been issued.  ECF No. 53.  The Court denied that Stipulation.  ECF No. 54.

**Plaintiffs' Statement:**  By directing the Parties to proceed with initial disclosures, the Court lifted the previously entered discovery stay (ECF No. 21) for that limited purpose.  If the Court's intention in directing the Parties to proceed with initial disclosures and a Rule 26(f) conference was to lift the discovery stay entirely, Plaintiffs would have no objection to that course of action, particularly at this juncture now that a Protective Order and ESI Protocols have entered. But without express directives from the Court lifting the discovery stay entirely, Plaintiffs will

proceed with the understanding that discovery beyond initial disclosures remains stayed pending resolution of Apple's motion to dismiss.

Discovery in this case ultimately will concern a range of topics related to Apple's restraints on cloud storage, competition among cloud storage providers (and limitations thereof), Apple's pricing, revenues and profit margins on iCloud, and other relevant topics. Plaintiffs reserve all rights to seek modifications to default limitations on interrogatories and depositions.

**Apple's Statement:** The Parties understand the May 16, 2024 order to remain in effect with respect to the stay of discovery pending the resolution of Apple's Motion to Dismiss. ECF No. 21.

Should the Court grant Apple's Motion to Dismiss and provide Plaintiffs leave to amend, it may alter the subjects on which discovery is needed. If any portion of Plaintiffs' complaint survives a motion to dismiss, discovery might be needed on topics such as the following:

1. Apple's policies and terms related to the backup and storage of core app data and device settings (including, for instance, the iCloud Terms and Conditions);
2. Apple's design and operation of the security and backup features of iCloud;
3. Design, engineering, safety, privacy, user-experience, and other rationales for Apple's decision to limit cloud backup of core app data and device settings to iCloud;
4. Alternative methods other than iCloud for backing up or storing core app data and device settings on Apple devices;
5. Third-party cloud storage solutions available on Apple devices;
6. Financial information relating to iCloud+;
7. iCloud's competitors, including Google One, Microsoft OneDrive, Amazon Drive, Box, and Dropbox; and
8. Consumer adoption and usage of iCloud and other cloud storage solutions.

## IX. CLASS ACTIONS

**Joint Statement:** All attorneys of record for the Parties have reviewed the Procedural Guidance for Class Action Settlements.

**Plaintiffs' Statement:** Plaintiffs intend to pursue certification pursuant to Fed. R. Civ. P. (a) and (b)(1)-(3) of the following class:

**Nationwide Class**: All persons and entities who, as residents of the United States, and during the period of March 1, 2020 to the date of class notice, purchased any iCloud plan to store any iPhone or iPad data.

**California Subclass**: All persons and entities who, as residents of California, and during the period of March 1, 2020 to the date of class notice, purchased any iCloud plan to store any iPhone or iPad data.

Plaintiffs' motion for class certification will demonstrate that certification is warranted for at least the following reasons:

**Numerosity:** The exact number of the members of the proposed class is not available to Plaintiffs at this time, but upon information and belief, the class will consist of potentially millions of members such that individual joinder in this case is impracticable.

**Commonality:** Numerous questions of law and fact are common to the claims of Plaintiffs and the proposed class. These include, but are not limited to: (a) whether Plaintiffs have established a relevant antitrust market; (b) whether Apple unlawfully monopolized, or attempted to monopolize, that relevant market; (c) whether competition in the relevant market has been constrained or harmed by Apple's conduct; (d) whether Apple has unlawfully tied two products together; (e) whether Plaintiffs and the proposed class have been harmed, including by way of having paid higher prices than they would have but for Apple's allegedly anticompetitive conduct; (f) whether Plaintiffs and members of the proposed class are entitled to declaratory or injunctive relief, and to their attorney fees, costs, and expenses; and (g) whether Plaintiffs and members of the proposed class are entitled to any damages incidental to the declaratory or injunctive relief they

1  seek, or otherwise.

2  **Typicality**: Plaintiffs' claims are typical of the claims of the members of the proposed
3  class. The factual and legal bases of Apple's liability are the same and resulted in injury to
4  Plaintiffs and all members of the proposed class.

5  **Adequate representation**: Plaintiffs will represent and protect the interests of the
6  proposed class both fairly and adequately. Plaintiffs have retained counsel competent and
7  experienced in complex class-action litigation. Plaintiffs have no interests that are antagonistic to
8  those of the proposed class, and its interests do not conflict with the interests of the proposed class
9  members it seeks to represent.

