1   Ben M. Harrington (SBN 313877)——————————
2   Benjamin J. Siegel (SBN 256260)
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
3   715 Hearst Avenue, Suite ~~202~~300
    Berkeley, CA 94710
4   Telephone: (510) 725-3000
    Facsimile: (510) 725-3001
5   benh@hbsslaw.com
    bens@hbsslaw.com
6
7   *Attorneys for Plaintiffs and the Proposed Class*
    *[additional counsel on signature page]*
8

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12   JULIANNA FELIX GAMBOA and THOMAS          No. 5:24-cv-01270-~~PCP~~EKL
13   DOROBIALA, individually and behalf of all others
     similarly situated,                       **SECOND AMENDED CLASS ACTION**
14                                              **COMPLAINT**
                              Plaintiffs,
15          v.                                  **DEMAND FOR JURY TRIAL**

16   APPLE INC., a California corporation,
17
                              Defendant.
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION .................................................................................. 1

4    II.    JURISDICTION AND VENUE ........................................................... 4

5    III.    PARTIES ............................................................................................. 4

6    IV.    RELEVANT FACTS ........................................................................... 5

7        A.    Apple's Business Model ............................................................. 5

8        B.    Cloud Storage ............................................................................ 6

9        C.    iCloud ........................................................................................ 6

10        D.    Apple Unlawfully Ties iCloud to Its Mobile Devices by Arbitrarily
11            Restricting Access to Alternative Cloud Storage Platforms ............ 9

12            1.    The Tie Involves Separate Products. ......................... 10

13            2.    Apple Has Market Power in the U.S. Markets for Smartphones
14                and Tablets. .............................................................. 11

15                a.    The Smartphone Product Market. ................... 11

16                b.    The Tablet Product Market. ............................ 13

17            3.    The Tie Affects a Significant Volume of Commerce. ......... 15

18        E.    Apple Has Restricted Competition to Give iCloud an Unlawful
19            Monopoly. ................................................................................ 15

20            1.    Apple Has Monopoly Power. .................................... 15

21                a.    Direct Proof of Monopoly Power: Apple Has
                    Demonstrated Its Ability to Charge Supracompetitive
22                    Prices and Restrict Output. ........................... 15

23                    (1)    Apple Charges Supracompetitive Prices for
24                        iCloud. .......................................... 15

25                    (2)    Apple's Challenged Restraints Restrict Output. ......... 18

26                b.    Indirect Proof of Monopoly Power: Apple Has a
                    Monopoly Share of a Relevant Antitrust Market. ............ 19

27

28

(1)     There are no Reasonable Substitutes for Full-Service Cloud Storage on Apple Mobile Devices. ............................................................... 19

(2)     The Proposed Market Would Pass a SSNIP Test. .................. 23

(3)     The Market for Full-Service Cloud Storage on Apple Mobile Devices Demonstrates All Characteristics of an "Aftermarket." ................................. 26

(4)     Barriers to Entry are Substantial. .............................................. 29

(5)     Apple Has Monopoly Power In Alternative Relevant Markets as Well. ....................................... 29

(6)     The Relevant Geographic Market is the United States. ................................................................... 31

2.     Apple Has Secured and Maintained its Monopoly through Anticompetitive Restraints. .............................................. 31

F.     Apple Cannot Justify Its Restraints as Serving Any Procompetitive End ................................................................................................ 32

V.     INTERSTATE TRADE AND COMMERCE ................................................... 33

VI.     CLASS ALLEGATIONS .................................................................................... 33

VII.     STANDING AND ANTITRUST INJURY ....................................................... 36

VIII.     CLAIMS FOR RELIEF ...................................................................................... 36

FIRST CAUSE OF ACTION: VIOLATION OF THE SHERMAN ACT – TYING (15 U.S.C. §§ 1, 3) .......................................................................................................... 36

SECOND CAUSE OF ACTION: VIOLATION OF THE SHERMAN ACT – MONOPOLIZATION OF MARKET FOR FULL-SERVICE CLOUD STORAGE ON APPLE MOBILE DEVICES (15 U.S.C. § 2) ........................... 37

THIRD CAUSE OF ACTION: VIOLATION OF THE SHERMAN ACT – ATTEMPTED MONOPOLIZATION OF MARKET FOR FULL-SERVICE CLOUD STORAGE ON APPLE MOBILE DEVICES (15 U.S.C. § 2) ........... 39

FOURTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, ET SEQ. (LIMITED TO CALIFORNIA SUBCLASS) ............................................................. 40

PRAYER FOR RELIEF .................................................................................................... 40

SECOND AMENDED CLASS ACTION COMPLAINT – ii

JURY TRIAL DEMANDED ..................................................................................... 41

I.      INTRODUCTION ........................................................................................... 1

II.     JURISDICTION AND VENUE ...................................................................... 7

III.    PARTIES ........................................................................................................ 7

IV.     RELEVANT FACTS ...................................................................................... 8

        A.      Apple's Business Model .................................................................... 8

        B.      Cloud Storage .................................................................................... 9

        C.      iCloud ................................................................................................ 9

        D.      Apple's Own Studies Demonstrate That the Ability to Back up *All*
                Files—Including Restricted Files—Is a Critical Cloud Storage
                Functionality That Consumers Demand. ......................................... 12

        E.      Apple Forecloses Competition by Preventing Alternative Cloud
                Platforms from Backing Up All Files and Offering the Full-Service
                Cloud Solution Consumers Demand. ............................................... 15

        F.      Apple's Restraints on Alternative Cloud Storage Providers Have
                Allowed It to Secure and Maintain an Unlawful Monopoly. .......... 22

                1.      Apple has monopoly power. .................................................. 23

                        a.      Indirect proof of monopoly power: Apple has a
                                monopoly share of a relevant antitrust market. ......... 23

                                (1)     There are no reasonable substitutes for full-
                                        service cloud storage on Apple Mobile Devices. ... 27

                                (2)     The proposed market would pass a SSNIP test. ...... 34

                                (3)     The market for Full-Service Cloud Storage on
                                        Apple Mobile Devices demonstrates all
                                        characteristics of an "aftermarket." ........................ 41

                                (4)     Barriers to entry and expansion are substantial. ..... 44

                                (5)     Apple has monopoly power in alternative
                                        relevant markets as well. ........................................ 46

                                (6)     The relevant geographic market is the United
                                        States. ....................................................................... 51

b.   Direct proof of monopoly power: Apple has demonstrated its ability to charge supracompetitive prices and restrict output. ................................... 52

(1)   Apple charges supracompetitive prices for iCloud. ...................................... 52

(2)   Apple's challenged restraints restrict output. ......................... 55

2.   Apple has secured and maintained its monopoly through anticompetitive restraints ................................. 58

3.   Apple Cannot Justify Its Restraints as Serving Any Procompetitive End and Any Asserted Justifications are Outweighed by the Harm to Competition and Consumers ........................... 59

G.   Apple Unlawfully Ties iCloud to Its Mobile Devices by Arbitrarily Restricting Access to Alternative Cloud Storage Platforms ........................... 65

1.   The tie involves separate products. ........................... 65

2.   Apple has market power in the U.S. Markets for smartphones and tablets. ........................... 66

a.   The Smartphone product market. ........................... 66

b.   The tablet product market. ........................... 68

3.   The tie affects a significant volume of commerce ........................... 69

V.   INTERSTATE TRADE AND COMMERCE ........................... 70

VI.   CLASS ALLEGATIONS ........................... 70

VII.   STANDING AND ANTITRUST INJURY ........................... 72

VIII.   CLAIMS FOR RELIEF ........................... 73

FIRST CAUSE OF ACTION: VIOLATION OF THE SHERMAN ACT – MONOPOLIZATION  (15 U.S.C. § 2) ........................... 73

SECOND CAUSE OF ACTION: VIOLATION OF THE SHERMAN ACT – ATTEMPTED MONOPOLIZATION  (15 U.S.C. § 2) ........................... 75

THIRD CAUSE OF ACTION: VIOLATION OF THE SHERMAN ACT – TYING (15 U.S.C. §§ 1, 2, 3) ........................... 77

FOURTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW  CAL. BUS. & PROF. CODE § 17200, *ET SEQ.* (LIMITED TO CALIFORNIA SUBCLASS) ........................... 78

1

PRAYER FOR RELIEF ...................................................................................................79

2

JURY TRIAL DEMANDED ..............................................................................................79

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Julianna Felix Gamboa and Thomas Dorobiala, on their own behalf and that of all similarly situated consumers, allege as follows:

## I.    INTRODUCTION

1.    1.——Mobile devices (smartphone and tablets) rely increasingly on cloud storage to host the abundance of data users accumulate through ordinary use. The apps, pictures, videos, messages, and other data files users amass often vastly exceed the storage capacity of their device. To retain files and access them seamlessly across devices, users can upload them to a cloud platform or "the cloud" for safe storage. Cloud storage has become a billion (soon-to-be trillion) dollar industry.

2.    2.——Apple is a dominant manufacturer of mobile devices. Its flagship products—the iPhone and iPad—are used by billions of consumers worldwide. More than 100 million Americans have an iPhone or an iPad, or both. In addition to manufacturing devices, Apple also generates revenue through an array of apps and services that it markets to its users. One of these is a cloud-storage platform called iCloud.

3.    3.——First introduced in 2011, iCloud has become a profit center for Apple, generating billions in annual revenues. By any metric, iCloud dominates all other cloud platforms accessible on Apple's mobile devices. -In addition to maintaining a 7096 percent share of the entire market for cloud storage on Apple devices, (measured by revenues), Apple has restrained competition to secure a 100 percent share of the market for full-service cloud solutions, that is, cloud platformsservices capable of backing up the entirety of a user's device (rather than just certain file types). Only full-service cloud services can provide a comprehensive backup for device restoration and synchronization, and this comprehensive or full-service functionality is a feature that cloud consumers—and Apple's in particular—value and seek out in the marketplace.

4.    4.——Apple does not dominate cloud storage on its devices due to any shortage of *would-be* competitors.—that is, there are companies that could compete with Apple absent the restraints challenged in this case. Cloud storage is offered by every major technology companyies (*e.g.*, Google and Microsoft) and numerous cloud-storage specialists (*e.g.*, Dropbox, Sync.com, IDrive, to name a few). Apple also does not dominate because it built a superior cloud-storage product. From a security and functionality standpoint, iCloud is no better (and often inferior) to other cloud storage

platforms. ~~~~Instead, Apple has achieved market dominance by rigging the competitive playing field so that only iCloud can win.

5.    ~~-5.─~~Apple has accomplished this with surgical ~~technological~~and ongoing restraints. While competing cloud providers can access and host certain iPhone and iPad data (*e.g.*, photos and videos), Apple arbitrarily sequesters a set of files (mainly app data and ~~device~~settings) and denies all but iCloud permissions to host them. These sequestered files—hereafter "Restricted Files"—are ~~significant because they include data needed to restore a device when it is replaced. From~~from a technological and security standpoint~~, these files are~~ no different from all other data that accumulates on Apple's mobile devices. ~~The storage infrastructure required~~They are significant only because they include data needed to comprehensively back up a device and restore it at replacement. The ability to ~~host all file types is the same and, but for~~offer users a comprehensive backup solution—which Apple denies to would-be competitors by virtue of its ongoing restraint—is critical because Apple's ~~restraints, rival cloud platforms could securely back up all file types~~users demand this functionality, consistently ranking it as a critical feature of iCloud.

6.    ~~6.─~~Apple's arbitrary prohibition on hosting Restricted Files fundamentally distorts the competitive landscape to privilege iCloud over all would-be rivals. As a result of this restraint, would-be cloud competitors are unable to offer Apple's device holders a full-service cloud-storage solution, or even a pale comparison. Sure, rivals can host photos, videos, and certain other data files. But they cannot host all of the data users want to back up, including for device restoration. This gives iCloud an enormous structural advantage against all would-be competitors. A consumer that uses a competing cloud platform to store photos ~~will still need~~cannot get a comprehensive cloud backup without also purchasing iCloud for Restricted File storage. As Apple knows, this is an unattractive option.~~ It requires juggling multiple cloud accounts with multiple interfaces and splitting files between them. This is far less convenient than using a single~~, because it has commissioned a survey confirming as much while admitting in separate litigation that cloud ~~storage service capable of storing all file types in one location~~platforms without access to Restricted Files do not even offer a "comparable" product. Through the restraints challenged in this lawsuit, Apple has ensured that only iCloud can perform ~~this basic function~~the full-service functionality Apple's users prioritize.

7.    ~~7.~~——There is no plausible technological or security justification for ~~Apple granting iCloud exclusive access to Restricted Files~~Apple's conduct. As Apple itself admits, cloud storage is "agnostic about what is being stored and handles all file content the same way, as a collection of bytes."[1] Samsung has historically offered its own proprietary cloud storage platform (Samsung ~~Drive~~Cloud) while also giving users the option of backing up the entirety of their devices (all file types) on Google Drive~~.~~, and Samsung has done so while maintaining state-of-the art security on its devices that rivals, if not exceeds, anything Apple offers. Moreover, Apple itself uses ~~infrastructure provided by others~~other cloud providers——including Microsoft, Amazon, and now Google——to host iCloud data, further undermining any notion that Restricted Files must be retained by Apple for security reasons.

8.    ~~8.~~——Apple's restraints can be coherently explained only as an attempt to stifle competition, and that is their manifest effect. Having insulated itself from any real threat to iCloud's dominance, Apple charges supracompetitive fees for iCloud subscription plans. This is reflected in Apple's gross margins on iCloud, **which are likely to exceed 70% or even 80%**, essentially doubling Apple's already high company-wide gross margins (which fall in the 40 percent range). In short, undisciplined by competition, Apple has marked up its iCloud prices to generate almost pure profit. Apple's ability to sustain these prices is a testament to its monopoly power.

9.    ~~9.~~——Plaintiffs seek to represent a nationwide class (and a California subclass) of consumers who purchased iCloud storage plans and were overcharged. Plaintiffs and the class were further harmed because Apple's restraints reduce output and stifle innovation by suppressing competitors' incentives to develop cloud storage solutions that better serve their needs ~~of Apple device holders~~. In short, absent Apple's restraints, cloud storage on Apple mobile devices would be better, safer, cheaper, and more prevalent, all to the benefit of consumers.

~~10.~~——The antitrust laws provide a remedy. Apple has violated the Sherman Act in at least two ways. ***First, Apple has unlawfully "tied" two products together—specifically, its mobile devices***

---

[1] "iOS Security," APPLE (Oct. 2014), https://www.apple.com/mx/privacy/docs/iOS_Security_Guide_Oct_2014.pdf.

1    ~~and iCloud—by compelling that device holders use iCloud to back up and store Restricted Files. This~~

2    ~~tie satisfies all criteria for *per se* condemnation because Apple has market power in the tying device~~

3    ~~markets and the tie involves separate products and a significant volume of commerce.~~

4       10.    11.—~~Second~~First, by inhibiting competition from rival cloud-storage providers,

5    Apple unlawfully monopolizes (and has attempted to monopolize) the market for Full-Service Cloud

6    Storage on Apple Mobile Devices. This is a relevant market, technically an "aftermarket" to the device

7    foremarkets in which ~~a~~Apple's iPhones and iPads ~~compete~~are sold. Having prevented all rivals from

8    offering full-service cloud solutions, Apple enjoys a 100 percent share of this antitrust aftermarket.

9    Even if the relevant market were expanded to include diminished cloud solutions that cannot host

10   Restricted Files, Apple exercises monopoly power in that market as well, as evidenced by its

11   ~~high~~dominant market share, estimated to exceed ~~70~~96 percent of revenues, and demonstrated ability

12   to restrict output and charge supracompetitive prices to iCloud subscribers.

13      11.    12.—*Second*, Apple has unlawfully "tied" two products together—specifically, its

14   mobile devices and iCloud—by preventing its device holders from using any service other than iCloud

15   for hosting Restricted Files. This "negative" tie satisfies all criteria for condemnation because Apple

16   has market power in the tying device markets and the tie involves separate products and a significant

17   volume of commerce.

18      ~~11.~~12.  Apple has also violated California's Unfair Competition Law (UCL) by engaging in

19   "unlawful, unfair, or fraudulent" business practices, including tying and restraining competition among

20   cloud-storage platforms that would otherwise inure to the benefit of consumers.

21      13.    -13.—This Second Amended Complaint reflects careful consideration of the Court's

22   February 28, 2025 Order, ECF No. 62 ("MTD Order"), which dismissed Plaintiffs' claims with leave

23   to amend. As summarized below, this amended pleading incorporates a host of additional factual

24   allegations directly addressing the Court's concerns:

25      14.    **Market Definition – Importance of Full-Service Storage Functionality**: The Court

26   held that Plaintiffs had not alleged a relevant market for "full-service cloud storage" because the First

27   Amended Complaint lacked "any plausible allegation that Apple device users value this single feature

28   so much that it distinguishes iCloud from all other cloud storage options." MTD Order at 11-12. In

this Second Amended Complaint, Plaintiffs show that Apple's own marketing expert conducted a survey of iCloud customers in 2021 and found that "*[t]he ability to automatically backup all content and device and app settings [was] the feature most frequently ranked as one of the four most important iCloud service features.*" *See infra* at ¶ 43 (emphasis added). Apple relied on these survey results in litigation, admitting that the "ability to automatically backup all content and device app settings" is one of the "*attributes consumers care about most with respect to iCloud*" and, further, that cloud platforms without this functionality are "*not comparable*" products. *Id.* at ¶ 48 (emphasis added).

15.     These additional detailed allegations, set forth in greater detail below (*infra* at ¶¶ 40-48), demonstrate that consumers highly value the full-service functionality that Apple has artificially ensured only iCloud can provide. Not only do consumers distinguish between full and partial-storage cloud services, Apple does so as well, characterizing them as distinct and incomparable products. These additional facts—indeed, admissions—forcefully support Plaintiffs' market definition.

16.     **Market Definition – SSNIP Test**: This Second Amended Complaint includes additional factual allegations the Court considered necessary to support Plaintiffs' SSNIP test, *see* MTD Order at 13, including facts establishing (a) that Apple's price increase in the UK was not just a large nominal increase (20-29%) but a large increase relative to other cloud services, (b) that a SSNIP in the UK is probative on market definition generally and particularly in the US, and (c) that Apple's SSNIP was profitable because available data show no discernable switching away from iCloud to other cloud platforms in response to Apple's price increase, nor away from Apple's products in the device foremarkets. These additional allegations are set forth with specificity below. *See infra* at ¶¶ 79-92.

17.     **Monopoly Power – Market Share**: The Court held that, if the market were expanded to include all cloud services on Apple's mobile devices, Plaintiffs had not alleged a viable market share for that larger market. *See* MTD at 17. The Court reasoned, in particular, that Plaintiffs' market share calculations reflected a mathematical error and did not report Apple's share of revenues. *See* MTD at 17. As addressed below, Plaintiffs' market share calculations were mathematically correct, but a typographical error in Plaintiffs' description implied the miscalculation the Court identified. The typographical error has been corrected. This Second Amended Complaint also incorporates additional

data to corroborate Plaintiffs' original estimate and to additionally estimate iCloud's share by revenue, demonstrating that iCloud's revenue share exceeds 96%, which is above any conceivable threshold for monopoly power. *See infra* at ¶¶ 110-114.

18.    **Barriers to Expansion**: The Court held that while Plaintiffs had alleged barriers to entry, the complaint did "not address barriers to expansion." MTD Order at 18. This Second Amended Complaint does so below (*infra* at ¶¶ 102-106), demonstrating that Apple has stymied expansion from would-be rivals by depriving them of the ability to offer the full-service functionality that Apple's customers highly prioritize in selecting a cloud platform. This is confirmed with additional data showing that would-be cloud rivals have not seized any discernable piece of Apple's dominant market share, despite every incentive to compete.

