LATHAM & WATKINS LLP
  Belinda S Lee (SBN 199635)
  *belinda.lee@lw.com*
  Sarah M. Ray (SBN 229670)
  *sarah.ray@lw.com*
  Aaron T. Chiu (SBN 287788)
  *aaron.chiu@lw.com*
  Alicia R. Jovais (SBN 296172)
  *alicia.jovais@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JULIANNA FELIX GAMBOA and THOMAS DOROBIALA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>APPLE INC.,<br><br>        Defendant. | CASE NO. 5:24-cv-01270-EKL<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:   June 18, 2025<br>Time:   10:00 a.m.<br>Place:  Courtroom 7<br>Judge: The Honorable Eumi K. Lee |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

APPLE INC.'S REPLY
ISO MOT. TO DISMISS
CASE NO. 5:24-cv-01270-EKL

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................................ 1

II.     ARGUMENT .................................................................................................................... 2

     A.      Plaintiffs Fail to Plead Monopolization ................................................................ 2

          1.      Plaintiffs Fail to and Cannot Plead an Aftermarket Limited to iCloud.................................................................................................... 2

          2.      Plaintiffs' Broader Market for All Cloud Storage on Apple Devices Fails ......................................................................................... 7

          3.      Plaintiffs Fail to Allege That Apple Has Monopoly Power...................... 8

     B.      Plaintiffs' Attempted Monopolization Claim Fails............................................. 11

     C.      Plaintiffs' Alleged Monopoly Conduct Remains a Challenge to a Product Design Decision That Is Not Actionable Under Section 2.................... 12

     D.      Plaintiffs Fail to Allege a Tying Claim............................................................... 13

     E.      Plaintiffs' UCL Claims Fail ............................................................................... 14

     F.      Plaintiffs Cannot Indefinitely Extend the Statute of Limitations........................ 15

III.    CONCLUSION................................................................................................................. 15

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

i

APPLE INC.'S REPLY
ISO MOTION TO DISMISS
CASE NO. 5:24-cv-01270-EKL

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aerotec International, Inc. v. Honeywell International, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) ........................................................................................ 13

*AliveCor, Inc. v. Apple Inc.*,
   592 F. Supp. 3d 904 (N.D. Cal. 2022) .............................................................................. 7

*Apple Inc. v. Psystar Corp.*,
   586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................................. 4, 5, 6, 9

*Cascade Health Solutions v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008) .......................................................................................... 13

*Catch Curve, Inc. v. Venali, Inc.*,
   519 F. Supp. 2d 1028 (C.D. Cal. 2007) ........................................................................... 11

*Crowder v. LinkedIn Corp.*,
   No. 22-CV-00237, 2023 WL 2405335 (N.D. Cal. Mar. 8, 2023) ..................................... 15

*DeSoto Cab Co. v. Uber Technologies, Inc.*,
   No. 16-cv-06385, 2020 WL 10575294 (N.D. Cal. Mar. 25, 2020) ..................................... 9

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
   703 F.2d 534 (9th Cir. 1983) ..................................................................................... 13, 14

*Garnica v. HomeTeam Pest Defense, Inc.*,
   230 F. Supp. 3d 1155 (N.D. Cal. 2017) ........................................................................... 10

*Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*,
   960 F. Supp. 701 (S.D.N.Y. 1997) ..................................................................................... 6

*Hernandez v. Select Portfolio*,
   No. 15-cv-01896, 2015 WL 3914741 (C.D. Cal. June 25, 2015) ....................................... 9

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ........................................................................................... 6

*In re American Express Anti-Steering Rules Antitrust Litigation*,
   361 F. Supp. 3d 324 (E.D.N.Y. 2019) ............................................................................... 6

*In re Apple & AT & TM Antitrust Litigation*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008) ............................................................................. 7

*In re ATM Fee Antitrust Litigation*,
   768 F. Supp. 2d 984 (N.D. Cal. 2009) ............................................................................... 7

*In re German Automobile Manufacturers Antitrust Litigation*,
   612 F. Supp. 3d 967 (N.D. Cal. 2020), aff'd, No. 20-17139, 2021 WL
   4958987 (9th Cir. Oct. 26, 2021) ...................................................................................... 3

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

APPLE INC.'S REPLY
ISO MOTION TO DISMISS
CASE NO. 5:24-cv-01270-EKL

*In re IBM Peripheral EDP Devices Antitrust Litigation*,
 481 F. Supp. 965 (N.D. Cal. 1979), *aff'd sub nom. Transamerica Computer
 Co. v. IBM Corp.*, 698 F.2d 1377 (9th Cir. 1983) ................................................................. 12

*In re Super Premium Ice Cream Distribution Antitrust Litigation*,
 691 F. Supp. 1262 (N.D. Cal. 1988) ................................................................................... 8

*Jefferson Parish Hospital District No. 2 v. Hyde*,
 466 U.S. 2 (1984) ............................................................................................................ 13

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
 No. 21-cv-00540, 2022 WL 2791201 (E.D. Cal. July 15, 2022) ........................................ 9

*Newcal Industries, Inc. v. Ikon Office Solution*,
 513 F.3d 1038 (9th Cir. 2008) ............................................................................................ 7

*Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co.*,
 No. 16-cv-06370, 2017 WL 4310767 (N.D. Cal. Sept. 28, 2017) ...................................... 10

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
 555 U.S. 438 (2009) ................................................................................................... 12, 13

*Rebel Oil Co. v. Atlantic Richfield Co.*,
 51 F.3d 1421 (9th Cir. 1995) ............................................................................................. 9

*Reilly v. Apple Inc.*,
 578 F. Supp. 3d 1098 (N.D. Cal. 2022) .............................................................................. 6

