UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIANNA FELIX GAMBOA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 24-cv-01270-EKL<br><br>**ORDER DENYING MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 66 |

　　　　This antitrust action arises out of Defendant Apple Inc.'s restrictions that prevent third-party cloud storage providers from accessing certain files on iPhones and iPads. Plaintiffs allege that these file restrictions prevent Apple's competitors from offering "full-service" cloud storage that can compete effectively with iCloud, Apple's own cloud storage service. The Court dismissed Plaintiffs' first amended complaint for failure to state a claim. *See* Order Granting Mot. to Dismiss in Part, ECF No. 62 (the "MTD Order").

　　　　In the second amended complaint, Plaintiffs added substantial new allegations to address the pleading deficiencies that required dismissal of the prior complaint. *See* Second Am. Class Action Compl., ECF No. 64 (the "SAC"). Now before the Court is Apple's motion to dismiss. *See* Mot. to Dismiss Plfs.' SAC, ECF No. 66 (the "Motion"). The Court found this matter suitable for disposition without oral argument and vacated the hearing scheduled for June 18, 2025. ECF No. 69; *see* Civil L.R. 7-1(b). Having carefully reviewed the parties' briefs and relevant authority, Apple's motion is DENIED for the following reasons.[1]

---

[1] The Court assumes the parties' familiarity with the facts of the case and the applicable legal standards, which the Court comprehensively addressed in the MTD Order.

## I. SHERMAN ACT § 2 CLAIMS

Section 2 of the Sherman Act makes it unlawful to monopolize, or to attempt to monopolize, interstate or foreign commerce. 15 U.S.C. § 2. To state a claim for monopolization, Plaintiffs must plausibly allege: (1) a relevant market; (2) Apple's monopoly power in the relevant market; (3) Apple's willful acquisition or maintenance of monopoly power through anticompetitive conduct; (4) harm to competition; and (5) resulting injury to Plaintiffs. *See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137-38 (9th Cir. 2022). Here, the first three elements of Plaintiffs' monopolization claim are disputed. The Court addresses them in turn, and then addresses Plaintiffs' claim for attempted monopolization.

### A. Market Definition

The first step in analyzing Plaintiffs' Section 2 claims "is to accurately define the relevant market." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020); *see also Thurman Indus. v. Pay'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir. 1989) ("[D]efining the relevant market is indispensable to a monopolization claim."). A key purpose of defining the relevant market is "to measure [the defendant's] ability to lessen or destroy competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018) (quoting *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)). Here, the parties dispute whether Plaintiffs plausibly allege a relevant product market that includes "all economic substitutes" for iCloud.[2] *See Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008).

In the second amended complaint, Plaintiffs reassert the same two relevant product markets as before. Plaintiffs allege a narrow market for "full-service" cloud storage on Apple mobile devices – that is, "cloud platforms that can host all file types." SAC ¶ 159; *see also id*. ¶¶ 3, 10, 14, 40-48. This proposed market contains just one product: iCloud. The Court previously held that the iCloud-only market was implausible because it "fails to include all economic substitutes for iCloud – principally, cloud storage services offered by Apple's rivals." MTD Order at 11. The Court reasoned that Plaintiffs did not plausibly allege why the relevant

---

[2] Apple does not dispute that the relevant geographic market is the United States. *See* SAC ¶ 116.

2

1    market should exclude other cloud storage services that offer essentially the same functionality as
2    iCloud, except for the ability to store certain restricted files.  *See id.* at 11-13.  In the second
3    amended complaint, Plaintiffs have added substantial new allegations regarding the importance to
4    consumers of "full-service" cloud storage that can store all types of files, including restricted files.
5    *See, e.g.*, SAC ¶¶ 14, 40-48.  These allegations draw from an expert report that Apple relied upon
6    in unrelated litigation involving iCloud.  *See* SAC Ex. A, ECF No. 64-1.

