**VIA CM/ECF FILING**

December 2, 2025

The Honorable Virginia K. DeMarchi
United States District Court, Northern District of California
Robert F. Peckham Federal Building
Courtroom 2 – 5th Floor
280 South 1st Street
San Jose, CA 95113

Re:   *Julianna Felix Gamboa, et al., v. Apple Inc.*, Case No. 5:24-cv-01270-EKL (VKD)
       Joint Discovery Letter Concerning Search Terms and Custodians

Dear Judge DeMarchi:

      Pursuant to the Court's Standing Order for discovery disputes, and following meet and confers via videoconference on September 22, 2025, October 10, 2025, and November 14, 2025, Plaintiffs and Apple Inc. ("Apple") submit this joint letter regarding discovery disputes.

*   *   *

**I.   JOINT STATEMENT OF THE DISPUTE**

      Plaintiffs have requested: (1) that Apple search and produce documents from the custodial files of two Apple employees: Steve Jobs and Eddy Cue; and (2) that, as part of the parties' ongoing search term negotiations, Apple identify the number of documents collected for each custodian by year. As Apple has declined these requests, Plaintiffs move to compel.

**II.   THE PARTIES' ARGUMENTS**

    **A.   Plaintiffs' Position**

        **1.   Because this case challenges high-level strategic decisions, Apple should produce files from custodians who are truly likely to possess such information.**

      This case centers around a restriction that Apple imposes on any cloud-based storage service that competes with Apple's iCloud. Specifically, Apple blocks rival cloud services' access to a certain set of iPhone files, known as the "Restricted Files," denying them the ability to "comprehensively back up a device and restore it at replacement,"[1] and, in turn, the ability to compete. According to Apple, this was an irrevocable decision made "at the inception of iCloud in 2011."[2] So, plaintiffs requested Steve Jobs and Eddy Cue as custodians in this case because—

---

[1] ECF No. 64, at ¶¶ 5-7.

[2] ECF No. 66, at 22:16-18.

as the history of iCloud shows—they are the two Apple employees most likely to possess relevant documents about any strategic decision made in 2011.

      This is confirmed in Apple's own documents. In 2008, Apple's then-CEO, Steve Jobs sent an email about the launch of MobileMe,[3] the subscription-based storage service that transitioned to iCloud in 2011.[4] In the email, Jobs acknowledged the disappointing launch of MobileMe, but noted that Apple was taking "many steps to learn from this experience," one of which was to place Eddy Cue in charge of all "internet services." Jobs promoted Cue to Vice President, Internet Services, and stated that "he will now report directly to me."[5] Cue has widely been credited with "fixing" MobileMe and "re-launch[ing] the failed service as iCloud in 2011."[6] He has since been named the Senior Vice President of Internet Services and still oversees iCloud to this day.[7]

      In another email, dated October 24, 2010, Jobs placed himself in charge of Apple's "2011 Strategy."[8] Underneath the "2011 Strategy" heading, he declared 2011 as the "Year of the Cloud," noted that "Google and Microsoft are further along on [cloud] technology," and stated he wants to "tie all of our products together, so we further lock customers into our ecosystem[.]"[9] Later, Jobs assigned himself, Cue, and Roger Rosner to lead "Mobile Me,"[10] which became iCloud eight months later.[11] Here, Jobs reiterated his vision ("Strategy: catch up to Google cloud services and leapfrog them") and how to implement it ("tie all our products together" and "make Apple ecosystem even more sticky").[12]

      This well-documented history crystallizes three crucial facts: (1) Apple considered its first foray into cloud storage a flop; (2) Jobs sought to fix that "mistake" and laid out how; and (3) Jobs tasked himself and Cue with directing that vision. What's more, initial documents

---

[3] Jacqui Cheng, *Steve Jobs on MobileMe: The Full E-Mail*, ARSTECHNICA.COM (Aug. 5, 2008), https://arstechnica.com/gadgets/2008/08/steve-jobs-on-mobileme-the-full-e-mail/.

[4] *See* Press Release, "Apple Introduces iCloud," APPLE.COM (Jun. 6, 2011), https://www.apple.com/newsroom/2011/06/06Apple-Introduces-iCloud/ ("The former MobileMe® services . . . all completely re-architected and rewritten to work seamlessly with iCloud.").

