Ben M. Harrington (SBN 313877)
Benjamin J. Siegel (SBN 256260)
Eli Freedman (SBN 345432)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
benh@hbsslaw.com
bens@hbsslaw.com
eli.freedman@hbsslaw.com

Mark Vazquez (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4962
markv@hbsslaw.com

*Attorneys for Plaintiffs*

[Additional counsel on signature page]

Belinda S Lee (SBN 199635)
Sarah M. Ray (SBN 229670)
Aaron T. Chiu (SBN 287788)
Alicia R. Jovais (SBN 296172)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
belinda.lee@lw.com
sarah.ray@lw.com
aaron.chiu@lw.com
alicia.jovais@lw.com

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| JULIANNA FELIX GAMBOA and THOMAS DOROBIALA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case No. 5:24-cv-01270-EKL <br><br> **FURTHER JOINT CASE MANAGEMENT STATEMENT** <br><br> Judge: The Honorable Eumi K. Lee |

FURTHER JOINT CASE MANAGEMENT STATEMENT                    No. 5:24-cv-01270-EKL

Pursuant to this Court's Order Granting Plaintiffs' Unopposed Administrative Motion for Leave to File Further Case Management Statement (Dkt. 110), Plaintiffs Julianna Felix Gamboa and Thomas Dorobiala (together, "Plaintiffs"), and Defendant Apple Inc. ("Apple" and, together with Plaintiffs, the "Parties") submit this Further Joint Case Management Statement.

## I.    STATUS OF DISCOVERY

### A.    Joint Statement

The Parties provide the following joint statement about discovery, with separate position statements about the status of pending discovery in Section I.B and I.C, *infra*.

*Close of fact discovery.*  Fact discovery closes on October 13, 2026. Dkt. 88 at 8.

*Substantial completion deadlines*. This Court set February 16, 2026 as the deadline for the substantial completion of document production and March 16, 2026 as the deadline for substantial completion of data production.  *Id.*[1]

*Requests for production of documents.*  Plaintiffs served on Apple their first set of requests for production of documents ("RFPs"), including data, on April 4, 2025, and their second set of RFPs on March 3, 2026.  Defendant Apple served Plaintiffs with its first set of RFPs on December 16, 2025, and its second set of RFPs on March 31, 2026. Each side has produced documents responsive to the other side's requests, but the Parties dispute the timeliness and completeness of productions to date, as discussed in Sections I.B and I.C, *infra*.

*Other written discovery.*  Apple served Plaintiffs with a first set of requests for admissions and first set of interrogatories on March 31, 2026.  Plaintiffs responded to those requests on April 30, 2026.  As explained below, the Parties dispute the sufficiency of Plaintiffs' responses.

*Depositions.* Plaintiffs identified an initial list of seven Apple fact witnesses for deposition, and the Parties are conferring on dates and locations. Plaintiffs anticipate serving a 30(b)(6) deposition notice on Apple and reserve the right to notice additional fact depositions. Apple also reserves the right to serve a deposition notice on Plaintiff Dorobiala.

---

[1] These substantial completion deadlines did not apply to any documents ordered to be produced from the files of Steve Jobs or Eddy Cue, or documents or data responsive to any requests for production that were served after December 10, 2025. Dkt. 88 at 8 nn. 1-2.

***Third-party discovery***.  The Parties have served document subpoenas on several third parties, including Google LLC (Plaintiffs and Apple), Dropbox, Inc. (Plaintiffs and Apple), Microsoft Corporation (Plaintiffs and Apple), IDrive, Inc. (Plaintiffs and Apple), Box, Inc. (Plaintiffs and Apple), Amazon.com Inc. (Apple only), and Samsung Electronics America, Inc. (Plaintiffs and Apple). Microsoft and Box have produced documents, with additional productions anticipated from these and the other third parties. The Parties are actively conferring with third parties.

The Parties reserve the right to take further party and third-party discovery, including written discovery and depositions.

