LATHAM & WATKINS LLP
Belinda S Lee (Cal. Bar No. 199635)
*belinda.lee@lw.com*
Sarah M. Ray (Cal. Bar No. 229670)
*sarah.ray@lw.com*
Aaron T. Chiu (Cal. Bar No. 287788)
*aaron.chiu@lw.com*
Alicia R. Jovais (Cal. Bar No. 296172)
*alicia.jovais@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

*Attorneys for Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS DOROBIALA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | CASE NO. 5:24-cv-01270-EKL (VKD)<br><br>**DEFENDANT APPLE INC.'S SUPPLEMENTAL STATEMENT PURSUANT TO NOVEMBER 3, 2026 ORDER**<br><br>Judge: Hon. Virginia K. DeMarchi |

**<u>Redacted Version</u>**

Pursuant to the Court's November 3, 2026 Order (ECF No. 171), Apple Inc. ("Apple") respectfully submits this supplemental statement describing the effort that would be required to produce certain third-party "user engagement" analytics—specifically, "active devices and sessions" and "retention rate," subject to the existing ordinary-course limitations (double opt-in, aggregation, and anonymization) previously described—for twenty-eight third-party cloud storage apps from January 1, 2020 to the present.[1] *See* ECF No. 159 at 4–5. Producing these data would require resource-intensive engineering work, significant computing time and capacity, and substantial validation efforts. And, as the Court anticipated, that burden would vary materially depending on both the time period and developer in question.

* * *

**No readily available source covers the requested time period.** In general, Apple makes analytics metrics available to third-party developers in two ways. First, a developer may request analytics reports—data files that Apple generates and delivers to the developer—for certain metrics, including "active devices and sessions." Those reports, however, are currently available only from [redacted], and thus cannot supply data for most of the requested period. Second, a developer may log into App Store Connect, a web-based user interface ("UI") in which the developer can view certain analytics metrics for its own apps. Generally—and depending on the app and metric in question—the data available in the App Store Connect UI extend back to [redacted]

Thus, to obtain the data Plaintiff seeks for the period January 1, 2020 to the present, Apple cannot simply generate analytics reports. Instead, Apple would need to query and compile the underlying datasets used to populate the App Store Connect UI. That process is not straightforward. Data displayed in the UI are served to developers through a third-party data platform, and extracting the data at scale from that third-party platform would involve significant costs. Alternatively, Apple could extract data from its internal storage system, where the

[1] The twenty-eight applications at issue are third-party cloud storage applications, including, among others, the full suites of cloud storage applications offered by three of the largest providers—Google (Google Cloud, Google Drive, Google One, and Google Photos), Microsoft (Microsoft Azure, Microsoft OneDrive, and Microsoft OneNote), and Amazon (Amazon Drive and Amazon Photos)—as well as Box and Dropbox.

underlying data reside before they are processed and loaded to the third-party platform, but doing so would require significant compute processing time and add engineering complexity because the data as they exist in Apple's internal storage system are not in their final, processed format.

**Plaintiff's request calls for significant data volume, varying by developer.** The burden also varies substantially depending on the developer in question. Subject to the double opt-in limitations previously described, apps with larger user bases typically generate more data and therefore require more engineering, compute, and validation resources. Here, Plaintiff's request encompasses several of the largest developers whose apps have significant user bases on Apple's platform—including, for example, the full suites of cloud storage applications offered by Google (Google Cloud, Google Drive, Google One, and Google Photos), Microsoft (Microsoft Azure, Microsoft OneDrive, and Microsoft OneNote), and Amazon (Amazon Drive and Amazon Photos), as well as Box and Dropbox. The resulting volume would be considerable: Apple previously produced nearly 500 gigabytes of transaction data in this case, and Apple estimates that the usage data Plaintiff now seeks would be approximately [redacted] than that production (or approximately [redacted] of data).

**"Retention rate" is not a [redacted]** Collecting and producing "retention rate" metrics[2] would be unduly burdensome for several additional reasons. "Retention rate" is [redacted] Those

---

[2] Retention rate is a derived metric that is calculated by dividing the number of devices that opened an app in the days after downloading it by the total number of devices that downloaded it on the same day and opened the app in the last 30 days. These data are subject to the limitations—double opt-in, aggregation, and anonymization—that Apple has previously described. *See* ECF No. 159 at 4–5.

results are [redacted]

Producing "retention rate" here would therefore require Apple to perform that computationally intensive calculation for each of the twenty-eight apps, across nearly seven years of data. Even for a single month of data, generating "retention rate" would impose a substantial burden on Apple: the App Store Connect UI [redacted], meaning that producing data dating back to January 1, 2020 would require [redacted].

**There are significant engineering, compute, and validation burdens.** The work required to generate "active devices and sessions" and "retention rate" falls into three categories, each of which scales up with the number of applications, developer size, and the length of the requested period: (1) engineering, to write and test code to extract, reconcile, and validate data across sources; (2) compute to run the resulting processing jobs—particularly the computationally intensive "retention rate" calculation; and (3) validation, to confirm that the resulting data are accurate. Apple estimates that querying, computing, and validating "active devices and sessions" and "retention rate" data for these twenty-eight applications for January 1, 2020 to the present would require a minimum of three months of engineering time, assuming the process proceeds without unexpected technical, engineering, or validation issues. Apple further estimates that it would take at least an additional month to partition such data into smaller, manageable pieces—which would be necessary given the estimated volume—and to encrypt and deliver it.

* * *

Given the significant burden associated with producing these metrics, and because these metrics are cumulative and irrelevant—as well as outside the scope of RFP 11 and not timely requested, as explained in Apple's position statement and at the November 3, 2026 hearing—Apple respectfully requests that the Court deny Plaintiff's request that Apple produce "user engagement" analytics data for third-party cloud storage apps.

Dated: November 9, 2026 LATHAM & WATKINS LLP

By: */s/ Aaron T. Chiu*
Aaron T. Chiu

Belinda S Lee (Cal. Bar No. 199635)
*belinda.lee@lw.com*
Sarah M. Ray (Cal. Bar No. 229670)
*sarah.ray@lw.com*
Aaron T. Chiu (Cal. Bar No. 287788)
*aaron.chiu@lw.com*
Alicia R. Jovais (Cal. Bar No. 296172)
*alicia.jovais@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Fax: +1.415.395.8095

*Attorneys for Defendant Apple Inc.*