10  **Injunctive and declaratory relief**: Apple has acted on grounds that apply generally to
11  proposed class. Accordingly, final injunctive relief or corresponding declaratory relief is
12  appropriate respecting the class as a whole.

13  **Predominance and superiority**: Common issues predominate and class proceedings on
14  these facts and this law are superior to all other available methods for the fair and efficient
15  adjudication of this controversy. Even if all members of the proposed class could sustain individual
16  litigation, that course would not be preferable to a class action because individual litigation for all
17  class members would increase the delay and expense to the parties due to the complex factual and
18  legal controversies present in this matter. Here, the class action device will present far fewer
19  management difficulties, and it will provide the benefit of a single adjudication, economies of
20  scale, and comprehensive supervision by this Court.

21

22  **Apple's Statement:** Plaintiffs have filed a putative class action on behalf of consumers.
23  Should the Amended Complaint survive Apple's pending Motion to Dismiss, class certification
24  will be required and is accounted for in the Case Schedule contained herein. Apple's position is
25  that Plaintiffs cannot satisfy the requirements set forth in Fed. R. Civ. P. 23. Apple will oppose
26  any motion for class certification.

27

28

## X. RELATED CASES

The Parties believe that there are presently no related cases or related proceedings pending before another judge of this Court, before another U.S. court, or before a U.S. administrative body.

## XI. RELIEF

**Plaintiffs' Statement:** At this preliminary stage, Plaintiffs are unable to ascertain the full quantum of damages resulting from Apple's challenged conduct. Plaintiffs have not yet obtained discovery, and anticipate that the amount of damages will be evaluated and informed by expert analysis in accordance with the schedule set by the Court. In addition to seeking damages, Plaintiffs are pursuing injunctive, declaratory, equitable and other relief, as specified in the Amended Complaint's Prayer for Relief.

**Apple's Statement:** As noted above, Apple disputes that Plaintiffs are entitled to any relief and reserves all of its defenses to liability and damages.

## XII. SETTLEMENT AND ADR

The Parties have filed ADR Certifications. ECF Nos. 51, 52. The Parties have not yet conferred regarding settlement or engaged in ADR.

## XIII. OTHER REFERENCES

The Parties do not believe that this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV. NARROWING OF ISSUES

**Plaintiffs' Statement:** Plaintiffs are considering whether any issues in the case may be narrowed by agreement or motion, and whether there should be any bifurcation of issues, claims, or defenses as the action progresses.

**Apple's Statement:** Apple believes that Plaintiffs' claims should be dismissed in their entirety as a matter of law. To the extent any of Plaintiffs' claims survive Apple's Motion to Dismiss, Apple will consider whether the remaining issues can be narrowed by agreement or by

motion, and how to expedite the presentation of evidence at trial.

## XV. SCHEDULING

In light of the Apple's pending Motion to Dismiss, Apple maintains that it is premature to set a schedule for this case. However, per the Court's request, Apple and Plaintiffs have met and conferred and jointly propose the following case schedule to allow for sufficient time for discovery and other procedures to be managed in a way that imposes minimal burden on the Court. Courts in this District have acknowledged for decades that "in antitrust cases . . . discovery tends to be broad, time-consuming[,] and expensive." *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007)). Aside from substantial custodial collections and productions by the parties, fact discovery in antitrust cases often involves requesting documents and data from third parties, which may take months to negotiate and obtain. Following fact discovery, the Parties will litigate class certification, engaging experts and evaluating the propriety of Plaintiffs' putative class, and then submit expert reports under Rule 26(a)(2). Expert discovery in antitrust cases can be time-consuming, requiring the analysis of large volumes of data and the development (and critique) of various economic models.