19.    **Output**: The Court held that Plaintiffs' prior pleading had not adequately alleged that "Apple restricts output of cloud storage on Apple mobile devices" MTD at 16. This Second Amended Complaint does so, demonstrating that Apple has prevented would-be competitors from even offering the relevant product, *i.e.*, Full-Service Cloud Storage, including differentiated offerings appealing to a greater number of consumers. Apple's ability to prevent a rival product from *even being offered* in the relevant market reflects an enormous degree of market power and control over output. Even if the market were broadened improperly to include the partial-storage cloud platforms Apple admits are "not comparable" to iCloud, Apple suppresses would-be rival output by barring firms from offering a product with the full-service functionality consumers prioritize, and Apple's own output is suppressed by its supracompetitive prices, and the data show that other platforms cannot expand their output to compensate. In short, however the market is defined, output has been suppressed by Apple's challenged restraint. *See infra* at ¶¶ 125-134.

20.    **Tying**: The Court held, *inter alia*, that Plaintiffs had not pleaded concerted action sufficient to allege tying under Section 1 of the Sherman Act. *See* MTD Order at 9. Plaintiffs have repleaded tying under Section 2, which is another vehicle for tying claims, and one that does not require concerted action. *See infra* at ¶¶ 209-219.

21.    **UCL Claim**: Plaintiffs have incorporated additional allegations applicable to the UCL's fact-intensive balancing test, which weighs the harm to consumers against the defendant's

asserted justifications. As detailed below, Plaintiffs plausibly allege that any security rationale Apple might offer for the challenged restraint, in addition to being pretextual and not procompetitive, is outweighed by the harm to consumers in the form of supracompetitive prices, diminished market choice, and degraded cloud storage quality. *See infra* at ¶¶ 139-154.

12.22.  On behalf of a proposed class of tens of millions of consumers who were overcharged for iCloud plans, Plaintiffs seek damages, restitution, injunctive relief, and all other relief available to end Apple's anticompetitive practices.

## II.    JURISDICTION AND VENUE

13.23.  14.——This Court has subject matter jurisdiction over this action under 28 U.S.C. §. 1331 because Plaintiffs allege violations of federal law, namely, the Sherman Act.

14.24.  15.——This Court has personal jurisdiction over Defendant Apple, which is headquartered in this District. Apple has engaged in sufficient minimum contacts with the United States, this judicial district, and this State, and it has intentionally availed itself of the laws of the United States and this State by conducting a substantial amount of business throughout the State.

15.25.  16.——This judicial district is a proper venue because Apple resides in this District and transacts affairs in this District. A substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## III.    PARTIES

16.26.  17.——Plaintiff Julianna Felix Gamboa resides in Los Angeles, California. Ms. Felix Gamboa purchased a 200GB iCloud storage plan in or around September 2022 for $2.99 a month. Ms. Felix Gamboa maintains the same 200GB iCloud storage plan as of the filing of this Second Amended Complaint and continues to pay the same monthly price. Ms. Felix uses iCloud to back up her iPhone, including device settings, as well as to store photos, videos, and other files. As a result of Apple's anticompetitive practices alleged herein, Ms. Felix Gamboa has paid a supracompetitive price for cloud storage.

17.27.  18.——Plaintiff Thomas Dorobiala a is a resident of Murrieta, California. Mr. Dorobiala purchased a 2500GB iCloud storage plan in or around June 2020 for $2.99 a month and maintained2016. He subsequently upgraded to the 200GB plan for several years. Mr. Dorobiala and

now has a 2TB ~~monthly iCloud~~ plan. for which he pays $9.99 a month. Mr. Dorobiala uses iCloud to back up his iPhone and iPad, including device settings, as well as to store photos, videos, and other files. As a result of Apple's anticompetitive practices alleged herein, Mr. Dorobiala has paid a supracompetitive price for cloud storage.

~~18.28.~~ 19.——Defendant Apple designs, manufactures, and markets smartphones, personal computers, tablets, and smart watches, and sells a variety of services, including iCloud. Apple maintains its headquarters and principal place of business in Cupertino, California.

## IV.    RELEVANT FACTS

### A.    Apple's Business Model

~~19.29.~~ 20.——Apple's mobile devices—smartphones and tablets—are platforms that derive their value (both to consumers and to Apple) in substantial part from the contributions of third parties. Rather than maintain a closed ecosystem in which Apple generated all of the software and functionality for its devices, Apple elected to create a platform on which third-party developers could create and market apps to enhance the utility of Apple's devices. This strategic decision proved enormously profitable for Apple. Third-party apps now populate Apple users' devices, allowing them to hitch rides, purchase tickets, read news, maintain social networks, and play games, among countless other activities. The virtually limitless functionality provided by third-party developers increases the value of Apple's devices for consumers and, thereby, the prices Apple can command for them.

~~20.30.~~ 21.——But Apple was not content profiting only as a platform operator and device manufacturer, even though the profits were enormous. Over time, Apple has also launched its own suite of first-party apps and offered them to its users for substantial fees—including a music app, gaming apps, and (as relevant here), a cloud app called iCloud. These "services" (as Apple calls them) are now a substantial revenue driver for Apple and its most profitable line of business.[2]

~~21.31.~~ 22.——Critically here, Apple does not sell its services into any marketplace. It sells them on its own platform, where Apple sets the rules. As the platform operator, Apple is uniquely

---

[2] Kif Leswing, "Apple's most profitable line of business is making up for some hardware struggles," CNBC (Aug. 3, 2023), https://www.cnbc.com/2023/08/03/apple-services-are-very-profitable-and-may-be-ready-for-takeoff-again.html.

1    positioned to impede competition to privilege its own apps over competing offerings. With respect to

2    iCloud, that is precisely what Apple has done.

**B.    Cloud Storage**

4    ~~22.~~32.  23.   Cloud storage is a means of storing and backing up digital files on remote

5    servers where it is accessible via an internet connection. More than 70 percent of U.S. consumers

6    reportedly use some form of cloud storage.[3] All major technology companies offer a cloud-storage

7    service and there are numerous technology companies specializing in cloud storage.

8    ~~23.~~33.  24.   While cloud storage is available across a number of computing devices, it plays

9    a particularly vital role on smartphones and tablets, which typically have limited local storage capacity.

10   Smartphones and tablets accumulate an enormous amount of data in myriad forms, including pictures,

11   videos, music, apps, app data, emails, texts, device settings, and podcasts. For many smartphone and

12   tablet users, these files quickly exceed the storage capacity of their devices. To retain these files, while

13   maintaining ready access to them through an internet connection, mobile device users can obtain a

14   cloud storage solution. Cloud storage allows mobile device users to access a ~~surplus~~use of files

15   seamlessly across multiple devices (*e.g.*, their smartphone and their tablet) without transferring them

16   between devices or porting them with a physical external drive.

17   ~~24.~~34.  25.   In addition to storing files on remote servers, thereby freeing up space on users'

18   devices, cloud storage ~~can be used to "back~~is a means of "backing up" ~~files~~a device so that ~~they~~it can

19   be ~~readily~~ restored in the event ~~a device~~it is lost or replaced.

**C.    iCloud**

21   ~~25.~~35.  26.   Apple's cloud storage service is called iCloud. It launched in 2011. iCloud

22   permits Apple's users to store all types of data on remote or "cloud" servers, and then access that data

23   across their devices. File types that can be stored on iCloud include, without limitation, user photos,

24   videos, music, device settings, and apps.

25

26

27      [3]  Martin   Armstrong,   "What's   in   the   Cloud,"   STATISTA   (Sep.   30,   2021),
      ~~https://www.statista.com/chart/25896/gcs-cloud-storage-services-usage/~~https://www.statista.com/chart/25896/

28   gcs-cloud-storage-services-usage/.

26.36. 27.——iCloud is one of Apple's most widely used subscription services. Reports indicate that Apple had at least 850 million iCloud users by 2020, and the service has become a major profit center for the company.[4] For reference, Apple's most profitable business line is its "services" division, which comprises (among other things), Apple's licensing revenues, subscription plans like iCloud, as well as Apple Pay.[5] Apple's services division generates more than $20 billion a quarter, or $80 billion annually,[6] and analysts report that 20% of Apple's services revenue comes from iCloud.[7] This indicates that iCloud is generating more than $16 billion in annual revenues.

27.37. 28.——Apple device holders are given 5GB of free iCloud storage space, but as Apple's iCloud revenues attest, most users find this insufficient for their storage needs and purchase a supplemental iCloud storage plan.[8] Apple presently offers six iCloud storage tiers by monthly subscription.

| iCloud Storage Tiers | |
|---|---|
| Up to 5GB | Free |
| 50GB | $0.99/month |
| 200GB | $2.99/month |
| 2TB | $9.99/month |
| 6TB | $29.99/month |

---

[4] Alexander Eser, "Essential Apple Icloud Statistics in 2024In 2023," ZIPDO (updated July 16, 2023), https://zipdo.co/statistics/apple-icloud/available at https://web.archive.org/web/20231003183922/https://zipdo.co/statistics/apple-icloud/.

[5] Kif Leswing, "Apple's most profitable line of business is making up for some hardware struggles," CNBC (Aug. 3, 2023), https://www.cnbc.com/2023/08/03/apple-services-are-very-profitable-and-may-be-ready-for-takeoff-again.html.

[6] "Apple's revenues from iTunes, software and services from 1st quarter 2013 to 1st quarter 2024," STATISTA, https://www.statista.com/statistics/250918/apples-revenue-from-itunes-software-and-services/.

[7] Alexander Eser, "Essential Apple Icloud Statistics in 2024In 2023," ZIPDO (Uupdated July 16, 2023), https://zipdo.co/statistics/apple-icloud/available at https://web.archive.org/web/20231003183922/https://zipdo.co/statistics/apple-icloud/.

[8] Sidney Ho, Ross Seymore, Gianmarco Vella, dbDIG Primary Research Survey on Apple Services, DEUTSCHE BANK (Jan. 15, 2024).

| iCloud Storage Tiers | |
|---|---|
| 12TB | $59.99/month |

28,38.  -29.——Of these storage tiers, the 50GB tier is Apple's most popular offering, followed by the 200GB tier and the 2TB (or 2000GB) tier.[9]



-30.——

29.39.  While iCloud is an Apple service, Apple has historically contracted with third parties to host users' iCloud data. When iCloud launched, Apple used Amazon Web Services and Microsoft Azure infrastructure to host iCloud data, and later, presently, Apple began usinguses Google Cloud Platform for the samethis purpose.[10] Reports indicate that Apple pays Google just $0.0031 per gigabyte

---

[9] *See id.* Apple's 6TB and 12TB plans are new offerings, launched in September 2023, and data on their usage has not been released. For the distribution chart above, the share of users per iCloud bundle was estimated by scaling bundle distribution data from the cited Deutsche Bank analysis to all iCloud users.

[10] Chris Davies, "Apple confirms iCloud uses Google servers (but don't panic)," SLASH GEAR (Feb. 26, 2018), https://www.slashgear.com/apple-confirms-icloud-uses-google-servers-but-dont-panic-26521087.

per month for storage,[11] which, as addressed below, amounts to an infinitesimal fraction of the prices Apple charges its iCloud subscribers. *See infra* ~~§ IV.E.1.a(1).~~at ¶¶ 120-122.

**D.    Apple's Own Studies Demonstrate That the Ability to Back up *All* Files—Including Restricted Files—Is a Critical Cloud Storage Functionality That Consumers Demand.**

40.    The ability to back up all file types, including the files needed for device restoration, is a critically important feature of cloud storage that consumers—including Apple's consumers—value and demand. Apple knows this because, in 2021, Apple commissioned a study confirming that the core reason Apple's customers purchase iCloud for cloud storage is that iCloud is capable of backing up all files on their devices.

41.    The study was conducted on Apple's behalf by Dr. Carol A. Scott, Professor of Marketing Emeritus at UCLA, and summarized in an expert report Apple submitted in a separate litigation involving iCloud.[12]

42.    The purpose of Dr. Scott's study was to determine the factors shaping consumers' decisions to purchase iCloud so that "[t]he 'solutions' provided by the iCloud service can then be compared to any other cloud storage providers in the marketplace to determine the degree to which they compete to provide the same cloud storage functionality."[13]

43.    Dr. Scott's survey demonstrated overwhelmingly that the ability to back up all files (for restoration and other purposes) is a critical feature of iCloud that distinguished it from other offerings. Among other relevant findings, Dr. Scott's study concluded that "*[t]he ability to automatically backup all content and device and app settings was the feature most frequently ranked as one of the four most important iCloud Service features*."[14] Overall, "the four items most frequently included in the set of those most important to respondents were (1) *the ability to automatically backup all content*

---

[11] Mike Peterson, "Apple is now Google's largest corporate customer for cloud storage," APPLE INSIDER (Jan. 29, 2021), https://appleinsider.com/articles/21/06/29/apple-is-now-googles-largest-corporate-customer-for-cloud-storage.

[12] *See* Exhibit A, Expert Report of Dr. Carol Scott, *Williams v. Apple Inc.*, No. 3:19-cv-4700-LB (N.D. Cal.), ECF No. 82-11.

[13] *Id.* ¶ 38.

[14] *Id.* ¶ 48 (emphasis added).

*and device and app settings* on an iPhone or iPad, (2) ease of using the iCloud Service, (3) the ability to automatically synchronize *all of my data* between multiple computer and mobile devices with one cloud service, and (4) *the ability to restore or set up one's device from an iCloud backup*."[15] Dr. Scott concluded that these storage capabilities and features closely tracked the "most widely used capabilities of the iCloud Service" and that "many of which are unique to the Service, indicating the versatility and 'one-stop shop' nature of the iCloud Service."[16]

44.     The overriding importance of full-service functionality—*i.e.*, the ability to back up all file types—was further corroborated throughout Dr. Scott's report, which found:

- "iCloud Purchasers cite many features that factor into their reasons for purchasing an iCloud Service subscription, *but ease of use and 'the ability to restore or set up your device from an iCloud backup' and/or the 'ability to automatically backup all content and device and app settings' are the features or capabilities most frequently mentioned by respondents as most important*."[17]

- "For this question, *'ease of using iCloud', 'ability to restore or set up your device from an iCloud backup', and 'ability to automatically backup all content and device and app settings on an iPhone or iPad' were given a 'top-two box' rating by 85.9%, 82.3%, and 80.8% of respondents, respectively*."[18]

- "*Any decision to switch to a different application such as Google Drive, Microsoft OneDrive, or Dropbox would be complicated by* the need for many iCloud Service users to learn how to use another storage product or platform, by the number of the iCloud Service's capabilities that many iCloud Service users take advantage of, *and the uniqueness of two features considered most important by purchasers, i.e., the ability to create a backup of all data and device and app settings on an iPhone or iPad and the ability to restore or set up a new Apple mobile device*."[19]

45.     Given iCloud's "unique" ability to back up all file types, it is little surprise that Dr. Scott's survey found that less than 30% of iCloud subscribers even *considered* using a cloud storage provider other than iCloud.[20] In other words (again from Apple's own expert), "considering any other brands of cloud storage providers is not typical for a significant portion of iCloud

---

[15] *Id.* ¶ 46 (emphasis added).

[16] *Id.* ¶ 47.

[17] *Id.* ¶ 8(b) (emphasis added).

[18] *Id.* ¶ 44 (emphasis added).

[19] *Id.* ¶ 49 (emphasis added).

[20] *Id.* ¶ 51.

purchasers."[21]  Dr. Scott concluded that "*[t]hese findings call into question whether iCloud Purchasers consider these other storage providers to be true competitors in the sense of being substitutes for the iCloud Service*."[22]

46.     Dr. Scott's findings comport with common sense. One of the central reasons to back up your mobile device is to ensure that it can be restored—without loss of content, settings, apps, and functionality—if it is ever lost or replaced. Cloud providers that can host just a selection of files (videos and photos) cannot offer this basic cloud-service functionality. A consumer that purchases a partial cloud storage solution, one capable of hosting only select files, will still need to use a full-service cloud platform to back up their app data and device settings for restoration purposes. A partial cloud storage platform is simply not providing the same core functionality and, as Apple's own survey demonstrates, it is the most frequently cited functionality that consumers seek out and value in cloud storage service on iOS.

47.     Dr. Scott is also not the only Apple expert to acknowledge the importance to consumers of backing up all files with a single cloud service. In the same litigation involving Dr. Scott, Apple's economic expert—Lorin Hitt—criticized a competing expert for failing to account for the "switching costs" of purchasing a cloud service other than iCloud, highlighting in particular that consumers may "continue using [iCloud] because of the benefits and efficiencies that they obtain from staying within the Apple 'ecosystem,'" including the ability "to *comprehensively back up their Apple device*" and as one of the plaintiffs in that litigation had testified, "keep all of [their] things in the same place.'"[23]

48.     Apple has also relied on Dr. Scott's findings in litigation, where those findings served Apple. Apple admitted, in particular, that iCloud's ability to provide a "comprehensive back up" is a feature of iCloud that "consumers value most."[24] Apple also affirmatively admitted in this context that other cloud services—including Google Drive, Dropbox, and Microsoft OneDrive—are "*not*

---

[21] *Id.* ¶ 90.
[22] *Id.* ¶ 51 (emphasis added).
[23] Expert Report of Loren M. Hitt ¶ 70, *Williams v. Apple Inc.*, No. 3:19-cv-04700-LB (N.D. Cal.), ECF No. 82-7 (emphasis added).
[24] Exhibit B, Defendant Apple Inc.'s Opposition to Plaintiffs' Motion for Class Certification at 17, *Williams v. Apple Inc.*, No. 3:19-cv-04700-LB (N.D. Cal.), ECF No. 82.

*comparable*" to iCloud because they cannot provide critical features, chief among them the ability to offer a "[c]omprehensive backup, which includes documents and photos, as well as contacts, calendars, and third-party app data."[25] Apple further admitted that this functionality is one of the "***attributes consumers care about most with respect to iCloud.***"[26]

**E.    Apple Forecloses Competition by Preventing Alternative Cloud Platforms from Backing Up All Files and Offering the Full-Service Cloud Solution Consumers Demand.**

49.    It is no accident that other cloud platforms accessible on Apple mobile devices do not offer comprehensive cloud storage like iCloud. Apple prevents this with ongoing, affirmative restraints. Specifically, to insulate iCloud from competition, Apple prohibits all but iCloud from backing up all of users' files and providing the full-service functionality that consumers consistently rank as the most important feature driving their selection of a cloud storage platform. Apple does this by effectively quarantining a set of files—mainly, device settings as well as apps and apps data ("Restricted Files")—and granting only iCloud permissions to host them. This means that only iCloud can back up *all* of a users' files and provide the "comprehensive" backup Apple admits privileges iCloud over all would-be rival cloud platforms.

**D.    Apple's restraint fundamentally cripples competition.** ~~Apple Unlawfully Ties iCloud to Its Mobile Devices by Arbitrarily Restricting Access to Alternative Cloud Storage Platforms.~~

~~31.    From a technological standpoint, the same storage infrastructure is needed to back up all types of files and data stored on Apple's mobile devices. Apple has acknowledged as much, observing in security protocols that its iCloud "service is agnostic about what is being stored and handles all file content the same way, as a collection of bytes."[27]~~

~~32.    Apple nevertheless arbitrarily requires that its mobile device holders use iCloud to back up certain file types—mainly, device settings as well as apps and apps data ("Restricted Files"). With respect to other file types—e.g., photos and videos ("Accessible Files")—Apple mobile device~~

---

[25] *Id.* at 23 (emphasis added).

[26] *Id.* (emphasis added).

~~[27]"iOS          Security,"          APPLE          (Oct.          2014)          at          32,
https://www.apple.com/mx/privacy/docs/iOS_Security_Guide_Oct_2014.pdf.~~

1    holders can select from other cloud-based storage providers, including Google Drive, Sync.com,

2    pCloud, and others.

3          33.    Restricted Files are no more sensitive than Accessible Files, but they are important to

4    back up because they are the files that allow users to effectively restore the look and feel of their

5    device—i.e., reinstall apps and device settings—after a factory reset or when they purchase a new

6    device. There is obvious convenience to using a cloud storage solution that can store and back up

7    both Restricted Files (which will allow restoration of their device) and Accessible Files, including

8    photos and videos.