*Rutman Wine Co. v. E. & J. Gallo Winery*,
 829 F.2d 729 (9th Cir. 1987) ........................................................................................... 12

*Samsung Electronics Co. v. Panasonic Corp.*,
 747 F.3d 1199 (9th Cir. 2014) ......................................................................................... 15

*Somers v. Apple, Inc.*,
 729 F.3d 953 (9th Cir. 2013) ........................................................................................... 10

*Spectrum Sports, Inc. v. McQuillan*,
 506 U.S. 447 (1993) ........................................................................................................ 12

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) ........................................................................................... 10

*Steckman v. Hart Brewing, Inc.*,
 143 F.3d 1293 (9th Cir. 1998) ......................................................................................... 10

*Streamcast Networks, Inc. v. Skype Technologies*, S.A.,
 547 F. Supp. 2d 1086 (C.D. Cal. 2007) ...................................................................... 6, 7, 14

*United States v. Google LLC*,
 747 F. Supp. 3d 1 (D.D.C. Aug. 5, 2024) ......................................................................... 11

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*,
 540 U.S. 398 (2004) ........................................................................................................ 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-01270-EKL

1

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*,
   668 F.2d 1014 (9th Cir. 1981), *cert. denied*, 459 U.S. 825 (1982)......................................11

2

*Xerox Corp. v. Media Sciences., Inc.*,
   660 F. Supp. 2d 535 (S.D.N.Y. 2009).................................................................................10

3

4

5

**TREATISES**

6

Herbert Hovenkamp, The Antitrust Enterprise: Principle and Execution (2005)......................12

7

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust
   Principles and Their Application (2024 Supp.) ...................................................................3, 15

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Nothing in Plaintiffs' Opposition to Apple's Motion to Dismiss changes the fact that the Second Amended Complaint ("SAC") fails to plead that Apple's 2011 product design decision to develop iCloud Backup as the only remote backup solution for restoring an Apple device is an antitrust problem.  Plaintiffs have not and cannot plead that Apple has a monopoly—in either an iCloud-only "aftermarket" or a broader market for all cloud storage solutions—or unlawfully ties it devices with iCloud.  It remains undisputed that (i) Apple device users have and use cloud and local storage options other than iCloud, and (ii) no one is required to use (or buy) iCloud or iCloud Backup.  Plaintiffs still do not confront these fundamental points, which remain fatal to their case.

Plaintiffs' Opposition instead goes to great lengths to conflate fatal pleading deficiencies with issues of fact.  None of their arguments, however, can salvage their claims.

On monopolization, Plaintiffs continue to lean on cherry-picked snippets of a customer survey and expert report from a false advertising case to try to plead an iCloud-only aftermarket.  Apple's motion explained how those reports, which identify various "iCloud Competitors" and "Rivals," reflect that iCloud faces robust competition, and that many Apple device owners consider and use competing cloud storage solutions.  These are not "factual" disputes.  Rather, they are inconsistencies in Plaintiffs' own pleadings and supporting materials that undercut the very inference Plaintiffs need:  that iCloud Backup is a feature that somehow insulates iCloud from any competition.  Plaintiffs' continued attempt to allege an iCloud-only aftermarket fails.

On the issue of monopoly power, Plaintiffs continue to rely on inconsistent allegations of Apple's supposed market share—ranging from 96% (allegedly by revenue), to 88% (allegedly by users), to the original 72.5% statistic that the Court previously concluded was implausibly calculated with flawed math.  Beyond the fact that none of these market-share statistics are based on legitimate calculations, Plaintiffs' advancement of three, inconsistent figures alone confirms that none is plausible.  As for the other elements of monopoly power—barriers to entry or expansion and a reduction in output—all Plaintiffs continue to rely upon are the type of circular and conclusory allegations the Court already found deficient.

With respect to monopoly conduct, Plaintiffs suggest that the Supreme Court's *Trinko*

1    decision and its progeny are inapplicable because the challenged restraint here is one that

2    supposedly affects consumers.  That is wrong.  The entire theory of Plaintiffs' case is that Apple's

3    alleged refusal to allow competing cloud storage providers the ability to offer similar capability as

4    iCloud Backup is an antitrust violation.  That is fundamentally a refusal to deal claim, the

5    prerequisites for which Plaintiffs do not and cannot allege.

6        As for tying, Plaintiffs effectively abandon their claim under Section 1.  But still, they

7    cannot circumvent the reality that the lack of any condition placed by Apple on the use of iCloud,

8    or non-use of iCloud alternatives, is fatal to any tying claim, under Section 2 *and* Section 1.

9        Finally, Plaintiffs' failure to plead an actionable Sherman Act claim dooms their unlawful

10    UCL claim.  And Plaintiffs do not answer how the SAC—which still fails to allege that iCloud

11    pricing is higher than the competition, or that Apple has deprived the market of iCloud

12    alternatives—suffices to allege any impact on consumers to state an unfair UCL claim.

13        The Court should dismiss Plaintiffs' SAC with prejudice.

14    **II.    ARGUMENT**

15        **A.    Plaintiffs Fail to Plead Monopolization**

16            1.    Plaintiffs Fail to and Cannot Plead an Aftermarket Limited to iCloud

17                a.    *The Expert Reports Plaintiffs Invoke Do Not Plausibly Support an*
18                       *iCloud-Only Market*

19        The two expert reports from *Williams*—the false advertising case on which Plaintiffs rely—

20    do not provide what is required to plausibly isolate iCloud into its own aftermarket.  Rather than

21    address the aspects of those reports that undermine Plaintiffs' position, Plaintiffs' Opposition

22    doubles down on cherry-picked quotes to claim that, due to the iCloud Backup feature, iCloud is

23    completely immune from any competition.  This fails for four reasons.