7          The Court need not resolve whether the iCloud-only market is plausible because Plaintiffs
8    plausibly allege a broader market for all cloud storage on Apple mobile devices.[3]  *See, e.g.*, SAC
9    ¶¶ 10, 55, 109, 194.  This proposed market includes not only iCloud but also other cloud storage
10   services that work on Apple mobile devices.  Apple argues that this market improperly excludes
11   local storage, which "serves the same functional purpose" as cloud storage.  Mot. at 16.  However,
12   Plaintiffs allege that cloud storage offers key features valued by consumers that local storage does
13   not offer.  First, cloud storage "can automatically backup data without any action by the user,"
14   whereas local storage is a manual process and therefore less convenient.  SAC ¶ 67.  Second,
15   cloud storage offers "the ability to seamlessly access and manage stored data across multiple
16   devices," which is unavailable through local storage.  *Id.* ¶ 68.  Third, cloud storage is durable and
17   resilient, whereas "data can be lost" on local storage if the hard drive is "damaged or misplaced."
18   *See id.* ¶¶ 66-67.  Fourth, "users cannot store or back up content from app stores or iTunes, or
19   PDFs downloaded directly from Apple Books, on a local hard drive."  *Id.* ¶ 66.

20         The Court finds that it would be premature at this stage to conclude that Plaintiffs'
21   proposed market is "facially unsustainable" because it excludes local storage.  *See Hicks v. PGA*
22   *Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (quoting *Newcal*, 513 F.3d at 1045).  Although a
23   relevant market may include differentiated products, *see* MTD Order at 12, the degree of
24   substitutability between cloud storage and local storage is a factual question that must be decided
25   on a more complete record.  Accordingly, the Court DENIES Apple's motion to dismiss for lack
26   of a relevant market.

---

28   [3] The viability of Plaintiffs' iCloud-only market is better addressed on a more complete record.

**B.     Monopoly Power**

Monopoly power is "the ability to raise price profitably *by restricting output*." *Am. Express*, 585 U.S. at 549 (quoting Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles & Their Application ¶ 501). Here, Plaintiffs plausibly allege Apple's monopoly power through indirect evidence – that is, high market share, barriers to entry, and barriers to expansion. *See* MTD Order at 16-18 (discussing requirements for monopoly power based on indirect evidence).

First, as to high market share, Plaintiffs allege that Apple has a 96.1% share of cloud storage revenue on Apple devices. SAC ¶¶ 112-13. No doubt, that share is sufficiently high. *See, e.g.*, *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 777-78 (N.D. Cal. 2022) (collecting cases). Apple argues that the methodology for calculating the 96.1% share is "shrouded in a black box." Reply at 8, ECF No. 68. But Plaintiffs allege that this figure is based on "data published by industry analysts" from Sensor Tower, which "amasses substantial amounts of data on app usage across markets." SAC ¶ 112 & n.63. Because Apple has not identified any defect in Plaintiffs' calculation, the Court accepts it at this stage. Apple also argues that Plaintiffs' calculations are "internally contradictory" because Plaintiffs measure Apple's share in terms of both revenue and users. *See* Reply at 9.[4] But it is not contradictory to allege multiple market share figures that are calculated based on different methodologies. And here, Plaintiffs added the revenue-based 96.1% share figure to address the Court's concerns with calculating share based on users. *See* MTD Order at 17.

Second, the Court previously held that Plaintiffs plausibly allege barriers to entry. *See* MTD Order at 17-18. Nothing in the second amended complaint detracts from the Court's prior reasoning. *See, e.g.*, SAC ¶ 102 (alleging the same barriers to entry as before). Apple repeats its argument that barriers to entry are implausible because major technology companies and cloud storage specialists have already entered the market. *See* Reply at 9. Evidence of entry by significant competitors may undermine Plaintiffs' ability to show barriers to entry at a later stage

---

[4] It was not very sporting of Apple to save these arguments for its Reply brief, thereby depriving Plaintiffs an opportunity to defend their new market share allegations.

of this case. However, "[t]he fact that entry has occurred does not necessarily preclude the existence of 'significant' entry barriers" if the market entrants are "small" and unable to "take significant business away" from Apple. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1440 (9th Cir. 1995). Here, Plaintiffs allege that Apple maintains a 96.1% share of revenue despite entry by competitors, which suggests a market guarded by barriers to entry.