[5] Cheng, *supra* note 3.

[6] Jessica E. Lessin, *Eddy Cue: Apple's Rising Mr. Fix-It*, WSJ.COM (Nov. 29, 2012), https://www.wsj.com/articles/SB10001424127887324784404578145810125064612.

[7] *Apple Leadership: Eddy Cue, Senior Vice President, Services*, APPLE.COM, https://www.apple.com/leadership/eddy-cue/.

[8] Ex. 1, at ¶ 1.

[9] *Id.*

[10] *Id.* ¶ 6.

[11] Press Release, *supra* note 4.

[12] Ex. 1, at ¶ 6.

produced by Apple[13] confirm Cue's ongoing importance to iCloud. These documents: (1) name Cue as a "decision-maker" who must approve changes to iCloud;[14] (2) show Apple employees preparing for iCloud meetings with Cue;[15] (3) identify Cue as a member of the pricing committee;[16] (4) reveal that Cue directly receives feedback on iCloud and recommends action based on that feedback;[17] and (5) shows Cue approving iCloud press releases.[18] It's inconceivable that the decision to deny rival cloud services access to the Restricted Files wouldn't have involved Jobs and Cue.

For these reasons, Apple's contention that Jobs and Cue won't possess "unique" documents defies belief, as it assumes iCloud's strategic direction originated with mid-level employees. Yet, that assumption contradicts public knowledge of how Apple operates from the *top down*, particularly under the leadership of Jobs, who famously imposed his visions regardless of public opinion or internal dissent.[19] Indeed, while Apple claims the custodians it offers "cover the entire waterfront," it appears that ***none*** were part of the Executive Team that would have received the crucial 2010 email outlining Apple's cloud strategy—not even Cue, who didn't get promoted to SVP until 2011. As this document proves, Jobs and Cue will possess high-level strategic documents that other mid-level employees won't, such as correspondence between themselves, "non-custodian subordinates," the "board of directors," or "third parties."[20] They should be custodians.

---

[13] Apple attempts to downplay these documents because they involve "existing custodians." But, of course, documents produced in discovery would involve existing custodians. The point is that these documents also show Cue's central role in iCloud.

[14] *E.g.*, Ex. 2, APL-GAMBOA_00000642.

[15] *E.g.*, Ex. 3, APL-GAMBOA_00002244.

[16] *E.g.*, Ex. 4, APL-GAMBOA_00003029.

[17] *E.g.*, Ex. 5, APL-GAMBOA_00001996.

[18] *E.g.*, Ex. 6, APL-GAMBOA_00001953.

[19] *See, e.g.*, Joe Nocera, Op-Ed, *What Makes Steve Jobs Great,* N.Y. TIMES, Aug. 26, 2011, https://www.nytimes.com/2011/08/27/opinion/nocera-what-makes-steve-jobs-great.html (describing Jobs as "a dictator who listened mainly to his own intuition" and "a maniacal micromanager"); Yukari Iwatani Kane & Geoffrey A. Fowler, *Steven Paul Jobs, 1955-2011*, Wall St. J., Oct. 6, 2011, https://www.wsj.com/articles/SB10001424052702304447804576410753210811910 (Jobs remained "deeply involved in [the iPad's] planning even while recovering from his 2009 liver transplant"); Dominic Rushe, *Steve Jobs, Apple co-founder, dies at 56*, THE GUARDIAN, Oct. 5, 2011, https://www.theguardian.com/technology/2011/oct/06/steve-jobs-apple-cofounder-dies (Jobs stating, "A lot of times, people don't know what they want until you show it to them.").

[20] *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213, at *2 (N.D. Cal. Nov. 14, 2021) (noting that "[Facebook CEO Mark] Zuckerberg and [COO Sheryl] Sandberg are likely to possess unique, relevant information because they were key decision-

This is required under principles of proportionality, but also basic procedural fairness. Apple argues this case should be time-barred because it concerns high-level strategic restraints irrevocably imposed in 2011. While flawed legally, the argument must still be tested factually. Apple cannot mount a defense and then deny discovery into its bases. Apple's theory can only be meaningfully tested with discovery from iCloud's strategic decisionmakers in 2011, whom Apple's internal documents identify as Jobs and Cue.