**B.     Plaintiffs' Statement on the Status of Discovery**

Apple has not abided by discovery deadlines. As in any antitrust case, the production of data is critical to model anticompetitive effects and demonstrate classwide harm at the class certification stage, and beyond. Here, Apple failed to substantially complete its data production by the March 16, 2026 deadline set by this Court, and essential transaction data remains outstanding—none has been produced to date. *See* Dkt. 88 at 8. Mindful of the Court's stated disinclination to "grant further requests to extend" the case deadlines (*id.*), Plaintiffs have been reluctant to request a schedule extension, but Apple's delay has now reached a tipping point. In this case-management statement, Apple confirms (for the first time) that it will not produce transactional data until "late August" (at best) and will not complete the production until some unspecified point in "September"—that is, roughly *six months after the court-ordered deadline for data productions*. Apple's failure to comply with the Court's scheduling order is prejudicial and Plaintiffs intend to file a motion requesting that the Court extend the schedule and grant any further relief deemed appropriate.

***Transactional Data.*** Transactional data is essential data discovery in antitrust cases because it is commonly used to model anticompetitive effects, prove classwide injury, identify class members, and measure damages.[2] No data production is substantially complete without transactional

---

[2] *See, e.g.*, ABA Section of Antitrust Law, Proving Antitrust Damages 71 (3rd ed. 2017) (highlighting "transaction-level data" as an "important source of data for analyzing antitrust damages claims"); *In re HIV Antitrust Litig.*, 2022 WL 22609107 at *49-51 (N.D. Cal. Sept. 27, 2022) (ruling that antitrust classes met Rule 23(b) requirements based on expert testimony using transaction data); *Wortman v. Air New Zealand*, 326 F.R.D. 549, 555 (N.D. Cal. 2018) (holding transaction data satisfied Rule 23 ascertainability requirement).

data, and transactional data is far and away the largest and most important dataset requested here—totaling (according to Apple) between 2 and 4 terabytes. With no transactional data produced, Plaintiffs and their experts have been prevented from performing core economic modelling anticipated for class certification. Plaintiffs have also been unable to conduct any discovery related to the data (written discovery or depositions), or bring discovery motions following data analysis, if necessary. This is particularly prejudicial under this Court's Standing Order for Civil Cases, which states that the "close of fact discovery"—October 13, 2026—"is the date by which all discovery must be completed, including motions to compel, hearings on discovery motions, and any additional discovery resulting from orders on discovery motions." Standing Order at 4. There is no way to complete that work if Apple does not even produce all the data until some unspecified point in September, i.e., weeks from the fact-discovery cut-off.

Apple's delay is unjustified. *First*, and most importantly, Apple never sought permission from the Court, or agreement from Plaintiffs, to extend the Court-ordered deadline for data productions. Apple had no authority to unilaterally ignore this Court's order.

*Second*, Apple would have had no basis for relief from the scheduling order even had it timely asked (which it did not). In the Court's December 15, 2025 Scheduling Order, this Court explained that documents or data responsive to requests served *after* December 10, 2025 did not have to meet the subsequent substantial completion deadlines. Dkt. 88 at 8 nn. 1-2. But Plaintiffs served requests for documents, including explicitly "transactional-level DATA" (Pl. RFP Set One at No. 9), on April 4, 2025, *nearly a year prior* to Apple's March 16, 2026 deadline.

*Third*, during the meet-and-confer process, Plaintiffs repeatedly reminded Apple of its obligation to substantially complete its data productions by March 16, 2026,[3] yet Apple largely disregarded these reminders and slow-rolled information as if the deadline did not exist (or apply to Apple). To take one example of delay, in December 2025, Plaintiffs requested data dictionaries for Apple's databases, a standard request in data discovery. Apple initially responded that it did not maintain data dictionaries. But then on February 2, 2026, Apple admitted that a relevant data

---

[3] All correspondence available on request.

FURTHER JOINT CASE MANAGEMENT STATEMENT – 3                    No. 5:24-cv-01270-EKL

dictionary had been created for the *Pepper v. Apple* antitrust litigation in this District (*In re Apple iPhone Antitrust Litigation*, No. 4:11-cv-06714-YGR (N.D. Cal.)). Plaintiffs requested immediate production of this dictionary, but (over Plaintiffs' objection) Apple said it would not do so until the dictionary was updated. Apple did not provide the updated data dictionary until February 27, 2026, only weeks prior to the substantial completion deadline.

To take another example of delay, for many months prior to the substantial completion deadline, Plaintiffs requested that Apple provide Plaintiffs with a small sample of its proposed transactional data, another standard request in data discovery ensuring meaningful pre-production conferral on the data fields that exist and how they interact. But Apple refused to produce a sample of the transactional data until representing in this case management statement that Apple will produce one on July 10, 2026, *roughly four months after the deadline to produce the entire dataset*.