The Parties' proposed schedule is based on counsel's experience litigating Section 2 antitrust claims in this District. The Parties propose to use the actual (or slightly tighter) timing from a Section 2 case that counsel for both parties are presently litigating before Judge White.

| Event | Agreed Joint Proposed Schedule |
| --- | --- |
| Last Date to File Answer to Any Complaint Allowed to Proceed Under The Court's MTD Ruling | 45 days after an order of the Court allowing a complaint to proceed |
| Substantial Completion of Documents and Data | 315 days after an order of the Court allowing a Complaint to proceed |
| Mid-Discovery Case Management Statement | 10 days after Substantial Completion Deadline |

INITIAL CASE MANAGEMENT
CONFERENCE STATEMENT
CASE NO. 5:24-cv-01270-EKL (VKD)

| | |
|---|---|
| Class Certification Motion and Supporting Expert Report(s) | 75 days after Substantial Completion deadline |
| Class Certification Opposition and Supporting Expert Report(s) | 90 days after Class Certification Motion and Supporting Expert Report(s) |
| Class Certification Reply and Expert Rebuttal Report(s) | 60 days after Class Certification Opposition and Supporting Expert Report(s) |
| Deadline to Initiate ADR | 21 days after Class Certification Reply and Expert Rebuttal Report(s) |
| Close of Fact Discovery | 45 days after Class Certification Reply |
| Class Certification Hearing | A date to be set by the Court |
| Exchange of 26(a)(2) Expert Report(s) | 60 days after decision on Class Certification Motion |
| Exchange of 26(a)(2) Expert Response Report(s) | 8 weeks after Exchange of 26(a)(2) Expert Report(s) |
| Close of 26(a)(2) Expert Discovery | 4 weeks after Exchange of 26(a)(2) Expert Response Report(s) |
| Dispositive and Related *Daubert* Motions | 8 weeks after Close of 26(a)(2) Expert Discovery |
| Dispositive and Related *Daubert* Responses | 8 weeks after Dispositive and Related *Daubert* Motion |
| Dispositive and Related *Daubert* Replies | 7 weeks after Dispositive and Related *Daubert* Responses |
| Hearing on all Dispositive and Related *Daubert* Motions | To be set by the Court |
| Final Case Management Conference | 3 weeks after decision on Dispositive and Related Daubert Motions |
| Pretrial Conference | 4 weeks before trial begins, with a joint pretrial statement due two 2 weeks before the conference |
| Deadline to Complete ADR | 1 week before trial |
| Trial Date | Trial date to be set after ruling on class certification and/or dispositive motions |

## XVI. TRIAL

Plaintiffs have issued a demand for a jury trial.

## XVII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

**Plaintiffs' Statement:** Plaintiffs have no interests to report pursuant to Civil Local Rule 3-15. Plaintiffs' certification under Civil Local Rule 3-15 is docketed at ECF No. 55.

**Apple's Statement:** Apple filed a "Certification of Interested Entities or Persons" as required by Civil Local Rule 3-15. *See* ECF No. 15. As of this date, there is no such interest to report.

## XVIII. PROFESSIONAL CONDUCT

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: January 22, 2025

LATHAM & WATKINS LLP
By: /s/ Alicia R. Jovais
    Alicia R. Jovais

Belinda S. Lee (SBN 199635)
 belinda.lee@lw.com
Sarah M. Ray (SBN 229670)
 sarah.ray@lw.com
Aaron T. Chiu (SBN 287788)
 aaron.chiu@lw.com
Alicia R. Jovais (SBN 296172)
 alicia.jovais@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Apple Inc.*

Dated: January 22, 2025

HAGENS BERMAN SOBOL SHAPIRO LLP

|   |   |
|---|---|
| 1 | By */s/ Ben M. Harrington* |
| 2 |     Ben M. Harrington (SBN 313877) |
| 3 | Ben M. Harrington (SBN 313877) |
|   | Benjamin J. Siegel (SBN 256260) |
| 4 | 715 Hearst Avenue, Suite 202 |
|   | Berkeley, CA 94710 |
| 5 | Telephone: +1510.725.3000 |
|   | benh@hbsslaw.com |
| 6 | bens@hbsslaw.com |
| 7 | Mark T. Vazquez (*pro hac vice*) |
|   | 455 N. Cityfront Plaza Drive, Suite 2410 |
| 8 | Chicago, IL 60611 |
|   | Telephone: +1.708.628.4962 |
| 9 | markv@hbsslaw.com |
| 10 | *Attorneys for Plaintiffs and the Proposed Class* |

**SIGNATURE ATTESTATION**

I, Alicia R. Jovais am the CM/ECF user whose ID and password are being used to file this Initial Joint Case Management Statement. In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: January 22, 2025               Respectfully submitted,

                                      LATHAM & WATKINS LLP
                                      By:  /s/  Alicia R. Jovais
                                              Alicia R. Jovais

                                      *Attorney for Defendant Apple Inc.*