9          30.50. 34.    By sequestering Restricted Files, and denying all other cloud providers access

10   to them, Apple prevents rivalother cloud platforms from offering a full-servicecomprehensive cloud

11   solution that can compete effectively against iCloud. The cloud products that rivals can offer are, by

12   virtue of Apple's restraints, fundamentally diminisheddegraded because they can only host a portion

13   of a user's files ("Accessible Files. Users who") like photos and videos. The vast majority of users

14   want to back up *all* of their files—including the basic Restricted Files needed to restore their device at

15   replacement—and they have but one option in the marketplace for this comprehensive service: iCloud.

16   Without this functionality, other cloud providers cannot offer an even "comparable" product to iCloud,

17   as Apple has admitted.

18         51.    35.    By ensuring that only iCloud can offer users critical functionality, Apple has

19   secured and maintained a durable monopoly for iCloud. For one, Apple has given iCloud a 100 percent

20   share of the market for Full-Service Cloud Storage on Apple Mobile Devices. Even if the market were

21   improperly expanded to include partial-storage cloud platforms that Apple admits are "not

22   comparable"[28] to iCloud, iCloud's share of that larger market would exceed 88% of users and 96% of

23   revenues. These dominant shares demonstrate that other cloud platforms, unable to offer Full-Service

24   Cloud Storage, are not able to meaningfully compete with iCloud.

25

26

27

---

28   [28] *See* Exhibit B at 23.

There is no ~~technological or security justification~~credible procompetitive explanation for Apple mandating the use of iCloud for Restricted Files.~~Apple draws this distinction only to curtail competition and advantage its iCloud product over rival cloud platforms.~~

~~31.~~52. 36.— (*see infra* at ¶¶ 139-149). Tellingly in this regard, Samsung—which Apple depicts as one of its chief competitors in device markets—has historically offered a proprietary cloud storage platform (Samsung Cloud), but, unlike Apple, Samsung does not require that its device holders use Samsung Cloud to store or backup any file types. Rather, Samsung device holders ~~historically~~ have been allowed to choose between Samsung Cloud and Google Drive to back up the entirety of their devices, including the files needed to restore them, and it has done so while continuing to offer state-of-the art security and encryption that matches, if not bests, anything Apple can offer. *See infra* at ¶ 146.

~~32.~~53. 37.— ~~As this example attests, there is nothing inherent to~~ Apple sequesters Restricted Files ~~that requires that they be hosted~~ only ~~on a cloud platform maintained by a device's manufacturer.~~to curtail competition and advantage its iCloud product over rival cloud platforms. Absent Apple's restrictions, ~~any rival~~other cloud platform~~s~~ could host Restricted Files generated on Apple mobile devices and consumers would have the option of choosing between iCloud and ~~such rival platforms~~alternative cloud services for all of their cloud-storage needs.

~~38.— Apple's restrictions eliminate that choice and, in doing so, effectively compel Apple device holders to use iCloud if they wish to backup Restricted Files. Technically speaking, Apple imposes what economists refer to as a "requirements" tie. That is, if iPhone or iPad holders wish to use cloud storage for all file types (including Restricted Files)—and most do—iCloud is their only option for fulfilling that requirement. And for anyone requiring more than 5GB of storage, which is to say most Apple customers,²⁹ they must pay for it.~~

~~39.— As addressed immediately below, this tie exhibits all the hallmarks of a *per se* unlawful tying arrangement, including: (1) the tie involves two separate products; (2) Apple~~

---

²⁹ ~~Sidney Ho, Ross Seymore, Gianmarco Vella, dbDIG Primary Research Survey on Apple Services, DEUTSCHE BANK (Jan. 15, 2024).~~

1  possesses market power in the tying product markets; and (3) the tie impacts a substantial volume of

2  commerce.

3      **1.    The Tie Involves Separate Products.**

4      40.   Smartphones and tablets (the tying products here) are distinct from cloud storage on

5  Apple's mobile devices (the tied product). There is separate demand for these products as evidenced

6  by the fact that many firms offer them separately. That is, consumers can buy smartphones and

7  tablets without also purchasing or using any cloud storage. Indeed, Apple was manufacturing

8  smartphones before iCloud even existed. And likewise, consumers can purchase a cloud storage plan

9  (including iCloud) without also purchasing a smartphone or tablet. Notably in this regard, iCloud can

10  be purchased and used on Apple's personal computers. Other cloud storage providers likewise offer

11  cloud storage plans as a freestanding product.

12      33.1.   41.   Accordingly, it is both possible and efficient to separate the tying and tied

13  products at issue. It would be illogical and ignore market realities to treat Apple's mobile devices

14  (smartphones and tablets) and cloud storage as a single product. They are distinct products, with

15  distinct uses, serving distinct needs.

16      34.1.   42.   The same logic holds regardless of how one defines the relevant market for

17  purposes of Plaintiffs' monopolization claim.  As addressed below, Plaintiffs allege a relevant market

18  for Full-Service Cloud Storage on Apple Mobile Devices (i.e., cloud platforms that can host all file

19  types) and, in the alternative, that Apple likewise monopolizes a larger market for all cloud storage

20  platforms on Apple mobile devices.  Either way, the tie involves two separate products, for neither

21  Full-Service Cloud Storage platforms, nor other cloud platforms, are the same product as Apple's

22  smartphones and tablets.

23      **2.    Apple Has Market Power in the U.S. Markets for Smartphones and Tablets.**

24      43.   Apple has substantial market power in both the smartphone and tablet product

25  markets.

26          **a.    The Smartphone Product Market**

27      35.1.   44.   Smartphones are a singular device that has transformed the way people interact

28  with the world. They allow people to access the internet anytime and anywhere with a cellular or Wi-

Fi connection. Smartphones also provide access to apps with a staggering range of functionality. With a smartphone in hand, consumers can shop online, navigate a city, post on social media, buy movie tickets, check the weather, and so much more. While it has ceased to be their primary function, smartphones are also mobile telephones. Apple and other smartphone manufacturers treat smartphones as a distinct product line, both in marketing materials and public filings.[30] There is widespread industry and public recognition of a distinct market for smartphones.[31]

45.     There is no reasonably close substitute for the smartphone. Various devices can provide some piece of a smartphone's functionality, but none provide a substantial share. Landline phones enable phone calls, but not on the move, and they do not offer the other features smartphones provide. Cellphones (that are not smartphones) provide mobility, but not internet access or any of the other features of a smartphone. Personal computers (including laptops) provide internet access and computing functions, and sometimes phone applications, but they are not as portable as a smartphone, and generally do not have cellular access. That consumers typically own a smartphone along with these and other electronic devices shows that the products are compliments, not substitutes.

46.     The absence of close substitutes in part explains the ubiquitous adoption of smartphones. As of 2021, approximately 85% of adults in the U.S. owned a smartphone.[32] As of 2024, that number has reached 90%.[33]

47.     Apple enjoys substantial market power in the U.S. smartphone product market. The iPhone, first launched in 2007, is the leading smartphone in the U.S. For nearly a decade, iPhones

---

[30] *See* Apple Inc. 2022 Form 10-K at 1, available at https://investor.apple.com/sec-filings/ (listing iPhone as a distinct product line, separate from other Apple offerings).

[31] *See, e.g.*, Igor Bonifacic, "iPhone overtakes Android to Claim Majority of US Smartphone Market," ENGADGET (Sept. 3, 2022), https://www.engadget.com/iphone-overtakes-android-us-market-share-223251196.html.

[32] *See* "Demographics of Mobile Device Ownership and Adoption in the United States," PEW RESEARCH CENTER (Apr. 7, 2021), https://www.pewresearch.org/internet/fact-sheet/mobile/.

[33] "Mobile Fact Sheet," PEW RESEARCH CENTER (Jan. 31, 2024), https://www.pewresearch.org/internet/fact-sheet/mobile/.

have had a market share in the United States exceeding 40%, reaching above 60% by 2024.[34] Apple's share of the performance smartphone market—a more expensive and higher-functioning segment of the smartphone market—is even higher.

36.1.   48.   Apple's market power is reinforced by substantial barriers to entry. Developing the hardware and software needed to market a smartphone requires a substantial outlay of capital and expertise. The iPhone also benefits from significant indirect-network effects generated by its sizable user base and large community of developers creating iOS apps. To succeed, new entrants would need to convince users to switch to a new smartphone operating system without the catalog of apps available on iOS, while simultaneously convincing developers to incur the costs of writing apps for a new operating system without iOS' sizable user base. These are substantial hurdles. Brand loyalty to existing manufacturers, and high switching costs, compound the difficulty of entry.[35] Highly sophisticated and resourced companies—*e.g.*, Amazon and Microsoft—have sought to market smartphones and failed to gain traction.

### b.   The Tablet Product Market

37.1.   49.   Tablets share certain features of smartphones, and other features of laptops, but they are a distinct product. Apple introduced the first tablet—the iPad—in 2010, marketing it as "a third category of device."[36] Tablets do not replace smartphones and were never intended to. Apple and other tablet manufacturers treat tablets as a distinct product line, both in marketing materials and public filings.[37] There is widespread industry and public recognition of a distinct market for tablets.[38]

38.1.   50.   One fundamental difference between tablets and smartphones is the screen size. The screen on a smartphone ranges from 4 to 6 inches, making the device small enough to fit into a

---

[34] *See* "iPhone Market Share: US (2014 2022), OBERLO, https://www.oberlo.com/statistics/iphone market share us; "US Smartphone Market Share," OBERLO, https://www.oberlo.com/statistics/us smartphone market share.

[35] *See infra* ¶¶ 69 72s*upra* at ¶¶ 62 65.

[36] *See* William Gallagher, "Apple got tablets right, and created a whole new market with the iPad 12 years ago today" APPLEINSIDER (Jan. 27, 202219), https://appleinsider.com/articles/19/01/27/apple-got-tablets-right-and-created-a-whole-new-market-with-the-ipad.

[37] *See* Apple Inc. 2022 Form 10-K at 1, available at https://investor.apple.com/sec-filings/ (listing iPad as a distinct product line, separate from other Apple offerings).

[38] *See, e.g.*, "Tablet Vendor Market Share United States Of America," STATCOUNTER, https://gs.statcounter.com/vendor-market-share/tablet/united-states-of-america.

pocket.[39] Tablets have screens ranging from 7 to 17 inches, making them far less mobile or stowable.[40] The screen size differential also means that certain apps are developed solely for either tablets or smartphones, and are not available on both.

51. While some tablets have cellular connectivity and can be used to make and receive telephone calls, that is not a core functionality. Rather, with the larger screen, tablets provide more immersive internet connectivity. And they can be used to perform a range of productivity tasks like a laptop or desktop computer. For example, with keyboard accessories, tablets can be used as word processors. They are also marketed as creativity tools that can be used to create and edit music and video. That consumers typically own a tablet along with smartphones, computers, and other mobile electronic devices shows that the products are compliments, not substitutes.

39.1. 52. Apple enjoys market power in the U.S. tablet product market. As of January 2024, iPad's U.S. market share in the tablet market was 57%, more than triple the 16% share of its closest competitor, Samsung.[41]

40.1. 53. There are also substantial barriers to entry into the tablet market, bolstering Apple's market power. As with smartphones, bringing a tablet to market requires substantial capital and expertise. Indirect network effects also reinforce Apple's market power and make entry difficult. To succeed, new entrants need to convince users to switch to a new tablet operating system without the catalog of apps available on iOS, while simultaneously convincing developers to incur the costs of writing apps for a new operating system without iOS's sizable user base. Brand loyalty and high switching costs likewise impose a substantial impediment to new entrants. Sophisticated and highly

[39] See "Smartphone sales market share in the United States from 2017 to 2019, by display size," STATISTA (Apr. 21, 2022), https://www.statista.com/statistics/1042669/us-smartphone-sales-by-display-size/.

[40] See "Tablet Comparison Chart: List Of Tablets In 2022," TABLETMONKEYS (June 2022), https://tabletmonkeys.com/tablet-comparison/. https://web.archive.org/web/20220701041050/https://tabletmonkeys.com/tablet-comparison/.

[41] See "Tablet Vendor Market Shares United States of America (Jan 2023 – Jan 2024), STATCOUNTER (Jan. 2024), https://gs.statcounter.com/vendor-market-share/tablet/united-states-of-america.

1    motivated companies, including Google and Microsoft, have sought to market tablets and failed to

2    gain significant market share for their offerings.

3            **3.    The Tie Affects a Significant Volume of Commerce.**

4            54.    Ties can be condemned *per se* when they affect a not insignificant (or "non de

5    minimis") volume of commerce. Cloud storage is a billion (soon-to-be *trillion*)[42] dollar industry, and

6    Apple's iCloud alone generates billions in annual revenues, as reflected above (*supra* § IV.C). The

7    volume-of-commerce requirement for *per se* condemnation is thus met.

8            54.    Apple Has Restricted Competition to Give iCloud an Facing real competition from

9    cloud providers capable of offering a Full-Service Cloud Storage product, Apple would need to

10   compete on the merits to win business, driving prices down while giving consumers meaningful choice

11   between market alternatives. This is how competition is supposed to work to enhance consumer

12   welfare. Apple has prevented this from happening. Through the conduct challenged in this case, Apple

13   has rigged the competitive landscape so that only its own product can provide consumers the essential

14   full-service functionality Apple admits they value. Apple, in short, did not secure or maintain iCloud's

15   dominant share of the market by competing on the merits. It simply degraded would-be competitor

16   products to give iCloud an unbeatable advantage.

17   **E.F.    Apple's Restraints on Alternative Cloud Storage Providers Have Allowed It to Secure
         and Maintain an Unlawful Monopoly.**

18
19           41.55.    55.    In addition to imposing an unlawful tieBy restricting competition from would-

20   be rivals, Apple unlawfully monopolizes the market for Full-Service Cloud Storage on Apple Mobile

     Devices, that is, cloud solutions capable of hosting all file types, including Restricted Files. Even if

21   the relevant antitrust market were expanded to include cloud platformsservices that cannot host

22   Restricted Files, Apple unlawfully monopolizes that larger market as well.

23           42.56.    56.    Unlawful monopolization occurs when a firm (1) acquires or maintains a

24   monopoly (2) through anticompetitive conduct. The facts alleged below support both elements.

25

26

27
     _____
28   [42] *See* "Cloud Spending to Top $1 Trillion in Four Years," T**HE**N**EXT**P**LATFORM** (Jan. 26, 2023),
     https://www.nextplatform.com/2023/01/26/cloud-spending-to-top-1-trillion-in-four-years/.

**1.   Apple ~~Has Monopoly Power~~has monopoly power.**

~~43.~~57.   57.——Monopoly power is the substantial ability to control prices or exclude competition. It can be established through direct proof of either supracompetitive prices, or reduced output, or both. Alternatively, monopoly power can be established indirectly with proof of high market share in a relevant antitrust market. -Apple's monopoly power can be established with both ~~direct and~~ indirect and direct proof. This Second Amended Complaint begins with the indirect proof.

~~a.     Direct Proof of Monopoly Power: Apple Has Demonstrated Its Ability to Charge Supracompetitive Prices and Restrict Output.~~

~~(1)     Apple Charges Supracompetitive Prices for iCloud.~~

~~44.1.   58.   Having shielded itself from meaningful competition, Apple is able to charge supracompetitive prices for iCloud.~~

~~45.1.   59.   It is textbook economics that, in a competitive market, prices tend toward marginal costs, or the cost of producing one additional unit of the product or service sold. It is apparent that Apple prices iCloud significantly above its marginal costs, that is, supracompetitively.~~

~~-60.   Rather than build out its own servers to host all iCloud data, Apple relies on the storage infrastructure of third parties, most recently Google. Apple's per-GB cost of acquiring this infrastructure provides a reasonable estimate of its marginal costs, because it is the cost Apple bears to sell each additional GB of cloud storage. There is no indication that Apple has marginal costs beyond the fees it pays Google.  Industry analysts report that Apple pays Google $300 million annually for 8 exabytes (or 8 billion gigabytes) of storage.[43] This equates to $0.0031 per-GB per month.[44]~~

~~46.1.   61.   Apple's iCloud prices dwarf these marginal costs, resulting in staggering margins. For Apple's three most popular iCloud storage tiers, the below chart compares Apple's per-~~

---

~~[43] Mike Peterson, "Apple is now Google's largest corporate customer for cloud storage," APPLE INSIDER (Jan. 29, 2021), https://appleinsider.com/articles/21/06/29/apple-is-now-googles-largest-corporate-customer-for-cloud-storage.~~

~~[44] Notably, this is comparable to Amazon's most competitive cloud storage plans for its S3 Glacier service. See "Amazon S3 Glacier service (Glacier API for vaults) pricing," AMAZON, https://aws.amazon.com/s3/glacier/pricing/.~~

1    ~~GB  annual  marginal  costs  with  the  per-GB  annual  price  Apple  charges  iCloud  subscribers  like~~

2    ~~Plaintiffs and the proposed class here.~~



14    47.1.   62.   ~~In short, Apple is marking up its marginal costs by staggering amounts. For a~~

15    ~~consumer using the entirety of Apple's 50GB plan, Apple pays Google $1.86 annually for storage~~

16    ~~infrastructure, and charges consumers $11.88. For someone using the entirety of a 200GB plan, Apple~~

17    ~~pays Google $7.44 annually and charges consumers $35.88. And for a consumer using the entirety of~~

18    ~~a 2TB plan, Apple pays Google $74.40 annually and charges consumers $119.88.~~

19    63.   ~~Markups of this magnitude yield eyewatering gross margins. Apple is one of the most~~

20    ~~profitable companies the world has ever known. Apple generally reports company-wide gross~~

21    ~~margins slightly above 40%, which is high.[45] But not in comparison to the margins Apple generates~~

22    ~~with its iCloud plans. Accounting for storage infrastructure costs Apple incurs for users of its free (0-~~

23    ~~5GB) plan, the margins reported above for Apple's paid plans yield gross margins of approximately~~

24

25    ───────────────────────

26    [45] ~~See "Apple's gross margin as percentage of revenue from 1st quarter 2005 to 1st quarter 2024,"~~

27    ~~STATISTA     (Feb.     2024),     https://www.statista.com/statistics/263436/apples-gross-margin-since-~~
      ~~2005/#:~:text=As%20of%20the%20first%20quarter,a%20percentage%20of%20total%20revenue.     2024),~~
      https://www.statista.com/statistics/263436/apples-gross-margin-since-
      2005/#:~:text=As%20of%20the%20first%20quarter,a%20percentage%20of%20total%20revenue.

28    ~~2005/#:~:text=As%20of%20the%20first%20quarter,a%20percentage%20of%20total%20revenue.~~

65%.  Even this is highly conservative because it assumes that Apple pays Google for all of the storage iCloud subscribers purchase from Apple, rather than just the storage they use.  In reality, many iCloud subscribers use only a fraction of the storage allotted to them, particularly because there are sizable jumps between available iCloud storage tiers (50GB, to 200GB, to 2000GB).  For instance, a subscriber may purchase a 200GB plan but only use 75GB.  Or a subscriber with a 2TB plan, may only use 300GB.  It is highly likely that Apple only pays Google for the storage its subscribers use, because that is the only storage required to satisfy the subscribers' needs, in which case iCloud's gross margins are substantially above 65%.  For example, if Apple pays Google for approximately 50% of the storage capacity its subscribers purchase, a reasonable assumption, iCloud's gross margins are above 82%, or double Apple's company wide gross margins.  Even if Apple pays for 80% of the storage capacity its subscribers purchase, a high number, iCloud's gross margins exceed 70%.



% Represents the Share of Storage Apple Buys from Google for Each Gigabyte Sold to iCloud Users.

64.    Apple's iCloud pricing is thus not simply above Apple's marginal costs, it is grossly above marginal costs.  It is manifestly supracompetitive as a matter of textbook economics.