24        *First*, Plaintiffs do not address the fact that the Scott Report acknowledges that many Apple

25    device users are aware of—and use—other cloud storage solutions.  *See* Scott Report ¶ 8(a), ECF

26    No. 64-1.  This contradicts the crucial inference Plaintiffs need to draw:  that the iCloud Backup

27    feature somehow insulates iCloud from any competition with all the other cloud storage solutions

28    available on Apple's devices such that none are substitutes.  Indeed, Plaintiffs conspicuously

ignore the recognition in the Scott Report that, notwithstanding iCloud Backup and other features that "factor into [consumers'] reasons for purchasing an iCloud Service subscription," those consumers considered alternatives. *Id.* ¶ 8(b). Not to mention the report's findings that "64.4% of all respondents in the survey had used or currently use Dropbox, 58.1% had used or currently use Google Drive, and 40.7% had used or currently use Microsoft OneDrive/Azure." *Id.* ¶ 41. To be sure, the Scott Report reflects that iCloud Backup and other iCloud features influence consumer decisions. But its findings that those consumers nevertheless consider and use other, non-iCloud cloud storage solutions defeat any inference that iCloud exists by itself in an aftermarket.

*Second*, Plaintiffs' attempt to establish that Apple's competitors are merely complements is unavailing. Opp'n at 7. This assertion ignores the findings of those surveys regarding the use of iCloud alternatives to the exclusion of iCloud (Scott Report ¶¶ 9(a), 90)—a fact that confirms they are substitutes, not complements.[1]

*Third*, Plaintiffs again selectively quote from an Apple filing in *Williams* and mischaracterize it as an admission that consumers find other cloud services "not comparable." *See* Opp'n to Pls.' Mot. for Class Cert., *Williams v. Apple Inc.*, No. 5:19-cv-04700 (N.D. Cal.), ECF No. 64-2 at 23. What Plaintiffs fail to mention is that the quote arose in a discussion of whether certain iCloud competitors were appropriate benchmarks for damages, given that certain consumers might have paid a price premium for the service given features iCloud had over alternatives like Google Drive, Microsoft OneDrive, and DropBox. *See id.* at 20–23. The quote does not support defining a relevant antitrust market around iCloud. And, even assuming a price "premium" for iCloud existed, that would still be insufficient to isolate iCloud into its own aftermarket. *See In re German Auto. Mfrs. Antitrust Litig.*, 612 F. Supp. 3d 967, 980 (N.D. Cal. 2020), *aff'd*, No. 20-17139, 2021 WL 4958987 (9th Cir. Oct. 26, 2021) ("[Plaintiffs] rely on a supposed price premium . . . , but a price differential alone is insufficient to establish an economically distinct submarket." (citing *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1199

---

[1] In all events, products may be both complements and substitutes. *See* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 565 (2024 Supp.) ("A few things may function as both complements and substitutes, particularly if they are able to be used in variable proportions.").

1    (N.D. Cal. 2008)).

2    *Last*, with respect to the Hitt Report,[2] Plaintiffs are right that the report focused on whether

3    consumers prefer Apple's storage of user data on Apple servers or third-party servers.  But just

4    because a consumer prefers iCloud or certain of its features does not mean the consumer is unable

5    to switch between iCloud and the alternatives.  SAC ¶ 47.  And, contrary to Plaintiffs' assertion,

6    the Hitt Report merely shows that consumers "may prefer to continue using" iCloud:  that is, they

7    simply do not want to switch from iCloud, not that they cannot do so—because they prefer certain

8    features beyond backup.  Hitt Report ¶ 70.  Despite Plaintiffs' focus on the Hitt Report's discussion

9    of "the ability 'to comprehensively back up their Apple device'" (SAC ¶ 47), it does not support

10   an artificially constructed single-brand aftermarket limited to iCloud.

11                                    *        *        *

12   Plaintiffs' selective reliance on the expert reports from *Williams* falls short of what is

13   required to plausibly support their alleged single-brand aftermarket.  Read in full—and in the

14   actual context for which they were proffered—the reports only reinforce the existence of

15   alternatives to iCloud and that in many instances consumers who purchase iCloud do consider (and

16   use) those alternatives.  This is inimical to an iCloud-only aftermarket.

17                        *b.*        *Plaintiffs Fail to Allege a SSNIP*

18   Plaintiffs' Opposition is silent on what factual allegations in the SAC support their

19   allegation of an "iCloud[] price increase[] *relative* to other products in the market," which as the

20   Court concluded, "is a necessary condition for a SSNIP test."  Order at 13.  All the SAC does is

21   claim, without any factual support, that the iCloud price increase in the UK "was not accompanied

22   by or commensurate with any observable increase in the price of plans for other cloud providers

23   in the UK."  SAC ¶ 83.  That is the definition of a conclusory statement.  *See Psystar*, 586 F. Supp.

24   2d at 1198 (allegations regarding a SSNIP were conclusory where they "merely restate a

25   commonly used test for market definition without providing any factual basis for the claim").

26   Plaintiffs contend that they cannot be expected to plead a negative, because apparently,

27

28   _____

[2] Expert Report of Dr. Lorin M. Hitt, *Williams v. Apple Inc.*, Case No. 3:19-cv-4700-LHK (N.D. Cal.), ECF No. 82-7 ("Hitt Report")

they did not observe a commensurate price increase by iCloud competitors in the UK.  *See* Opp'n at 9.  But a court is not required to make inferences based on conclusory allegations unsupported by fact.  *See Psystar*, 586 F. Supp. 2d at 1195 ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  When it comes to iCloud pricing, Plaintiffs cobble together data from multiple sources to present graphs purportedly showing Apple's market share and alleged supracompetitive pricing.  *See* SAC ¶¶ 107–124.  But the SAC does nothing of the sort with respect to iCloud's competition.  There remain no factual allegations as to what competing cloud providers charged—before or after—the alleged iCloud UK price increase.  That defeats Plaintiffs' alleged SSNIP test.