Third, Plaintiffs now plausibly allege barriers to expansion, which the prior complaint failed to address. *See* MTD Order at 18. Specifically, Plaintiffs allege that Apple's share of the relevant market has "remained remarkably durable, with iCloud's share of active cloud users on iPhones hovering between 82% and 84% in the last four years." SAC ¶ 114. Plaintiffs further allege that, for Apple's rivals, "collective output has been essentially flat, even modestly declining from 17.8 million to 16.9 million [active users], between January 2020 and January 2025." *Id.* ¶ 105. In a competitive market, if Apple offered an inferior product and imposed price increases relative to competitors' offerings, Apple's rivals should be able to expand their output and take share from Apple unless their capacity is constrained. *See id.* ¶¶ 84-91, 134, 143-46 (alleging that iCloud is inferior in quality and that Apple has imposed a relative price increase). If competitors failed to expand their output despite these alleged market conditions, it suggests that competitors face barriers to expansion.

In sum, Plaintiffs plausibly allege that Apple has monopoly power in the claimed relevant market for all cloud storage on Apple mobile devices. Accordingly, the Court DENIES Apple's motion to dismiss for lack of monopoly power.

C.    **Anticompetitive Conduct (Tying)**

In the first amended complaint, Plaintiffs alleged that Apple engages in illegal tying in violation of Section 1 of the Sherman Act, which prohibits unreasonable restraints of trade. 15 U.S.C. § 1. The Court held that Plaintiffs failed to state a Section 1 claim due to "lack of concerted conduct and the lack of a tying arrangement." MTD Order at 7. The Court also observed that "[w]hat Plaintiffs are really challenging is Apple's product design decision to shield restricted files from third-party cloud storage providers," which is unilateral conduct "properly challenged under Section 2 of the Sherman Act, not under Section 1." *Id.* at 9.

5

In the second amended complaint, Plaintiffs reassert their tying claim as a violation of Section 2 of the Sherman Act. SAC ¶¶ 209-19.[5] "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984). Thus, Plaintiffs must allege that: (1) mobile devices and cloud storage are separate products; (2) Apple has sufficient market power in mobile devices to coerce buyers to purchase iCloud; (3) Apple sells mobile devices only on the condition that buyers also purchase iCloud, or that buyers agree not to purchase cloud storage from other suppliers; and (4) the tying arrangement forecloses a substantial volume of commerce in the cloud storage market. *See Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008) (setting forth the specific elements required for a tying claim). Here, Apple principally challenges the third element – whether there is a tying arrangement between Apple mobile devices and cloud storage.[6]

Plaintiffs plausibly allege a tying arrangement in the form of a "technological tie." "[A] technological tie . . . require[s] the defendant's power in some primary product, as well as its product design that excludes rivals in a market for a secondary product." Areeda & Hovenkamp ¶ 1757. Here, Plaintiffs allege that Apple has market power in mobile devices, and that it designs

---

[5] The "tying" cause of action in the second amended complaint still references Section 1 of the Sherman Act in passing. SAC at 62 (referencing "§ 1" in the header). But in their Opposition brief, Plaintiffs only defend their tying claim as a Section 2 violation. As Plaintiffs explain, the second amended complaint repleads tying "under Section 2, which also supports tying claims and does not require concerted action." Opp. at 5, ECF No. 67; *see also id*. at 22 ("Having reasserted their tying claim under Section 2, Plaintiffs need not establish concerted action to prevail."). Because the Court previously dismissed the Section 1 tying claim for lack of concerted action, and Plaintiffs did not cure this pleading deficiency nor do they defend the Section 1 tying claim in their Opposition brief, the Court deems the Section 1 tying claim to be abandoned. *See* SAC ¶ 20 (noting the Court's previous dismissal under Section 2, and stating that "Plaintiffs have repleaded tying under Section 2").