### 2. Apple's refusal to identify the number of documents collected for each custodian by year violates this district's guidelines for electronic discovery.

Plaintiffs have requested that Apple provide the number of documents collected for each custodian by year. Such information is necessary for plaintiffs to understand whether there are gaps in the custodial collections, especially for crucial time frames (such as the time surrounding iCloud's launch). This is particularly important here because Apple's search terms are capturing an inordinately small number of documents, which could potentially be explained by gaps in the custodial collections. Apple has refused to provide this basic information and has been slow-rolling search-term related information for months.

From a legal perspective, Apple has no leg to stand on. Under Rule 26, discovery of "the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . is so deeply entrenched in practice," that the drafters of the federal rules, found it "no longer necessary to clutter the long text of Rule 26 with these examples."[21] This district in particular codified guidelines that mandate "cooperation on issues relating to the preservation, collection, search, review, and production of ESI" and emphasize "the particular importance of cooperative exchanges of information at the earliest possible stage of discovery."[22] And federal courts require the responding party to not just "share information" about the documents being produced, but also "regarding the universe of potentially relevant documents being preserved."[23] As such, Apple's insistence that the requested information amounts to impermissible "discovery on discovery" is contradicted not only by this district's discovery guidelines, but also its cases.[24]

---

makers related to issues at the heart of Plaintiffs' allegations" and pointing to prior emails detailing their involvement).

[21] Fed. R. Civ. P. 26 advisory committee's note.

[22] "Guidelines for the Discovery of Electronically Stored Information," (N.D. Cal. Dec. 1, 2015), https://cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf.

[23] *Burnett v. Ford Motor Co.*, 2015 WL 4137847, *8 (S.D. W.Va. July 8, 2015) (citations omitted).

[24] *E.g.*, *In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, 2024 WL 5190206, at *5 (N.D. Cal. Dec. 20, 2024) (noting court-ordered production of hit reports); *Andersen v. Stability AI Ltd.*, 2025 WL 870358, at *5 (N.D. Cal. Mar. 19, 2025) (same).

Practical considerations can't explain Apple's obstinance either. Any e-discovery platform can readily generate such information using metadata filters.[25] This is not a "specialized, granular report" that "require[s] a significant amount of both human and machine hours to create," as Apple claims. It's automated. In fact, when pressed to detail the purported burden on a meet-and-confer, Apple pivoted to a different excuse, now claiming the report wouldn't be "helpful." But it's not for Apple to unilaterally decide what's "helpful." This District has already determined that Apple must share the information sought here. This Court should order Apple to do so.

---

[25] *E.g.*, *Search Term Reports*, EVERLAW.COM, https://support.everlaw.com/hc/en-us/articles/212103946-Search-Term-Reports?utm_source=chatgpt.com; *Search Terms Reports*, RELATIVITY.COM, https://help.relativity.com/RelativityOne/Content/Relativity/Search_term_reports/STR.htm?utm_source=chatgpt.com.

5

### B.      Apple's Position

The Court should deny Plaintiffs' requested relief.  ***First***, Apple has agreed to 9 custodians who are most knowledgeable about the issues and have unique, responsive documents.  Plaintiffs' insistence that Apple also add two of its highest-level executives as custodians—(i) Steve Jobs, Apple's former CEO who passed away over 14 years ago, shortly *before* iCloud's launch, and (ii) Eddy Cue, Apple's SVP of Services who oversees numerous services, not just iCloud—is a fishing expedition.  Plaintiffs cannot demonstrate that Messrs. Jobs or Cue have unique information beyond the 9 custodians Apple already provided.  Plaintiffs' request for their documents underscores that Plaintiffs' case is stale and meritless.  ***Second***, Apple has agreed to Plaintiffs' proposed search terms twice over without modification, and Plaintiffs' never-ending demands for statistics are improper "discovery on discovery."

#### 1.      Plaintiffs' Demand for Steve Jobs and Eddy Cue as Custodians Is Baseless, and Apple's Nine Custodians Comprise the Individuals Who Have Unique, Responsive Documents.