Plaintiffs have tried to compensate for the lack of a data sample by requesting written clarification from Apple, but answers have been slow, incomplete, and often evasive. For example, after several attempts to clarify vague statements by Apple about potentially missing fields with requested personally identifiable information ("PII"), Apple finally revealed on *May 29, 2026* that requested PII data for certain years were missing because of a corporate "nullification process" that was not "officially suspended [until] at least as of . . . May 22, 2026," i.e., two years *after* this case was filed.  *See* May 29, 2026 Email. Plaintiffs reserve all rights regarding this spoliation.

*Other data*. Apple produced some *non*-transactional data prior to the substantial completion deadline, including iCloud Usage Data. Because this production had temporal gaps, was produced in a difficult-to-comprehend format, and was incomplete, Plaintiffs have been trying to get basic answers from Apple about the usage data (and other data). Here again, Plaintiffs have been prejudiced by Apple's lengthy delays in responding to inquiries. For example, on April 23, 2026, Plaintiffs sent Apple a letter with questions about the usage data; Apple did not provide substantive (albeit incomplete) responses until *two days before* the submission of this statement.

*Technical documents*. In this case involving complex technical matters about iCloud and cloud storage, Plaintiffs have requested critical technical documents, including in Plaintiffs' Second Set of Requests for Production of Documents. The meet and confer process is ongoing, but Apple

has so far produced only sixteen responsive documents. Plaintiffs sent straightforward questions to Apple on June 11 and asked for a telephonic or videoconference meet and confer; Plaintiffs received an incomplete one paragraph response *the day before* submission of this statement.

*Plaintiffs' Discovery Responses*. In contrast to Apple, Plaintiffs timely completed their productions in response to Apple's discovery requests, and they did so months ago. Tellingly, Apple did not claim there was any deficiency in Plaintiffs' responses—aside from the disputed discovery connected to Ms. Gamboa's motion to withdraw—until providing content for this case management statement one day before its submission. Putting aside that Apple waited months to raise any concern, and seemingly did so in this joint statement only to detract from its own discovery shortcomings, Plaintiffs will review the letter Apple is purportedly preparing on Plaintiffs-side discovery and confer with Apple in good faith regarding any claimed deficiency.

***

Plaintiffs have been patient as can be with discovery, but Apple's failure to meet the substantial completion deadline and ongoing pattern of delay—particularly with respect to data—has prejudiced Plaintiffs and the fair adjudication of this case. The culmination is Apple's admission, in this statement, that it will not produce transactional data until "late August" and will not complete the production until September, approximately six months after it was required to complete the production under the scheduling Order. Plaintiffs accordingly intend to file a motion seeking appropriate extensions of the schedule and any further relief the Court deems warranted.

**C.  Apple's Statement on the Status of Discovery**

Apple has complied with the substantial completion deadlines for document and data productions. Plaintiffs complain about just one category of data that remains to be produced: iCloud transaction-level data, for which Apple engineers had to build custom logic, and which is expected to total multiple terabytes—requiring significant human and machine time to prepare. Plaintiffs, by contrast, have refused to engage in discovery on critical issues related to their admitted spoliation.

*Plaintiffs' Spoliation and Insufficient Discovery Responses.* Between December 16, 2025 and March 31, 2026, Apple served Plaintiffs with requests for admission ("RFAs"), interrogatories, and requests for production ("RFPs") targeting merits and class issues, including Plaintiff Gamboa's