48.1.   65.   In a market without Apple's restraints, competition on price would be vigorous. Cloud storage on Apple's devices is a billion-dollar industry that Apple completely dominates today. If other cloud storage providers were able to offer a full-service cloud storage solution to Apple's mobile device users, these providers would be highly incentivized to compete aggressively on price to differentiate their offerings and win subscribers. This would place enormous downward pressure on iCloud's pricing. Having carefully insulated itself from these competitive dynamics, Apple is able to maintain its supracompetitive iCloud prices.

**(2)    Apple's Challenged Restraints Restrict Output.**

66.   Apple's ability to restrict output is evidenced by its ability to flatly preclude any other cloud provider from accessing and hosting Restricted Files on its mobile devices. This demonstrated ability to restrict output prevents cloud providers from offering new and innovative cloud storage options for Apple mobile device holders. In the absence of Apple's restrictions, additional output would be generated by new entrants and existing cloud providers who would be incentivized to develop full-service cloud solutions capable of challenging iCloud's market supremacy. Given the billions that cloud providers can earn from Apple's massive user base, cloud platforms would be highly incentivized to compete and appeal to a larger segment of Apple's users, generating more cloud service transactions overall. Apple's restraints suppress this natural output.

67.   Output is further diminished because, as addressed immediately above, Apple's restraints result in supracompetitive prices. Higher prices result in lower demand, and thus, lower output. That is, if prices were lower prices for cloud storage on Apple mobile devices, more consumers would purchase cloud storage and in larger amounts. Notably, reports indicate that approximately 30-48% of Apple users do not purchase an iCloud subscription (i.e., only use the free 0-5GB), meaning there is a significant population of potential iCloud subscribers to whom lower prices could appeal.  In a more competitive market without Apple's restraints, prices would be lower, yielding higher demand and output.

1

2

3

~~b.      Indirect Proof of Monopoly Power: Apple Has a Monopoly Share of a Relevant Antitrust Market.~~

**a.   1.—Indirect proof of monopoly power: Apple has a monopoly share of a relevant antitrust market.**

~~49.~~58.  By preventing all rivals from accessing Restricted Files, Apple has made iCloud the only cloud ~~platform~~service capable of hosting all file types on Apple's devices, including both Restricted Files and Accessible Files. As set forth below, Full-Service Cloud Storage on Apple Mobile Devices—that is, cloud storage capable of storing all file types on Apple's mobile devices—is a relevant antitrust market under all conventional market definition principles. As a result of the restraints challenged in this lawsuit, Apple is a 100 percent monopolist of the market for Full-Service Cloud Storage on Apple Mobile Devices.[46]

**(1) There are no ~~Reasonable Substitutes~~reasonable substitutes for ~~Full-Service Cloud Storage~~full-service cloud storage on Apple Mobile Devices.**

~~50.~~59.  ~~1.——~~Full-Service Cloud Storage on Apple Mobile Devices is a distinct product for which there are no reasonably close substitutes. Consumers with an Apple smartphone or tablet have limited vehicles for storing and backing up their data, none of which are reasonably interchangeable with Full-Service Cloud Storage on Apple Mobile Devices. Full-service cloud storage provides the comprehensive storage and device back-up service Apple and its experts have repeatedly admitted the vast majority of Apple's customers demand.

~~51.~~60.  ~~2.——~~A salient feature of cloud-based storage is that it offers users relatively seamless access to stored data *across* devices. For example, iPhone users with photos on a cloud platform can generally access them from their iPad, and vice versa. Cloud storage also does away with physical hard drives and other storage media that require a physical connection to port data to and from a device. With a cloud platform, users can generally upload and access stored files wherever they can access the

---

[46] The market for Full-Service Cloud Storage on Apple Mobile Devices could be considered a "submarket" within a larger market that includes all forms of cloud storage for Apple device holders. For pleading purposes, however, "submarket" terminology is not essential and for brevity this complaint generally refers to Full-Service Cloud Storage on Apple Mobile Devices as a "market."

internet. Cloud platforms can also offer ranges of automation that allow users to back-_up data automatically without continuous user engagement.

~~52.~~61.   3.——There are no comparable, much less reasonably interchangeable, substitutes for Full-Service Cloud Storage on Apple Mobile Devices.

~~53.~~62.   4.——**Cloud Storage on Android Mobile Devices**.– There are full-service cloud storage platforms on Android devices, but these are not reasonable substitutes. –Consumers with an iPhone or iPad can only use cloud storage on non-Apple mobile devices by switching operating systems and purchasing an Android mobile device. But the high costs and difficulty of switching effectively lock consumers into Apple's device ecosystem. Studies show that switching is remarkably rare. More than 90% of new iPhone purchases are made by consumers whose previous smartphone was likewise a smartphone.[47] There are many deterrents to switching. Learning to navigate an operating system (Apple or Android) takes time, and consumers who switch must undertake that labor-intensive process again. A NEW YORK TIMES guide to smartphones recommends against switching operating systems, precisely because "[b]y the time you've used a phone for a couple of years, you've spent a lot of time learning its quirks."[48]

~~54.~~63.   5.——Switching costs are also high. The most immediate cost is that of a new device, a switching cost that cannot be avoided because the Android operating system cannot be run from an Apple device. New smartphones and tablets cost hundreds of dollars, an investment most consumers do not make more than every two to three years. ~~See infra ¶¶ 83-91 (applying SSNIP test).~~*See infra* at ¶ 87. Moreover, iCloud is not available on Android devices, which means a user cannot transfer iCloud files over to an Android-based cloud-storage solution without separately downloading them.

~~55.~~64.   6.——In addition, much app and in-app content is specific to Apple's operating systems and cannot be ported to a new device utilizing a different operating system. This exacerbates switching costs. As one senior Apple executive has put it: "Who's going to buy a Samsung phone if

---

[47] *See* Chance Miller, "iPhone loyalty rate continues to exceed 90%, new CIRP data shows," 9TO5MAC (Oct. 28, 2021) https://9to5mac.com/2021/10/28/iphone-loyalty-rate-data-switchers/.

[48] *See* Andrew Cunningham, "iPhone vs. Android: Which is Better for You?" NEW YORK TIMES (Jan. 27, 2021~~; updated May 16, 2023),~~ https://www.nytimes.com/wirecutter/reviews/ios-vs-android/.

they have apps, movies, etc.[.] already purchased? They now need to spend hundreds more to get to where they are today."[49] This is not an accident. Locking customers into its ecosystem, and erecting high switching costs, is indeed a central pillar of Apple's business model. Apple's overarching strategy, as Steve Jobs once described it, is to "[t]ie all of our products together, so we further lock customers into our ecosystem."[50]

56.65. 7.——Given the difficulty and high costs of switching—and its relative infrequency—Android-based cloud storage options are not a reasonable substitute for Full-Service Cloud Storage on Apple Mobile Devices.

57.66. 8.——**Local Storage.**- An iPhone or iPad can theoretically be backed up locally to a hard drive on a Mac or PC, using Apple's program iTunes, but this is a labor-intensive and non-automated process that does not reasonably substitute for Full-Service Cloud Storage on Apple Mobile Devices. To begin with, not all files that can be stored on iCloud can be backed up to a local drive. Most prominently, users cannot store or back up content from app stores or iTunes, or PDFs downloaded directly from Apple Books, on a local hard drive.[51] For users of Apple's mobile devices, these files can be only stored on iCloud. This difference alone makeans local storage cannot provide a comprehensive backup, making it a poor substitute for cloud storage.

58.67. 9.——Even if local backups provided the same storage capabilities as cloud storage, local backups lack the ease of use and convenience that characterize cloud storage. *First*, local storage is only available to users that have purchased a Mac or PC and have retained storage space on their

---

[49] *See* "Apple's Past Sideloading Plans, Ecosystem Lock-in Strategy, and More Revealed in Internal Documents," MACRUMORS (Aug. 20, 2021), https://forums.macrumors.com/threads/apples-past-sideloading-plans-ecosystem-lock-in-strategy-and-more-revealed-in-internal-documents.2308143/.

[50] *See* "Steve Jobs wanted to 'further lock customers into Apple's ecosystem," CNET (April 2, 2014), https://www.cnet.com/tech/tech-industry/steve-jobs-wanted-to-further-lock-customers-into-apples-ecosystem/. https://www.cnet.com/tech/tech-industry/steve-jobs-wanted-to-further-lock-customers-into-apples-ecosystem/.

[51] Apple Support article, "Backup methods for iPhone, or iPad, and iPod touch," https://support.apple.com/en-us/HT204136#:~ :text=iCloud%20backs%20up-,Backups%20from%20your%20computer,downloaded%20directly%20to%20Apple%20Bookshttps://support.apple.com/en-us/108771.

local drive sufficient to back up their mobile device. Users are also dependent on the functionality of that physical device—if it is damaged or misplaced, all data can be lost. *Second*, users can back up to their Mac or PC only by physically connecting their device, which requires cables and having both devices physically present in the same location. *Third*, backing up locally entails a 7- or 8-step process (depending on whether you are saving to a Mac or PC) that includes downloading and/or opening iTunes, inputting and saving device and encryption passcodes, and following various screen prompts and troubleshooting steps.[52] *Fourth*, whereas cloud storage platforms can automatically backup data without any action by the user, local backups are manual and require that the user undertake each of the above steps every time they wish to backup new information on their device. This means that, while an iCloud backup generally will include all data on a user's device, including data recently added, local backups will only include data accumulated at the time of the last manual backup, which could be weeks or even months prior. Maintaining a comprehensive backup on a local drive thus requires almost continuous manual updates.

~~59.~~68.  ~~10.~~Local storage also lacks a core distinguishing feature of cloud storage—the ability to seamlessly access and manage stored data across multiple devices, including when the user is on the move. For example, data stored on a home office Mac or PC cannot be accessed from a coffee shop using an iPhone. By contrast, using a cloud-based solution, Apple device holders can access their data on all of their devices, wherever they happen to be, provided they have some means of connecting to the internet.

69.    ~~11.~~A study and survey conducted by Apple's own expert confirms that iCloud users value the automation and ease-of-use that cloud storage, but not local storage, offers, including "automatically syncing and accessing data on all Apple devices" and the ability to "automatically synchronize all of [their] data between multiple computer and mobile devices with one cloud

---

[52] *See* Apple Support article, "How to back up your iPhone, iPad, or iPod touch with ~~iTunes on your PC~~Windows," ~~https://support.apple.com/en-us/HT212156~~https://support.apple.com/en-us/108967;  Apple support article, "How to back up your iPhone, iPad, and iPod touch with your Mac," ~~https://support.apple.com/en-us/HT211229~~ https://support.apple.com/en-us/108796.

service."[53] Apple's own expert concluded that these are among the most important iCloud features and the features "most frequently included in the set of those most important to [survey] respondents."[54] Apple has relied on these findings to argue that services that do not "automatically sync" across devices are "not comparable" to iCloud.[55]

70.     Local storage does not provide this important functionality that the "cloud" offers. That is, local storage cannot provide automatic backups. As detailed above, the process of backing up data locally is manual and laborious, involving multiple non-automated steps that the user must follow to complete a single backup—and, unlike cloud storage, this manual process must be repeated for each successive backup as the user accumulates additional data. Nor are files backed up locally synced and accessible across devices. Instead, the files reside on a hard drive and porting them across devices is, again, a manual and laborious device-by-device process that must be repeated as additional files are accumulated. In short, Apple's own expert has confirmed that Apple's customers use iCloud because it offers automation and synchronization features local storage does not. Unable to provide this basic and valued functionality, local storage does not place any meaningful competitive constraints on iCloud.

~~60.~~71.  For all of these reasons, local storage is not a reasonable substitute for Full-Service Cloud Storage on Apple Mobile Devices.

12.——**Cloud Platforms that Cannot Host Restricted Files**. -Google Drive, Microsoft

~~61.~~72.  OneDrive and other cloud platforms are available on Apple mobile devices, but none of these services are reasonable substitutes because none can host Restricted Files. -That is, by ~~design~~virtue of the restraints challenged in this case, these cloud platforms lack core functionality that distinguishes Full-Service Cloud Storage. -Most prominently, a cloud platform that cannot host Restricted Files cannot be used to comprehensively back up all files, including for device restoration because it cannot host the settings and app data needed for this purpose. This is important functionality

---

[53] Exhibit A ¶¶ 8(c), 46.
[54] *Id.* ¶¶ 46-47.
[55] Exbibit B at 23.

for mobile cloud solutions, and a feature of iCloud that Apple itself actively promotes to distinguish its iCloud product.[56]

62.73.   ——13.——Moreover, reportedly more than half (55%)Apple's own expert has, after surveying Apple's customers, concluded that backing up "all content" is one of the "most used" features of iCloud users use the service for "back-ups."[57].[58] Any Apple device holder that wishes to backupback up Restricted Files—and there are many—cannot substitute away from iCloud to Google Drive, Microsoft OneDrive, or any other cloud platform available on Apple's mobile devices. Rather, their only option is to retain iCloud for hosting Restricted Files, and then use one of these alternative providers to backupback up Accessible files (like photos and videos). As addressed above, this is an unattractive option, because it requires juggling multiple cloud accounts. It alsoThis makes cloud platforms that cannot host Restricted Files at most compliements, rather than substitutes, to Full-Service Cloud Storage on Apple Mobile Devices. That is, they are offerings that consumers may use in tandem with (and not in lieu of) a Full-Service Cloud Storage platform.

74.   ——14.——As detailed above, Apple's own expert conducted a study demonstrating the overriding importance of hosting Restricted Files and providing full-service functionality—a feature that Google Drive, Microsoft OneDrive, and other cloud platforms are foreclosed from offering. *See supra* at ¶¶ 41-45; Exhibit A. Apple's own survey shows, in particular, that "[t]he ability to automatically backup all content and device and app settings was the feature most frequently ranked as one of the four most important iCloud service features."[59] And other high-ranking considerations also all related to the ability to back up all file types, including for syncing and device restoration purposes: "the four items most frequently included in the set of those most important to respondents were (1) the ability to automatically backup all content and device and app settings on an iPhone or

---

[56] *See* Apple Support, *How to backup your iPhone or iPad with iCloud*, available at: https://support.apple.com/en-us/108366108366.

[57] Statista, *What do you use your iCloud for?*, available at: https://www.statista.com/forecasts/1011652/file-types-for-icloud-in-the-us.

[58] Exhibit A ¶ 54; *see also id.* ¶ 48 (including as "most widely used capabilities" the ability to "back[] up all content including data and apps as well as device and account settings for an iPhone or iPad" and "restor[e] or set[] up a new Apple device with all of your backed up content").

[59] Exhibit A ¶ 48.

iPad, (2) ease of using the iCloud Service, (3) the ability to automatically synchronize all of my data between multiple computer and mobile devices with one cloud service, and (4) the ability to restore or set up one's device from an iCloud backup."[60]

75.    Unable to offer this basic and critical functionality, would-be cloud competitors do not meaningfully compete with iCloud. Indeed, Apple itself has argued in other litigation that other cloud platforms—including Google Drive, Dropbox, and Microsoft OneDrive—are "not comparable" to iCloud because they lack essential functionality, including the ability to offer users a "[c]omprehensive backup."[61]

76.    This is corroborated by these cloud storage platforms' persistent inability to seize any meaningful market share from iCloud, as described further below. It is also confirmed, again, by Apple's own expert whose survey demonstrates that less than 30% of iCloud subscribers even *considered* using a cloud storage provider other than iCloud.[62] Moreover, as Apple's own expert concluded:

> Any decision to switch to a different application such as Google Drive, Microsoft OneDrive, or Dropbox would be complicated by the need for many iCloud Service users to learn how to use another storage product or platform, by the number of the iCloud Service's capabilities that many iCloud Service users take advantage of, and the uniqueness of two features considered most important by purchasers, i.e., the ability to create a backup of all data and device and app settings on an iPhone or iPad and the ability to restore or set up a new Apple mobile device.[63]

77.    Apple's own expert found that the survey evidence "call[s] into question whether iCloud Purchasers consider these other storage providers to be true competitors in the sense of being substitutes for the iCloud Service."[64] Indeed, a significant number of iCloud users also have cloud accounts with other providers.[65] This would not be expected if iCloud and the other services were "substitutes" for each other—*i.e.*, products that consumers select *between*. Instead, and as Apple's own

---

[60] *Id.* ¶ 46.

[61] Exhibit B at 23.

[62] Exhibit A ¶ 51.

[63] *Id.* ¶ 49.

[64] *Id.* ¶ 51.

[65] *See id.*

expert has observed, it indicates that other cloud platforms are "complements rather than cloud storage competitors to iCloud."[66]

63.78.  That Full-Service Cloud Storage on Apple Mobile Devices would pass a SSNIP test, as addressed immediately below, further demonstrates that cloud platforms incapable of hosting Restricted Files cannot be reasonable substitutes with full-service offerings.

**(2) The Proposed Market Would Pass~~proposed market would pass~~ a SSNIP ~~T~~test.**

64.79.  15.——A common method to determine the relevant market is to assess whether a hypothetical monopolist could impose a **s**mall but **s**ignificant **n**on-transitory **i**ncrease in **p**rice ("SSNIP") in the proposed market, typically 5-10%. A hypothetical monopolist in the market for Full-Service Cloud Storage on Apple Mobile Devices could profitably impose a SSNIP—that is, sustain a significant price increase without losing volume sufficient to make the price increase unprofitable.

65.80.  16.——A SSNIP test begins with a narrow market definition and asks whether a hypothetical monopolist of that market could sustain a SSNIP without consumers switching to alternative products to a degree that renders the SSNIP unprofitable. If the hypothetical monopolist could sustain the SSNIP, the relevant market does not require expansion. If, however, consumers would switch to alternate products and render the SSNIP unprofitable, those alternate products must be included in the relevant market.

66.81.  17.——As applied here, consumer substitution to conceivable alternatives would not defeat a SSNIP on Full-Service Cloud Storage on Apple Mobile Devices. In other words, the proposed market would pass a SSNIP test.

67.82.  18.——Notably in this regard, in ~~late~~June 2023, Apple substantially increased the price of iCloud in the UK and other regions (outside the US).[67] These price increases substantially exceeded the 5% thresholds used for a SSNIP test, ranging from 20-29% across storage tiers:

---

[66] *Id.* ¶ 52.

[67] MacRumors, *Apple Hikes iCloud+ Subscription Prices in Many Countries Around the World* (June 27, 2023), available at— https://www.macrumors.com/2023/06/27/apple-hikes-icloud-subscription-prices/.

1
2
3
4
5
6
7
8



9  ——19.——By all accounts, Apple has been able to retain these substantial price hikes since

10 implementation in June 2023.  This is powerful evidence that Full-Service Cloud Storage on Apple

11 Mobile Devices is a relevant market that excludes the conceivable substitutes addressed above.  That

12 is, if Google Drive or other cloud platforms without access to Restricted Files were in the same

13 relevant market as iCloud, consumers would respond to a 5% price increase by substituting away

14 from iCloud in numbers sufficient to render the price increase unprofitable.  But in reality, Apple has

15 been able to sustain price increases exceeding 20%.  Unless Apple deliberately engaged in a profit-

16 reducing price change in the UK and elsewhere (something profit-maximizing entities do not do),

17 Apple's ability to sustain its price increases in these regions demonstrates that substitution away

18 from iCloud to other cloud platforms is limited and insufficient to place these platforms in the same

19 relevant market as iCloud.

20 ——20.——The same logic applies to cloud storage on Android devices and local backups.  If

21 these means of backing up files were in the same relevant market as iCloud, Apple would not be

22 expected to sustain price increases exceeding 20% in large segments of the world.  Instead,

23 substitution to these "alternatives" would have rendered the price increase unsustainable and Apple's

24 pricing would have reverted to pre-existing levels.  Again, this did not happen.

25
26
27
28

1

21.    ~~It also bears emphasis that switching to cloud storage on Android devices would be minimal in response to a SSNIP because~~



UK iCloud Monthly Subscription Price Increase, 2023

Source: Apple

83.    This large price increase on iCloud was not accompanied by or commensurate with any observable increase in the price of plans for other cloud providers in the UK (including Google Drive, Microsoft OneDrive, Dropbox, pCloud or Sync). That is, only iCloud's price increased, and it increased relative to other cloud services not capable of offering Full-Service Cloud Storage.