And Plaintiffs still do not explain how allegations of a price increase in the *UK* suffices to establish a SSNIP test for an iCloud-only aftermarket in the *U.S.*  All Plaintiffs point to are allegations that UK consumers are supposedly less brand loyal than those in the U.S.  Opp'n at 10 (citing SAC ¶ 91).  But that does not bridge the gap with respect to whether and to what extent a price increase for iCloud in the U.S.—the relevant geographic market here—would be profitable.

Further, Plaintiffs' continued reliance on a graph supposedly depicting market share trends of Apple's iOS devices in the UK, before and after the iCloud UK price change, fails to support a valid SSNIP test.  *See* SAC at 27.  Absent any factual allegations about the competition's response to Apple's UK iCloud price shifts—one simply cannot infer whether the lack of switching was due to a profitable price increase, or because the competition responded similarly.   And given Plaintiffs' admission that Apple device users are not required to use iCloud and do use alternatives, there is no basis to infer that any increases in market share of Apple's iOS devices corresponds with a change in iCloud pricing, or a lack of "discernable switching away from iCloud."  *Id.* ¶ 87.

### c.     Plaintiffs Fail to Allege the Requirements for an Aftermarket

Plaintiffs' Opposition raises a false dichotomy by suggesting that while single-brand primary markets are rare, single-brand aftermarkets somehow are not, and so their attempt to plead an aftermarket limited to iCloud passes muster.  Opp'n at 10–13.  But courts have recognized repeatedly that "single-brand markets are disfavored," primary or otherwise.  *In re Am. Express Anti-Steering Rules Antitrust Litig.* ("*Amex*"), 361 F. Supp. 3d 324, 343 (E.D.N.Y. 2019)

(collecting authorities). The cases Apple relies upon all reflect the difficulty of alleging any single-brand market. *See* Mot. at 6–7. "There is one situation in which courts generally agree that single-brand markets can succeed: an aftermarket." *Amex*, 361 F. Supp at 344. They are "a type of derivative market consisting of consumable goods or replacement components that must be used for the proper functioning of some primary good." *Id*. That is inapplicable here.

Contrary to Plaintiffs' assertions, Apple's argument has always been that aftermarkets are the rare and unusual case in which single-brand markets are recognized,[3] and that despite Plaintiffs' attempts to shoehorn iCloud into an aftermarket, they cannot do so given the admitted realities that no one with an Apple device has to use (or buy) iCloud. That brings this case in line with those where courts have rejected attempts to limit a product that competes among a sea of others into its an aftermarket. *See, e.g.*, *Psystar*, 586 F. Supp. 2d at 1198; *Amex*, 361 F. Supp. 3d at 331; *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1107 (N.D. Cal. 2022); *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 705 (S.D.N.Y. 1997). Plaintiffs' attempt to cast those cases aside as involving single-brand primary markets is unavailing.

Basic principles governing market definition require courts to apply "judicial experience and common sense" to assess whether an alleged market is "not natural, artificial, and contorted to meet [Plaintiffs'] litigation needs." *Hicks v. PGA Tour, Inc*., 897 F.3d 1109, 1121 (9th Cir. 2018) (internal quotations omitted). Here, Plaintiffs' claimed market—"full-service cloud storage on Apple mobile devices" constrained artificially to iCloud—remains implausible. Plaintiffs' own allegations continue to undermine such a market: cloud storage can be purchased separate and apart from a mobile device. *See* SAC ¶ 157 ("[C]onsumers can buy smartphones and tablets without also purchasing or using any cloud storage. . . And likewise, consumers can purchase a cloud storage plan (including iCloud) without also purchasing a smartphone or tablet."). iCloud is not derivative of iPhone or any other device, no one has to use it, and there are alternatives. That

---

[3] *See Streamcast Networks, Inc. v. Skype Techs*., S.A., 547 F. Supp. 2d 1086, 1094 (C.D. Cal. 2007) ("[T]he few cases in which courts have acknowledged the possibility of limiting the relevant market to a single brand have involved markets for replacement parts for specific brands of durable goods where consumers are 'locked-in' to maintaining them."); *Psystar*, 586 F. Supp. 2d at 1196 ("*Newcal Industries*, however, merely held that a market may be comprised of a single brand in the situation the Supreme Court addressed in *Kodak*: a derivative aftermarket for products related to or dependent on a specific company's products.").

defeats any iCloud-based aftermarket.

The cases Plaintiffs cite as examples of aftermarkets plainly show why iCloud is not in its own aftermarket.  In *AliveCor, Inc. v. Apple Inc*., 592 F. Supp. 3d 904, 916 (N.D. Cal. 2022), the Court acknowledged a single-brand aftermarket for watchOS apps because such apps are designed for the Apple Watch operating system, and therefore have no use outside of (and are derivative of) an Apple Watch.  Similarly, in *In re Apple & AT & TM Antitrust Litigation*, 596 F. Supp. 2d 1288, 1304 (N.D. Cal. 2008), the Court noted that the market for iPhone applications "'would not exist without' the primary market for iPhones," as iPhone applications cannot be used without iPhones. It is this derivative nature that lends itself to the potential for the necessary "lock in" that underlies the courts' recognition of single-brand aftermarkets.  *See* Mot. at 8–9; *see also In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 997 (N.D. Cal. 2009); *Newcal Indus., Inc. v. Ikon Office Sol*., 513 F.3d 1038, 1050 (9th Cir. 2008).