[6] Apple also argues that Plaintiffs' theory is more accurately viewed as anticompetitive product design or refusal to deal, not tying. *See* Mot. at 21-23. These alternate theories lie closer to the "outer boundary" of accepted Section 2 liability. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004) (discussing refusals to deal); *see also* MTD Order at 20 (discussing product design claims). Even if the alleged conduct may be more accurately viewed as a product design claim than a tying claim, at this stage the Court accepts Plaintiffs' theory as framed in the second amended complaint.

them in a manner that "arbitrarily sequesters" restricted files and thereby excludes rivals in the alleged market for cloud storage on Apple mobile devices. SAC ¶ 5.

Technically, Apple mobile device users can purchase *some* cloud storage from Apple's rivals. But the relevant question is whether Apple's conduct is coercive, and the answer depends on how consumers actually behave. Here, Plaintiffs allege that "iCloud's market share for all cloud storage available on Apple's mobile devices exceeds 88% (measured by users)," SAC ¶ 112, which implies that Apple mobile device users very rarely purchase the alleged tied product (cloud storage) separately. If consumers overwhelmingly buy mobile devices and cloud storage from Apple, even though iCloud is allegedly inferior to other cloud storage options, it suggests that Apple's file restrictions are coercive. *See Cascade Health*, 515 F.3d at 915 (explaining that the fact that only 14% of purchasers "made a separate purchase may indicate some degree of coercion").

In sum, Plaintiffs plausibly allege their monopolization claim (Count 1) based on allegations of tying, and they plausibly allege a Section 2 tying claim (Count 3) based on the same allegations.[7] Accordingly, Apple's motion to dismiss for lack of anticompetitive conduct is DENIED.

### D.     Attempted Monopolization

Plaintiffs also plausibly allege that Apple has attempted to monopolize the market for cloud storage on Apple mobile devices. This claim requires: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed toward accomplishing that purpose; (3) a dangerous probability of [achieving monopoly power]; and (4) causal antitrust injury." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1477 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).

As to specific intent, Plaintiffs allege that Apple is a monopolist that intentionally restricts certain files to prevent rivals from competing with Apple. *See* SAC ¶¶ 54, 193, 200. Plaintiffs further allege that Apple's conduct has no legitimate business justification. *See id.* ¶¶ 141-43. At

---

[7] Because Plaintiffs' monopolization claim appears to rest solely on tying allegations, Count 1 and Count 3 are essentially duplicative.

7

1    this stage, Plaintiffs' allegations are sufficient to infer specific intent to control prices or destroy
2    competition. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318 (3d Cir. 2007).

3       Apple argues that specific intent cannot be inferred from exclusionary conduct alone.
4    Reply at 11.  Generally, this holds true for a typical attempted monopolization claim because the
5    defendant has not yet obtained monopoly power.  *See Spectrum Sports, Inc. v. McQuillan*, 506
6    U.S. 447, 459 (1993).  But here, the attempt claim is asserted in the alternative to a plausible
7    monopolization claim, and "monopolistic intent can be inferred from the exclusionary conduct of a
8    firm with monopoly power."  *Cascade Health*, 515 F.3d at 893 n.3.  In other words, although
9    some conduct is not probative of monopolistic intent in a competitive market, the same conduct
10   performed by a monopolist may be "clearly exclusionary."  *See William Inglis & Sons Baking Co.*
11   *v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1028 (9th Cir. 1981).