Plaintiffs cannot demonstrate that Messrs. Jobs or Cue are likely to have unique, relevant documents.  That is the operative test for determining whether a company's highest-level executives should be added as custodians.  *See Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 5507176, at *3 (N.D. Cal. Aug. 25, 2023) (denying high-level executive as custodian because plaintiff failed to show "that he has information that would not be discoverable through the other custodians named by defendants"); *Handloser v. ACL America, Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (denying addition of two "executives" as custodians because plaintiffs failed to show they had information that "differs from discovery [plaintiffs] have already obtained from the others") (DeMarchi, J.).

Apple initially proposed 7 custodians covering every aspect of iCloud, including those directly involved in product marketing, business management, pricing, platform security, and engineering, spanning over a decade:

- Services Product Manager, Apple Invites & iCloud (2021–present)

- Product Manager, iCloud (2022–present)

- Director, iCloud Business (2024–present); Senior Manager, Apple One and iCloud (2019–2024)

- Pricing Team Lead (2020–present)

- Head of Platform Security – Security Engineering & Architecture (2022–present); Security Engineering & Architecture Engineering Manager (2020–2022); OS Security Engineering Manager (2013–2016); Senior OS Security Engineer (2011– 2013); OS Security Engineer (2010–2011)

- Senior Director of Engineering, iCloud (2019–present); Software Engineering Manager (2019); Device Services Applications Manager (2011–2019)

6

- Senior Engineer, iCloud Services (2021–present); iCloud Engineering Director (2020–2021)

In response to Plaintiffs' request for custodians who personally worked on the development of iCloud in 2010 and 2011, Apple added 2 more high-level custodians who were involved in and have extensive knowledge of iCloud's development:

- Cloud Infrastructure Engineering Manager (2010–2018)

- Senior Director of iCloud Engineering (2017–present); Senior Engineering Manager, iCloud (2010–2017)

Though these 9 custodians collectively cover the waterfront of iCloud's business and development over a 14-year period, Plaintiffs demand that Apple add two of its highest-level executives: Steve Jobs (former CEO) and Eddy Cue (SVP of Services). That Plaintiffs would even demand that Mr. Jobs be a custodian—even though he passed away *14 years ago*, in October 2011 (the same month iCloud launched)—only confirms the staleness of this case.

Plaintiffs fail to show that Messrs. Cue or Jobs have unique, relevant documents that these custodians would not have. The mere fact that Mr. Jobs was Apple's CEO in 2011 is not determinative. *See In re In re Bank of Am. Cal. Unemployment Bens. Litig*., 2024 U.S. Dist. LEXIS 74979, at *21–22 (S.D. Cal. Apr. 24, 2024) (denying addition of Bank of America's CEO because "Plaintiffs ha[d] not demonstrated that he possesses 'uniquely relevant information that is not available from the sources already designated[,]'" and the CEO's approval did not establish the actual decisionmaker). And Apple has confirmed repeatedly that Mr. Cue—who oversees *all* of Apple's services—was not involved in iCloud's early development.

The emails that Plaintiffs point to do not carry their burden of demonstrating that Messrs. Jobs or Cue likely have unique information beyond Apple's existing custodians. The 2010 email, produced in the *Epic Games, Inc. v. Apple Inc*., Case No. 4:20-cv-05640 (N.D. Cal. 2020) litigation,[26] says nothing about the core issues in *this* case—*i.e.*, third-party remote storage of core app data and device settings. Nor does it establish that Mr. Jobs had or Mr. Cue has unique information. Indeed, contrary to Plaintiffs' assertion above, one of Apple's existing custodians is mentioned in this very email correspondence, undercutting the notion that Messrs. Jobs and Cue exclusively possess unique information.

Plaintiffs' reliance on documents produced by Apple in this case is similarly fruitless. Apple does not contest Mr. Cue oversees Apple's Services, which includes iCloud. But the documents Plaintiffs identify simply show examples of Mr. Cue receiving high-level readouts from the employees Apple has already included as custodians, and illustrate that it is *those employees* who are actually involved in substantive iCloud workstreams. These documents show (1) a high-level summary email for Mr. Cue about pricing, seeking *approval from an existing custodian*;[27]

---

[26] *Supra* note 8.

[27] APL-GAMBOA_00003029.