FURTHER JOINT CASE MANAGEMENT STATEMENT – 5          No. 5:24-cv-01270-EKL

admission that she deleted her Gmail inbox after filing this lawsuit. Plaintiffs' responses remain materially deficient. To date—over six months since Apple served its first RFPs—Plaintiffs have produced just 28 documents. Plaintiff Gamboa has refused to provide any substantive responses to Apple's March 31 discovery requests—including RFAs, interrogatories, and RFPs directed to her document-preservation failures. Apple intends to serve a detailed deficiency letter on Plaintiffs concurrent with this filing, which will identify the numerous non-responsive and incomplete answers and request supplementation. Among other issues, Plaintiff Dorobiala provided facially inconsistent responses (*e.g.*, denying in one response that he purchased Apple devices for reasons other than iCloud, yet in a separate response identifying multiple non-iCloud purchase factors that influenced his purchase); failed to provide basic information regarding his device purchases, cloud storage usage history, and switching behavior; and refused to produce any documents regarding litigation hold instructions, despite the admitted spoliation by his co-plaintiff Ms. Gamboa. *See In re Cathode Ray Tube Antitrust Litig.*, 2023 WL 5667882, at *2 (N.D. Cal. Jan. 27, 2023) ("[I]f a moving party makes a preliminary showing of spoliation, courts have allowed discovery of litigation hold communications."). Apple intends to continue conferring with Plaintiffs, but if the Parties reach impasse, Apple anticipates filing a motion to compel.

*Apple's Extensive Discovery Efforts.* Apple has worked cooperatively with Plaintiffs to meet all discovery deadlines and to produce not only the requested discovery but also to respond to dozens of data-related questions. With respect to <u>documents</u>, Apple reviewed many hundreds of thousands of documents and, before the February 16, 2026 deadline for substantial completion of document productions, produced five volumes of documents from the agreed set of custodians, totaling over 110,000 documents and nearly 629,000 pages. Apple subsequently produced nearly 40,000 additional documents, including from custodians Eddy Cue and Steve Jobs (whose documents were not subject to the substantial completion deadline). In total, Apple has produced over 150,000 documents and over 1,000,000 pages of documents to Plaintiffs.

With respect to <u>data</u>, Apple has spent hundreds of hours investigating, collecting, validating, and producing responsive data. Before the March 16, 2026 deadline for substantial completion of data productions, Apple made two dedicated data productions: on February 23, 2026, Apple

produced (i) U.S. third-party cloud-storage app download data and (ii) U.S. iCloud usage data for both active users and all users; and on March 16, 2026, Apple produced (iii) U.S. Apple One iCloud+ usage data—which Plaintiffs did not request until February 2026, (iv) iCloud financial data reflecting worldwide revenue, gross margins, and U.S. standard costs, (v) an iCloud/Apple One usage data dictionary, and (vi) historical third-party cloud storage agreements for the relevant period.

By the time of this filing, Apple also will have answered 80+ highly detailed questions from Plaintiffs regarding the usage data, third-party app data, financial data, and transactional data, among other topics. Apple responded to the questions in Plaintiffs' letters and emails of February 17, February 27, March 3, March 25, April 19, April 23, May 27, and June 12, which required dozens of hours of investigation with different business and engineering teams at Apple.

***Transactional Data.*** The timing of the production of transactional data does not warrant an amendment to the case schedule, as Plaintiffs requested for the first time on the day of this filing. Apple is finalizing and will serve a transaction data sample, covering a two-month period, by July 10, 2026. Assuming Plaintiffs agree to the parameters of the full data pull by July 20, 2026, Apple expects to complete production of the 15-year dataset—encompassing direct iCloud billings (individual and family plans), direct Apple One billings (individual and family plans), and all third-party cloud storage in-app purchase data—by late August (about six weeks before the close of fact discovery), and expects that data related to the iCloud component of Apple One indirect billings will follow in September 2026, after completion of an ongoing data integrity remediation project that is a prerequisite to producing that data. Pulling this data has required engineers to build custom logic, and the dataset is expected to comprise between two and four terabytes. Despite diligent efforts to complete the pull as quickly as possible, building this massive dataset has required significant engineering time and computing resources.

Contrary to Plaintiffs' mischaracterizations, Apple has been forthcoming and communicative with Plaintiffs regarding the transactional data since the Parties began negotiating it in December 2025. With respect to the *Pepper* data dictionary, Apple does not maintain a comprehensive data dictionary for the transactional dataset in the ordinary course, as Apple told Plaintiffs on December 22, 2025. When outside counsel learned in January 2026 that an ad hoc dictionary had been created

FURTHER JOINT CASE MANAGEMENT STATEMENT – 7                    No. 5:24-cv-01270-EKL

for the *Pepper* litigation, Apple agreed on February 4 to provide it.  Given that the dictionary was over five years old and had been prepared for a different case involving a much broader set of products, Apple took the reasonable first step of verifying its accuracy and applicability to iCloud. Apple produced the updated dictionary to Plaintiffs just a few weeks later, on February 27, 2026.