84.    If these other cloud platforms were in the same market as iCloud, consumers would switch in substantial numbers from iCloud to these cloud providers in response to Apple's substantial 20-29% price increase in the UK. Available data show, however, that this did not happen. In fact, when Apple increased its iCloud prices in the UK by 20-29%, there was no discernable increase in revenues or active users on other cloud services, and a modest decrease in active users on some.



85.     Accordingly, consumers did not switch in significant numbers away from iCloud in response to its substantial (and sustained) price increase in the UK—indeed, they do not appear to have switched away from iCloud *at all*. This is powerful evidence that other cloud providers, all of whom Apple has prevented from offering Full-Service Cloud Storage, do not competitively constrain iCloud and therefore cannot exist in the same antitrust market as iCloud. Demonstrably, these partial storage Cloud providers are not restraining iCloud's pricing.

86.     The absence of switching away from iCloud in response to its significant price increase in the UK also demonstrates that the price increase was profitable for Apple. That is, Apple was able to charge significantly more for iCloud without losing customers in numbers sufficient to render the price increase unprofitable. This is further corroborated by looking at Apple's share in the device foremarket. In the 7.5 months leading up to Apple's UK price increase, iOS's mobile share in the UK was on a modest downward trajectory, falling from 53.2% to 50.8%, but this reversed after the price increase, with Apple's share increasing in the 7.5 months after the price change, from 50.8% to 52.8%. If competition in the foremarket were disciplining Apple's pricing for iCloud, you would expect to see a measurable decrease in iOS share coincident with Apple's iCloud price increase. Again, this did not

happen—if anything, the opposite happened in that Apple's iOS share rose after its iCloud price increase.



## iOS Market Share 2023, UK

20%-29% Price Increase

Monthly iOS Share, UK

Source: StatCounter

68 87.  As these data reflect, there was no discernable switching away from iCloud in response to a SSNIP, and this includes no measurable switching to alternative cloud providers (which are the same in the UK and US), local storage (which is the same in the UK and US), and cloud storage on Android devices (where the same Android-based cloud providers are available in the UK and the US). With respect to the latter, it also bears emphasis that the cost of Full-Service Cloud Storage on Apple Mobile Devices, while substantial (and supracompetitive), pales in comparison to the cost of purchasing a new device on a new operating system and porting what data and features can be ported across ecosystems. That is, Apple's most popular storage tiers are all less than $9.99 per month,[68] meaning for most iCloud users a 5% increase in iCloud pricing would equate to less than 50 cents a

---

[68] Apple did not even offer its higher-volume storage tiers (6TB and 12TB) in the United States until September 2023.

1    month. A new Android smartphone, by contrast, will cost hundreds of dollars, with some premium

2    devices comparable to iPhones exceeding $1,000. And this is to say nothing about the other costs

3    associated with switching ecosystems. In short, it would be economically irrational for Apple's device

4    holders to respond to a SSNIP on Full-Service Cloud Storage on Apple Mobile Devices by purchasing

5    a new device to access Android-based cloud storage solutions.

6        69.88.  22.——Consumers also cannot reasonably anticipate or estimate the total cost of an

7    increase in the price for Full-Service Cloud Storage on Apple Mobile Devices, because users cannot

8    accurately measure their future data storage needs, which can fluctuate dramatically (and

9    unpredictably) over time based on changes in technology (*e.g.*, size of files) and the uses to which

10   consumers put their mobile devices. In addition, consumers generally substantially discount future

11   costs when they choose a device, meaning the future cost of cloud storage, which is already small

12   relative to the cost of a new device, is even less significant.[69]

13       89.    23.—  With respect to local storage, it also bears emphasis that Apple already charges

14   more than 5% more for iCloud storage than its device holders pay to back up their devices to a Mac or

15   PC. Indeed, Apple does not charge anything when users backup their devices to a Mac or PC. IfThe

16   same SSNIP logic applies to local backups. Putting aside the fundamental functionality and

17   convenience differences between cloud storage and local backups, which Apple's own expert

18   emphasized (*see supra* at ¶¶ 43-45), if Full-Service Cloud Storage on Apple Mobile Devices and such

19   local storage were in the same antitrust market, one would expect substantial switching from cloud

20   storage (for which iCloud to local backups in response to Apple's 20-29% increase on iCloud prices

21   in the UK. Unlike with cloud providers, there are no publicly available data tracking the use of local

22   backups in the UK. The best evidence of whether there was significant monthly fees apply)switching

23   away from iCloud to local backups in response to local storage (whichApple's SSNIP is free, provided

24   the user has sufficient storage space on their hard drive).Apple's ability (or inability) to sustain its

25

26   _____

27       [69] Gregory Howard, John C. Whitehead, and Jacob Hochard, "Estimating discount rates using
     referendum-style choice experiments: An analysis of multiple methodologies," Journal of
     Environmental Economics and Management (Jan. 2021),

28   https://www.sciencedirect.com/science/article/abs/pii/S0095069620301224.

1  price increase in the UK for a sustained period. That is, if there was significant switching to local

2  backups (or other service other than iCloud), then this would have rendered the price increase

3  unsustainable and Apple's pricing would have reverted to pre-existing levels. This did not happen.

4  Apple's iCloud pricing in the UK increased in June 2023, and it has remained at the increased level

5  ever since.

6      90.    The foregoing SSNIP analysis focuses on the UK because that is where Apple has ~~not~~

7  ~~occurred.~~recently increased prices and a SSNIP can, accordingly, be constructed pre-discovery from

8  publicly available information (a rarity in antitrust litigation). The results of this SSNIP are generally

9  probative, including for the US. To begin with, and as noted above, the same cloud storage platforms

10  are available in the US and the UK, including Google Drive, Microsoft OneDrive, pCloud, Dropbox,

11  and Sync, among others. In ~~fact, iCloud usage by~~addition, Apple imposes the same restraint on

12  Restricted Files in the UK as it does in the US, meaning these cloud providers are (as in the US)

13  offering the same diminished partial storage solution they can offer US consumers. Similarly, local

14  storage and Android-based cloud platforms are the same in the UK and US.

15      91.    Given the overlap in would-be competitors offering the same functionality as they do

16  in the US, the only reason that a SSNIP test on UK prices might conceivably provide a false positive

17  for the US is if iCloud customers in the US were significantly more price elastic than iCloud consumers

18  in the UK—that is, if they are far more likely to switch away from Apple ~~device holders~~in response to

19  a price increase on iCloud. There is no evidence of this. Quite the opposite, studies indicate that UK

20  consumers have *less* disposable income than US consumers, and that they are even *less* brand loyal,

21  such that they "are far more likely to switch brands in search of a good deal."[70] There is also less Apple

22  brand loyalty in the UK in particular, with reports indicating that Apple's share of the smartphone

23  market has increased in the US, while falling in the UK, because the "[t]he Apple ecosystem is slightly

24  less all-encompassing in the UK than it is in the US."[71] In sum, all available evidence indicates that,

25

26      [70] Oloop, *Core Differences Between American and British Consumers* (Feb. 29, 2024),
27  https://www.loopreturns.com/blog/core-differences-between-american-and-british-consumers/.
      [71] eMarketer, *iPhones are gaining market share in the US, but losing in the UK* (Feb. 19, 2021),
28  available at https://www.emarketer.com/content/iphones-gaining-us-market-share-losing-uk.

relative to consumers in the US, consumers in the UK would be *more likely* to switch away from iCloud in response to Apple's 20-29% price increase. That UK consumers did not switch in any measurable degree is generally probative on the boundaries of the relevant market, and particularly for the US and any other population where demand is less price elastic.

70.92.  With respect to local storage, it is also possible to create a supplemental SSNIP test for the US because local storage has always been ~~increasing steadily for years.[72]~~ free to the user, including when Apple started offering paid iCloud subscriptions (reportedly at prices reaching $100 per year). This was a price increase above the prevailing $0 price for local backups. If local backups were the same product as iCloud cloud storage and meaningfully constraining iCloud pricing, then Apple's would not have been able to charge a significant non-zero price for iCloud. Consumers would not have paid for the iCloud service and would have instead relied on local backups, rendering the non-zero iCloud price nonprofitable and thus unsustainable. But again, this did not happen, as Apple has sustained paid iCloud subscriptions since inception. This is strong evidence, coupled with the fundamental functionality differences between cloud and local backup storage, that local backups are not in the same product market as iCloud.

**(3) The ~~Mm~~arket for Full-Service Cloud Storage on Apple Mobile Devices ~~Demonstrates All Characteristics~~demonstrates all characteristics of an "~~Aa~~ftermarket."**

71.93.  24.——The market for Full-Service Cloud Storage on Apple Mobile Devices can be understood as an "aftermarket" to the primary device markets for smartphones and tablets. An aftermarket is a derivative market for goods or services used in conjunction with some primary product. In determining whether an aftermarket exists, relevant factors include whether "(1) the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchases; (2) 'significant' information costs prevent accurate life-cycle pricing; (3) 'significant' monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market.~~[22]~~." *Epic Games, Inc. v.*

---

[72] ~~*See, e.g.,* "Essential Apple iCloud Statistics in 2024," ZIPDO (July 16, 2024), https://zipdo.co/statistics/apple-icloud/.~~

1    *Apple, Inc.*, 67 F.4th 946, 977 (9th Cir. 2023). The market for Full-Service Cloud Storage on Apple

2    Mobile Devices satisfies each of these criteria.

3    ~~72.~~94. 25. ──**Restrictions Not Generally Known at Foremarket Purchase**. When

4    consumers purchase an Apple mobile device, they are nowhere advised that iCloud is the only cloud

5    service capable of storing or backing up Restricted Files on their device. Such a term cannot even be

6    found in the fine print of Apple's otherwise highly detailed ~~Apple's~~ Software License Agreement for

7    iPhones and iPads. Nor is such a term included in Apple's iCloud user terms and conditions. In fact,

8    far from suggesting that iCloud is the only option for backing up Restricted Files (or any files), the

9    iCloud terms and conditions specify: "[I]t is your responsibility to maintain appropriate alternate

10   backup of your information and data."[73]

11   ~~73.~~95. 26. ──Cloud storage is also widely available on other platforms, with many well-

12   known technology firms offering cloud storage products that are available on Apple's mobile devices.

13   Consumers have no reason to know, and generally do not know, that these otherwise ubiquitous and

14   highly functioning cloud storage solutions are incapable of hosting certain files—*i.e.*, Restricted

15   Files—on Apple's mobile devices ~~and providing a comprehensive backup.~~ Consumers generally learn

16   of this limitation only *after* they have purchased their mobile device and attempt to use alternative

17   cloud storage platforms to ~~backup~~back up Restricted Files, or the entirety of their files. But by this

18   point, the user has already transacted in the foremarket. Accordingly, any competition occurring in the

19   device foremarkets does not serve to meaningfully constrain Apple's restraints on cloud storage in the

20   aftermarket.

21   ~~74.~~96. 27. ──Further evidence of this can be seen in the response to Apple's aforementioned

22   June 2023 substantial price increase (20-28%) on iCloud in the UK.─ If foremarket competition

23   restrained Apple in the aftermarket, one would expect to see Apple's share in UK device markets

24   decrease in response to Apple's substantially increased prices in the aftermarket. ─But this did not

---

[73] "Welcome to iCloud," APPLE, at Section II.O, https://www.apple.com/legal/internet-services/icloud/.

happen.- In fact, reports indicate that Apple's market share in the UK mobile operating system market *increased* in the seven months after Apple increased its UK iCloud prices.[74]

75.97.  28.——**Significant Information Costs Prevent Accurate Lifecycle Pricing**. For similar reasons, consumers cannot (and do not) accurately estimate the lifecycle price of Apple's challenged restraints when transacting in the foremarket for Apple's mobile devices. The restraints are, as just noted, generally unknown to users and thus no life-cycle pricing can occur.

76.98.  -29.——Even if consumers knew at the time they purchased their iPhone or iPad that iCloud is the only available cloud platform for Restricted Files—which generally they do not—they could not accurately measure the lifecycle cost of this restraint. Consumers' cloud storage needs change over time, including as to Restricted Files, often for reasons users cannot anticipate and for reasons users do not control. For example, anytime a developer updates an app, the storage required for that app can change. These types of app updates can even be pushed to the users of Apple mobile devices without any action of the user. Similarly, a consumer that happens to receive text messages with large, attached files (*e.g.*, videos) will see a marked increase in his or her storage needs. File sizes are also increasing dramatically over time as the fidelity of mobile photos and videos, and size of other user content, increases.

77.99.  -30.——Accordingly, to accurately life-cycle price Apple's restriction on Restricted File hosting, device holders would both need to be aware of the restraint (which they generally are not) and be capable of predicting the amount and types of data they will store on their phone into the open-ended future. Given the variability and unpredictability of data needs over time, this is not possible.

78.100.     31.——Lifecycle pricing is made even more difficulty because consumers are typically locked into Apple's mobile-device ecosystem beyond the life of any particular device—that is, once a consumer purchases an iPhone, he or she is overwhelmingly likely to purchase an iPhone

---

[74] Statcounter, *Mobile Operating System Market Share United Kingdom* (Jan 2023 – Feb. 2024),) ("Statcounter"), available at https://gs.statcounter.com/os-market-share/mobile/united-kingdom/#monthly-202301-202402.     https://gs.statcounter.com/os-market-share/mobile/united-kingdom/#monthly-202301-202402.

when replacing that device. This is known as "path dependency."[75] Because of path dependency, the lifecycle costs of Apple's restraints extend far beyond the lifecycle of any particular Apple mobile device, and encompass the entire period users remain ~~with in~~within Apple's device ecosystem. This makes the costs even more difficult to predict with any accuracy.

~~79.~~101.          ~~32.~~—**High Switching Costs and General Market Definition Principles**. For reasons already addressed, the final two elements of a cognizable "aftermarket" are also present. *First*, high costs deter users from switching away from Apple's devices in the foremarket (*supra* ¶¶ ~~72-75~~at ¶¶ 62-65). *Second*, conventional market definition principles support treating Full-Service Cloud Storage on Apple Mobile Devices as a relevant antitrust market (*supra* ¶¶ ~~69-91~~at ¶¶ 58-92). In sum, the market for Full-Service Cloud Storage on Apple Mobile Devices exhibits all characteristics of an aftermarket.

**(4) Barriers to ~~Entry~~entry and expansion are ~~S~~substantial.**

~~80.~~102.          ~~33.~~—Apple's dominant share in the market for Full-Service Cloud Storage on Apple Mobile Devices is reinforced through high barriers to entry. Developing a cloud storage platform requires a substantial outlay of capital to procure sufficient server capacity. Cloud storage platforms must also invest substantially in data security protections. These upstart costs erect significant barriers to entry.

~~81.~~103.          ~~34.~~—More critically, even a firm with the resources needed to develop a cloud platform for Apple's mobile devices cannot enter the market for Full-Service Cloud Storage on Apple Mobile Devices. This is because Apple's challenged restraints strictly prevent would-be competitors from offering ~~cloud storage solutions for the full range of files Apple's device holders wish to store.~~a Full-Service Cloud Storage product. Would be competitors can only host a limited set of file types, offering consumers a product that is—due to this limitation—inherently disadvantaged to iCloud. ~~Thus, not only can other cloud providers not enter the market for~~Unable to provide Full-Service Cloud Storage on Apple Mobile Devices, ~~the diminished cloud solutions they can offer Apple device holders~~

---

[75] The Netherlands Authority for Consumers & Markets, Market Study Into Mobile App Stores (2019), at 55., available at https://www.acm.nl/sites/default/files/documents/market-study-into-mobile-app-stores.pdf.

1    ~~do not place any meaningful competitive constraints on Apple~~competitors are strictly foreclosed from

2    entering the relevant market.

3                    **(5)    ~~Apple Has Monopoly Power In Alternative Relevant Markets as~~**

4                    ~~**Well.**~~

5         104.    ~~35.~~ If the market is expanded (improperly) to include all cloud platforms accessible

6    on Apple mobile devices, the same challenged restraint demonstrably prevents would-be rivals from

7    meaningfully competing with iCloud to seize market share. Put differently, the challenged conduct

8    demonstrably constitutes a barrier to expansion in a broader market. This is confirmed, first, by the

9    overriding importance consumers place on cloud storage that can host all files and provide a

10   comprehensive device backup, as addressed in detail above. To briefly summarize, Apple's own expert

11   has demonstrated, based on responses from hundreds of iCloud users, that "[t]he ability to

12   automatically backup *all content and device and app settings* was the feature most frequently ranked

13   as one of the four most important iCloud features."[76] And Apple has argued, based on this survey, that

14   other cloud products without this "comprehensive backup" functionality are "not comparable" to

15   iCloud.[77]

16        105.    Unable to offer a comparable product due to Apple's restraint, would-be rival cloud

17   providers simply cannot compete meaningfully with Apple to gain purchase (must less an expanding

18   one) in a larger market encompassing all cloud platforms on Apple mobile devices. They cannot offer

19   the comprehensive storage solution Apple users demand. This can be seen in the collective output of

20   would-be rival cloud storage services (measured in monthly active users). That collective output has

21   been essentially flat, even modestly declining from 17.8 million to 16.9 million, between January 2020

22   and January 2025:

23

24

25

26

27   ─────────────────────

28   [76] Exhibit A ¶ 48.
     [77] Exhibit B at 23.



Monthly Active Users of iCloud Rivals, Jan 2020 – Jan 2025, U.S.

*Source: SensorTower U.S. data on Monthly Active Users ("MAU").

106.    If barriers to entry and expansion were low, other cloud storage platforms would be expanding their user base during the class period to erode iCloud's dominant position—yet they demonstrably have not. Despite having every incentive to compete with iCloud and seize a share of the lucrative market iCloud dominates, Apple's restraint on access to Restricted Files erects a brick wall would-be rivals cannot penetrate to capture iCloud's user base or appeal to Apple device holders.

**(5) Apple has monopoly power in alternative relevant markets as well.**

82.107.    While Full-Service Cloud Storage on Apple Mobile Devices is a relevant antitrust market, this market definition is not essential to finding that Apple has monopoly power. For one, and as described abovebelow, Apple's monopoly power can be demonstrated with direct evidence of supracompetitive prices and reduced output regardless of how the market is defined. In addition, Apple maintains a monopoly level share in any plausible alternative aftermarket.

83.108.    36.    For example, to the extent there are narrower submarkets within the Full-Service Cloud Storage on Apple Mobile Devices market based on storage needs or other criteria,

Apple completely monopolizes each such submarket. -Apple has prevented *all* rivals from offering *any* Full-Service Cloud Storage solution for Apple device holders, regardless of the storage capacity offered.

84.109.        37.——Alternatively, if the market were expanded to include Google Drive, Microsoft OneDrive, and other cloud platforms that can offer limited cloud products for Apple mobile devices (but not host Restricted Files), Apple would monopolize that larger market as well. ~~Indeed, iCloud's share of the market for all cloud storage on Apple mobile devices exceeds 70 percent.~~

110.    38.——This share can ~~readily~~ be estimated from publicly available data. -Specifically, survey evidence indicates that, as of 2020, 33% of ~~people using personal cloud storage in~~ the U.S. population used iCloud.[78]- Reportedly 71% of people in the U.S. used some cloud storage.[79] Of all cloud storage users, iCloud therefore had a 46.5% share (33% ÷ 71% = 46.5%). That market share figure underestimates iCloud's share in an iOS aftermarket because the share is not specific to Apple mobile devices and includes non-Apple devices too. Since iCloud is available only on Apple's devices, iCloud's market share of all cloud storage on Apple mobile devices can be conservatively approximated by dividing iCloud's reported share of the U.S. population (33%) by Apple's average share of the smartphone and tablet markets over the same period (or 45.5%).[80] -That yields a market

---

[78] *See* "The Latest Cloud Computing Statistics," AAG (~~Feb. 2024~~Jan. 2025), https://aag-it.com/the-latest-cloud-computing-statistics/ and "Most popular cloud storage brands in the U.S. 2020," Statista (Jan 2022) https://www.statista.com/forecasts/1011627/popular-cloud-storage-brands-in-the-us. Plaintiffs' First Amended Complaint contained a typographical error indicating that 33% of the "people using cloud storage in the U.S. used iCloud" rather than "33% of the U.S. population used iCloud," as was reported in the underlying survey Plaintiffs cited and relied upon. This led the Court to conclude that Plaintiffs' market share allegations contained a mathematical error, when in fact the math was correct. *See* ECF No. 62 at n.9. Plaintiffs apologize for the typographical error, which is corrected in this Second Amended Complaint.