The same is not true for iCloud or the other cloud storage services that exist and are useful apart from mobile devices, including on personal computers.  SAC ¶ 157.  Plaintiffs have not and cannot plead the extraordinary circumstance of an aftermarket.  *See* Mot. at 6–15; *Psystar*, 586 F. Supp. 2d at 1203 (dismissing complaint that sought to plead a submarket and aftermarket for "Mac OS-compatible computer hardware systems," as it "contravene[d] the pertinent legal standards").

## 2.    Plaintiffs' Broader Market for All Cloud Storage on Apple Devices Fails

Plaintiffs once again point to feature distinctions and convenience to exclude local storage from the market.  Opp'n at 13–14.  But local storage allows users to "accomplish the same basic task" of storing copies of mobile device data and information.  *See Streamcast*, 547 F. Supp. 2d at 1095.  Plaintiffs point to three limited file types that local storage cannot backup.  SAC ¶ 66 ("users cannot store or back up content from app stores or iTunes, or PDFs downloaded directly from Apple Books, on a local hard drive").  But these file types do not include the "restricted files" at the heart of Plaintiffs' case.  SAC ¶ 5.

Plaintiffs further attempt to distinguish local storage on the basis that "local storage has always been free, whereas cloud storage is not . . . ."  Opp'n at 13.  But local storage is not free— one must still purchase it.  And in any event, Plaintiffs' assertion is undermined by the allegation

that "Apple device holders are given 5GB of free iCloud storage space . . . ."  SAC ¶ 37.  Indeed, a graph in the SAC shows that Apple's free storage tier is the second-most popular—used by 30% of users.  SAC at 11.  Plaintiffs simply cannot distinguish local storage on the basis of price.  *See In re Super Premium Ice Cream Distrib. Antitrust Litig.*, 691 F. Supp. 1262, 1268 (N.D. Cal. 1988) ("[G]radations among various qualities of [the product] are not sufficient to establish separate relevant markets for the purposes of determining market power.").

### 3.    Plaintiffs Fail to Allege That Apple Has Monopoly Power

#### a.    *Plaintiffs Fail to Plead Monopoly Power Indirectly*

***Plaintiffs' various market share statistics are conclusory and premised on implausible mathematical contortions.***  Plaintiffs still fail to advance any plausible estimation of Apple's market share to support their alternative, broader cloud storage market.  Plaintiffs' SAC now posits that Apple has a 96% market share in the market for cloud storage on Apple devices when measured by revenues, and an 88% share when measured by users.  SAC ¶ 112.  How Plaintiffs arrived at those values, however, is shrouded in a black box:  The SAC omits the source documents on which Plaintiffs rely to calculate those shares.  And the public sources Plaintiffs do cite include analyses of *iPhone* (not iCloud) market share and, confusingly, data on market shares in the UK.  SAC ¶ 112 n.63.  The Court already found that mathematical errors in Plaintiffs' prior complaint led to dubious market share calculations.  Order at 17 & n.9.  This time around, Plaintiffs omit their calculations to avoid scrutiny, yet come up with even more suspect market-share values that are based in part on data from an entirely different geographic market.  *See* SAC ¶ 112 n.63.

The dueling nature of Plaintiffs' market share calculations only underscores how illusory they are.  On the one hand, Plaintiffs use convoluted math to reassert the same estimate that Apple has 72.5% market share when measured by users.  SAC ¶ 110.  That necessarily overestimates iCloud's market share because it does not account for users who may use iCloud and other cloud services.  Mot. at 20; Order at 17.  On the other hand, Plaintiffs simultaneously advance new and separate values—the calculation of which are hidden from scrutiny—to claim that Apple alternatively has 88% market share when measured by users.  SAC ¶ 112.  Plaintiffs also claim that that 88% of users amounts to 96% of revenue, even though they do not discount that Apple

1    prices iCloud competitively with other cloud storage solutions.  *Id.* ¶ 123 n. 67.  These "internally

2    contradictory" market shares do not suffice to plead monopoly power.  *Psystar*, 586 F. Supp. 2d

3    at 1200; *Hernandez v. Select Portfolio*, No. 15-cv-01896, 2015 WL 3914741, at *10 (C.D. Cal.

4    June 25, 2015) ("Contradictory allegations . . . are inherently implausible . . . .").

5           ***Plaintiffs still fail to plead barriers to entry or expansion.***  Plaintiffs continue to

6    acknowledge the presence of major technology companies and numerous cloud-storage specialists

7    in the market, including Microsoft and Google, which are capable of competing effectively with

8    Apple.  *See* SAC ¶ 32.  The entry of these competitors and their enduring competition over the

9    years, despite the alleged restriction with respect to iCloud Backup, confirms that there are no

10   entry or expansion barriers giving Apple monopoly power.

11          Rather than address the deficiencies highlighted by the Court, Plaintiffs just reiterate

12   circular and conclusory claims that competitors would produce more cloud storage absent Apple's

13   limitations on the remote backup of core app data and restoration of Apple devices to iCloud

14   Backup.  *See* Opp'n at 16.  The Court rejected those claims for good reason:  "This conclusory

15   allegation does not permit an inference that market-wide output has been restricted."  Order at 15.