12      The other elements of this claim are not meaningfully disputed.  As discussed above,
13   Plaintiffs plausibly allege anticompetitive conduct.  *See supra* Section I.C.  And Plaintiffs'
14   allegations of monopoly power necessarily satisfy the lesser threshold required for alleging that
15   Apple has a "dangerous probability" of achieving monopoly power.  *See supra* Section I.B.
16   Accordingly, Apple's motion to dismiss this claim is DENIED.

## II.  UNFAIR COMPETITION LAW CLAIM

18      Plaintiffs also challenge Apple's conduct under the Unfair Competition Law (the "UCL").
19   The UCL prohibits "unlawful," "unfair," and "fraudulent" business acts and practices.  Cal. Bus.
20   & Prof. Code § 17200.  Here, Plaintiffs allege unlawful and unfair conduct.  SAC ¶¶ 163-69.

21      Plaintiffs argue that Apple's conduct is unlawful under the UCL because it violates the
22   Sherman Act.  *Id.* ¶ 222.  For the reasons discussed above, Plaintiffs plausibly allege a violation of
23   the Sherman Act, thus they also plausibly allege a UCL "unlawful" prong claim.  *See Cel-Tech*
24   *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (explaining that the
25   UCL borrows violations from other laws).  Because Plaintiffs plausibly allege at least one UCL
26   violation, the Court need not reach whether Plaintiffs also state a UCL violation premised on
27   "unfair" conduct.  Accordingly, Apple's motion to dismiss this claim is DENIED.

## III. STATUTE OF LIMITATIONS

The Court previously denied as premature Apple's motion to dismiss Plaintiffs' claims as time-barred. *See* MTD Order at 4-5. The Court held that it is unclear from the face of the complaint when Plaintiffs' claims accrued, and that Plaintiffs plausibly allege a continuing violation in the form of Apple's ongoing enforcement of its allegedly mutable file restriction policy. *See id.* In their briefing, the parties repeat their positions as to whether Plaintiffs' claims are timely, but they point to no new allegations that would change the Court's prior analysis.

Although the Court denied Apple's motion to dismiss for the reasons noted above, the Court also rejected Plaintiffs' alternate theory that Gamboa's claims are timely, even in the absence of a continuing antitrust violation, because she sued within four years of her first iCloud purchase. *See* MTD Order at 5 n.1. Plaintiffs continue to press this theory, *see* Opp. at 24, so the Court briefly addresses it again here.

A statute of limitations encourages prompt litigation of disputes. Prompt enforcement of the antitrust laws is especially desirable because it can mitigate harm to consumers and restore markets to competitive conditions. Prompt enforcement also brings clarity to defendants as to the lawfulness of their conduct before business practices become entrenched and hard to unwind.

Here, Plaintiffs' theory is that Gamboa could sue Apple in 2024 – regardless of when Apple's alleged anticompetitive conduct occurred – so long as her suit was filed within four years after she first purchased iCloud at a supracompetitive price. If adopted, this rule would make the statute of limitations meaningless in antitrust cases. Take this case, for example. Assuming Apple monopolized cloud storage through a one-time, immutable design decision in 2011, Gamboa would be allowed to sue Apple thirteen years later if Apple still reaps monopoly profits from its 2011 decision. Allowing such a claim to proceed would disserve the goal of incentivizing prompt enforcement of the antitrust laws.[8]

---

[8] The analysis would be different if Plaintiffs alleged that Apple engaged in conduct in 2011, but did not obtain monopoly power until some later date. *See Yelp Inc. v. Google LLC*, No. 24-cv-06101-SVK, 2025 WL 1168900, at *6 (N.D. Cal. Apr. 22, 2025) ("If the qualifying act for the statute of limitations requires that monopoly power (or a dangerous probability thereof) be present, then a previously performed act may mature into a qualifying one when the monopoly power arises."). But Plaintiffs have not advanced such a theory here.