(2) a press release *provided to an existing custodian's team for approval*;[28] (3) preparation by employees, *including existing custodians*, for a presentation to Mr. Cue;[29] (4) internal forwarding of a consumer complaint *to an existing custodian who would actually address the issue*;[30] and (5) a one-word "Approved" email on an announcement regarding new security features that *an existing custodian's team developed and implemented*.[31] None of this establishes Mr. Cue has unique information warranting his inclusion as a custodian. Rather, these documents confirm the custodians Apple provided are the appropriate individuals, encompassing all relevant information and documents.

Plaintiffs' request to add Messrs. Jobs and Cue as custodians is a fishing expedition. Apple "is entitled to select the custodians it deems most likely to possess responsive information," and it has done that. *B&G Foods N. Am., Inc. v. Embry*, 2024 WL 626962, at *3 (E.D. Cal. Feb. 14, 2024) (quoting *In re EpiPen*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018)). The Court should deny Plaintiffs' request.

### 2. Apple Agreed to Plaintiffs' Initial and Expanded Search Term Proposals, and Is Producing Relevant, Responsive Material.

"'[D]iscovery on discovery' of search terms generally is warranted only on a showing that a party's production has been 'insufficient or deficient.'" *ImprimisRx, LLC v. OSRX, Inc.*, 2022 WL 17824006, at *2 (S.D. Cal. Dec. 19, 2022); *see also Uschold v. Carriage Servs., Inc.*, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019) (similar). Plaintiffs cannot make this showing, and their requests are improper.

The parties exchanged multiple communications regarding the search terms for Apple's document productions:

- On July 1, 2025, Apple sent Plaintiffs proposed search terms and hit counts.

- On July 18, 2025, Plaintiffs requested that Apple expand those terms.

- On July 29, 2025, Apple sent Plaintiffs hit counts for their expanded terms and agreed to run all the terms, without modification.

- On September 29, 2025, Apple began its review using Plaintiffs' expanded terms.

- On October 17, 2025, Plaintiffs proposed further expansions to the terms Apple applied to its ongoing review.

---

[28] APL-GAMBOA_00001953.

[29] APL-GAMBOA_00002244.

[30] APL-GAMBOA_00001996.

[31] APL-GAMBOA_00000642.

- On October 22, 2025, Apple sent Plaintiffs hit counts for their further expanded terms and again agreed, without modification, to Plaintiffs' expanded terms.

Despite Apple's repeated agreement to Plaintiffs' terms, Plaintiffs continue to demand granular metrics regarding Apple's document collection. Apple agreed to provide certain metrics, including an approximate percentage of total emails collected that hit on Plaintiffs' terms. But each time Apple provides additional data to Plaintiffs, they demand more.

To be sure, Apple *has* provided Plaintiffs with hit reports for all of Plaintiffs' revised search strings. Accordingly, the cases that Plaintiffs rely on above, in which courts compelled hit reports, are inapposite. Here, Plaintiffs are demanding more—specifically, excessive custodial collection metrics—speculating that they will help them understand the quality of their search terms. But there is no correlation between (a) the number of documents collected by-custodian and by-year, and (b) the quality of search terms (*i.e.*, whether they capture relevant material). While "search term hits can be helpful in assessing whether a particular term is over- or under-inclusive," parties should "exchange *relevant* information *as the need arises* in order to efficiently resolve disputes about the efficacy of particular search terms." *Klein v. Facebook, Inc.*, 2021 U.S. Dist. LEXIS 175738, at *9 (N.D. Cal. Sep. 15, 2021) (DeMarchi, J.) (emphasis added). Plaintiffs have not established the relevance of the additional metrics that they seek.

Plaintiffs have not even attempted to show that Apple's productions are "insufficient or deficient," as required to justify "discovery on discovery." Nor could they: as Apple has explained, any disconnect between Plaintiffs' expectations and the hit counts is because Plaintiffs' case, which was filed in 2024 and challenges conduct from 2010, is stale and meritless. Apple has twice agreed to Plaintiffs' proposed terms and has produced thousands of relevant documents. Following review of Apple's productions, if Plaintiffs believe there is a specific deficiency, they can raise any issues then. The Court should deny this request too.