Apple has also been clear with Plaintiffs about its longstanding PII nullification process for iCloud transactional data.  Apple informed Plaintiffs of the PII nullification process on March 16, 2026, and has since responded candidly to all of Plaintiffs' questions, including explaining its PII retention practices and the steps taken to suspend those practices.  The PII nullification process is a routine privacy and data-management practice implemented to comply with global privacy regulations that long predates this litigation.  Although the preservation and production of PII from years prior to the purported class period—and outside the scope of Plaintiffs' data RFPs—is irrelevant and unduly burdensome, Apple nonetheless suspended the process promptly upon learning that Plaintiffs intended to seek PII data for a decade-plus period.  Importantly, this nullification process has no effect on the remainder of the transaction data, only on certain PII fields.  Apple has agreed to and will produce multiple terabytes of transaction data spanning 15 years, and the data will include non-null PII values from April 2016 forward—providing Plaintiffs with nearly a decade of PII-populated data, including the entirety of the purported class period.

Plaintiffs' claims of prejudice are unsupported.  Plaintiffs admit that they need transaction data primarily for *class certification* and damages.  *Supra* Section I.B.  Plaintiffs' class certification motion is not due until at least 2027, Dkt. 88 at 3, which means Apple's production timeline gives Plaintiffs multiple months with the data before their class certification motion is due.  There is no colorable claim of prejudice given the case schedule, and no justification to modify that schedule.

*Other Data.*  Plaintiffs identify no dispute over "other data."  Apple has produced, among other things, cloud-storage app download data, usage data for iCloud and Apple One, and financial data reflecting worldwide revenue, gross margins, and U.S. standard costs.  Apple has worked cooperatively to answer Plaintiffs' dozens of detailed questions about this data.

*Technical Documents.*  There is also no dispute over technical documents.  Plaintiffs served a second set of RFPs on March 3, 2026, seeking technical documents related to iCloud architecture.

Apple responded on April 2, 2026, agreeing to conduct numerous go-get searches. Plaintiffs did not seek to meet and confer until two months later, on June 2, 2026. The Parties met and conferred on June 11, when Plaintiffs clarified certain requests. Apple produced responsive documents on June 22 and anticipates making another production of technical documents in the coming weeks.

## II.    MOTIONS

### A.    Pending Motions

Pending before the Court is Plaintiffs' Motion to Voluntarily Dismiss Plaintiff Julianna Felix Gamboa. Dkt. 94. The briefing on the motion is complete and has been submitted. The Court is scheduled to hear oral argument on this motion on July 15, 2026.

### B.    Anticipated Motions

*Plaintiffs*. Plaintiffs anticipate the following potential motions, and reserve the right to file other motions in accordance with the Court's rules.

- o *Motion to Amend Case Schedule.* Given Apple's confirmation in this statement that it will not produce critical transaction data until "late August" or complete that production until September, Plaintiffs anticipate moving to extend the case schedule.
- o *Third Party Cloud Storage App Data.* Apple has refused to produce certain usage data for third party cloud storage apps. The Parties are at impasse on this issue.
- o *United Kingdom Data.* Plaintiffs have requested certain iCloud data from the United Kingdom. The Parties are at impasse on this issue.
- o *End Date for Transactional Data.* The Parties are conferring on the production of data beyond April 2024 and, absent resolution of this dispute, a motion may be necessary.
- o *Amazon Web Services Documents.* Plaintiffs have requested certain documents from Apple that include contracts with Amazon Web Services for storage of iCloud data. If the Parties cannot reach agreement on production of the requested documents—which includes a dispute over relevance redactions—a motion may be necessary.
- o *Deposition of Eddy Cue.* Plaintiffs have requested available dates for the deposition of Apple employee and document custodian, Eddy Cue. Apple has indicated that it may oppose his deposition on the basis that he is an "apex" employee at Apple. If the Parties cannot reach agreement, there may be a discovery motion on this topic.
- o *Missing PII in Apple's Transactional Data.* As previewed in Section I.B, *supra*, Apple

revealed on May 29, 2026 that requested PII data for certain years was deleted because of an Apple "nullification process" that was not "officially suspended [until] at least as of . . . May 22, 2026."  Plaintiffs may bring a motion related to this deleted data.