[79] *See* "The Latest Cloud Computing Statistics," AAG (~~Feb. 2024~~Jan. 2025), https://aag-it.com/the-latest-cloud-computing-statistics/.

[80] *See* "iPhone Market Share: US (2014-202~~3~~4), Oberlo, https://www.oberlo.com/statistics/iphone-market-share-us (estimating 2020 iPhone US market share of 45.3); "US PC shipments grew 1% to reach 135 million in 2021," Canalys (Feb. 2022~~.~~) ("Oberlo"), ~~https://www.canalys.com/newsroom/US-PC-market-Q4-2021?ctid=2640-d86d3e3cc31b674e1dd838f856520b2a~~https://www.canalys.com/newsroom/US-PC-market-Q4-2021?ctid=2640-d86d3e3cc31b674e1dd838f856520b2a (estimating 2020 iPad U.S. market share of 45.8%).

share of 72.5% (33% ÷ 45.5% = 72.5%). ¬This estimate aligns with public reports, including a 2023 Deutsche Bank analysis indicating that 70% of survey respondents paid for an iCloud storage plan.[81]

85.111.     The foregoing estimate is highly conservative because it includes people who don't purchase any cloud storage, *i.e.*, some of the remaining 27.5% may not use any cloud storage, rather than an alternative to iCloud.[82] In other words, the foregoing market share calculation assumes that people who do not use iCloud use another cloud storage platform, when they may not use cloud storage at all.

112.     39.——This limitation can be controlled for by using separate data published by industry analysts (specifically from Sensor Tower),[83] which demonstrates that iCloud's market share of all cloud storage available on Apple's mobile devices exceeds 88% (measured by users) and 96.1% (measured by revenues). In other words, for every dollar Apple's mobile device users spend on cloud storage, more than 96 cents goes to Apple.

---

[81] Sidney Ho, Ross Seymore, Gianmarco Vella, dbDIG Primary Research Survey on Apple Services, DEUTSCHE BANK (Jan. 15, 2024).

[82] Plaintiffs reserve all rights to re-estimate iCloud's market share based on materials produced in discovery or otherwise.

[83] Sensor Tower "is the leading source of mobile app, digital advertising, retail, media, and audience insights for the larges brands and app publishers across the globe." *See* https://sensortower.com/about. Sensor Tower amasses substantial amounts of data on app usage across markets. This Second Amended Complaint and the graphical depictions it includes also incorporate additional data from Oberlo, CIRP, eMarketer, Statcounter and Statistica. *See, e.g., See "iPhone Market Share: US (2014-2024), Oberlo,* https://www.oberlo.com/statistics/iphone-market-share-us; CIRP: "iCloud Storage Remains Apple's Most Popular Service," CIRP, August 21, 2024, available at https://cirpapple.substack.com/p/icloud-storage-remains-apples-most;          eMarketer, https://www.emarketer.com/; Statcounter, *Mobile Operating System Market Share United Kingdom* (Jan 2023 – Feb. 2024), https://gs.statcounter.com/os-market-share/mobile/united-kingdom/#monthly-202301-202402; Statistica, https://www.statista.com/.





113.    The share of revenues held by other storage providers is so slight it is difficult to detect in the above graphic, and thus Plaintiffs break the revenue shares out separately in the following bar chart:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15     114.    Apple's share has also remained remarkably durable, with iCloud's share of active

16 cloud users on iPhones hovering between 82% and 84% in the last four years.

17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    ~~86.~~115.        Not only does Apple maintain a monopoly-~~-~~level share of all cloud storage on

17    Apple's mobile devices, <u>both in terms of users and revenues,</u> its monopoly power is reinforced by the

18    same barriers to entry <u>and expansion</u> that protect the Full-Service Cloud Storage market from

19    competitive threats.~~-~~ Specifically, cloud providers other than Apple cannot impose a significant

20    competitive constraint on Apple because, due to Apple's restraints, they cannot offer a full-service

21    cloud solution.

22    **(6) The ~~Relevant Geographic Market~~ <u>relevant geographic market</u> is the United States.**

23        ~~87.~~116.        40.——There is a relevant U.S. market for Full-Service Cloud Storage on Apple

24    Mobile Devices.

25
26
27
28

**b.  Direct proof of monopoly power: Apple ~~Has Secured~~has demonstrated its ability to charge supracompetitive prices and restrict output.**

**(1) Apple charges supracompetitive prices for iCloud.**

117.    Having shielded itself from meaningful competition, Apple is able to charge supracompetitive prices for iCloud.

118.    It is textbook economics that, in a competitive market, prices tend toward marginal costs, or the cost of producing one additional unit of the product or service sold. It is apparent that Apple prices iCloud significantly above its marginal costs, that is, supracompetitively.

119.     Rather than build out its own servers to host all iCloud data, Apple relies on the storage infrastructure of third parties, most recently using Google for this purpose. Apple's per-GB cost of acquiring this infrastructure provides a reasonable estimate of its marginal costs, because it is the cost Apple bears to sell each additional GB of cloud storage. There is no indication that Apple has marginal costs above the fees it pays Google. Industry analysts report that Apple pays Google $300 million annually for 8 exabytes (or 8 billion gigabytes) of storage.[84] This equates to $0.0031 per-GB per month.[85]

120.    Apple's iCloud prices dwarf these marginal costs, resulting in staggering margins. For Apple's three most popular iCloud storage tiers, the below chart compares Apple's per-GB annual marginal costs with the per-GB annual price Apple charges iCloud subscribers like Plaintiffs and the proposed class here.

---

[84] Mike Peterson, "Apple is now Google's largest corporate customer for cloud storage," APPLE INSIDER (Jan. 29, 2021), https://appleinsider.com/articles/21/06/29/apple-is-now-googles-largest-corporate-customer-for-cloud-storage.

[85] Notably, this is comparable to Amazon's most competitive cloud storage plans for its S3 Glacier service. *See* "Amazon S3 Glacier service (Glacier API for vaults) pricing," AMAZON, https://aws.amazon.com/s3/glacier/pricing/.



121.    In short, Apple is marking up its marginal costs by staggering amounts. For a consumer using the entirety of Apple's 50GB plan, Apple pays Google $1.86 annually for storage infrastructure, and charges consumers $11.88. For someone using the entirety of a 200GB plan, Apple pays Google $7.44 annually and charges consumers $35.88. And for a consumer using the entirety of a 2TB plan, Apple pays Google $74.40 annually and charges consumers $119.88.

122.    Markups of this magnitude yield eyewatering gross margins. Apple is one of the most profitable companies the world has ever known. Apple generally reports company-wide gross margins slightly above 40%, which is high.[86] But not in comparison to the margins Apple generates with its iCloud plans. Accounting for storage infrastructure costs Apple incurs for users of its free (0-5GB) plan, the margins reported above for Apple's paid plans yield gross margins of approximately 65%. Even this is highly conservative because it assumes that Apple pays Google for all of the storage iCloud subscribers purchase from Apple, rather than just the storage they use. In reality, many iCloud subscribers use only a fraction of the storage allotted to them, particularly because there are sizable

---

[86] *See* "Apple's gross margin as percentage of revenue from 1st quarter 2005 to 1st quarter 2024," STATISTA    (Feb.    2024),    https://www.statista.com/statistics/263436/apples-gross-margin-since-2005/#:~:text=As%20of%20the%20first%20quarter,a%20percentage%20of%20total%20revenue.    2024), https://www.statista.com/statistics/263436/apples-gross-margin-since-2005/#:~:text=As%20of%20the%20first%20quarter,a%20percentage%20of%20total%20revenue.

jumps between available iCloud storage tiers (50GB, to 200GB, to 2000GB). For instance, a subscriber may purchase a 200GB plan but only use 75GB. Or a subscriber with a 2TB plan, may only use 300GB. It is highly likely that Apple only pays Google for the storage its subscribers use, because that is the only storage required to satisfy the subscribers' needs, in which case iCloud's gross margins are substantially above 65%. For example, if Apple pays Google for approximately 50% of the storage capacity its subscribers purchase, a reasonable assumption, iCloud's gross margins are above 82%, or double Apple's company-wide gross margins. Even if Apple pays for 80% of the storage capacity its subscribers purchase, a high number, iCloud's gross margins exceed 70%.



iCloud Gross Margins vs Apple's Company Wide Gross Margins At Different Levels of Storage Utilization

% Represents the Share of Storage Apple Buys from Google for Each Gigabyte Sold to iCloud Users.

123.    Apple's iCloud pricing is thus not simply above Apple's marginal costs, it is grossly above marginal costs. It is manifestly supracompetitive as a matter of textbook economics.[87]

124.    In a market without Apple's restraints, competition on price would be vigorous. Cloud storage on Apple's devices is a billion-dollar industry that Apple completely dominates today. If other

---

[87] It is not possible in this case to compare Apple's iCloud prices to other cloud platform pricing on an apples-to-apples basis prior to discovery. Storage tiers across cloud platforms do not align in a manner that permits a pre-discovery estimate of the effective per-GB price charged across platforms. The textbook definition of supracompetitive prices is, moreover, prices above marginal costs.

cloud storage providers were able to offer a full-service cloud storage solution to Apple's mobile device users, these providers would be highly incentivized to compete aggressively on price to differentiate their offerings and win subscribers. This would place enormous downward pressure on iCloud's pricing. Having carefully insulated itself from these competitive dynamics, Apple is able to maintain its supracompetitive iCloud prices.

**(2) Apple's challenged restraints restrict output.**

125.    Apple's ability to restrict output is evidenced by its ability to flatly preclude any other cloud provider from accessing and hosting Restricted Files on its mobile devices. ~~Maintained its Monopoly~~That is, Apple strictly prevents other cloud providers from producing Full-Service Cloud Storage on Apple Mobile Devices, the relevant product in this case. Other cloud providers would be highly incentivized to provide Full-Service Cloud Storage and participate in the lucrative antitrust market that Apple dominates with historic returns. Apple prevents them from doing so.

126.    In short, with respect to the market for Full-Service Cloud Storage on Apple Mobile Devices, Apple has suppressed output by erecting artificial barriers to entry that are completely insurmountable, ensuring that the only product in the market is its own. Output would also be higher without Apple's restraint because entry of other full-service cloud solutions would drive innovation, price competition and product differentiation that would spark demand by appealing to a larger segment of Apple's customers who, as it stands, are starved of competitive options. This would enhance output of Full-Service Cloud Storage on Apple Mobile Devices.

127.    If the market were (improperly) expanded to include partial cloud providers Apple admits are "not comparable" to iCloud, Apple's restraint would likewise suppress output in this larger market. This is, again, because Apple has prevented would-be competitors from offering the core full-service functionality Apple admits its customers value. Without this essential functionality, would-be rivals have been demonstrably unable to expand their output of cloud storage to Apple's users, as discussed further above (*see, e.g.*, *supra* at ¶¶ 105-106) and as reflected in Apple's durable 96% market share of a larger market that includes all cloud platforms available on Apple's mobile devices (*see supra* at ¶¶ 112-114).

128.    In addition to expanding output to seize a portion of Apple's market share, if would-be rivals could offer the type of full-service cloud storage consumers value, they could develop innovative and price-competitive solutions to target the substantial segment of Apple device holders who do not currently use a cloud solution. Surveys indicate, for example, that approximately 29% of U.S. consumers do not use a cloud storage service at all,[88] meaning there is a significant population of potential subscribers to whom more innovative, less expensive, and differentiated full-service cloud storage products could appeal. And given the billions that cloud providers can earn from Apple's massive user base, cloud platforms would be highly incentivized to compete and appeal to a larger segment of Apple's users. This would drive output up overall, including in a larger market improperly expanded to include even the partial cloud platforms Apple admits are not comparable to iCloud.

129.    As for Apple's own (individual) output of cloud storage, it is important to recognize that Apple does not need to directly restrict output to earn monopoly profits—it can simply increase prices. Where the cost for each additional unit sold is flat (*i.e.*, does not change with volume) or decreasing, rising demand does not increase prices in a competitive market because prices would follow marginal costs down. As a result, rising demand could not excuse prices that appear to be supracompetitive. Moreover, a monopolist with such a cost structure would face higher unit costs when reducing output and would therefore reduce output as little as possible while still extracting supracompetitive prices. The monopolist would have no incentive to artificially reduce output in an effort to drive up prices—and would instead simply increase prices.

130.    Applied to this case, iCloud has near zero marginal costs per gigabyte of storage, *see supra* at ¶ 119. Moreover, Apple's actual price structure of iCloud clearly indicates that its marginal costs do not increase with volume—indeed iCloud's price per gigabyte falls from the 50GB to the 2TB tier of storage, and are flat thereafter:

---

[88]    Statista, *What's in the Cloud?* (Sept. 30, 2021), available at https://www.statista.com/chart/25896/gcs-cloud-storage-services-usage/.



131.    Because Apple has no inherent economic incentives to decrease its own output directly by starving supply of iCloud storage, a lack of reduced iCloud output cannot, as a matter of antitrust economics, imply an absence of market or monopoly power. Nor can iCloud's supracompetitive prices be explained away by demand—which is the normal concern in showing an output reduction.

132.    With falling and flat marginal costs, a monopolist firm's economic incentive is to maintain output while sustaining prices at a supracompetitive level. This of course has the natural effect of suppressing Apple's output below the level that would have prevailed in a market with lower prices. That is, by the law of demand, a supracompetitive price will always reduce output via reduced demand. The only exception is when demand is perfectly inelastic (*e.g.*, a life-saving drug), and demand for cloud storage is not perfectly inelastic. In short, higher prices result in lower demand, and thus, lower output. If prices were lower for cloud storage on Apple mobile devices, more consumers would purchase cloud storage and in larger amounts.

133.    There also is no evidence that other cloud providers can offset a decrease in Apple's iCloud output by increasing their own output. This can be seen in Apple's durable monopoly share of the relevant market, where Apple earns 96 cents of every dollar spent on cloud storage on iOS. *See supra* at ¶¶ 112-114. It can also be seen in the reaction to Apple's recent substantial 20-29% price

increase in the UK. *See supra* at ¶¶ 84-85. By the law of demand, this price increase diminished demand for iCloud, but it was not accompanied by any discernable increase in the demand for, our output of, other cloud platforms.

**2.**   **Apple has secured and maintained its monopoly** through ~~Anticompetitive Restraints.~~ **anticompetitive restraints.**

~~88.~~134.        ~~41.~~Apple dominates the market for Full-Service Cloud Storage on Apple Mobile Devices not because it built a superior cloud storage platform. Far from it, industry analysts describe iCloud as a "fairly sparse offering, with lots of common cloud storage features missing completely"[89] ~~and a "rather insecure and expensive" platform.~~ with "serious privacy and security concerns" such that "those concerned with security or privacy might want to look elsewhere."[90] Other analysts have noted iCloud's persistent "problems with its most basic functionality."[91]

~~89.~~135.        ~~42.~~What drives iCloud's success is that Apple ~~has designed its ecosystem to prevent~~prevents rival cloud storage platforms from mounting a meaningful competitive threat. As addressed throughout this Second Amended Complaint, Apple has done this by preventing other platforms from accessing and hosting Restricted Files, which are the very files users need to restore their device in the event it is lost or replaced.

~~90.~~136.        ~~43.~~Through this restraint, which serves no procompetitive technological or security purpose, Apple has made iCloud the only cloud-storage platform capable of servicing *all* of its device holders' cloud-storage needs. ~~Apple device holders can either use iCloud for cloud-based storage or undertake the added expense and burden of splitting out their files and managing multiple cloud storage accounts— iCloud for Restricted Files and a competitor service for Accessible Files. Faced with this Hobson's choice, most consumers select a single iCloud storage plan, rather than juggle~~

---

[89] ~~Alexander Hougen, "iCloud Drive Review," CLOUDWARDS (Jan. 31, 2021), https://www.cloudwards.net/review/icloud-drive/.~~

[90] ~~"Best Cloud Storage for iPhone 2024: Backup Your Apps and Photos," CLOUDWARDS (Jan. 27, 2024), https://www.cloudwards.net/best-cloud-storage-for-iphone/.~~ Alexander Hougen, "iCloud Drive Review," CLOUDWARDS (Jan. 31, 2021), https://web.archive.org/web/20210416014604/https://www.cloudwards.net/review/icloud-drive/.

[91] "Apple has an iCloud problem," MACWORLD (Oct. 19, 2023), https://www.macworld.com/article/2110142/icloud-free-tier-storage-drive-mail-sync.html.

1  ~~multiple cloud-storage accounts, on different platforms, with different interfaces and billing cycles~~As

2  Apple and its own experts acknowledge, this full-service functionality is highly valued by cloud users,

3  including Apple's. *See supra* at ¶¶ 40-48. Unable to offer this basic functionality, other cloud services

4  cannot mount a meaningful competitive threat to iCloud. All they can offer is a degraded "partial"

5  storage platform that does not serve one of consumers' most significant and overriding needs in

6  selecting a cloud provider.

7       ~~91.~~137.      ~~44.~~By handicapping all would-be rivals in this fashion, Apple has severely

8  thwarted competition across the market. In a competitive market, cloud-storage providers—Apple

9  included—would be required to compete aggressively on the merits to gain user acceptance. There are

10 many technology firms positioned to compete but-for the challenged conduct, and many would

11 compete aggressively to serve a lucrative cloud storage market in which Apple's iCloud product

12 reportedly generates billions in annual revenues.

13      ~~92.~~138.      ~~45.~~Given a real choice between iCloud and competing services capable of

14 backing up their entirety of their devices, many Apple users would select a competitor service. But

15 Apple's challenged restraints have surgically prevented this competition from unfolding, securing a

16 durable monopoly for Apple.

**3.  Apple Cannot Justify Its Restraints as Serving Any Procompetitive End~~.~~ and Any Asserted Justifications are Outweighed by the Harm to Competition and Consumers**

18      ~~93.~~139.      ~~46.~~Apple's challenged restraints on hosting Restricted Files can only be

19 coherently explained as an attempt to impede competition. There is no technological reason ~~mandating~~

20 ~~for~~forcing Apple to bar competitor access to Restricted Files. As addressed in this Second Amended

21 Complaint (*supra* ~~¶ 31~~at ¶ 7), Apple itself acknowledges that all files—Restricted and Accessible—

22 are alike. The infrastructure needed to host them is no different. Apple's chief competitor in the device

23 markets (according to Apple) is Samsung, and tellingly Samsung has not required that its device

24 holders store any particular file types on Samsung's proprietary cloud platform, Samsung Cloud.

25 Instead, Samsung has given users the choice to use Google Drive to back up the entirety of their

26 devices. Other manufacturers of Android devices likewise permit third-party cloud services to back up

27 all user files, including settings needed to restore devices.

94.140.      -47.  Similarly, while the process is far more cumbersome (*supra* ¶¶ 76-79at ¶¶ 66-71), even Apple mobile device holders can backupback up many types of Restricted Files on hard drives, including a PC. While this form of storage is distinguishable, and not reasonably substitutable for cloud-based storage (and thus not in the same relevant market), it further demonstrates that rival storage platforms could, absent Apple's restrictions, host and back up Restricted Files.