16          Plaintiffs insinuate that barriers to expansion must exist because a selection of other cloud

17   storage providers had a relatively stable number of monthly active users over five years.  SAC

18   ¶¶ 105–06.  But stable market shares do not tell the whole story.  There are no allegations of failed

19   attempts to enter the market or market participants trying to expand and failing.  Expansion barriers

20   must be shown with plausible allegations that "existing competitors are producing at full capacity"

21   or "lack the ability to quickly expand supply and counteract a predator's supracompetitive

22   pricing."  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1441 (9th Cir. 1995).  As the Court

23   explained, such an omission—which endures in the SAC—is fatal to Plaintiffs' claim.  Order at

24   15; *see also Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, No. 21-cv-00540, 2022 WL 2791201,

25   at *10 (E.D. Cal. July 15, 2022) (dismissing complaint for lack of allegations of competitors'

26   output capacity); *DeSoto Cab Co. v. Uber Techs., Inc.*, No. 16-cv-06385, 2020 WL 10575294, at

27   *5 (N.D. Cal. Mar. 25, 2020) (dismissing complaint given lack of allegations that competitors

28   cannot expand output); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 16-cv-06370, 2017

WL 4310767, at *9 (N.D. Cal. Sept. 28, 2017) (Plaintiffs failed to allege barriers to expansion given lack of explanation of market participants' inability to increase output).

b.  *Plaintiffs Fail to Allege Direct Evidence of Market Power*

**Plaintiffs fail to allege that Apple charges supracompetitive prices.**  Plaintiffs continue to rely on dubious allegations and calculations of Apple's gross margins in their effort to prove supracompetitive prices, and therefore market power.  That remains a dicey proposition.  *Garnica v. HomeTeam Pest Def., Inc.*, 230 F. Supp. 3d 1155, 1159 (N.D. Cal. 2017).  If anything, the problems with Plaintiffs' argument are worse in their SAC given (i) they now admit they have no basis to claim that iCloud's pricing is out of step with other cloud storage options (SAC ¶ 123 n.67), and (ii) they now rely on a source showing that iCloud pricing actually decreased or otherwise remained steady between 2015 and 2018 (Hitt Report at 29).[4]

If Apple had monopoly power, it would be incentivized to raise prices over time and over its competitors.  Plaintiffs' allegations of supracompetitive pricing are implausible against the contradictory indications from the Hitt Report and basic economic principles.  *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) ("[U]nder basic economic principles, increased competition . . . generally lowers prices."); *Xerox Corp. v. Media Scis., Inc.*, 660 F. Supp. 2d 535, 549 (S.D.N.Y. 2009) (evidence failed to support a reasonable inference of supracompetitive pricing where Xerox decreased prices over time).

**Plaintiffs fail to allege that Apple restricted output.**  The Opposition doubles down on Plaintiffs' argument that Apple restricts the output of other cloud storage providers by preventing them from providing the "full-service functionality" they need to sell cloud storage subscriptions.  Opp'n at 18.  As the Court made clear, that allegation is "circular and conclusory."  Order at 15.  And Plaintiffs still provide no plausible, non-conclusory allegation that Apple's competitors would produce more cloud storage absent the file restrictions.

Plaintiffs also just reiterate their argument that reduced output can be simply assumed by

---

[4] On this issue, Plaintiffs call the Hitt Report's findings "unverified."  Opp'n at 18.  But Plaintiffs cannot rely on the Hitt Report to bolster their claims in one context yet disclaim the report when it undermines their allegations in another.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (the court need not accept as true allegations contradicting the exhibits attached to the complaint); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (same).

the fact of supracompetitive prices.  Opp'n at 19.  The Court rightfully rejected that argument, too.  Order at 15–16.  Plaintiffs cannot avoid their burden to allege both supracompetitive prices *and* restricted output by asking the Court to assume the latter based on the purported presence of the former.  *Id*.  Plaintiffs have not put forth sufficient allegations to demonstrate that Apple's output was reduced in any demonstrable manner or that Apple's pricing restricts other cloud storage providers from offering more cloud storage.   Rather, they make broad inferential leaps, for example by claiming that the approximately 29% of U.S. consumers who do not use a cloud service would do so if only prices were reduced.  *See* SAC ¶ 127.  They also misconstrue the opinion in *United States v. Google LLC*; that case only states that the absence of restricted output (a form of direct proof) is not fatal where "indirect evidence suffices to establish monopoly power."  747 F. Supp. 3d 1, 123 (D.D.C. Aug. 5, 2024).  As explained above, Plaintiffs' purported indirect evidence is insufficient; they also fail to allege the requisite reduction in output.

### B.    Plaintiffs' Attempted Monopolization Claim Fails

 Plaintiffs' attempted monopolization claim should be dismissed because their "insufficient allegations of monopoly power also fail to allege that Apple has a dangerous probability of achieving monopoly power."  Order at 19.  A dangerous probability of achieving monopoly power can be inferred from (1) direct evidence of specific intent combined with conduct aimed at achieving the unlawful goal, or (2) conduct alone, if that conduct also implies specific intent.  *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1029 (9th Cir. 1981), *cert. denied*, 459 U.S. 825 (1982).  The problem is that Plaintiffs do not allege any specific intent by Apple.  Instead, they argue that "an intent to monopolize can be inferred from 'unfair or predatory' tactics . . . or 'anticompetitive conduct alone.'"  Opp'n at 19.

Plaintiffs misstate the law.  Per *Catch Curve, Inc. v. Venali, Inc.*, "anticompetitive conduct alone can satisfy the specific intent requirement *if* the conduct 'form[s] the basis for a substantial claim of restraint of trade' or is 'clearly threatening to competition or clearly exclusionary.'"  519 F. Supp. 2d 1028, 1035 (C.D. Cal. 2007) (emphasis added) (citations omitted).  And "the notion that proof of unfair or predatory conduct alone is sufficient to make out the offense of attempted monopolization is contrary to the purpose and policy of the Sherman Act."  *Spectrum Sports, Inc.*

1    *v. McQuillan*, 506 U.S. 447, 457 (1993). Having failed to allege any anticompetitive conduct,

2    Plaintiffs cannot rely solely on conclusory allegations of a "specific intent" to monopolize. *See*

3    *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987). Plaintiffs' attempted

4    monopolization claim, therefore, fails for the same reasons it did before and should be dismissed.