1    Plaintiffs' theory suffers from two flaws in reasoning.  First, Plaintiffs focus on the time of

2  *injury* without respect to when the allegedly anticompetitive *act* occurred.  But both the time of the

3  anticompetitive act and the time of injury are relevant to assessing the timeliness of an antitrust

4  claim.  Indeed, the Ninth Circuit has consistently recognized that antitrust claims accrue based on

5  when the defendant commits an act that harms competition and thereby causes injury.  *Pace Indus.*

6  *v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) ("[T]he statute of limitations runs from

7  the commission of the act."); *see also Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 694

8  (9th Cir. 1982).  Plaintiffs fail to distinguish this authority.[9]

9    Second, Plaintiffs conflate the charging of monopoly prices with anticompetitive conduct,

10 theorizing that a new antitrust injury occurs whenever a consumer buys a product at a

11 supracompetitive price.  The problem with this logic is that charging monopoly prices is not an

12 unlawful act on its own.  *Trinko*, 540 U.S. at 407; *see also Eichman v. Fotomat*, 880 F.2d 149, 160

13 (9th Cir. 1989) ("[T]he passive receipt of profits . . . is not an overt act of enforcement which will

14 restart the statute of limitations.").  Thus, even if Gamboa suffered an injury in 2022 when she

15 allegedly first paid a monopoly price for iCloud, *see* SAC ¶ 26, that injury was not accompanied

16 by an anticompetitive act within the statute of limitations period in the absence of a continuing

17 violation.

18    Plaintiffs rely on *Mayor of Baltimore v. Actelion Pharmaceuticals Ltd.* for the proposition

19 that "because the plaintiffs [in that case] were not injured in 2014, they had no [antitrust] cause of

20 action in 2014."  995 F.3d 123, 130 (4th Cir. 2021).  In *Actelion*, the plaintiffs alleged a "pay-for-

21 delay scheme" in which the defendant pharmaceutical company entered into settlement

22 agreements that delayed generic manufacturers' entry into the market.  *Id*. at 125, 130-32.  The

23 primary issue was that *no* plaintiff suffered injury in 2014 because the defendant had a legal

---

[9] Plaintiffs rely on *In re Animation Workers Antitrust Litigation* for the proposition that "antitrust claims accrue at the time of injury."  87 F. Supp. 3d 1195, 1209 (N.D. Cal. 2015).  But that case addressed a different issue – whether antitrust claims accrue at the time of injury or at the time of discovery (*i.e.*, sometime *after* the injury occurs).  *See id*. at 1208.  The court rejected the plaintiffs' argument that the "discovery rule" applies and held that plaintiffs' claims were untimely.  *Id.* at 1208, 1211.  The court did not hold that a plaintiff may bring an antitrust claim within four years after the plaintiff's first purchase from a monopolist, regardless of when the anticompetitive conduct occurred.

monopoly conferred by patent. Instead, the plaintiffs first suffered antitrust injury in 2015 when the defendant's legal monopoly ended and the defendant "willfully maintained illegal monopoly power . . . by having excluded competition." *Id*. at 130 (recognizing that the defendant's "scheme had no illegal effect until [defendant] exercised its monopoly power beyond" the expiration of its patent, and it was "only then . . . that the plaintiffs could have been injured"). *Actelion* therefore held that the plaintiffs' antitrust claims accrued when the defendant's conduct caused harm to the market by distorting competitive conditions. Applying that same reasoning here, if Apple's conduct harmed competition in 2011 when it purportedly decided to restrict files from its rivals, then the statute of limitations for related claims began to run in 2011.

In sum, it would be premature to dismiss Plaintiffs' claims as time-barred because it is unclear when Plaintiffs' claims accrued and whether Apple engaged in a continuing antitrust violation. However, the Court again raises its concerns with Plaintiffs' alternate theory as the parties continue to engage in discovery.

## IV.  CONCLUSION

For the foregoing reasons, Apple's motion to dismiss the second amended complaint is DENIED. Apple shall file an answer to the second amended complaint within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: June 16, 2025

Eumi K. Lee
United States District Judge

11