### III. PARTIES' VIEWS ON HEARING

#### A. Plaintiffs' Position

Unless the Court has specific questions for the parties, Plaintiffs do not consider a hearing necessary. Plaintiffs believe that the arguments presented, authorities cited, and materials attached are sufficient to decide this limited dispute.

#### B. Defendant's Position

Apple would be happy to answer any questions the Court may have, but Apple does not specifically request a hearing on this dispute.

### IV. DISCOVERY CUT-OFF DATES

- **December 16, 2025:** Substantial completion of document and data production
- **July 15, 2026:** Close of fact discovery

9

- **August 5, 2026:** Deadline for Apple to file early motion for summary judgment on statute of limitations issues ("SOL MSJ")

- **September 2, 2026:** Plaintiffs' Opposition to Apple's SOL MSJ due

- **September 23, 2026:** Apple's Reply in support of SOL MSJ due

- **October 21, 2026:** Hearing on Apple's SOL MSJ

- **4 weeks after order on Apple's SOL MSJ, if denied:** Plaintiffs' Class Certification Motion and Supporting Expert Report(s) due

- **8 weeks after the deadline for Plaintiffs' Class Certification Motion and Supporting Expert Report(s):** Apple's Opposition to Plaintiffs' Class Certification Mot. and Supporting Expert Report(s) and any Motions to Exclude Plaintiffs' Supporting due

- **6 weeks after the deadline for Apple's Opposition to Plaintiffs' Class Certification Mot. and Supporting Expert Report(s):** Plaintiffs' Reply in Support of Class Certification Mot. and Rebuttal Expert Report(s)

- **4 weeks after Plaintiffs' Reply in Support of Class Certification Mot. and Rebuttal Expert Report(s):** Class Certification Hearing

## V.     STATEMENT OF COMPLIANCE

The parties attest that they have complied with the requirement that counsel for the parties confer about the discovery dispute. The parties conferred on numerous occasions by email and by videoconference on September 22, 2025, October 10, 2025, and November 14, 2025. The parties reached impasse on the November 14, 2025 videoconference, which was attended by Ben Siegel and Mark Vazquez, for Plaintiffs, and Alicia Jovais, Aaron Chiu, and Devon Diggs, for Defendant. The parties subsequently agreed to modify the briefing submission date by email.

Respectfully submitted,

| | |
|---|---|
| By:  */s/ Ben M. Harrington* <br> Ben M. Harrington (SBN 313877) <br> Benjamin J. Siegel (SBN 256260) <br> HAGENS BERMAN SOBOL SHAPIRO LLP <br> 715 Hearst Avenue, Suite 300 <br> Berkeley, CA 94710 <br> Telephone: (510) 725-3000 <br> Facsimile:  (510) 725-3001 <br> benh@hbsslaw.com <br> bens@hbsslaw.com <br><br> Mark Vazquez (*pro hac vice*) <br> HAGENS BERMAN SOBOL SHAPIRO LLP <br> 455 N. Cityfront Plaza Dr., Suite 2410 <br> Chicago, IL 60611 <br> Telephone: (708) 628-4962 <br> Facsimile:  (708) 628-4950 <br> markv@hbsslaw.com <br><br> *Attorneys for Plaintiffs and the Proposed Class* | By:  */s/  Alicia R. Jovais* <br> Alicia R. Jovais <br> Belinda S Lee (Cal. Bar No. 199635) <br> *belinda.lee@lw.com* <br> Sarah M. Ray (Cal. Bar No. 229670) <br> *sarah.ray@lw.com* <br> Aaron T. Chiu (Cal. Bar No. 287788) <br> *aaron.chiu@lw.com* <br> Alicia R. Jovais (Cal Bar No. 296172) <br> *alicia.jovais@lw.com* <br> LATHAM & WATKINS LLP <br> 505 Montgomery Street, Suite 2000 <br> San Francisco, California 94111-6538 <br> Telephone: +1.415.391.0600 <br><br> *Attorneys for Defendant Apple Inc.* |

## SIGNATURE ATTESTATION

I, Ben M. Harrington, am the CM/ECF user whose ID and password are being used to file this Joint Discovery Letter Brief. In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

DATED: December 2, 2025                HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Ben M. Harrington*
Ben M. Harrington