*Apple.*  If the Parties cannot resolve Plaintiffs' ongoing refusal to respond to Apple's spoliation-related discovery requests, Apple anticipates filing a motion to compel.  If the Parties cannot resolve the deficiencies in Plaintiff Dorobiala's responses to RFAs and interrogatories (*see supra* Section I.C), Apple anticipates filing a motion to compel regarding those requests, too.

Apple responds in kind to Plaintiffs' potential discovery motions:

o  *United Kingdom Data.*  Plaintiffs have been aware of Apple's objection to their  request for UK data since Apple served responses and objections to Plaintiffs' First Set of RFPs on May 8, 2025.  Plaintiffs cannot properly raise this issue more than a year later, after Apple has expended substantial effort to collect responsive data.  As Apple has already explained, UK data is irrelevant:  Plaintiffs' claims arise under U.S. antitrust law, they allege a U.S. geographic market, and their proposed class is limited to U.S. consumers.

o  *End Date for Transactional Data.*  Apple informed Plaintiffs in May 2025 that it would produce data for the time period of October 11, 2011 through the date of the complaint, March 1, 2024.  Apple has maintained that position since.  Nonetheless, Apple is willing to meet and confer with Plaintiffs regarding a limited, reasonable data refresh in the event a class is certified in this case.

o  *Amazon Documents.*  This dispute is not between Apple and Plaintiffs. Apple fulfilled its contractual obligation to Amazon by providing notice prior to producing confidential Apple-Amazon agreements.  Amazon indicated it may seek a protective order, and Apple takes no position on Amazon's request.  Amazon sent Plaintiffs a proposal for redactions on June 2, 2026, and Plaintiffs just responded on June 29, 2026.

o  *Deposition of Eddy Cue.*  This issue is not ripe.  Plaintiffs requested the depositions of seven witnesses—including Mr. Cue—on June 3, 2026.  Apple provided Plaintiffs with its position on Eddy Cue's deposition on June 25, 2026, explaining that Mr. Cue is an apex employee and suggesting a meet and confer.  Plaintiffs have not responded.

## III.    SETTLEMENT, ADR, AND OTHER MATTERS

Pursuant to this Court's Order, the Parties have a deadline of October 13, 2026 to complete an initial ADR session. Dkt. 105 at 6. The Parties have not completed that session to date.

DATED: July 1, 2026                    Respectfully submitted,

                                       */s/ Ben M. Harrington*
                                       Ben M. Harrington (SBN 313877)
                                       Benjamin J. Siegel (SBN 256260)
                                       Eli Freedman (SBN 345432)
                                       **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                       715 Hearst Avenue, Suite 300
                                       Berkeley, CA 94710
                                       Telephone: (510) 725-3000
                                       benh@hbsslaw.com
                                       bens@hbsslaw.com
                                       eli.freedman@hbsslaw.com

                                       Mark Vazquez (*pro hac vice*)
                                       **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                       455 N. Cityfront Plaza Dr., Suite 2410
                                       Chicago, IL 60611
                                       Telephone: (708) 628-4962
                                       markv@hbsslaw.com

                                       *Attorneys for Plaintiffs*


DATED: July 1, 2026                    Respectfully submitted,

                                       */s/ Alicia R. Jovais*
                                       Alicia R. Jovais
                                       Belinda S Lee (SBN 199635)
                                       Sarah M. Ray (SBN 229670)
                                       Aaron T. Chiu (SBN 287788)
                                       Alicia R. Jovais (SBN 296172)
                                       **LATHAM & WATKINS LLP**
                                       505 Montgomery Street, Suite 2000
                                       San Francisco, California 94111
                                       Telephone: (415) 391-0600
                                       alicia.jovais@lw.com
                                       belinda.lee@lw.com
                                       sarah.ray@lw.com
                                       aaron.chiu@lw.com

                                       *Attorneys for Defendant Apple Inc.*

FURTHER JOINT CASE MANAGEMENT STATEMENT – 11                    No. 5:24-cv-01270-EKL

**<u>SIGNATURE ATTESTATION</u>**

I, Ben M. Harrington, am the CM/ECF user whose ID and password are being used to file this Initial Joint Case Management Statement. In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

*/s/ Ben M. Harrington*
Ben M. Harrington (SBN 313877)