95.141.      -48.  Apple also cannot credibly assert that foreclosing competitor access to Restricted Files is necessary for security reasons. The reality is thatTo begin with, any security justification Apple already allows third-party cloud storage might offer is undermined by Apple's backend use of alternative cloud providers (*e.g.*, Amazon, Microsoft, and currently Google) to access somehost iCloud data. That is, Apple currently pays Google to host Apple users' Restricted Files, charging a premium on top of the most sensitive data on users' devices—including photos and videos. If Apple believed thatfees Google charges Apple, while simultaneously preventing third-partyits users from contracting directly with Google for this service. If preventing Google and other cloud providers from accessing user data wasApple users' Restricted Files were necessary to protect user security, then Apple would not permit such access for some of the most sensitive data users amass. If security objectives were truly driving Apple's restraints, Apple would not permit users to backup photos of their children (Accessible Files) on any alternative cloud platform, but not their ringtone (a Restricted File). use those cloud providers to host those files.

49.  In addition, Apple outsources the infrastructure for its own iCloud service to other cloud platforms. It now uses Google's infrastructure, and previously it used Amazon's and Microsoft's. In other words, Apple already allows rival cloud providers to access Restricted Files, but only to support iCloud and not to offer a competing cloud product. This further undermines any security-based justification Apple might assert.

142.  The pretext of any security justification is further demonstrated in the nature of Restricted Files, which are not inherently sensitive files (including ringtones and other device settings), whereas the limited files Apple permits cloud providers to access are among the most sensitive files users amass on their devices (photos and videos). Hackers do not target ringtones, they seek out

compromising files like photographs, as confirmed in well-documented breaches of Apple's own iCloud security.[92]

143.    Pretext aside, iCloud demonstrably is not more secure than the cloud storage offered by would-be competitor services. While Apple's marketing machine may trumpet security, the reality is that an Apple-commissioned survey of Apple's own iCloud subscribers demonstrates that less than 5.4% of survey respondents suggested that "Apple has great security" or "is more secure" or that they "trust[ed] Apple."[93] This is confirmed from a third-party survey where nearly half (47%) of iPhone users said "they are only 'slightly' comfortable or 'not at all' comfortable with storing personal information on iCloud."[94]

144.    Consumer wariness of iCloud security is well-founded. By default, "Apple can see everything you store in iCloud unless you update your security settings" and, by default, most iCloud data—including the iCloud Backup—is not end-to-end encrypted.[95] Users must opt into end-to-end encryption by updating their iCloud settings, and even this comes with "large caveats," because Apple never end-to-end encrypts certain files, including iCloud mail, contacts, and calendars, as well as metadata.[96] Under Apple's "standard data protection," Apple "having access to your personal information is the standard."[97]

145.    Apple also generally uses 128-bit AES encryption, which is not as safe as 256-bit AES encryption used by some other cloud providers.[98] Noting these limitations and defaults, security

---

[92] Neovera, *The iCloud Security Breach: Did We Learn Anything?* (Oct. 14, 2014), available at https://neovera.com/icloud-security-breach-learn-anything/.

[93] Exhibit A ¶ 43.

[94] PR Newswire, *Nearly Half of iPhone Users Feel Uncomfortable with Storing Personal Information on iCloud* (Mar. 16, 2017), available at https://www.prnewswire.com/news-releases/nearly-half-of-iphone-users-feel-uncomfortable-with-storing-personal-information-on-icloud-300424657.html.

[95] *See* Ben Wolford, Proton, *Apple can see much of what you store in iCloud* (June 8, 2023), available at https://proton.me/blog/apple-icloud-privacy.

[96] *Id.*

[97] *Id.*

[98] Ionos, *Is iCloud safe to use* (Aug. 18, 2023), available at https://www.ionos.com/digitalguide/server/tools/is-icloud-safe-to-use/.

experts note that other cloud services such as Google Drive or Dropbox are "typically more secure than iCloud Backup and offer more control over your data"[99] and that iCloud is "not the best option if you need to store highly sensitive data."[100] Other analysts report that iCloud has "serious privacy and security concerns" such that "those concerned with security or privacy might want to look elsewhere."[101]

146.     Samsung devices in particular offer a "defense-grade" security suite built into the device architecture,[102] and while Samsung has historically offered its own proprietary cloud storage platform (Samsung Cloud) while also giving users the option of backing up the entirety of their devices (all file types) on Google Drive, there is no evidence that this has made Samsung devices any less secure. There appears to be no public record of cloud-related breaches on Samsung devices, whether through Samsung Cloud or other cloud services available on Samsung devices. By contrast, iCloud breaches have been well-publicized, including a 2014 breach of celebrity iCloud accounts reportedly using "publicly available tools out there for cracking iCloud."[103]

147.     Even if iCloud offered superior security vis-à-vis other cloud platforms, and there is scant evidence that it does, Apple does not need to restrict access to Restricted Files to continue offering that same level of security. That is, iCloud would not become less secure if other cloud providers could host Restricted Files and thereby compete with iCloud. Users could still select iCloud, if they believed iCloud offers superior security, or they could select a different Full-Service Cloud Storage service if they believed it offered superior security, or other features valued above security.

---

[99] Lisa Cupida, *Security Experts Agree: This is the One iCloud Setting You Have to Stop Using Immediately* (Jan. 21, 2023), available at https://www.yahoo.com/lifestyle/security-experts-agree-one-icloud-152123705.html.

[100] Ionos, *Is iCloud safe to use* (Aug. 18, 2023), available at https://www.ionos.com/digitalguide/server/tools/is-icloud-safe-to-use/.

[101] Alexander Hougen, "iCloud Drive Review," CLOUDWARDS (Jan. 31, 2021), https://web.archive.org/web/20210416014604/https://www.cloudwards.net/review/icloud-drive/.

[102] *See* Samsung, "Our approach to privacy," https://www.samsung.com/us/account/our-approach-to-privacy/.

[103] Random Ant, *Ukrainian Hacker Strikes Again. Creepy Hacker Community Compromises iCloud* (Sept. 5, 2014), available at https://randomant.net/ukrainian-hacker-strikes-home-depot/#:~:text=It%20(%20Apple%20iCloud%20)%20was%20the,Lawrence%2C%20Kate%20Upton%20and%20other%20famous%20celebrities.

An individual user's selection between cloud platforms with differentiated security features would be an individual choice, without any adverse effects on the security of other users' data. Far from it, unlocking that consumers choice would incentivize more vigorous competition between iOS cloud providers on security and other features—competition that Apple currently does not face—that would drive innovation to the betterment of consumers.

148.    By analogy, a car manufacturer (say, Volvo) may believe its vehicles offer best-in-class safety, but that does not mean Volvo can restrict *competition* from rival manufacturers whose cars it believes are less safe. Rather, the antitrust laws require Volvo to compete on the merits with rival manufacturers, and if consumers value the safety Volvo's cars provide (or claim to provide) they will reward Volvo by purchasing Volvos. Some consumers may value Volvo's safety features, some may not, some may consider the safety claims overstated, and others may prioritize other features (speed, storage capacity, appearance) offered by other manufacturers. The premise of the antitrust laws is that, by giving consumers the choice between differentiated offerings, competition will drive innovation and price competition to enhance consumer welfare overall. The antitrust laws do not permit firms to paternalistically foreclose competition because they believe (right or wrong) that their products offer consumers unique benefits. The market decides.

149.    As applied here, even if Apple had a credible claim that iCloud is a more secure product vis-à-vis other cloud services (which is dubious and contrary to public reports), that is not a *procompetitive* justification for degrading rival cloud offerings and restricting their ability to meaningfully compete with iCloud. That is an *anticompetitive* justification for Apple's conduct, not a procompetitive one. Apple cannot restrict competition by asserting (right or wrong) that its products are superior to would-be competitors. The market decides.

150.    In addition to being pretextual, dubious and not procompetitive, any security justification Apple might offer is substantially outweighed by the harm to consumers and the proposed Class. Members of the class paid prices for iCloud that are supracompetitive, meaning they are higher than the prices that would have prevailed in a competitive market operating without Apple's challenged restraint on competition.

151.    The proposed Class (and consumers generally) have also been deprived of market alternatives, a separate but related injury. As detailed herein, and acknowledged by Apple's own marketing expert, the ability to host all files and provide a comprehensive device backup is the cloud feature consumers consistently value above others. Apple has gone so far as to argue that cloud platforms without this functionality are "not comparable" products. But due to Apple's restraint, Apple device holders have no alternatives for purchasing comprehensive or Full-Service Cloud Storage for their Apple device. Apple has ensured that iCloud is the only product available to them for this essential function. This loss of choice between competing products serving an important consumer function is an injury.

152.    Quality of cloud offerings would also be enhanced in a competitive market operating free of Apple's restraint. Facing no meaningful competition from "not comparable" partial cloud storage platforms, Apple faces diminished competitive pressure to improve iCloud to maximize utility and value for iCloud subscribers. But if would-be rivals could offer a comparable product capable of providing comprehensive backups like iCloud, Apple would need to compete more vigorously on the merits to win business. This healthy competition on the merits would catalyze not just price competition, but also innovation across a range of vectors consumers value, including security and cloud functionality.

153.    Rival cloud platforms would also have enhanced incentives to compete on quality absent Apple's restraint. As it stands, would-be rivals stand to gain little by enhancing functionality on their iOS products because, whatever improvements they make, they still cannot offer the basic comprehensive backup that Apple has ensured only iCloud can provide. The calculus would be different for these rivals if they could offer a comprehensive backup and compete head-to-head with Apple. In that scenario, they would have much to gain by making improvements to their platforms because doing so could differentiate their offerings and expand their userbase.

154.    In sum and on balance, the harm to consumers in the form of supracompetitive prices, diminished choice, and degraded quality substantially outweigh any asserted justification for Apple's challenged restraint.

**G.    Apple Unlawfully Ties iCloud to Its Mobile Devices by Arbitrarily Restricting Access to Alternative Cloud Storage Platforms.**

155.    By preventing alternative cloud providers access to Restricted Files, Apple requires that its customers use iCloud if they want to backup Restricted Files. Technically speaking, Apple imposes what economists refer to as a "requirements" tie. That is, if iPhone or iPad holders wish to use cloud storage for all file types (including Restricted Files)—and most do—iCloud is their only option for fulfilling that requirement. And for anyone requiring more than 5GB of storage, which is to say most Apple customers,[104] they must pay for it. This is a form of "negative" tying—a tie that precludes consumers from purchasing the tied product from a would-be competitor.

156.    As addressed immediately below, this tie exhibits all the hallmarks of a manifestly unlawful tying arrangement, including: (1) the tie involves two separate products; (2) Apple possesses market power in the tying product markets; and (3) the tie impacts a substantial volume of commerce.

**1.    The tie involves separate products.**

157.    Smartphones and tablets (the tying products here) are distinct from cloud storage on Apple's mobile devices (the tied product). There is separate demand for these products as evidenced by the fact that many firms offer them separately. That is, consumers can buy smartphones and tablets without also purchasing or using any cloud storage. Indeed, Apple manufactured smartphones before iCloud even existed. And likewise, consumers can purchase a cloud storage plan (including iCloud) without also purchasing a smartphone or tablet. Notably in this regard, iCloud can be purchased and used on Apple's personal computers. Other cloud storage providers likewise offer cloud storage plans as a freestanding product.

158.    Accordingly, it is both possible and efficient to separate the tying and tied products at issue. It would be illogical and ignore market realities to treat Apple's mobile devices (smartphones and tablets) and cloud storage as a single product. They are distinct products, with distinct uses, serving distinct needs.

---

[104] Sidney Ho, Ross Seymore, Gianmarco Vella, dbDIG Primary Research Survey on Apple Services, DEUTSCHE BANK (Jan. 15, 2024).

159.    The same logic holds regardless of how one defines the relevant market for purposes of Plaintiffs' monopolization claim. As addressed above, Plaintiffs allege a relevant market for Full-Service Cloud Storage on Apple Mobile Devices (*i.e.*, cloud platforms that can host all file types) and, in the alternative, that Apple likewise monopolizes a larger market for all cloud storage platforms on Apple mobile devices. Either way, the tie involves two separate products, for neither Full-Service Cloud Storage platforms, nor other cloud platforms, are the same product as Apple's smartphones and tablets.

160.    The challenged restraint in this case is not embedded in the design of Apple's products (hardware or operating system). If Apple so desired (or was required), it could readily grant other cloud services access to Restricted Files without affecting the functionality or design of Apple's products, just as it currently provides access to Accessible Files. As Apple admits, its systems are "agnostic about what is being stored and handles all file content the same way, as a collection of bytes."[105]

**2.  Apple has market power in the U.S. Markets for smartphones and tablets.**

161.    Apple has a high degree of market power in both the smartphone and tablet product markets.

**a.  The Smartphone product market.**

162.    Smartphones are a singular device that has transformed the way people interact with the world. They allow people to access the internet anytime and anywhere with a cellular or Wi-Fi connection. Smartphones also provide access to apps with a staggering range of functionality. With a smartphone in hand, consumers can shop online, navigate a city, post on social media, buy movie tickets, check the weather, and so much more. While it has ceased to be their primary function, smartphones are also mobile telephones. Apple and other smartphone manufacturers treat smartphones

---

[105] "iOS Security," APPLE (Oct. 2014), at 32, https://www.apple.com/mx/privacy/docs/iOS_Security_Guide_Oct_2014.pdf.

as a distinct product line, both in marketing materials and public filings.[106] There is widespread industry and public recognition of a distinct market for smartphones.[107]

163.    There is no reasonably close substitute for the smartphone. Various devices can provide some piece of a smartphone's functionality, but none provide a substantial share. Landline phones enable phone calls, but not on the move, and they do not offer the other features smartphones provide. Cellphones (that are not smartphones) provide mobility, but not internet access or any of the other features of a smartphone. Personal computers (including laptops) provide internet access and computing functions, and sometimes phone applications, but they are not as portable as a smartphone and generally do not have cellular access. That consumers typically own a smartphone along with these and other electronic devices shows that the products are complements, not substitutes.

164.    The absence of close substitutes in part explains the ubiquitous adoption of smartphones. As of 2024, 91% of Americans owned a smartphone.[108]

165.    Apple enjoys substantial market power in the U.S. smartphone product market. The iPhone, first launched in 2007, is the leading smartphone in the U.S. iPhones reportedly accounted for more than 60% of all smartphones sold in the United States in 2024,[109] and Apple's share of the performance smartphone market—the relevant segment for Apple's products—is significantly higher.

166.    Apple's market power is reinforced by substantial barriers to entry. Developing the hardware and software needed to market a smartphone requires a substantial outlay of capital and expertise. The iPhone also benefits from significant indirect-network effects generated by its sizable user base and large community of developers creating iOS apps. To succeed, new entrants would need

---

[106] *See* Apple Inc. 2022 Form 10-K at 1, available at https://investor.apple.com/sec-filings/ (listing iPhone as a distinct product line, separate from other Apple offerings).

[107] *See, e.g.*, Igor Bonifacic, "iPhone overtakes Android to Claim Majority of US Smartphone Market," ENGADGET (Sept. 3, 2022), https://www.engadget.com/iphone-overtakes-android-us-market-share-223251196.html.

[108] "Mobile Fact Sheet," PEW RESEARCH CENTER (Nov. 13, 2024), https://www.pewresearch.org/internet/fact-sheet/mobile/.

[109] *See* "iPhone Market Share: US (2014-2022), OBERLO, https://www.oberlo.com/statistics/iphone-market-share-us; "US Smartphone Market Share (2024)," OBERLO, https://www.oberlo.com/statistics/us-smartphone-market-share.

to convince users to switch to a new smartphone operating system without the catalog of apps available on iOS, while simultaneously convincing developers to incur the costs of writing apps for a new operating system without iOS's sizable user base. These are substantial hurdles. Brand loyalty to existing manufacturers, and high switching costs, compound the difficulty of entry.[110] Highly sophisticated and resourced technology companies—*e.g.*, Amazon and Microsoft—have sought to market smartphones and failed to gain traction.

**b.   The tablet product market.**

167.    Tablets share certain features of smartphones, and other features of laptops, but they are a distinct product. Apple introduced the first tablet—the iPad—in 2010, marketing it as "a third category of device."[111] Tablets do not replace smartphones and were never intended to. Apple and other tablet manufacturers treat tablets as a distinct product line, both in marketing materials and public filings.[112] There is widespread industry and public recognition of a distinct market for tablets.[113]

168.    One fundamental difference between tablets and smartphones is the screen size. The screen on a smartphone ranges from 4 to 6 inches, making the device small enough to fit into a pocket.[114] Tablets have screens ranging from 7 to 17 inches, making them far less mobile or stowable.[115] The screen size differential also means that certain apps are developed solely for either tablets or smartphones, and are not available on both.

---

[110] *See infra* ¶¶ 69-72 *supra* at ¶¶ 62-65.

[111] *See* William Gallagher, "Apple got tablets right, and created a whole new market with the iPad 12 years ago today" APPLEINSIDER (Jan. 27, 2022 19), https://appleinsider.com/articles/19/01/27/apple-got-tablets-right-and-created-a-whole-new-market-with-the-ipad.

[112] *See* Apple Inc. 2022 Form 10-K at 1, available at https://investor.apple.com/sec-filings/ (listing iPad as a distinct product line, separate from other Apple offerings).

[113] *See, e.g.*, "Tablet Vendor Market Share United States Of America," STATCOUNTER, https://gs.statcounter.com/vendor-market-share/tablet/united-states-of-america.

[114] *See* "Smartphone sales market share in the United States from 2017 to 2019, by display size," STATISTA (Apr. 21, 2022), https://www.statista.com/statistics/1042669/us-smartphone-sales-by-display-size/.

[115] *See* "Tablet Comparison Chart: List Of Tablets In 2022," TABLETMONKEYS (June 2022), https://tabletmonkeys.com/tablet-comparison/.https://web.archive.org/web/20220701041050/https://tabletmonkeys.com/tablet-comparison/.

169.    While some tablets have cellular connectivity and can be used to make and receive telephone calls, that is not a core functionality. Rather, with the larger screen, tablets provide more immersive internet connectivity. And they can be used to perform a range of productivity tasks like a laptop or desktop computer. For example, with keyboard accessories, tablets can be used as word processors. They are also marketed as creativity tools that can be used to create and edit music and video. That consumers typically own a tablet along with smartphones, computers, and other mobile electronic devices shows that the products are complements, not substitutes.

170.    Apple enjoys market power in the U.S. tablet product market. As of January 2024, iPad's U.S. market share in the tablet market was 57%, more than triple the 16% share of its closest competitor, Samsung.[116]

171.    There are also substantial barriers to entry into the tablet market, bolstering Apple's market power. As with smartphones, bringing a tablet to market requires substantial capital and expertise. Indirect network effects also reinforce Apple's market power and make entry difficult. To succeed, new entrants need to convince users to switch to a new tablet operating system without the catalog of apps available on iOS, while simultaneously convincing developers to incur the costs of writing apps for a new operating system without iOS's sizable user base. Brand loyalty and high switching costs likewise impose a substantial impediment to new entrants. Sophisticated and highly motivated companies, including Google and Microsoft, have sought to market tablets and failed to gain significant market share for their offerings.

**3.   The tie affects a significant volume of commerce.**

172.    Ties can be readily condemned when they affect a not insignificant (or "non de minimis") volume of commerce. Cloud storage is a billion (soon-to-be *trillion*)[117] dollar industry, and

---

[116] *See* "Tablet Vendor Market Shares United States of America (Jan 2023 – Jan 2024), STATCOUNTER (Jan. 2024), https://gs.statcounter.com/vendor-market-share/tablet/united-states-of-america.

[117] *See* "Cloud Spending to Top $1 Trillion in Four Years," THENEXTPLATFORM (Jan. 26, 2023), https://www.nextplatform.com/2023/01/26/cloud-spending-to-top-1-trillion-in-four-years/.

1
2

Apple's iCloud alone generates billions in annual revenues, as reflected above. The volume-of-commerce requirement is thus met.