5

6         **C.    Plaintiffs' Alleged Monopoly Conduct Remains a Challenge to a Product Design Decision That Is Not Actionable Under Section 2**

7         That Plaintiffs are fundamentally challenging a design decision—one debuted over a

8    decade ago—has been obvious throughout this case. *See* Mot. to Dismiss Hr'g Tr. at 14–15, 18–

9    19; Mot. to Dismiss FAC at 1, 11, 13; Reply at 2, 15; Order at 9, 20 ("What Plaintiffs are really

10    challenging is Apple's product design decision" and "the crux of Plaintiffs' complaint is that Apple

11    designed its products in an exclusionary manner"). Plaintiffs' contention that their claims are not

12    about "product design, but rather an ongoing policy . . . [that] Apple could readily abolish . . .

13    without affecting the 'design of [its] products,'" Opp'n at 20, is specious and tautological. The

14    restrictions (and conduct) Plaintiffs challenge are embedded in the architecture and functionality

15    of Apple's product: they are squarely about the way iCloud was designed to operate.

16         Courts are hesitant to "second-guess decisions about product design" and redesign for fear

17    that such decisions will unduly chill innovation. *See* Herbert Hovenkamp, The Antitrust

18    Enterprise: Principle and Execution 275 (2005). Indeed, "[i]t is more difficult to formulate a legal

19    standard for design conduct than it is to imagine clearly illegal situations." *In re IBM Peripheral*

20    *EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 1003 (N.D. Cal. 1979) (finding exclusionary

21    design of an interface lawful where that interface was a "superior design"), *aff'd sub nom.*

22    *Transamerica Computer Co. v. IBM Corp.*, 698 F.2d 1377 (9th Cir. 1983). Plaintiffs' claims

23    undeniably seek a mandate that Apple grant other cloud storage providers access to essential app

24    data and device files, enabling them to offer a backup feature akin to iCloud's. This is an attempt

25    to leverage antitrust laws to dictate Apple's product design choices, which fundamentally amounts

26    to a refusal-to-deal claim. *See Pac. Bell Tel. Co. v. linkLine Commc'ns., Inc.*, 555 U.S. 438, 450–

27    51 (2009) (a firm "with no antitrust duty to deal" is not required to provide services "under the

28    terms and conditions preferred by [its competitors]"). Such claims require specific conditions that

1   Plaintiffs have not even tried to allege. *See Verizon Commc'ns. Inc. v. Law Offices of Curtis V.*

2   *Trinko*, 540 U.S. 398, 408 (2004). Apple has "no duty to deal under the terms and conditions

3   preferred by [its] rivals." *Pac. Bell Tel. Co.*, 555 U.S. at 457.

4       **D.**    **Plaintiffs Fail to Allege a Tying Claim**

5       To sidestep the Court's prior dismissal of its tying claim, Plaintiffs purport to replead their

6   claim under Section 2. SAC ¶¶ 209–19; Opp'n at 22. They abandon their Section 1 tying claim—

7   though they nominally still assert it—and now lean into a theory of "implicit" technological ties.

8   Opp'n at 22–23. But as before, regardless of which section of the Sherman Act Plaintiffs assert

9   the claim, Plaintiffs' own "allegations foreclose a . . . tying claim." Order at 8. Plaintiffs continue

10  to acknowledge that "many well-known technology firms offer[] cloud storage products that are

11  available on Apple's mobile devices," (SAC ¶ 95), but removed their admission that "Apple

12  mobile device holders can select from other cloud based storage providers." FAC ¶ 32.

13      Plaintiffs' attempt to distinguish *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171

14  (9th Cir. 2016), remains unavailing. Plaintiffs argue that (1) the focus of *Aerotec* was on a tactic

15  that made purchasing from competitors "less desirable"; (2) the court found there was no actual

16  tie in *Aerotec*; and (3) *Aerotec* is inapplicable because it involved a Section 1 tying claim. Opp'n

17  at 23. These arguments only underscore why *Aerotec* is on point. First, the only competitive effect

18  that Plaintiffs allege results from the alleged design decision is that consumers prefer iCloud over

19  competitors' storage options. *See* Mot. at 7; SAC ¶¶ 44–48 (citing expert reports that demonstrate

20  that consumers value the backup feature iCloud provides). Second, Plaintiffs' admissions still

21  establish there is no actual tie: it remains undisputed that consumers are not required to use or

22  purchase iCloud. *See* Mot. at 24; SAC ¶¶ 37, 128, 157; FAC ¶ 67. And third, Plaintiffs themselves

23  rely on Section 1 cases in support of their tying claim, so their effort to distinguish *Aerotec* on that

24  basis makes no sense. Opp'n at 22. (citing *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883,

25  914 (9th Cir. 2008); *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984)).

26      The rest of Plaintiffs' Opposition focuses on whether the supposed "tie" was

27  communicated or "implicit." Opp'n at 22. This is immaterial. Plaintiffs cite *Foremost Pro Color,*

28  *Inc. v. Eastman Kodak Co.*, 703 F.2d 534 (9th Cir. 1983) to support this argument. Opp'n at 22.