### V.    INTERSTATE TRADE AND COMMERCE

3

4    ~~96.~~173.    ~~50.~~ Apple's conduct, as alleged in this Second Amended Complaint, were

5    within the flow of, and substantially affected, interstate commerce. Apple markets and provides iCloud

6    services across, and without regard to, state lines.

### VI.    CLASS ALLEGATIONS

7

8    ~~97.~~174.    ~~51.~~ Plaintiffs bring this proposed class action for damages and injunctive

9    relief pursuant to Fed. R. Civ. P. 23(b)(1), (2), and (3).

10    ~~98.~~175.    ~~52.~~ Plaintiffs bring this action on their own behalf and on behalf of the

11    following class:

12    **Nationwide Class**: All persons and entities who, as residents of the
13    United States, and during the period of March 1, 2020 to the date of class
       notice, purchased any iCloud plan to store any iPhone or iPad data.

14    **California Subclass**: All persons and entities who, as residents of
15    California, and during the period of March 1, 2020 to the date of class
       notice, purchased any iCloud plan to store any iPhone or iPad data.

16    ~~99.~~176.    ~~53.~~ Excluded from the proposed class is Defendant; Defendant's affiliates

17    and subsidiaries; Defendant's current or former employees, officers, directors, agents, and

18    representatives; the district judge or magistrate judge to whom this case is assigned, as well as those

19    judges' immediate family members; counsel to Plaintiffs and the proposed class, as well as counsel's

20    employees; and all governmental entities.

21    ~~100.~~177.    ~~54.~~ **Numerosity**: The exact number of the members of the proposed class

22    and subclass is unknown and is not available to the Plaintiffs at this time, but upon information and

23    belief, the class will consist of tens of millions of members such that individual joinder in this case is

24    impracticable, as will the subclass.

25    ~~101.~~178.    ~~55.~~ **Commonality**: Numerous questions of law and fact are common to the

26    claims of the Plaintiffs and members of the proposed class. These include, but are not limited to:

27

28

1        a.     Whether Apple has unlawfully tied iCloud to the purchase of its mobile devices—

2    specifically the iPhone and iPad—by precluding third parties from offering cloud storage for Restricted

3    Files, and thereby requiring that iCloud be used for storing such files;

4        b.     Whether there is an antitrust market (or submarket or aftermarket) for Full-Service

5    Cloud Storage on Apple Mobile Devices;

6        c.     Whether Apple unlawfully monopolized, or attempted to monopolize, a market for Full-

7    Service Cloud Storage on Apple Mobile Devices;

8        d.     Whether competition in the market for Full-Service Cloud Storage on Apple Mobile

9    Devices has been constrained or harmed by Apple's tying, monopolization, or attempted

10   monopolization conduct;

11       e.     Whether consumers have been harmed, including by way of having paid more for

12   iCloud storage plans than they would have but for Apple's allegedly anticompetitive conduct;

13       f.     Whether Plaintiffs and members of the proposed class are entitled to declaratory or

14   injunctive relief to halt Apple's unlawful practices, and to their attorney fees, costs, and expenses; and

15       g.     Whether Plaintiffs and members of the proposed class are entitled to any damages or

16   restitution incidental to the declaratory or injunctive relief they seek, or otherwise, and to their attorney

17   fees, costs, and expenses related to any recovery of such monetary relief.

18   ~~102.~~179.     56.  **Typicality**: Plaintiffs' claims are typical of the claims of the members

19   of the proposed class. The factual and legal bases of Apple's liability are the same and resulted in

20   injury to Plaintiffs and all of the other members of the proposed class.

21   ~~103.~~180.     57.  **Adequate representation**: Plaintiffs will represent and protect the

22   interests of the proposed class both fairly and adequately. Plaintiffs have retained counsel competent

23   and experienced in complex class-action litigation. Plaintiffs have no interests that are antagonistic to

24   those of the proposed class, and its interests do not conflict with the interests of the proposed class

25   members it seeks to represent. Class counsel have been investigating the claims asserted in this Second

26   Amended Complaint since November 2023, have invested substantial resources developing these

27   claims, have developed a proprietary case in that this case is not based on some public announcement

28

of an antitrust violation, and are qualified and best positioned to lead the representation of the proposed class.

~~104.~~181.     58.——**Prevention of inconsistent or varying adjudications**: If prosecution of myriad individual actions for the conduct complained of were undertaken, there may be inconsistent or varying results. This would have the effect of establishing incompatible standards of conduct for the Defendant. Certification of Plaintiffs' proposed class would prevent these undesirable outcomes.

~~105.~~182.     59.——**Injunctive and declaratory relief**: By way of its conduct described in this Second Amended Complaint, Apple has acted on grounds that apply generally to the proposed class. Accordingly, final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

~~106.~~183.     60.——**Predominance and superiority**: This proposed class action is appropriate for certification. Class proceedings on these facts and this law are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the proposed class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be ensured.

## VII.    STANDING AND ANTITRUST INJURY

~~107.~~184.     ——61.——Plaintiffs and members of the proposed class purchased iCloud storage plans directly from Apple. Because of the anticompetitive conduct alleged in this Second Amended Complaint, Plaintiffs and class members were forced to pay more for those plans than they would have absent Apple's alleged tying and monopolization conduct. Apple therefore has caused Plaintiffs and class members to suffer overcharge damages.

~~108.~~185.     62.——Charging supracompetitive prices to consumers like Plaintiffs and class members was the purpose and direct effect of Apple's alleged tying and monopolization conduct.

1    ~~109.~~186.    63.——Because Apple continues to engage in the anticompetitive practices

2    alleged in this Second Amended Complaint, Plaintiffs and class members are reasonably likely to incur

3    future overcharges when they purchase or renew iCloud storage plans. Plaintiffs and class members

4    have standing as direct purchasers of products sold by Apple at inflated prices. Both the actual harm

5    and the threat of future harm are cognizable antitrust injuries directly caused by Defendant's violations

6    of federal antitrust laws. The full amount of such overcharge damages will be calculated after discovery

7    and upon proof at trial.

8    **VIII.   CLAIMS FOR RELIEF**

9    **FIRST CAUSE OF ACTION:~~FIRST CAUSE OF ACTION:~~**
10   **VIOLATION OF THE SHERMAN ACT – ~~TYING~~ MONOPOLIZATION**
     **(15 U.S.C. ~~§§ 1, 3~~ § 2)**

11   ~~110.~~187.    64.——Plaintiffs repeat and re-allege every allegation above as if set forth

12   herein in full.

13   ~~111.1.~~ 65.—— ~~Apple has unlawfully tied iCloud to its mobile devices, namely the iPhone and~~

14   ~~iPad.~~

15   ~~112.1.~~ 66.—— ~~As demonstrated herein, iCloud is a product in the market for Full-Service~~

16   ~~Cloud Storage on Apple Mobile Devices. This market is distinct from the relevant markets for Apple's~~

17   ~~mobile devices. Apple's unlawful tying arrangement thus ties two separate products that are in separate~~

18   ~~markets.~~

19   67.—— ~~Apple exercises market power in the mobile device markets for smartphones and~~

20   ~~tablets.~~

21   68.—— ~~Apple coerces iOS consumers to use and purchase iCloud by foreclosing would-be~~

22   ~~rivals from accessing and hosting Restricted Files on a cloud platform. By virtue of Apple's tying~~

23   ~~conduct, consumers' only cloud storage option for hosting Restricted Files, or for hosting all files, is~~

24   ~~iCloud.~~

25   ~~113.1.~~ 69.—— ~~Apple's conduct forecloses competition in the market for Full-Service Cloud~~

26   ~~Storage on Apple Mobile Devices. Given the volume of transactions and the money at issue, Apple's~~

27   ~~conduct affects a substantial volume of commerce in that market.~~

28   70.—— ~~Apple has thus engaged in a *per se* illegal tying arrangement.~~

1    71.    In the alternative only, even if Apple's tying conduct does not constitute a *per se*

2    violation of the law, a rule-of-reason analysis of Apple's tying arrangement also would demonstrate

3    that it violates the law.

4    72.    There is no valid business necessity or pro-competitive justification for Apple's tying

5    conduct.

6    114.1. 73.    Plaintiffs and the class have been injured, and will continue to be injured, in

7    their businesses and property as a result of Apple's conduct, including by way of overpaying for Full-

8    Service Cloud Storage on Apple Mobile Devices.

9    115.1. 74.    Plaintiffs and members of the putative class have suffered and continue to suffer

10    damages and irreparable injury, including ongoing harm to their businesses, and such damages and

11    injury will not abate until the Court issues an injunction ending Apple's anticompetitive conduct issues.

12    **SECOND CAUSE OF ACTION:**
13    **VIOLATION OF THE SHERMAN ACT – MONOPOLIZATION**
      **OF MARKET FOR FULL-SERVICE CLOUD STORAGE ON APPLE MOBILE DEVICES**
14    **(15 U.S.C. § 2)**

15    116.1. 75.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

16    117.188.        76.    Apple possesses monopoly power in the market for Full-Service Cloud

17    Storage on Apple Mobile Devices.

18    118.189.        77.    For the reasons stated herein, Apple has erected substantial barriers to

19    entry and expansion in the market for Full-Service Cloud Storage on Apple Mobile Devices.

20    119.190.        78.    Apple has the power to exclude competition in the market for Full-

21    Service Cloud Storage on Apple Mobile Devices, and it has willfully used that power, including by

22    way of its unlawful practices in restraint of trade as described herein, in order to achieve, maintain,

23    and expand its monopoly power in that market.

24    79.    Furthermore, in order to willfully obtain, maintain, and enhance its monopoly power

25    in the market for Full-Service Cloud Storage on Apple Mobile Devices, Apple has tied iCloud to its

26    mobile devices, specifically the iPhone and iPad. Consumers of these devices are given no option

27    and are coerced to use iCloud for Full-Service Cloud Storage on Apple Mobile Devices.

28

120.191.     80.——Apple's conduct as described herein, including its unlawful practices in restraint of trade, is exclusionary vis-à-vis potential rivals in the market for Full-Service Cloud Storage on Apple Mobile Devices.

121.192.     81.——Apple has behaved as alleged herein to achieve, maintain, and grow its monopoly in the market for Full-Service Cloud Storage on Apple Mobile Devices, with the effect being that competition is foreclosed and that consumer choice is diminished. So is innovation. Additionally, Apple has abused its market power by imposing supracompetitive prices on consumers for Full-Service Cloud Storage on Apple Mobile Devices. Further, Apple's actions have depressed output as alleged herein.

122.193.     82.——There is no valid ~~business necessity or~~ pro-competitive justification for Apple's conduct. Instead, Apple's actions are designed to destroy competition as alleged herein.

194.     83.——Even if the relevant market were expanded to include all cloud services on Apple's mobile devices, Apple exercises monopoly power in that larger market and has unlawfully restrained trade, as alleged herein, to secure and maintain that monopoly power without valid pro-competitive justification.

123.195.     Plaintiffs and the class have been injured, and will continue to be injured, in their property as a result of Apple's conduct, including by way of paying supracompetitive prices.

124.1.  84.——Moreover, Plaintiffs and the class are entitled to an injunction to prevent Apple from persisting in its unlawful behavior to their detriment.

196.     Moreover, Plaintiffs and the class are entitled to an injunction to prevent Apple from persisting in its unlawful behavior to their detriment.

**SECOND CAUSE OF ACTION:~~THIRD CAUSE OF ACTION:~~**
**VIOLATION OF THE SHERMAN ACT – ATTEMPTED MONOPOLIZATION**
~~**of market for Full-Service cloud storage on apple Mobile devices**~~
**(15 U.S.C. § 2)**

125.197.     85.——Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

126.198.     86.——Apple has attempted to monopolize the market for Full-Service Cloud Storage on Apple Mobile Devices.

1    127.199.    87.——Apple's anticompetitive conduct has given Apple a monopoly or, at

2    least, a dangerous probability that it will achieve monopoly power in the relevant market described

3    above.

4    128.200.    88.——Apple has a specific intent to achieve monopoly power in the relevant

5    market described above.

6    129.201.    89.——Apple has the power to exclude competition in the market for Full-

7    Service Cloud Storage on Apple Mobile Devices, and it has willfully used that power, including by

8    way of its unlawful practices in restraint of trade as described herein, in an attempt to achieve, maintain,

9    and expand its monopoly power in that market.

10    202.    90.——Apple also has exercised and leveraged its power in the mobile device markets

11    to exclude competition in the market for Full-Service Cloud Storage.

12    130.203.    Apple's conduct as described herein, including its unlawful practices in restraint

13    of trade, is exclusionary vis-à-vis all potential rivals in the market for Full-Service Cloud Storage on

14    Apple Mobile Devices.

15    131.204.    91.——Apple has behaved as alleged herein in a willful attempt to obtain a

16    monopoly in the market for Full-Service Cloud Storage on Apple Mobile Devices, with the effect

17    being that competition is foreclosed and that consumer choice is gravely diminished. So is innovation.

18    Additionally, Apple has abused its market power by imposing supracompetitive prices on consumers

19    for Full-Service Cloud Storage on Apple Mobile Devices. Further, Apple's actions have depressed

20    output as alleged herein.

21    132.205.    92.——There is no valid business necessity or pro-competitive justification for

22    Apple's conduct.

23    206.    93.——Even if the relevant market were expanded to include all cloud services on

24    Apple's mobile devices, Apple unlawfully restrained competition in that larger market to secure and

25    maintain and maintain a monopoly, or a dangerous probability of such, without valid pro-competitive

26    justification.

27    133.207.    Plaintiffs and the class have been injured, and will continue to be injured, in

28    their property as a result of Apple's conduct, including by way of paying supracompetitive prices.

1    208.    Moreover, Plaintiffs and the class are entitled to an injunction to prevent Apple from

2    persisting in its unlawful behavior to their detriment.

3    **THIRD CAUSE OF ACTION:1.——**
     **VIOLATION OF THE SHERMAN ACT – TYING**

4    **(15 U.S.C. §§ 1, 2, 3)**

5    ~~134.~~1.  ~~Moreover, Plaintiffs and the class are entitled to an injunction to prevent Apple from~~

6    ~~persisting in its unlawful behavior to their detriment.~~

7    209.    ~~FOURTH CAUSE OF ACTION:~~Plaintiffs repeat and re-allege every allegation above

8    as if set forth herein in full.

9    210.    Apple has unlawfully tied iCloud to its mobile devices, namely the iPhone and iPad.

10   211.    As demonstrated herein, iCloud is a product in the market for Full-Service Cloud

11   Storage on Apple Mobile Devices. This market is distinct from the relevant markets for Apple's mobile

12   devices. Apple's unlawful tying arrangement thus ties two separate products that are in separate

13   markets.

14   212.    Apple exercises market power in the mobile device markets for smartphones and

15   tablets.

16   213.    Apple imposes a tie on iOS consumers by preventing them from acquiring Full-Service

17   Cloud Storage from any would-be competitor. By virtue of Apple's tying conduct, consumers' only

18   cloud storage option for hosting Restricted Files, or for hosting all files, is iCloud.

19   214.    Apple's conduct forecloses competition in the market for Full-Service Cloud Storage

20   on Apple Mobile Devices. Given the volume of transactions and the money at issue, Apple's conduct

21   affects a substantial volume of commerce in that market.

22   215.    Apple has thus engaged in an illegal tying arrangement.

23   216.    Even if Apple's tying conduct does not constitute a *per se* violation of the law, a rule-

24   of-reason analysis of Apple's tying arrangement demonstrates that it violates the law.

25   217.    There is no valid pro-competitive justification for Apple's tying conduct.

26   218.    Plaintiffs and the class have been injured, and will continue to be injured, in their

27   businesses and property as a result of Apple's conduct, including by way of overpaying for Full-

28   Service Cloud Storage on Apple Mobile Devices.

219.    Plaintiffs and members of the putative class have suffered and continue to suffer damages and irreparable injury, including ongoing harm to their businesses, and such damages and injury will not abate until the Court issues an injunction ending Apple's anticompetitive conduct issues.

Third cause of action:FOURTH CAUSE OF ACTION:
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,**
**CAL. BUS. & PROF. CODE §17200, *ET SEQ*.**

**(LIMITED TO CALIFORNIA SUBCLASS)**

220.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

135.1.1.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

136.221.    2.    California's Unfair Competition Law (UCL) defines "unfair competition" to include any "unlawful, unfair, or fraudulent" business act or practice. Cal. Bus. & Prof. Code §§17200, *et seq*. Apple has engaged in acts and practices that are unlawful, unfair, or fraudulent.

137.222.    3.    Apple's restraints on cloud storage, as alleged herein, violate the Sherman Act and thus are "unlawful" for purposes of the UCL.

138.223.    4.    Apple's restraints also violate the "unfair" prong of the UCL because they constitute at least an incipient violation of the antitrust laws, violate the policy and spirit of the antitrust laws, threaten to harm competition, and are substantially injurious to consumers.

139.224.    5.    The illegal conduct alleged herein is continuing and there is no indication that Apple will cease such activity in the future.

140.225.    6.    Apple's conduct in violation of the UCL has caused Plaintiffs and members of the California Subclass to pay supra-competitive and artificially inflated prices for cloud storage. Plaintiffs and the members of the California Subclass suffered injury in fact and lost money or property as a result of such unfair competition. Apple's conduct has also injured Plaintiffs and members of the California Subclass by eliminating choice between market alternatives and degrading quality of cloud storage.

141.226.    7.    As alleged herein, Apple has been unjustly enriched in violation of the UCL. Plaintiffs and the members of the California Subclass are accordingly entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits

that may have been obtained as a result of such business practices, pursuant to California Business and Professions Code sections 17203 and 17204.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A.     ~~A.~~     That the Court certify this case as a class action and that it appoint Plaintiffs as class representatives and their counsel as class counsel;

B.     ~~B.~~     That the Court award Plaintiffs and the proposed class all appropriate relief, to include, but not be limited to, injunctive relief requiring that Apple cease the abusive, unlawful, and anticompetitive practices described herein; declaratory relief, adjudging such practices unlawful; as well as monetary relief, whether by way of restitution or damages, including treble damages, or other multiple or punitive damages, or restitution, where mandated by law or equity or as otherwise available; together with recovery of the costs of suit, to include reasonable attorneys' fees, costs, and expenses, together with pre- and post-judgment interest to the maximum levels permitted by law or equity.

C.     ~~C.~~     That the Court grant such additional orders or judgments as may be necessary to prevent the unlawful practices complained of herein; and

D.     ~~D.~~     That the Court award Plaintiffs and the proposed class such other, favorable relief as may be available and appropriate under federal or state law, or at equity.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

1    DATED: ~~June~~March 21, 202~~4~~5        Respectfully submitted,

2                                             By */s/ Ben M. Harrington*

3                                             Ben M. Harrington (SBN 313877)
                                              Benjamin J. Siegel (SBN 256260)

4                                             **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                              715 Hearst Avenue, Suite ~~202~~300

5                                             Berkeley, CA 94710
                                              Telephone: (510) 725-3000

6                                             Facsimile: (510) 725-3001
                                              benh@hbsslaw.com

7                                             bens@hbsslaw.com

8                                             Steve. W. Berman (*pro hac vice* forthcoming)

9                                             ~~Robert F. Lopez (*pro hac vice* forthcoming)~~
                                              ~~Catherine Y. N. Gannon (*pro hac vice* forthcoming)~~

10                                            **HAGENS BERMAN SOBOL SHAPIRO LLP**

11                                            1301 Second Avenue Suite 2000
                                              Seattle, WA ~~-~~98101

12                                            Telephone: (206) 623-7292
                                              Facsimile:~~-~~ (206) 623-0594

13                                            steve@hbsslaw.com
                                              robl@hbsslaw.com

14                                            catherineg@hbsslaw.com

15                                            Mark T. Vazquez (*pro hac vice* ~~forthcoming)~~ ~~)~~

16                                            **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                              455 N. Cityfront Plaza Dr.

17                                            Chicago, IL 60611
                                              Telephone: (708) 628-4962

18                                            Facsimile: ~~-~~(206) 628-4950

19                                            markv@hbsslaw.com

20                                            *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28