1    But *Foremost* only undermines Plaintiffs' position.  The Ninth Circuit held that "[b]ecause the

2    conduct Foremost alleged in support of its Section 1 tying claim is not anticompetitive, it is of no

3    assistance to Foremost's efforts to state a claim for relief for monopolization or attempted

4    monopolization."  703 F.2d at 543.  "Although the complaint boldly asserts that the purchase of

5    the tied products was 'required,' that single word is insufficient to support even an inference of

6    the necessary coercion."  *Id*. at 541.  That is the same problem with the tying claim here.  Plaintiffs

7    admit that consumers are not required to use or purchase iCloud.  As such, there can be no tie.

8        **E.    Plaintiffs' UCL Claims Fail**

9        Plaintiffs' failure to plausibly allege a Sherman Act claim means their UCL "unlawful"

10   prong claim fails.  Order at 19.  And Plaintiffs' attempt to salvage their "unfair" prong claim also

11   falls short.   Under the balancing test, Plaintiffs still have not alleged a plausible impact on

12   consumers:  Plaintiffs admit that Apple mobile device users are not required to purchase iCloud

13   and do not allege that iCloud is priced higher than the competition.  Order at 22; SAC ¶¶ 128, 157,

14   123 n.67.  Those deficiencies remain fatal to Plaintiffs' UCL claim.  Order at 22.

15       Plaintiffs' new conclusory allegations on consumer harm fare no better.  Again, Plaintiffs

16   reiterate the unsupported claim that Apple's prices are supracompetitive.  Opp'n at 23.  But the

17   Hitt Report that Plaintiffs invoke in their SAC shows that Apple actually reduced prices over time.

18   Hitt Report at 29.  And Plaintiffs outright admit they lack any proof that Apple did not price iCloud

19   competitively with other cloud service providers over time.  SAC ¶ 123 n.67.

20       Nor is there any merit to Plaintiffs' argument that Apple has deprived the market of

21   alternatives to iCloud.  Plaintiffs would have the Court assume cloud storage options such as

22   Google Drive, Microsoft OneDrive, and Dropbox (among others) are not viable alternatives due

23   to one feature a subset of consumers appear to value.  Opp'n at 23.  But such feature differentiation

24   cannot arbitrarily constrict the boundaries of a market.  *Streamcast*, 547 F. Supp. 2d at 1095

25   ("unique attributes and components" that make a product "more attractive and efficient" do not

26   distinguish it from other products that "permit users to accomplish the same basic task").

27       Plaintiffs' allegations that Apple and its rivals have no incentive to compete on quality are

28   equally implausible.  SAC ¶¶ 152–53.  Plaintiffs fail to grasp that Apple's rivals, unlike Apple,

1   also compete to provide cloud storage services on other devices, including Android.  *See* SAC

2   ¶¶ 62, 110.  Those companies have every incentive to innovate across those platforms, and Apple

3   has every incentive to innovate to compete.

4       Finally, Plaintiffs also continue to misinterpret Apple's security justifications.  Opp'n at

5   23– 24.  Apple's security justification is not focused on the nature of the files Apple restricts from

6   backup, but rather the need to shield access to apps and sensitive information to, among other

7   things, "prevent [third parties] from making changes to a user's device."  Order at 22.  iCloud's

8   security relative to that of competitors' cloud sharing products does not touch on that core concern.

9       **F.    Plaintiffs Cannot Indefinitely Extend the Statute of Limitations**

10      Plaintiffs' argument that simply labeling Apple's restraints as "ongoing" suffices to

11  establish a "continuing violation" of the Sherman Act is circular.  Opp'n at 24.  To assert a

12  "continuing violation," Plaintiffs must allege a new and independent "overt act" by Apple within

13  the limitations period that would inflict new and accumulating injury.  *Samsung Elecs. Co. v.*

14  *Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014).

15      What Plaintiffs propose when they nevertheless allege that "Plaintiff Gamboa's claims do

16  not depend on the continuing violations doctrine," Opp'n at 24, is essentially "that each payment

17  of a monopoly price, on its own, give[] rise to a continuing violation," *see Crowder v. LinkedIn*

18  *Corp.*, No. 22-CV-00237, 2023 WL 2405335, at *3 (N.D. Cal. Mar. 8, 2023).  But this "would

19  unduly expand the continuing violations exception in the antitrust context."  *Id.*; *see also* Areeda

20  ¶ 320c ("If the mere charging of a monopoly price constitutes a 'continuing violation' . . . , then

21  we have indefinitely lengthened the statute of limitations on claims of successful

22  monopolization.").[5]  That position is untenable, and none of Plaintiffs' claims are timely.

23  **III.    CONCLUSION**

24      Plaintiffs have had their third bite at the apple, yet still failed to plead any plausible antitrust

25  violation.  The Court should dismiss Plaintiffs' SAC with prejudice.

26  _____

27  [5] *See also* Order at 5 n.1 (noting that Plaintiffs' very argument "would expose a defendant to a new lawsuit each time a new consumer buys the defendant's product for the first time" and "ignores the principle that the accrual of an antitrust claim depends on the "defendant's 'acts'" that harm

28  competition, *not* on the ripple effect those acts have on a particular plaintiff years later" (citations omitted)).

1    Dated:  May 2, 2025                     LATHAM & WATKINS LLP

2

3                                 By:  */s/  Aaron T. Chiu*
                                        Aaron T. Chiu

4

5                              Belinda S Lee (SBN 199635)
                              *belinda.lee@lw.com*

6                              Sarah M. Ray (SBN 229670)
                              *sarah.ray@lw.com*

7                              Aaron T. Chiu (SBN 287788)
                              *aaron.chiu@lw.com*

8                              Alicia R. Jovais (SBN 296172)
                              *alicia.jovais@lw.com*

9                              505 Montgomery Street, Suite 2000
                              San Francisco, California 94111-6538

10                            Telephone: +1.415.391.0600
                           Fax: +1.415.395.8095

11                              *Attorneys for Defendant Apple Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28